**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANNA K. NUPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 2:18-cv-02505-NIQA |
| | ) | |
| SCHNADER HARRISON SEGAL | ) | |
| & LEWIS, LLP, and BRUCE A. | ) | |
| ROSENFIELD, ESQ., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S STATEMENT OF FACTS**
**IN SUPPORT OF PLAINTIFF'S SUPPLEMENTAL RESPONSE TO**
**DEFENDANTS MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF**
**PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I.     PRELIMINARY STATEMENT

1.     Plaintiff's claims against Defendants are described in more detail in Plaintiff's Cross Motion for Partial Summary Judgment ("Cross Motion"), filed contemporaneously with Plaintiff's Supplemental Response to Defendants' (Converted) Motion for Summary Judgment. Plaintiff's Second Amended Complaint ("SAC") in this action alleges, in part, that Defendants Schnader Harrison Segal & Lewis L.L.P. ("Schnader") and Bruce Rosenfield ("Rosenfield") committed legal malpractice and breach of fiduciary duty.  These claims arise in part out of Defendants' representation of Frances Middleton ("Frances"), Anna's mother, and John Middleton, Anna's brother, in the 2001 GRAT transactions (the "Original GRAT").  In the Original GRAT transaction, Frances transferred 258,029 of shares of Bradford Holdings, Inc. ("BHI") stock owned by Frances, but restricted by several agreements, to a grantor restricted annuity trust whose sole beneficiaries after a two year annuity period were Anna's brother, John Middleton and his family.  The BHI stock transferred to John was worth between $50,000,000 and

$1,000,000,000.  As is alleged in the SAC, this transfer violated the restrictions imposed by several Middleton Family agreements. Defendants structured the Original GRAT and represented Frances and John in the Original GRAT transaction, despite the fact that this transfer of assets to John alone was directly against Anna's interests, and despite the fact that Anna was then a current client of Schnader and Mr. Rosenfield. Defendants had a duty to disclose their representation to Anna and seek her informed consent.  They did neither.  In addition, the Original GRAT was purportedly later modified (the "Modified GRAT") in connection with the 2003 MSA.  Schnader and Rosenfield jointly represented Anna and Frances in the 2003 MSA, and, at a minimum, they were duty bound to disclose to Anna their prior, adverse representation of Frances and John, and the terms of the Original GRAT transaction. As is explained in more detail below,  Defendants concealed from Anna the existence of the Original GRAT and their role in creating it, until May 1, 2017, when they were forced to reveal both its existence and their role in creating it, by an Order issued by the Orphans' Court on March 27,  2017.  Plaintiff's claims are more fully described in the SAC and in the Cross Motion.

2.     Defendants contend that Plaintiff's SAC is barred by the statute of limitations because, Defendants assert, Anna knew she had claims against Defendants prior to June 15, 2016. This contention is untrue for the reasons stated in this Statement of Facts ("SOF").  The following facts demonstrate Plaintiff's efforts to obtain information regarding Defendants' representation of her and Defendants' actions concealing the true facts from Plaintiff.

## II.     STATEMENT OF FACTS

3.     Mr. Mucci first began representing Anna in November 2013.  Second Affidavit of Courtney Johnson-Vidales attached as Exhibit 11[1]  to this SOF.

---

[1] Plaintiff's Exhibits 1 - 10 were filed in connection with Plaintiff's Motion to Strike, filed on March 15, 2019.  Plaintiff incorporates Exhibits 1 - 10 by reference and request that they be

4.      Immediately after Mr. Mucci began representing Anna, he requested copies of her files from the Schnader law firm, and one of Schnader's partners, Bruce Rosenfield, who represented Anna.  Mr. Rosenfield also served as the trustee of a trust that benefited Anna.  On November 24, 2013, Mr. Mucci wrote to Mr. Rosenfield to obtain Anna's client files and documents relating to Middleton family trusts.  Mr. Mucci's  November 24, 2013 letter requested copies of several specific documents, as well as "[any] other trust agreements or documents under which Anna has an interest as a beneficiary, current or contingent, and any trust agreements, non-judicial settlement agreements, or other documents modifying, altering, or revoking her interests created by those trust instruments or documents."  This request was broad enough to encompass all of the documents and client files in Schnader's and Mr. Rosenfield's possession relating to their representation of Anna as lawyers and relating to Mr. Rosenfield's service as trustee for the trust. A copy of Mr. Mucci's November 24, 2013 letter is attached as Exhibit 12 to this SOF.

5.      Mr. Rosenfield made a partial response to the November 24, 2013 letter by email dated December 5, 2013.  In his email, Mr. Rosenfield provided very general background information and sent Mr. Mucci copies of a few of the documents he had requested.  However, Mr. Rosenfield did not produce the other documents requested in the November 24, 2013 letter and he did not produce Anna's client files. Exhibit 11, Second Affidavit of Courtney Johnson-Vidales, ¶5.  A copy of Mr. Rosenfield's December 5, 2013 email is attached as Exhibit 13 to this SOF.

6.      Neither Mr. Rosenfield's December 5, 2013 email, nor any of the documents produced by Mr. Rosenfield, disclosed the existence of the Original GRAT, or Schnader's and Mr. Rosenfield's role in creating it.  Exhibit 11, ¶5; Exhibit 13.

---

included in the record on Defendants' pending Motion for Summary Judgment and Plaintiff's Cross Motion.

7.      On December 17, 2013, Mr. Mucci again wrote to Mr. Rosenfield and again asked for copies of Anna's files. A copy of Mr. Mucci's December 17, 2013 letter is attached as Exhibit 14 to this SOF.

8.      As of January 27, 2014, Mr. Mucci had still not received Ms. Nupson's files from Mr. Rosenfield or the Schnader law firm.  Mr. Mucci again wrote to Mr. Rosenfield to follow up on the request for a copy of Anna's files.  At that time, eight weeks had passed since the original request, and the January 27, 2014 letter therefore asked for a response by the end of business on February 6, 2014.  A copy of Mr. Mucci's January 27, 2014 letter is attached as Exhibit 15 to this SOF.

9.      On February 12, 2014, Wilbur Kipnes, Mr. Rosenfield's law partner at Schnader, responded to Mr. Mucci's letters to Mr. Rosenfield.  Mr. Kipnes' letter first stated that "Bruce Rosenfield is not a litigator" and then proceeded to state that some of the documents in Schnader's possession would not be produced because they might be privileged.  Mr. Kipnes' letter stated:

> The file contains in excess of 4,000 pages.   For the purposes of your request on Anna's behalf, Schnader represents only Anna.  As you noted in your December 17, 2013 letter, the firm has had a decades-long relationship with the Middleton family.   We have represented Herbert Middleton and his Estate, Fran Middleton, and John Middleton.   As a result, there may be documents in the firm's file on the 1994 Anna Trust that are privileged as to someone other than Anna.  As you know, the privilege belongs to the client. Since we do not currently represent any of them with regard to the 1994 Anna Trust, I concluded that it was not appropriate for Schnader to make decisions regarding privilege. I also concluded that, as a matter of professional courtesy, it was appropriate to afford their counsel the opportunity to review documents involving their clients before we produce them.   Therefore, we extracted from the firm's file all communications with Herb, Fran, or John, or their counsel, and will send them to current counsel at Cozen O'Connor.
>
> *      *      *
>
> I have enclosed a CD containing the 3,939 pages of documents we are producing now.  When we hear back from counsel at the Cozen firm, we will make a supplemental production. To the extent they assert a privilege, we will provide a log as you requested.

4

10.     With his February 12, 2014 letter, Mr. Kipnes produced a CD containing a portion of the requested files.  A copy of Mr. Kipnes' February 12, 2014 letter is attached as Exhibit 16 to this SOF.

11.     The CD produced with Mr. Kipnes' February 12, 2014 letter ("Schnader CD") contained an ad hoc collection of documents, including administrative documents such as check requests and requests for distributions to medical providers. The documents were not Anna's client file.   The documents produced did not respond to Mr. Mucci's request that the Schnader law firm and Mr. Rosenfield produce copies of all of Anna's client files and all files relating to Mr. Rosenfield's service as trustee for the trusts that benefited Anna.  Nothing in the Schnader CD disclosed the existence of the Original GRAT, or Schnader's and Mr. Rosenfield's role in creating it.  Exhibit 11, ¶6; Exhibit 16.

12.     Three weeks later, by letter dated March 6, 2014, Mr. Kipnes asked that Anna and Mr. Mucci agree to be bound by a Confidentiality Agreement for the documents already produced on the Schnader CD and asked that he destroy the Schnader CD.  Mr. Kipnes stated that he believed that some of the documents produced on the Schnader CD should have been redacted before production.  A copy of Mr. Kipnes' March 6, 2014 letter is attached as Exhibit 17 to this SOF.

13.     Mr. Kipnes subsequently sent Mr. Mucci a replacement CD ("Replacement CD"). No additional documents were included on the Replacement CD. Again, none of the documents contained on the Replacement CD disclosed the existence of the Original GRAT or Schnader's and Mr. Rosenfield's role in creating it. Exhibit 11, ¶6.

14.     On April 8, 2014, Mr. Mucci again wrote to Mr. Rosenfield to follow up on the documents he had previously requested that were not included with the documents produced on

the Replacement CD.  A copy of Mr. Mucci's April 8, 2014 letter is attached as Exhibit 18 to this SOF.

15.     Mr. Rosenfield responded by letter dated April 11, 2014. Mr. Rosenfield refused to produce some of the requested documents because he believed Mr. Mucci already had them, and refused to produce others because Schnader did not represent Frances "in the later years of her life" and believed another law firm should decide whether the requested documents should be produced.  Mr. Rosenfield refused to produce other documents because, he asserted, Anna was not a beneficiary of one of the trusts in question. A copy of Mr. Rosenfield's April 11, 2014 letter is attached as Exhibit 19 to this SOF.

16.     Mr. Mucci continued to request that Schnader and Mr. Rosenfield produce Anna's client files and all documents relating to any trusts in which Anna had an interest.  Schnader and Mr. Rosenfield continued to refuse to produce the requested documents.  See May 6, 2014 letter from Mr. Kipnes attached as Exhibit 20, and Mr. Mucci's June 23, 2014 letter to Mr. Kipnes, attached as Exhibit 21 to this SOF.

17.     Mr. Rosenfield and Schnader had represented Anna for decades and continued to represent her until Anna terminated the representation by letter dated September 11, 2014 and asked for a complete and unredacted copy of her files.  A copy of Anna's September 11, 2014 letter to Mr. Rosenfield is attached as Exhibit 22 to this SOF.

18.     By letter dated September 15, 2014, Mr. Kipnes stated that Schnader would not produce documents relating to the 1994 Anna Trust, based on Schnader's assertion that these documents were covered by the Schnader's attorney client privilege with Herbert Middleton, Anna's father.  In addition, Mr. Kipnes stated that Schnader would not produce documents relating

to the 2001 GRAT[2] for the period from 2001 to 2003, because, Mr. Kipnes asserted, Anna was not a current beneficiary or trustee during that time period. In addition, Schnader refused to produce documents for the 2001 GRAT for the period from 2003 to 2005. A copy of Mr. Kipnes September 15, 2014 letter is attached as Exhibit 23 to this SOF.

19.     As of September 14, 2014, the only documents produced by the Schnader law firm and Mr. Rosenfield were the documents contained on the Replacement CD produced in March 2014, and the few documents provided with Mr. Rosenfield's December 5, 2013 email.  Schnader had still not produced all of Anna's client files, as Mr. Mucci had repeatedly requested beginning in November 2013, and Schnader had not produced all documents relating to the trusts. None of the documents produced by Schnader or by Mr. Rosenfield disclosed the existence of the Original GRAT. Exhibit 11, ¶7.

20.     On April 7, 2015, John, individually and as former trustee of the Modified GRAT, filed a Petition for Declaratory and Other Relief ("John's Petition") in the Orphans' Court, seeking a judicial determination that Court approval was not required for the transactions involved in the 2003 MSA. Exhibit 24.

21.     Discovery is not permitted in Orphans' Court proceedings except by Order of the Orphans' Court. On June 23, 2015, counsel for Anna filed a Petition for Discovery to obtain additional information and documents necessary to respond to John's Petition.  A copy of the Petition for Discovery is attached as Exhibit 25 to this SOF.

---

[2] As noted throughout, prior to May 1, 2017, neither Schnader nor Mr. Rosenfield disclosed the existence of the Original GRAT.  Mr. Kipnes' refusal to produce documents for the period from 2001 to 2003 meant that Schnader was refusing to produce documents that might have uncovered what Schnader was concealing, but the depositions of Mr. Rosenfield, Mr. Kipnes and Roy Ross, the Schnader lawyer who drafted the Original GRAT, will be necessary to determine precisely what could have been learned had Schnader produced all documents relating to the 2001 GRAT when Plaintiff first requested them.

22.     On January 14, 2016, counsel for Anna in the Orphans' Court filed a Petition for Declaratory Relief and for an Accounting ("Petition") in connection with the Modified 2001 GRAT.[3] Among other relief, the Petition sought the production of records relating to the Modified 2001 GRAT that Schnader and Mr. Rosenfield had repeatedly refused to produce.  A copy of the Petition is attached as Exhibit 26 to this SOF.

23.     Schnader filed an Objection to the Petition on February 18, 2016 on behalf of Mr. Rosenfield ("Rosenfield Objection"), which was verified by Mr. Rosenfield.  The Rosenfield objection opposed the relief sought in the Petition and opposed the production of the documents sought in the Petition. A copy of the Rosenfield Objection is attached as Exhibit 27 to this SOF.

24.     The Rosenfield Objection also alleged, under oath, that the Modified GRAT was unambiguous and "the best evidence of its own content."   In addition, the Rosenfield Objection did not disclose the Original 2001 GRAT, but instead concealed it. Id.

25.     As of June 30, 2016, Schnader had still not produced Anna's client files and the Orphans' Court had not yet ruled on the Petition. Exhibit 11, ¶8.

26.     By Order dated July 18, 2016, the Orphans' Court granted Anna's Petition and ordered Schnader and Mr. Rosenfield to prepare and file with the Court an "Account of his [Mr. Rosenfield's] administration of the Trust of Frances S. Middleton [the GRAT], covering the period from the inception of his service as Trustee to the present, on or before October 5, 2016."  The Court further ordered Rosenfield to produce, within 60 days, all non-privileged trust administration documents for the trust for the period in which he served as Trustee, and to provide a privilege log for any documents not produced."  A copy of the July 18, 2016 Order is attached as Exhibit 28 to this SOF.

---

[3] As noted above, and throughout, the Original GRAT had not been revealed at this time.

27.     Other parties to the Orphans' Court proceedings objected to Plaintiff's June 23, 2015 Petition for Discovery and the Orphans' Court entered an Order on September 10, 2015, directing the parties to jointly prepare a proposed Discovery Order.  Additional objections and motions to compel were filed.  Exhibit 9, Affidavit of Courtney Johnson-Vidales.

28.     No documents were produced in response to Plaintiff's June 23, 2015 Petition for Discovery and related discovery requests until August 11, 2016, when John's counsel produced the first set of documents.  Exhibit 9, Affidavit of Courtney's Johnson-Vidales.

29.     Schnader and Mr. Rosenfield never produced the Original GRAT, or any documents relating to the Original GRAT. Exhibit 11, ¶9. No other party produced the Original GRAT, or any documents relating to the Original GRAT, until December 23, 2016. Id.

30.     Pursuant to the Orphans' Court July 18, 2016 Order, Schnader and Mr. Rosenfield filed a Petition to Approve Accounting on October 5, 2016 ("Rosenfield Accounting").  A copy of the Rosenfield Accounting is attached as Exhibit 29 to this SOF.

31.     The Rosenfield Accounting did not disclose the existence of the Original 2001 GRAT, but instead relied solely on the Modified GRAT.  Exhibit 29.

32.     The Rosenfield Accounting avoided any mention of the Original GRAT and in fact concealed the Original GRAT.  The Rosenfield Accounting states:

> By irrevocable Agreement dated February 1, 2001, (the "Trust Agreement"), Frances S. Middleton ("Grantor") established a grantor retained annuity trust with an initial two-year annuity term (the "GRAT"). The Trust Agreement, as confirmed by a certain Agreement entered into on February 20, 2003 (the "2003 Agreement") . . . provided that upon expiration of the initial two-year annuity term and the payment of the final annuity amount to Grantor, the GRAT terminated and the remaining balance was to be divided into three equal shares to be held in three separate trusts established for the benefit of each of Grantor's children, Mr. Middleton, Ms. Hughes and Ms. Nupson.

Exhibit 29, p. 3.

33.     The Rosenfield Accounting was verified by Mr. Rosenfield.   Exhibit 29, p. 11.

34.     The Rosenfield Accounting stated that the Trust Agreement had never been amended, even though this was untrue.  Exhibit 29, p. 3.

35.     In Orphans' Court proceedings relating to John's Petition, John's counsel filed an affidavit signed by Schnader partner Roy Ross dated December 23, 2016 ("Ross Affidavit"). A copy of the Ross Affidavit is attached as Exhibit 30.  The Ross Affidavit revealed for the first time that Schnader had drafted the Original GRAT, but it provided no additional details regarding the Original GRAT transactions.

36.     The Ross Affidavit attached an unsigned copy of the Original GRAT.  Exhibit 30. The unsigned copy of the Original GRAT did not reveal what assets, if any, were supposedly transferred into trust because there was no Schedule A.  Id.

37.     On February 23, 2017, John filed a signed copy of the Original 2001 GRAT in the Orphans' Court.  Exhibit 31.

38.      By Opinion and Order dated March 16, 2017, the Orphans' Court dismissed John's Petition *sua sponte*, finding that the Court had been misled by Schnader and Rosenfield when each failed to disclose the existence of the Original GRAT; the Court noted John's Petition had included only the Modified GRAT, which the Original GRAT had amended in its entirety. A copy of the Opinion and Order is attached as Exhibit 32.

39.     The Court also noted it had been misled as to the date on which the Modified GRAT had actually been signed by Frances (Exhibit 32, Opinion and Order, p. 4), and that the Original GRAT did not contain language that the sale of stock to John in connection with the 2003 MSA was authorized "without the need for court approval."  This language, which John's Petition had

argued was dispositive of the issues being litigated before the Orphans' Court, was found only in

the Modified GRAT.   Exhibit 32, p. 3-5.

40.     In dismissing John's Petition, the Court noted:

> [O]f significant concern, the petition for adjudication filed October
> 5, 2016, by Mr. Ross's law partner, Bruce A Rosenfield, Esquire,
> as trustee, states that there have been no amendments to the trust.
> Mr. Rosenfield executed a verification in which he verified the
> truth and correctness of the facts in the petition.  Mr. Rosenfield is
> presumed to be familiar with the disputed 2003 transactions
> including the purported amendment of the Irrevocable 2001 GRAT
> as he represented both Frances and Anna in transactions that
> resulted in the execution of the 2003 Master Settlement Agreement
> and the sale of the BHI stock from the 2001 GRAT trusts. Indeed,
> Mr. Rosenfield personally witnessed the signature of Frances and
> John to the Amended Trust Version signed in February 2003 but
> dated February 1, 2001.

Exhibit 32, Opinion and Order, p. 7 - 8.

41.     On May 1, 2017, Schnader and Mr. Rosenfield filed an Amended Accounting in

the Orphans' Court that disclosed the facts concerning the Original 2001 GRAT and the role Mr.

Rosenfield and Schnader played in the Original 2001 GRAT transactions. Exhibit 33.

42.     In the Amended Accounting, Mr. Rosenfield admitted that his statements in the

Rosenfield Accounting were untrue.  The Amended Accounting states:

> Bruce never intended to mislead anyone -- and especially not the
> Court.  However, upon consideration of the Court's March 16, 2017
> Opinion and Order, Bruce recognizes that it would have been more
> informative if Bruce had reported and described the modification or
> reformation of the Original Trust Agreement in the Original Petition
> for Adjudication of his account of the 2001 Trust for Anna and
> apologizes for not having done so.

Exhibit 33, Rider I, pp. 7-8.

43.     The Amended Accounting revealed that: Mr. Rosenfield had represented Frances

and John beginning in 1999 and continuing to late 2000 in planning for the creation of an inter

vivos trust to transfer Frances' BHI shares to John; that Mr. Rosenfield prepared and forwarded trust documents to accomplish this transfer to Frances and John for their review over the ensuing several months; that Frances signed the Original Trust Agreement [Original GRAT] on November 19, 2001; and that the Original GRAT was backdated to February 1, 2001.  Exhibit 33, Rider I, pp. 1-2.

44.     The Amended Accounting also revealed that sometime after March 2002, Lucia Hughes (John's and Anna's sister) learned about the Original GRAT and accused John of exerting undue influence over Frances and demanded that Frances change the Original GRAT to benefit Lucia and her family.  Exhibit 33, Rider I, p. 2.

45.     None of the documents produced by Schnader or by Mr. Rosenfield prior to the May 1, 2017 Amended Accounting disclosed the existence of the Original 2001 GRAT or Defendants' role in it. Exhibit 11, ¶9.

46.     Defendants contend that Exhibits B through G filed in support of Defendants' Motion to Dismiss establish that Plaintiff was aware of Defendants' legal malpractice in June 2014 or in June 2015. This is not true.

47.     The claims raised in the SAC are based on Defendants' concealment of the Original GRAT transactions and Defendants' directly adverse representation of Frances and John in the Original GRAT transaction, and their concealment of their representation of Frances and John in the 2001 GRAT I transaction.

48.     Defendants' arguments rest on the misleading assertion that Exhibits B through G establish that Plaintiff was aware of this prior, adverse representation in June 2014 or June 2015. A review of the complete record belies Defendants' assertions.

49.     Defendants' Exhibit B is a June 5, 2014 letter ("June 5 letter") Mr. Mucci wrote to Larry Laubach, counsel to John Middleton.  Defendants contend that the June 5 letter constitutes an admission that Plaintiff was aware of the claims asserted in the SAC four years before the initial Complaint in this action was filed.  This is incorrect.

50.     As is discussed in detail above, Defendants concealed the Original GRAT and their role in the Original GRAT transaction until May 1, 2017.

51.     In addition, Mr. Mucci's June 5 letter does not even mention the conduct which forms the basis for the SAC.  Nor could it have done so-- again, the SAC is based on Defendants' representation of Frances and John in the Original GRAT I transaction, and their concealment of the Original GRAT transaction, under which Frances transferred  258,029 shares of Bradford stock, worth between $52,895,945 and $1,000,000,000, to a trust for John's sole benefit, excluding Plaintiff and her sister Lucia, and in violation of controlling Middleton family agreements.  These facts were concealed by Defendants, and Plaintiff had no way of learning them until they were revealed by Defendant Rosenfield when he filed an Amended Accounting in the Orphans' Court on May 1, 2017.

52.     The June 5 letter had nothing to do with the hidden 2001 Original GRAT transactions which form the basis of the present litigation.  Instead, the June 5 letter focused on a 1998 assignment of principal distributions ("1998 Assignment") from the 1972 Herbert Sr. Trust, the 1982 John Middleton, Inc. Trust and the 1990 Herbert Jr. and Frances Trust (collectively the "Family Trusts).  These claims are wholly separate and apart from the claims asserted in the SAC. This is made clear by related, contemporaneous correspondence immediately preceding and following the June 5 letter.  A review of the relevant correspondence shows that Defendants have selected only one of many letters in an effort to support their position.

53.     When all of the correspondence is considered, three things become clear: 1) the dispute over the 1998 Assignment had nothing to do with the claims asserted in the SAC; instead, the focus was on the Family Trusts and Plaintiff's counsel's efforts to obtain information, both from Defendants (who were still serving as Plaintiff's lawyers) and from other parties; 2) Plaintiff was diligently attempting to obtain documents and information concerning her rights under the Family Trusts; and 3) Plaintiff's efforts were met with delay and unnecessary obstacles.

54.     The June 5 letter was preceded by Mr. Mucci's May 19, 2014 letter to Larry Laubach and Bruce Rosenfield.  See Exhibit 1.  The May 19 letter focused on the 1998 Assignment and, like the June 5 letter, does not mention the concealed 2001 GRAT I transactions.  Instead, the May 19 letter expressly stated that Ms. Nupson's "primary concern is a 1998 assignment of principal distributions from the 1972 Herbert Sr. Trust, the 1982 John Middleton, Inc. Trust, and the 1990 Herbert Jr. and Frances Trust."  Exhibit 1, p. 1.   The May 19 letter asked for Mr. Middleton's assistance in retrieving distributions from the Family Trusts.  Exhibit 1, p. 2.  These issues have nothing to do with the claims asserted in the SAC.

55.     Other communications followed, all of which make clear that the then existing dispute involved the 1998 Assignment and attempts to obtain additional documents and information about the Family Trusts so Ms. Nupson could better understand her rights. Exhibit 2 is a June 9, 2014 email Mr. Mucci wrote to Mr. Laubach discussing a proposal to file an accounting so that Anna could file an objection to the 1998 Assignment and requesting additional documents from her files.

56.     Exhibit 3 is a June 23, 2014 letter Mr. Mucci wrote to Wilbur Kipnes discussing the production of documents from Ms. Nupson's files.

57.     Exhibit 4 is a July 16, 2014 letter Mr. Mucci wrote to Messrs. Kipnes, Laubach and Arthur Solmssen discussing production of documents from Ms. Nupson's files.

58.     Exhibit 5 is an August 19, 2014 letter Mr. Mucci wrote to John Middleton, % Mr. Laubach requesting distribution of principal from the Family Trusts.

59.     Exhibit 6 is a September 15, 2014 letter from Mr. Kipnes to Mr. Mucci responding to the request for additional documents. In that letter, Mr. Kipnes states that Schnader would not produce documents related to the 2001 GRAT, his words carefully parsed to continue Schnader's concealment of the existence of the Original GRAT.  As Mr. Kipnes states, "[A]s Ms. Nupson was not a current beneficiary of the 2001 Trust during the period of 2001 to 2003, we do not believe she is entitled to review documents relating to the administration of the trust during that period."

60.     Exhibit 7 is a September 5, 2014 letter from Mr. Mucci to Mr. Middleton, % Mr. Laubach requesting distribution of principal from the Family Trusts.

61.     Exhibit 8 is an October 3, 2014 letter Mr. Mucci wrote to Mr. Middleton % Mr. Laubach again requesting distribution.

62.     All of these communications dealt with the 1998 Assignment, distributions of principal from the Family Trusts, and Mr. Mucci's attempts to obtain Anna's client files from Defendants.  None of these communications has anything to do with the claims asserted in the SAC. Exhibits 5, 6, 7 and 8; SAC.  Understood in context, then, it is clear that the June 5 letter does not relate in any way to the claims asserted in the SAC.

63.     Indeed, exhibit 2 makes crystal clear that the "litigation" mentioned Mr. Mucci's June 5, 2014 letter related solely to the 1998 Assignment and the related Family Trusts, and had nothing to do with legal malpractice claims against the Schnader law firm or Mr. Rosenfield.

Exhibit 2 also makes clear that any talk of litigation quickly dissipated. Exhibit 2 is an email from

Mr. Mucci to Mr. Laubach and was written following a telephone call between them.  It states:

> Thank you for your phone call today.  As we discussed, I will not be
> filing anything with the Pennsylvania courts this week.  I have spoke[n]
> with my client regarding your proposal for the filing of an accounting
> to provide an opportunity for my client to object to the invalid 1998
> Assignment.  As we discussed, my client will not approve the filing of
> any accounting at this time.
>
>         *       *       *
>
> I enjoyed the collegial nature of our conversation.  I look forward to
> maintaining such a cordial relationship and resolving the roadblocks
> outlined above.

64.     Thus, far from establishing that Plaintiff was ready in 2014 to file the claims

asserted in the SAC against Defendants, the facts show that Anna's counsel was attempting to

resolve other issues that had nothing to do with the claims asserted in the SAC.

65.     Defendants' Exhibits C, D, E, F and G are excerpts from a few of the pleadings

filed in the Orphans' Court proceedings. Defendants assert that these excerpts establish that

Plaintiff was aware of Defendants' conflicts of interest, legal malpractice, and breach of fiduciary

duty when the pleadings were filed in the Orphans' Court in June 2015.

66.     This is not true.  In June 2015, the Orphans' Court proceedings were in an early

stage and discovery efforts had just commenced.  This is made clear by Exhibit F, Ms. Nupson's

June 23, 2015 Petition for     Discovery.  In the Petition for Discovery, Ms. Nupson requested

permission from the Orphans' Court to conduct needed discovery on several "disputed facts":

> 18.  **The disputed facts and areas in which discovery is needed** involve
> the following matters:
>
>         *       *       *
>
> (f) **whether** Bruce A. Rosenfield, Esq. had conflicts of interest  while
> purporting to represent Anna Nupson in the above transactions that
> prevented him from reasonably concluding that [sic.] could zealously
> represent Ms. Nupson, or worse, whether Mr. Rosenfield remained the
> agent of John S. Middleton in structuring this transaction to accomplish

Mr. Middleton's goal of consolidating his ownership and control of all of the Bradford stock to prepare for the sale of the family's cigar manufacturing business.

Defendants' Exhibit F at 4 (emphasis added).

67.     The Petition for Discovery shows that counsel for Ms. Nupson were seeking discovery to determine whether Defendants had conflicts of interest.  The facts that could be learned from this discovery would inform counsel's decision as to whether Defendants had committed legal malpractice as a result of any conflicts of interest. The Petition for Discovery does not establish that counsel for Ms. Nupson knew that Defendants had conflicts or that they had committed malpractice in June 2015. Exhibit 10, Affidavit of Jeffrey L. Baker, p.2.

68.     The remaining excerpts from the Orphans' Court proceedings must also be read in context.  All were filed at or around the same time as the Petition for Discovery.  See Exhibit C (Counterclaim and Petition for Declaratory and Other Relief, filed June 23, 2015), Exhibit D (Answer and New Matter Petition for Declaratory Relief and Other Relief of John S. Middleton and Bradford Holdings. Inc., filed June 23, 2015), Exhibit E (Anna K. Nupson's Response to John Middleton's Motion to Strike, filed May 20, 2015) and Exhibit G (Anna K. Nupson's Answer to John S. Middleton's Motion for Sanctions, filed June 29, 2015).  In each case, counsel was stating what he believed may have been the case but were at the same time seeking discovery to determine whether that belief was supported by sufficient facts to act. This is what the legal process and professionalism require. Exhibit 10, Affidavit of Jeffrey L. Baker, p.3.

69.     Exhibit C, a pleading in one of the Orphans' Court proceedings, alleges "[o]n **information and belief**, Bruce A. Rosenfield, Esq. continued to represent John S. Middleton as trustee of the 2001 GRAT and other Middleton Trusts throughout these negotiations" and "[o]n **information and belief,** Bruce A. Rosenfield, Esq. did not make any disclosures and consultations

17

to any of the beneficiaries relating to limitations on his representation due to his prior representations or personal interests pursuant to Rule 1.7(b)." Defendants' Exhibit C at p. 3, para. 42 and p. 4, para. 45 (emphasis added).

70.     Exhibit D is another Orphans' Court pleading, also filed on June 23, 2015, answering the allegations made in John S. Middleton's Petition for Declaratory Relief, which sought a declaratory judgment that some of his prior actions as Trustee did not require court approval.  In this pleading, Ms. Nupson denied John's allegation that "Bruce A. Rosenfield was her independent counsel and/or that she was properly advised or represented by Mr. Rosenfield. Defendants' Exhibit D at p. 4, para. 64.

71.     Defendants' Exhibit E is no different.  It was also filed at or around the same time as the other Orphans' Court pleadings, early in the proceedings, with discovery still incomplete and ongoing, and before the facts were revealed that form the basis for Plaintiff's claims.

72.     Exhibit G underscores that counsel for Ms. Nupson needed, and was seeking, additional discovery to understand the facts necessary to represent their client:

> **Incomplete Discovery**
> It must be noted that discovery is incomplete. While informal discovery has been produced (some of which was inappropriately redacted), additional discovery is needed . . .. Discovery is also needed to more deeply understand the role of Attorney Bruce A. Rosenfield in the 2003 Master Settlement Agreement and his relationship before during and after the sale.

Defendants' Exhibit G, p. 2.

73.     In the excepted pleadings offered by Defendants, counsel for Ms. Nupson were asserting what they believed the evidence might be, but they were simultaneously pursuing discovery to learn whether there were sufficient facts on which to proceed.  It is important to note that none of the excerpted pleadings stated claims against Defendants, who were not parties to the Orphans' Court proceedings.  Instead, the pleadings, from which Defendants' exhibits were

excerpted, were initial pleadings, filed in response to pleadings filed by John Middleton in proceedings between Mr. Middleton and Ms. Nupson.

74.     Exhibits C-G show that in June 2015, Plaintiff knew only that Defendants had represented various members of the Middleton family and the family businesses over the course of several years.  No specific representations are identified in Exhibits C-G and specific conflicts of interest are identified in Exhibits C-G. Exhibit 10, Affidavit of Jeffrey L. Baker.  Knowledge that a lawyer had represented individual members of a family in various matters by itself is not sufficient by itself to conclude that the lawyer had violated the Rules of Professional Conduct, had conflicts of interest, or had committed legal malpractice.  Id.  A variety of factors would have to be examined to determine whether there had been a violation of the Rules of Professional Conduct or a basis to conclude that a lawyer had committed legal malpractice. And there would need to be facts to support any claims before they could be asserted in a legal action against a lawyer or a law firm.  Id. Some of the facts would include: whether the representations were concurrent or remote in time; whether the client(s)' interests were aligned or adverse; whether the client(s) were informed about the possible conflicts of interest inherent in the representation(s); and whether the clients agreed to waive the conflicts identified.  Exhibit 10, Affidavit of Jeffrey L. Baker, pp. 5-6.

75.     A reasonable lawyer would not believe that the matters stated in Defendants' Exhibits C-G represented sufficient facts to bring an action for legal malpractice or breach of fiduciary duty against Schnader or Mr. Rosenfield.  Exhibit 10, Affidavit of Jeffrey L. Baker, p.6.  Instead, a reasonable lawyer would conduct further investigation and discovery to determine whether there were sufficient facts.  Id.

76.     Nothing in the Exhibits B through G even suggests that Plaintiff or her counsel were aware of Defendants' adverse representation of Frances and John in the concealed 2001

GRAT I transactions, which forms the basis for the claims raised in the SAC.  As is described above, these facts were concealed by Defendants until May 2017.

77.    Mr. Rosenfield and Schnader represented Anna Nupson ("Anna") for decades prior to 2014 and continued to represent her until Anna terminated the representation on September 11, 2014.  Exhibit 22, Letter from Anna K. Nupson to Bruce Rosenfield dated September 11, 2014.

78.    In 2001, Anna was a current Schnader client and she was represented by Mr. Rosenfield. Exhibit 34, Bruce Rosenfield, MEMORANDUM to FILE RE ANNA MIDDLETON, dated December 20, 2001.

79.    Exhibit 34 contains two documents.  The first is a Memorandum to File written by Mr. Rosenfield on December 20, 2001, following a meeting with Anna.  In his Memorandum, Mr. Rosenfield states:

> I told her I thought she had been doing very poorly recently. She acknowledged that and told me that she had begun going back to see her psychiatrist.  She is seeing Dr. Cox again. I asked whether that was the best she could be doing, since I thought Dr. Cox had not been that effective with her in the past.
>
> *      *      *
>
> I told her that we would soon be receiving significant distributions from the company.  I was offering her the following deal.  Assuming she continues to see an appropriate psychiatrist and take the appropriate medication, at the end of each quarter over the next year I would get her a check from her trust for $250,000.  The check would be hers exclusively. I would be happy to try to help her in dealing with investment advisors but that would be her decision.  The determinator of what was appropriate both in terms of who the doctor was, the number of visits and medication would be me.

The second document in Exhibit 34 is a handwritten letter from Anna to Mr. Rosenfield dated August 22, 2001 and stamped by Mr. Rosenfield on September 4, 2001 acknowledging its receipt.

80.     While Schnader and Mr. Rosenfield still represented Anna, Mr. Rosenfield represented Anna's mother, Frances Middleton, and Anna's brother, John Middleton, in planning for the creation of an inter vivos trust to transfer Frances' shares in Bradford Holdings, Inc. ("BHI") to John.  Exhibit 33, Amended Petition for Adjudication, dated May 1, 2017 ("Amended Petition"), Rider I.

81.     According to documents prepared by Schnader, at that time, Frances held 258,029 shares of BHI stock.  According to documents prepared by Schnader, 127,854.5 BHI shares were held by Frances as a joint tenant with her late husband Herbert and passed to her upon Herbert's death, and 130,174.5 BHI shares were received by Frances through Herbert's estate.  Exhibit 31, Original GRAT, Schedule A.

82.     Mr. Rosenfield prepared trust documents to accomplish the transfer of Frances' BHI stock to John and forwarded them to Frances and John for their review over the next several months.  Exhibit 33, Amended Petition, Rider I.

83.     Roy Ross, another Schnader partner, assisted in the drafting of the trust documents (the "Original GRAT") to accomplish the transfer.  Exhibit 30, Affidavit of Roy Ross ("Ross Affidavit"), dated December 23, 2016.

84.     Frances signed the Original GRAT on November 19, 2001, but it was backdated to February 1, 2001.  Exhibit 33, Amended Petition, Rider I, pp. 1-2.

85.     Mr. Rosenfield witnessed Frances' and John's signatures on the backdated Original GRAT. Exhibit 31, Original GRAT.

86.     The Original GRAT provided for a two-year annuity to be paid to Frances, with the

remaining assets distributed to a trust for the benefit of John and his family. Exhibit 31, Original GRAT.

87.    Herbert's estate plan provided for his assets to be divided equally among his children- John, Lucia and Anna- after Frances' death.  Exhibit 35, Herbert's Will; Exhibit 36, Summary of Provisions. Exhibit 11, ¶10.

88.    In 1993, Herbert transferred assets, including his BHI stock, to himself and Frances as tenants by the entireties.  In connection with that transfer, Herbert and Frances executed an agreement that restricted Frances' power to transfer the BHI stock after Herbert's death. Exhibit 37, Agreement dated December 15, 1993 ("TBE Agreement").

89.    Mr. Rosenfield was well aware of the terms of the TBE Agreement, Herbert's Will and Herbert's estate plan. Schnader drafted the TBE Agreement and Mr. Rosenfield witnessed Herbert's Will.

90.    The Original GRAT violated Herbert's estate plan, Herbert's Will and the TBE Agreement. The Original GRAT purported to transfer the BHI shares to John alone, and excluded Herbert's and Frances' daughters, Lucia and Anna.

91.    According to Mr. Rosenfield, after March 2002, Lucia learned about the Original GRAT, accused John of exerting undue influence over Frances, and demanded that Frances change the Original GRAT to benefit Lucia and her family.  Exhibit 33, Amended Petition, Rider I, p. 2.

92.    As a result of Lucia's opposition to the Original GRAT, Frances instructed Mr. Rosenfield to change the Original GRAT to direct that the BHI stock be distributed to John, Lucia and Anna in equal shares upon the termination of the Original GRAT term on February 1, 2003.

Exhibit 38, Letter from Frances Middleton to Bruce Rosenfield dated October 10, 2002 letter. Frances also directed that Mr. Rosenfield overnight a copy of the revised GRAT to Lucia so that it would be in Lucia's possession before October 15, 2002. Id.

93.     By letter dated October 11, 2002, Mr. Rosenfield proposed to Frances and Anna that he should jointly represent them in "connection with the contemplated family settlement agreement concerning various disputes within the family." Exhibit 39, letter from Bruce Rosenfield to John Middleton, Frances Middleton and Anna Nupson dated October 11, 2002 letter.

94.     Mr. Rosenfield's October 11, 2002 letter stated: "you are each aware that in the past we have represented each of you individually in estate planning matters and various trusts of which you are trustees and beneficiaries-- although in this matter John is being represented by Larry Laubach of Cozen O'Connor." Exhibit 39.

95.     Mr. Rosenfield's October 11, 2002 letter stated: "We believe that Rule 1.7 [of the Rules of Professional Conduct] does not preclude us from representing either and both of Fran and Anna in this matter and that the criteria of Rule 1.7(a) are satisfied, provided that we obtain the consent of each of you." Exhibit 39.

96.     Mr. Rosenfield's October 11, 2002 letter did not disclose his representation of Frances and John in connection with the Original GRAT and his letter did not disclose that the Original GRAT transferred Frances' BHI stock to John alone, in violation of Herbert's estate plan, Herbert's Will and the TBE Agreement. Exhibit 39.

97.     Mr. Rosenfield jointly represented Anna and France in connection with the 2003 MSA, under which John acquired all of the shares of BHI. Exhibit 39.

98.    Mr. Rosenfield advised Anna to enter into the 2003 MSA and she did so based on his advice. Defendants' Exhibit X, p. 10, ¶ 41.

99.    Exhibit 40 is a letter from Mr. Rosenfield to Frances dated February 5, 2003. Mr. Rosenfield's letter states that it "summarizes the settlement agreement among you, John, Lucia and Anna and their respective trusts and children who are stockholders of Bradford."  The letter purports to review the terms of the 2003 MSA and concludes: "These documents are extremely long and complicated and there are other provisions that may be relevant.  However, this provides a brief summary of those documents."  Exhibit 40, p. 3.  Mr. Rosenfield's February 5, 2003 letter does not mention the Original GRAT or provide any information that would reveal that there was an Original GRAT. Id.

100.    Anna was not sent a copy of Mr. Rosenfield's February 5, 2003 letter, even though Mr. Rosenfield jointly represented Frances and Anna in connection with the 2003 MSA.  Exhibits 39, 40.  Mr. Rosenfield did not send any correspondence to Anna summarizing or explaining the terms of the 2003 MSA.  Exhibit 11, ¶11.

101.    Had Mr. Rosenfield followed Frances' October 10, 2002 instructions, Anna would have received one third of the BHI stock held by Frances.  At that time, Frances held 36.3% of the BHI stock.  Exhibit 11, ¶ 12; Exhibit 41.

Dated:  July 19, 2019                          Respectfully submitted,

                                               **DURHAM, PITTARD & SPALDING, L.L.P.**

                                               /s/Justin R. Kaufman
                                               Justin R. Kaufman
                                               505 Cerrillos Road, Suite A209
                                               Santa Fe, NM  87501

Telephone:  (505) 986-0600
jkaufman@dpslawgroup.com

Brian A. Gordon
**GORDON & ASHWORTH, P.C.**
One Belmont Ave., Suite 519
Bala Cynwyd, PA  19004
Telephone:  (610) 667-4500
Briangordon249@gmail.com

Kimberly Brusuelas
**5TH STREET LAW**
312 San Pasquale, NW
Albuquerque, NM  87104
Telephone:  (505) 247-9333
kim@fifthstreetlaw.com

***Attorneys for Plaintiff***