Court of Common Pleas of Montgomery County Orphans' Court Division

# COVER SHEET

| 1A. Does this matter already have an Orphans' Court number or Register of Wills number? **Yes** | 1B. Orphans' Court Number/Register of Wills Number<br>**2015-X1266** |
|---|---|

| 2. Name of Estate/Entity (e.g.: Name of Decedent or Decedent's Estate) |
|---|
| **FRANCES S MIDDLETON** |

| 3. Type of Estate/Entity |
|---|
| **SETTLOR'S ESTATE (TRUST AGREEMENT OR DEED)** |

| 4. Name of Filing Party (not Attorney for Filing Party) |
|---|
| **JOHN P MIDDLETON** |

| 5. Filing Party's Relationship to Estate/Entity |
|---|
| |

| 6A. Name of Attorney for Filing Party<br>**James Mannion** | 6B. Address of Attorney (or Filing Party, if not represented)<br>**840 First Avenue, Suite 100**<br>**King of Prussia, PA 19406** |
|---|---|
| 7A. Phone Number<br>**610-265-7800** | 7B. Fax Number<br>**(610) 265-1204** |
| 8A. Supreme Court ID Number of Attorney<br>**58951** | 8B. E-Mail Address<br>**jmannion@mannionprior.com** |

| 9. To the Clerk of the Orphans' Court: |
|---|
| **Kindly enter my appearance on behalf of the filing party identified above.** |

| 10. Signature of Attorney (or if unrepresented, signature of Filing Party)<br>**By eFiling a legal paper, I will be considered to have signed this cover sheet and, if I am an attorney, to have entered my appearance for the party on whose behalf I am eFiling this legal paper.** | 10A. Date<br>**4/7/2015** |
|---|---|

| 11. If this filing responds to a prior filing, please provide the title, date and docket number of the filing to which this responds: **Prior Filing(s):** |
|---|
| |

| 12. Other Parties:<br>**PLEASE ATTACH A SEPARATE SHEET LISTING THE NAME, ADDRESS AND TELEPHONE NUMBER FOR EACH UNREPRESENTED PARTY, AND THE NAME OF EACH REPRESENTED PARTY, TOGETHER WITH THE NAME, ADDRESS AND TELEPHONE NUMBER OF THAT PARTY'S ATTORNEY OF RECORD.** |
|---|

| 13. Pleading or Document filed (Please select from list of pleadings at http://rwoc.montcopa.org/forms or available from the Clerk of the Orphans' Court):<br><br>**Petition with a Citation Requested** |
|---|

| 14. PLEASE SELECT ONE (AND ONLY ONE) OF THE SPECIFIED TYPES OF FILINGS:<br><br>**Citation Requested** |
|---|

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

**EXHIBIT 24 - Page 1**

**COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA**

**ORPHANS' COURT DIVISION**

**No. 2015-X_____**

**TRUST OF FRANCES S. MIDDLETON, SETTLOR,**
**UNDER AGREEMENT OF TRUST DATED FEBRUARY 1, 2001**

**PRELIMINARY DECREE**

  **AND NOW**, this    day of April, 2015, upon consideration of the annexed Petition

for Declaratory and Other Relief, it is hereby **ORDERED** and **DECREED** that a citation is

issued, directed to the parties in interest set forth in Exhibit I to the Petition, to show cause, if any

there may be, why the relief requested in the Petition should not be granted.

  A copy of the Petition shall be served with the citation and may be served by certified

mail, return receipt requested.

  Citation returnable the    day of    , 2015, at    a.m. in Court

Room 15, One Montgomery Plaza, 4th Floor, Norristown, Pennsylvania.

          BY THE COURT:

          _____

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

**EXHIBIT 24 – Page 2**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

**COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA**

**ORPHANS' COURT DIVISION**

**No. 2015-X_____**

**TRUST OF FRANCES S. MIDDLETON, SETTLOR,
UNDER AGREEMENT OF TRUST DATED FEBRUARY 1, 2001**

**FINAL DECREE**

    **AND NOW**, this     day of       , 2015, upon consideration of the Petition for Declaratory and Other Relief and any answer(s) thereto, and pursuant to Sections 7533 and 7535 of the Declaratory Judgments Act, 42 Pa. C.S.A. §§ 7533, 7535, it is hereby **ORDERED** and **DECREED** that the redemption of shares of Bradford Holdings, Inc. from the above-captioned Trust pursuant to the February 20, 2003 Master Settlement Agreement and the February 28, 2003 Stock Purchase Agreement, attached to the Petition as Exhibits E and H, did not require express approval of this Court pursuant to 20 Pa. C.S.A. §§ 3356, 7133 (repealed, now § 7792), or otherwise.

                                   BY THE COURT:

                                   _____

**EXHIBIT 24 - Page 3**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

**COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA**

**ORPHANS' COURT DIVISION**

**No. 2015-X_____**

**TRUST OF FRANCES S. MIDDLETON, SETTLOR,**
**UNDER AGREEMENT OF TRUST DATED FEBRUARY 1, 2001**

**<u>PETITION FOR DECLARATORY AND OTHER RELIEF</u>**

**TO THE HONORABLE, THE JUDGES OF SAID DIVISION:**

The Petition of John S. Middleton, individually and as former Trustee of the Trust of

Frances S. Middleton, Settlor, under Agreement of Trust dated February 1, 2001, and Bradford

Holdings, Inc., by and through respective undersigned counsel, represents as follows:

**<u>Introduction</u>**

1.      This Petition requests the Court to enter a declaratory judgment that the 2003

Redemption of Bradford Holdings, Inc. stock from the above-captioned Trust, pursuant to the

express authorization of the governing document, and by written agreement of all parties in

interest, as memorialized in a comprehensive family settlement agreement following extensive

negotiations and while represented by counsel, did not require the express approval by this Court

under Section 3356 and former Section 7133, or Section 7772, of the Probate, Estates and

Fiduciaries Code.  Even if express approval was required, all parties in interest released any and

all claims against the former Trustee.  In the alternative, this Petition requests the Court to

approve, *nunc pro tunc*, the 2003 Redemption.

**EXHIBIT 24 - Page 4**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

**Bradford Holdings, Inc.**

2.      In 1856, John Middleton, the great-great-grandfather of Petitioner John S. Middleton, founded what became "John Middleton, Inc." and operated retail tobacco stores in Philadelphia.

3.      In later years, John Middleton, Inc. purchased tobacco and created its own blends. By the 1950's, the company began manufacturing some of its own tobacco products.

4.      In 1958, John Middleton, Inc. ended its retail business and focused on manufacturing and selling its own tobacco products, and in the 1960's launched its own cigar made of pipe tobacco.  John Middleton, Inc.'s pipe tobacco brands and pipe tobacco cigars became well known across the United States.

5.      Through corporate restructuring in 1987, John Middleton, Inc. and several other business interests became wholly owned subsidiaries of "G.W. Hunter, Inc.," a holding company ("G.W. Hunter").

6.      Through another corporate restructuring in early 1997, G.W. Hunter was liquidated and Bradford Holdings, Inc. ("Bradford") became the holding company for numerous wholly-owned subsidiaries including, among others, John Middleton, Inc., the McIntosh Inn chain of hotels, and an interest in the Philadelphia Phillies.

**The Middleton Family**

7.      John Middleton, founder of the tobacco company, had two sons, John Middleton, Jr. and Frank Herbert Middleton.

8.      Frank Herbert Middleton had one child, Herbert H. Middleton, Sr.

9.      Herbert H. Middleton, Sr. had two children, Herbert H. Middleton, Jr. ("Herbert, Jr.") and Anne Middleton Flood.

2

**EXHIBIT 24 - Page 5**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

10.     Herbert, Jr. married Frances S. Middleton, née Staubus ("Frances"), and had three children, Lucia Middleton Hughes ("Lucia"), your Petitioner John S. Middleton ("John"), and Anna K. Middleton, later Anna M. Bauer and now Anna K. Nupson ("Anna").

11.     Lucia is married and has three adult children, J. Alexander Hughes, Thomas M. Hughes, and John C. Hughes, and two minor grandchildren; John is married and has two adult children, John P. Middleton and Frances B. Middleton; Anna is not presently married and has no issue.  *See* Family Tree attached as Ex. A.

### Transfers of John Middleton, Inc./G.W. Hunter/Bradford

12.     Over the course of almost forty years, shares of the business were transferred to each of Lucia, John and Anna, and Lucia's and John's children.

13.     On November 18, 1982, Herbert Jr. created a trust with John as Trustee (the "1982 Trust").[1]  Herbert, Jr. transferred shares of the business to the 1982 Trust, which by its terms provided that such shares, or the shares of any affiliate or successor company, would vest in John under conditions not necessary to recite here.

14.     Herbert, Sr. died April 21, 1992.  By that time, Herbert, Jr. and his family line, and trusts for their benefit, owned 83.3% of the family business interests, and the children of Anne Middleton Flood owned 16.7%.

15.     On January 18, 1994, Herbert, Jr. and Frances created a generation-skipping trust for the benefit of their grandchildren and more remote descendants (the "1994 GST Trust"), and transferred shares of the business to that trust.  John was named Trustee of the 1994 GST Trust.

---

[1]  This is a different trust than the May 19, 1982 Trust created by John Middleton, Inc., docketed at 2014-X3827.

**EXHIBIT 24 - Page 6**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

16.     On September 12, 1994, Anna created a trust (the "Anna 1994 Trust") for her lifetime benefit.  At the time of funding and thereafter, Anna transferred shares of the business to the Anna 1994 Trust.  Anna named herself, Frances and John as Trustees of the Anna 1994 Trust.  *See* Ex. B.

17.     On July 26, 1996, John created a generation-skipping trust for the benefit of his children and more remote descendants (the "1996 Trust"), and transferred certain of his shares of the business to that trust.

18.     As noted above, by early 1997, Bradford was the holding company for all subsidiaries, including John Middleton, Inc.

19.     Following Herbert, Jr.'s death on May 11, 1998, Frances owned certain Bradford shares.

20.     In the 1990's, more than 1,500 tobacco lawsuits were filed across the country against companies in the tobacco industry, of which 1,225 were still pending at the end of 1999. Many of these lawsuits were class actions involving millions of plaintiffs; many hundreds of billions of dollars were sought in damages in these suits.

21.     In 1994, states began suing tobacco companies seeking to recover medical costs expended to treat smoking-related illness, and that year John Middleton, Inc. was sued by the Attorney General of the State of West Virginia.  By the end of 2002, John Middleton, Inc. was a named defendant in dozens of tobacco lawsuits, including a second class action lawsuit filed in West Virginia in 1998.

**The Cousins' 2001 Redemption and Frances' 2001 GRAT**

22.     In 2000, an appraisal of Bradford was being prepared by Howard, Lawson & Co. for general corporate purposes and in connection with possible estate planning by Frances.  The

EXHIBIT 24 - Page 7

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

Howard, Lawson & Co. appraisal valued the shares as of April 19, 2000 at $215 per voting share and $205 per non-voting share.

23.     In 2000 and 2001, John had discussions with his cousins, the children of Anne Middleton Flood, about whether they wished to have Bradford redeem their shares.

24.     All parties in interest were aware of John's discussions with the cousins regarding Bradford.

25.     Effective as of February 1, 2001, Bradford redeemed the minority interest owned by the two children of Anne Middleton Flood at $215 per voting share and $205 per non-voting share.

26.     All parties in interest were aware of the 2001 redemption of the cousins' shares by Bradford and the price per share.

27.     Frances created a February 1, 2001 Grantor Retained Annuity Trust (the "2001 GRAT"), which established a two-year GRAT interest to Frances, and thereafter divided into separate trusts for the benefit of each of Lucia, John and Anna and their respective descendants, with cross remainder interests in default of issue.  Frances funded the 2001 GRAT with her Bradford shares.  *See* Ex. C.

28.     Following the funding of the 2001 GRAT and the 2001 redemption of the cousins' shares, the interests in Bradford were owned solely by descendants of Herbert, Jr. and Frances and various trusts for the benefit of one or more of such descendants as follows:

**EXHIBIT 24 - Page 8**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

| Shareholders | Voting | | Non-Voting | |
|---|---|---|---|---|
| | # of Shares | % of Shares | # of Shares | % of Shares |
| John S. Middleton | 716 | 85.4% | 37,705 | 6.3% |
| John P. Middleton | | | 4,286 | 0.7% |
| Frances B. Middleton | | | 4,286 | 0.7% |
| 1982 Trust (shares fbo John) | | | 75,073 | 12.6% |
| 1996 Trust fbo John's children | | | 29,774 | 5.0% |
| Lucia Middleton Hughes | 84 | 10.0% | 67,563 | 11.4% |
| J. Alexander Hughes | | | 3,645 | 0.6% |
| Thomas M. Hughes | | | 3,645 | 0.6% |
| John C. Hughes | | | 3,645 | 0.6% |
| 1994 GST Trust for grandchildren | | | 35,445 | 6.0% |
| Anna 1994 Trust | 38 | 4.5% | 70,963 | 11.9% |
| 2001 GRAT | | | 258,029 | 43.4% |
| Totals | 838 | 100.0% | 594,059 | 100.0% |

29.     An appraisal by Fleet M & A Advisors in September 2002, prepared for Frances' 2001 gift tax return, concluded that the fair market value of the Bradford shares as of February 1, 2001 was $215 per voting share and $205 per non-voting share.

30.     Anna and Lucia each received a copy of the September 2002 Fleet M & A Advisors appraisal.

31.     At this time, John was President and the sole Board member of Bradford, the holding company.

32.     All parties in interest were aware that John was President of Bradford.

33.     All parties in interest were aware that John was the sole Board member of Bradford.

34.     Although Lucia never worked in the company, Anna had been employed in the sales and marketing departments of John Middleton, Inc. for over 9 years, until 1995.

35.     By the fall of 2002, Lucia raised certain Bradford-related concerns, including John's compensation.  Lucia and John, through counsel, discussed these matters and various

**EXHIBIT 24 - Page 9**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

resolutions were proposed, including possibly amending the shareholders' agreement, redeeming Lucia's voting stock and placing certain of the non-voting stock into new limited liability companies with John as manager.  No agreement was reached on these issues.

36.     At this time, Lucia and her family were represented by Womble, Carlyle, Sandridge & Rice, LLP, a law firm in North Carolina where she lived, which also represented R.J. Reynolds Tobacco Co. in defending tobacco lawsuits.  Anna and Frances were represented by Schnader Harrison Segal & Lewis, LLP ("Schnader").

37.     Because Schnader had represented the family businesses and three generations of the Middleton family since at least the early 1970's, Anna, Frances and John each signed a conflicts waiver letter dated October 11, 2002, authorizing Schnader to represent Anna and Frances.  *See* Ex. D.  John and Bradford were represented by Cozen O'Connor for purposes of these discussions.

38.     At a meeting on December 19, 2002 attended by Lucia, John, Anna and Frances, and their respective counsel, Lucia made a written proposal for a buyout that included (a) that her and her family's Bradford shares, in trust and owned outright, be redeemed at the price of $215 per voting share and $205 per non-voting share on specified dates/events expected to occur over approximately the next four years, and (b) that she receive a $10 million priority inheritance from Frances' estate upon her death.  John's immediate response included his statement that he needed to understand Anna's position.

39.     Anna was initially inclined to have the trusts for her benefit hold the shares of Bradford.  By December 24, 2002, Anna changed her mind and expressed a desire to explore a buyout and, through her counsel, advised of specific terms she desired.

**EXHIBIT 24 - Page 10**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

40.     John insisted that Anna and Lucia be treated equally and fairly with respect to both a buyout of their share in Bradford and in their mother's estate.  Among other things, John was concerned that Frances did not have sufficient assets to provide Lucia and Anna each with a $10 million priority inheritance, and that the present value of such a priority was uncertain.

41.     As such, in mid-January 2003, Bradford and John, through counsel, made a written proposal to Anna's and Lucia's counsel that included (a) Bradford's redeeming all shares owned by or for their (and their families') benefit at a price of $288.41 per voting share, and $275 per non-voting share, payable within one year, and (b) Anna's sharing equally in Frances' estate.

42.     The parties had extensive, and sometimes contentious, negotiations regarding the terms of the redemption of the Bradford shares in January and February 2003.

43.     Either Anna and/or Lucia could have terminated the discussions at any time.

44.     These discussions resulted in a comprehensive, master family settlement agreement dated February 20, 2003 (the "2003 Master Settlement Agreement"), signed by all parties in interest in all applicable capacities following consultation with their respective counsel. *See* Ex. E.

45.     The 2003 Master Settlement Agreement provides, among other things, for the redemption of Bradford shares from Lucia and her family, the Anna 1994 Trust and the 2001 GRAT at the price of $288.41 per voting share, and $275 per non-voting share, payable with a cash down payment and the balance by a one year note.  *See* Ex. E at ¶ 4.

46.     As discussed below, the 2003 Master Settlement Agreement provides for a series of undertakings prior to the February 28, 2003 redemption of the Bradford shares (the "2003 Redemption"), primarily in the form of divisions of trusts and changes in trustees.

**EXHIBIT 24 - Page 11**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

47. The 2003 Master Settlement Agreement also addresses certain other issues including Frances' estate plan and the disposition of her assets upon her death, which was then a subject of contention.

48. Further, the 2003 Master Settlement Agreement includes a general release, which specifically includes any claims of self-dealing or breach of fiduciary duty, *see* Ex. E at ¶ 18, as well as a broad indemnification provision. *See* Ex. E at ¶ 19.

49. The 2003 Master Settlement Agreement has as exhibits, among other things, each of the stock purchase agreements to be signed the separate shareholders being redeemed. As discussed in more detail below, in the case of the 2001 GRAT, the exhibits also included a separate 2001 GRAT Release and Indemnification Agreement.[2]

50. Each of the exhibits to the 2003 Master Settlement Agreement was incorporated into and made a part of the 2003 Master Settlement Agreement. *See* Ex. E at ¶ 35.

### Divisions of Trusts and Changes in Trustees between
### February 20, 2003 and Redemption on February 28, 2003

51. The 1994 GST Trust was a single trust benefiting each of Herbert, Jr. and Frances' grandchildren, being John's two children and Lucia's three children.

52. Because only the Bradford shares in the 1994 GST Trust allocable to Lucia's children were to be redeemed, the 2003 Master Settlement Agreement provides that, prior to redemption and among other things: (a) the 1994 GST Trust would be divided into five separate trusts; and (b) John would resign as trustee of the separate 1994 GST Trusts for Lucia's three children and Lucia would be appointed successor trustee. *See* Ex. E at ¶ 2.

---

[2] Contemporaneously with this filing, John, individually and as Trustee of the Anna 1994 Trust, and Bradford are filing a similar Petition for Declaratory and Other Relief at docket no. 2012-X3503.

9

EXHIBIT 24 - Page 12

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

53.     Under the terms of the Anna 1994 Trust, upon her death Anna could appoint the remaining principal to and among the issue of Herbert, Jr. and Frances, and in default of complete appointment the remaining principal would be paid to Anna's issue, or if none, to the then living grandchildren, *per capita*, of Herbert, Jr. and Frances, or if none, to the then living issue, *per stirpes*, of Herbert, Jr. and Frances.  *See* Ex. B, Item FIRST (2).

54.     In 2003 Anna had no issue and was not likely to have issue.

55.     The 2003 Master Settlement Agreement provides that the Anna 1994 Trust would be divided into two separate trusts pursuant to the terms of a separate family settlement agreement (the "2003 Family Settlement Agreement").  *See* Ex. E at ¶ 3, and Ex. F.

56.     The 2003 Family Settlement Agreement provided that the Anna 1994 Trust would be divided into two trusts – 60% in one trust with the Hughes family as remainder beneficiaries ("Anna 1994 Trust fbo Hughes") and 40% in a separate trust with the Middleton family as remainder beneficiaries ("Anna 1994 Trust fbo Middleton").  See Ex. F at ¶¶ 1, 2.  The Anna 1994 Trust fbo Hughes and the Anna 1994 Trust fbo Middleton are sometimes collectively referred to as the "Anna 1994 Trusts."

57.     Following the February 28, 2003 Redemption, all parties in interest in all applicable capacities executed a separate Release and Indemnification Agreement with respect to the 2001 GRAT (the "2001 GRAT Release and Indemnification Agreement").  *See* Ex. G.  The 2001 GRAT Release and Indemnification Agreement was an exhibit to the 2003 Master Settlement Agreement.  See Ex. E at ¶ 12.

58.     All parties in interest signed the 2001 GRAT Release and Indemnification Agreement.  *See* Ex. G.

**EXHIBIT 24 - Page 13**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

59.     As a result of the divisions of trusts agreed to in the 2003 Master Settlement Agreement and the additional agreements referenced above, the shareholders immediately before the February 28, 2003 Redemption were as follows:

| | Voting | | Non-Voting | |
|---|---|---|---|---|
| **Shareholders** | **# of Shares** | **% of Shares** | **# of Shares** | **% of Shares** |
| John S. Middleton | 716 | 85.4% | 37,705 | 6.3% |
| John P. Middleton | | | 4,286 | 0.7% |
| Frances B. Middleton | | | 4,286 | 0.7% |
| 1982 Trust (shares fbo John) | | | 75,073 | 12.6% |
| 1994 GST Trust fbo John P. Middleton | | | 7,089 | 1.2% |
| 1994 GST Trust fbo Frances B. Middleton | | | 7,089 | 1.2% |
| 1996 Trust fbo John's children | | | 29,774 | 5.0% |
| | | | | |
| **Shareholders being redeemed** | | | | |
| Anna 1994 Trust fbo Hughes | 38 | 4.5% | 70,963 | 11.9% |
| 2001 GRAT | | | 258,029 | 43.4% |
| Lucia M. Hughes | 84 | 10.0% | 67,563 | 11.4% |
| J. Alexander Hughes | | | 3,645 | 0.6% |
| Thomas M. Hughes | | | 3,645 | 0.6% |
| John C. Hughes | | | 3,645 | 0.6% |
| 1994 GST Trust fbo J. Alexander Hughes | | | 7,089 | 1.2% |
| 1994 GST Trust fbo Thomas C. Hughes | | | 7,089 | 1.2% |
| 1994 GST Trust fbo John C. Hughes | | | 7,089 | 1.2% |
| **Totals** | **838** | **100.0%** | **594,059** | **100.0%** |

60.     As noted, there were separate stock purchase agreements attached to the 2003 Master Settlement Agreement for each of the shareholders being redeemed, including the 2001 GRAT.

61.     John signed all stock purchase agreements as President of Bradford.

62.     John as Trustee, and Frances as Grantor, signed the 2001 GRAT Stock Purchase Agreement attached to the 2003 Master Settlement Agreement.  *See* Ex. H.

11

**EXHIBIT 24 - Page 14**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

63.     All parties in interest accepted the benefits of the 2003 Master Settlement

Agreement, including the benefits of the 2003 Redemption and the receipt of the proceeds by the

2001 GRAT.

64.     All parties in interest consulted with their respective counsel before signing the

2003 Master Settlement Agreement and the corresponding exhibits.

**Relevant provisions of the 2001 GRAT**

65.     As noted, the 2001 GRAT was funded by Frances as Settlor with shares of

Bradford.

66.     The 2001 GRAT Trust Agreement explicitly waives the requirement of court

approval and exempts the trustee from any law that might otherwise prohibit the trustee from

exercising the power to sell the Bradford shares as follows:

>       FOURTEENTH -- Bradford Holdings, Inc. Stock:  A major asset held
> hereunder is stock in Bradford Holdings, Inc. ("BHI").  Grantor gives to Trustee
> or Trustees full discretion as to the retention or sale of any or all of the BHI stock
> held hereunder without the need for court approval . . . .
>
> . . . .
>
>       SIXTEENTH -- Business Powers:  With respect to any business interest,
> whether such business is conducted as a proprietorship, partnership, corporation,
> or in any other form, held hereunder, Grantor gives to Trustee or Trustees the
> following additional powers:
>
>       . . . .
>
>       5.     To act as officer, partner, director, manager or employee of the
> business interest, and to exercise all rights of ownership for the election or
> appointment of any person, including any Trustee hereunder, as director, officer,
> manager or a similar position, and Grantor hereby exempts Trustees from the
> adverse operation of any law or provision that might otherwise prevent Trustees
> from exercising the powers hereunder by reason of a conflict of interest.
>
>       . . . .

**EXHIBIT 24 - Page 15**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

9.    To sell or liquidate all or any part of the business at such time, for such prices, on such terms, with or without security, and to such persons as Trustees, in Trustees' absolute discretion, shall deem appropriate, notwithstanding any law or provision that might otherwise prohibit such transaction by reason of self-dealing or conflict of interest.

*See* Ex. C.

### Relevant Representations, Warranties and Releases

67.    All parties agreed in Paragraph 4 of the 2003 Master Settlement Agreement "not to challenge or dispute [the redemption of Bradford shares] at the indicated price or any actions undertaken by [Bradford] or each Selling Stockholder to effectuate such sale." *See* Ex. E at ¶ 4.

68.    All parties represented and warranted in Paragraph 16(b) of the 2003 Master Settlement Agreement that they had "the requisite power and authority," had the "legal capacity" and were "duly and validly authorized" to enter into the that Agreement and to "consummate the transactions contemplated hereby" and perform the obligations under that Agreement. *See* Ex. E at ¶ 16(b).

69.    Paragraph 18 of the 2003 Master Settlement Agreement provides a general release by each party of each other party in all capacities:

of and from any and all manner of actions, causes of actions, suits, sums of money, debts, bonds, covenants, contracts, controversies, agreements, judgments, plans, promises, damages, losses, liabilities, claims and demands whatsoever, in law or at equity, known or unknown, including but not limited to, those arising from or related to (i) the GRAT, (ii) the subdivision of the 1994 [GST] Trust or the Anna [1994] Trust, (iii) the subdivision of the assets of the 1994 [GST] Trust or the Anna [1994] Trust, including without limitation, all shares of Class B Stock owned by the 1994 [GST] Trust and all shares of Class A Stock and Class B Stock owned by the Anna [1994] Trust, (iv) the Corporation's purchase of the Class A Stock and Class B Stock at the purchase prices set forth in Section 4 of this Agreement, (v) self dealing or breach of any other legal or fiduciary obligation of any of the trustees or custodians of the Trusts or Custodial Accounts in connection with the administration or operation of any Trust or Custodial Account or the Corporation's purchase of the Class A Stock and Class B Stock provided in Section 4 of this Agreement, (vi) the operation or management of the Corporation or any other matters pertaining to the Corporation, which against the

13

EXHIBIT 24 - Page 16

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

Party Releasees such Party Releasors or any of them ever had, now have, or which such Party Releasors or any of them, can, shall or may have, for, upon or by reason or any cause, matter or thing whatsoever, from the beginning of the world up to and including the Stock Purchase Closing Date, except for those that may arise out of any breach or violation of this Agreement (including without limitation the representations and warranties in Section 16 hereof) or any Stock Purchase Agreement.

*See* Ex. E at ¶ 18.

70.     Paragraph D of the 2001 GRAT Release and Indemnification Agreement provides

that each party:

[a]bsolutely and irrevocably remises, releases, quit-claims and forever discharges John S. Middleton ("John") as a Trustee of the GRAT from any and all actions, suits, payments, accounts, reckonings, liabilities, and demands relating in any way to the administration of the GRAT from the inception of the GRAT up to and including the effective date hereof.

*See* Ex. G at ¶ D.

71.     Further, Paragraph E of the 2001 GRAT Release and Indemnification Agreement

provides that all parties agree to "indemnify and hold harmless John as Trustee of the GRAT

from and against any and all [losses] . . . which he may suffer or to which he may be subjected

by reason of his administration of the GRAT and settlement of the assets of the GRAT . . .

without having the formal approval of [this Court]".  *See* Ex. G at ¶ E.

**Anna's Recent Pleadings Contain Veiled Threats**
**About the Legality of the 2003 Master Settlement Agreement**

72.     In pleadings filed with this Court, Anna makes veiled threats that the 2003 Master

Settlement Agreement is invalid or otherwise unenforceable.

73.     For example, Anna threatens to "bring substantive claims that pertain to possible

self-dealing" and the "possibility" that "[John] Middleton purchased shares of Bradford Holdings

from Nupson, contrary to 20 Pa. C.S.A. § 7772(c)(3)."  *See* Reply to Answer of John S.

14

**EXHIBIT 24 - Page 17**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

Middleton to Motion to Disqualify at 7 n. 3 (filed in the Anna 1994 Trusts, docket no. 2012-X3503).

74.     Anna also threatens to seek to open this Court's April 19, 2013 Adjudication, which confirmed her account in the Anna 1994 Trusts, including the 2003 Redemption.  *Id*.

75.     Anna references the 2003 Family Settlement Agreement -- an exhibit to, and incorporated into, the 2003 Master Settlement Agreement – and claims it is "unenforceable." *See* Answer of Anna K. Nupson to Answer and New Matter of Respondent John S. Middleton to Petition for Production, *et al.* at ¶ 49 (filed in the Anna 1994 Trusts, docket no. 2012-X3503).

76.     Despite making these factually and legally erroneous "claims," to date Anna has not sought relief from this Court.

### Section 3356

77.     Section 3356 of the Probate, Estates and Fiduciaries Code, 20 Pa. C.S.A. § 3356, provides:

> In addition to any right conferred by a governing instrument, if any, the personal representative, in his individual capacity, may bid for, purchase, take a mortgage on, lease, or take by exchange, real or personal property belonging to the estate, subject, however, to the approval of the court, and under such terms and conditions and after such reasonable notice to parties in interest as it shall direct. The court may make an order directing a co-fiduciary, if any, or the court's clerk to execute a deed or other appropriate instrument to the purchasing personal representative.

78.     In 2003, Section 3356 was applicable to trusts by cross reference through 20 Pa. C.S.A. § 7133.

79.     Upon the enactment of the Pennsylvania Uniform Trust Act ("UTA"), effective November 6, 2006, Section 7133 was repealed and replaced with Section 7792.

15

**EXHIBIT 24 - Page 18**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

## Count I – Request for Declaratory Relief

80.     Petitioners incorporate Paragraphs 1 through 79.

81.     Pursuant to Section 7533 of the Declaratory Judgments Act, 42 Pa. C.S.A. § 7531 *et seq.*, any person whose rights are affected by a statute may request this Court to determine any question arising under such statute and obtain a declaration of rights, status or other legal relations.  *See* 42 Pa. C.S.A. § 7533.

82.     Pursuant to Section 7535 of the Declaratory Judgments Act, any person interested as a trustee or beneficiary of a trust may request this Court to declare the rights or legal relations with respect to any question arising in the administration of the trust.  *See* 42 Pa. C.S.A. § 7535.

83.     Petitioners seek a declaration that Sections 3356 and 7133 were not applicable to the 2003 Redemption of Bradford shares from the 2001 GRAT because, among other things:

   a.   Section 3356 is not applicable where, as here, all parties in interest were represented by counsel, fully informed as to the circumstances and consented, in writing, to the transaction in the context of a master family settlement agreement;

   b.   Section 3356 is not applicable to a redemption of shares by a corporation;

   c.   John did not purchase the Bradford shares in his "individual capacity";

   d.   The 2001 GRAT expressly exempts the trustee from any prohibition against self-dealing and any requirement of Court approval of the sale of Bradford shares;

   e.   All parties requested that the Bradford shares be redeemed, with full knowledge of John's role with Bradford; and

   f.   All parties voluntarily signed the 2003 Master Settlement Agreement and related exhibits, in all applicable capacities and not under any duress.

16

**EXHIBIT 24 - Page 19**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

84.     To the extent Sections 3356 and 7133 were otherwise applicable to the 2003 Redemption of Bradford shares from the 2001 GRAT:

a.  All parties expressly waived and released any claims against John and Bradford in the 2003 Master Settlement Agreement including specifically any claims of self-dealing;

b.  All parties expressly waived any claims against John in the 2001 GRAT Release and Indemnification Agreement;

c.  All parties expressly waived any claims that the 2003 Redemption required Court approval;

d.  All parties are equitably estopped from asserting that the 2003 Redemption required Court approval;

e.  John, Bradford and others relied upon the representations, warranties and releases recited above, and therefore any attempt to claim that Sections 3356 and 7133 were applicable to the 2003 Redemption is barred by the doctrine of unclean hands;

f.  John, Bradford and others would be prejudiced if Sections 3356 and 7133 were applicable to the 2003 Redemption, and therefore any such claim is barred by the doctrine of laches; and

g.  All parties accepted the benefits of the 2003 Redemption with full knowledge of the circumstances while represented by counsel, and therefore any claim that Sections 3356 and 7133 were applicable to the 2003 Redemption is barred by the doctrine of acquiescence.

85.     Section 7772 of the UTA became effective November 6, 2006, and therefore it is not applicable to the 2003 Redemption.

**WHEREFORE**, your Petitioners respectfully request that this Court enter a judgment declaring that the 2003 Redemption of shares of Bradford Holdings, Inc. held by the 2001 GRAT

17

**EXHIBIT 24 - Page 20**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

did not require approval of this Court under Sections 3356, 7133 or 7772 of the Probate, Estates and Fiduciaries Code, 20 Pa. C.S.A. §§ 3356, 7133, 7772, or in the alternative, even if Court approval was required, all parties in interest validly released any claims that approval by this Court was required.

<u>Count II – <em>Nunc pro tunc</em> Approval of 2003 Redemption</u>

86.     Petitioners incorporate Paragraphs 1 through 85.

87.     Prior to the execution of the 2003 Master Settlement Agreement and the 2001 GRAT Release and Indemnification Agreement, all parties in interest were provided with and carefully reviewed:

    a.  Bradford's audited financial statements as of and for the fiscal years ending January 31, 2000, January 31, 2001 and December 31, 2001;

    b.  Bradford's unaudited financial statements as of and for the 12-month period ending December 31, 2002;

    c.  The September 2002 Fleet M & A Advisors appraisal valuing Bradford's stock at $215 per voting share and $205 per non-voting share; and

    d.  All documents, records, books and other information that they requested.

88.     All parties in interest also had the opportunity to discuss Bradford's business, operations and financial affairs with management.

89.     Because Bradford was family owned, all parties in interest were familiar with Bradford and its operations, including the significant risk of tobacco-related litigation and judgments.

90.     After consultation with counsel and financial advisors of their choosing, all parties in interest determined that it was in their best interests, and the best interests of the trusts

EXHIBIT 24 - Page 21

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

and the beneficiaries of those trusts, to enter into the 2003 Master Settlement Agreement and, specifically, the 2003 Redemption.

91.     The 2003 Master Settlement Agreement also (a) provided the trustees of the various trusts with releases and indemnifications for past administration, and (b) addressed Frances' estate plan and the disposition of her estate upon her death, which was then in contention.  The resolution of these other issues was part of the consideration exchanged in the 2003 Master Settlement Agreement.

92.     The 2003 Master Settlement Agreement, including but not limited to the 2003 Redemption, was in the best interests of the 2001 GRAT and its beneficiaries on February 20, 2003.

93.     This Court has the equitable power to approve, *nunc pro tunc*, the 2003 Master Settlement Agreement, including specifically the 2003 Redemption, pursuant to Sections 3356 and 7133.

**WHEREFORE**, your Petitioners respectfully request that this Court approve, *nunc pro tunc*, the 2003 Master Settlement Agreement, including specifically the 2003 Redemption, pursuant to Sections 3356 and 7133 of the Probate, Estates and Fiduciaries Code, 20 Pa. C.S.A. §§ 3356, 7133.

## Parties in Interest

94.     The parties in interest to this Petition and the relief requested are set forth in Ex. I.

95.     Pursuant to 20 Pa. C.S.A. § 7723, Anna K. Nupson, Lucia M. Hughes, J. Alexander Hughes, Thomas M. Hughes, John C. Hughes, John P. Middleton and Frances B. Middleton are notified that they are designated as representative of (a) their respective minor and unborn descendants who are or may be a beneficiary of one or more of the trusts identified on

19

EXHIBIT 24 - Page 22

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

Exhibit I, and (b) all potential appointees and takers in default of appointment of one or more of the trusts identified on Exhibit I to the extent of any such power of appointment.

**WHEREFORE**, your Petitioners respectfully request that this Court issue a Citation directed to the parties in interest set forth in Ex. I to show cause, if any there may be, why the relief requested in the foregoing Petition should not be granted.

Respectfully submitted,

/s/ James F. Mannion

James F. Mannion (No. 58951)
Obadiah G. English (No. 203662)
Mannion Prior, LLP
840 1st Avenue, Suite 100
King of Prussia, PA  19406-4063
(610) 265-7800
(610) 265-1204 (facsimile)
jmannion@mannionprior.com
oenglish@mannionprior.com

Counsel for John S. Middleton, as
Former Trustee of the Trust of Frances S.
Middleton, Settlor, under Agreement of Trust
dated February 1, 2001

/s/ James T. Smith

James T. Smith (No. 39933)
Blank Rome, LLP
One Logan Square
130 North 18th Street
Philadelphia, PA  19103
(215) 569-5500
Smith-JT@BlankRome.com

/s/ Marc J. Sonnenfeld

Marc J. Sonnenfeld (No. 17210)
Morgan, Lewis & Bockius, LLP
1701 Market Street

20

**EXHIBIT 24 - Page 23**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

Philadelphia, PA  19103-2921
(215) 963-5572
msonnenfeld@morganlewis.com

Counsel for John S. Middleton,
Individually and Bradford Holdings, Inc.

Dated:  April 7, 2015

**EXHIBIT 24 - Page 24**

**Verification**

I, John S. Middleton, verify that the facts set forth in the foregoing pleading, to the extent based upon my personal knowledge, are true and correct, and to the extent based upon knowledge provided by others, I believe them to be true and correct.  This Verification is made pursuant to 18 Pa. C.S. § 4904, relating to unsworn falsification to authorities.

/s/ John S. Middleton

_____

John S. Middleton

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

**EXHIBIT 24 - Page 25**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

# EXHIBIT A

EXHIBIT 24 - Page 26



Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee =

**EXHIBIT 24 - Page 27**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

# EXHIBIT B

EXHIBIT 24 - Page 28

2452-94 - 32494A
BAR   9/12/94

Original in vault at
Schrader, Harrison, Segal & Lewis

**FILE COPY**

THIS AGREEMENT OF TRUST, executed this _12th_ day of
_September_, 1994, between ANNA M. BAUER, of Delaware County,
Pennsylvania (hereinafter called "Settlor"), and ANNA M. BAUER,
JOHN S. MIDDLETON and FRANCES S. MIDDLETON (hereinafter called
"Trustees"),

W I T N E S S E T H   T H A T:

Settlor hereby transfers and delivers to Trustees, and
Trustees hereby acknowledge receipt of the assets currently held
by Mellon Bank, N.A. in custody account #31L-400 which property,
together with any other property that may be added hereto from
time to time by Settlor or any other person, Trustees agree to
hold in trust upon the following terms:

FIRST -- Lifetime Provisions: 1.  Throughout Settlor's
lifetime Trustees shall from time to time pay to, or expend for
the benefit of, Settlor such amounts from the income and principal
of the trust (including all accumulated income as well as the en-
tire principal hereunder) as Trustees, in their absolute discre-
tion, may deem appropriate.

It is the intention of Settlor that Trustees shall
interpret their authority hereunder so as to provide Settlor, who
shall be deemed the primary beneficiary hereunder, through prudent
investment and appropriate withdrawals, with a living standard
commensurate with her means over the lifetime of the trust.

2.  Upon the death of Settlor, the remaining prin-
cipal of the trust shall be distributed to the then living issue
of HERBERT H. MIDDLETON, JR. and FRANCES S. MIDDLETON to the ex-
tent and in the manner that Settlor shall so appoint by specific
reference to this power in her will, but to the extent that Set-
tlor does not so exercise this special power of appointment, the
remaining principal shall be distributed to Settlor's then living

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

**EXHIBIT 24 - Page 29**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

issue per stirpes, or, if none, to the then living grandchildren per capita of HERBERT H. MIDDLETON, JR. and FRANCES S. MIDDLETON, or, if none, to the then living issue per stirpes of HERBERT H. MIDDLETON, JR. and FRANCES S. MIDDLETON.

SECOND -- Taxes: All estate, inheritance and succession taxes payable by reason of Settlor's death on any property forming part of Settlor's estate for the purpose of such taxation, including any interest and penalties thereon, whether or not such property passes hereunder, shall be paid out of the principal passing under paragraph 2 of Item FIRST hereinabove.

THIRD -- Minimum Age for Distribution: If under the provisions of this Agreement any principal shall become payable to any beneficiary who has not reached twenty-one (21) years of age, Trustees shall retain such principal in trust, and shall expend as much of the income and principal as Trustees, in Trustees' absolute discretion, may deem appropriate to provide for the support, education, medical care, other need, travel or comfort of such beneficiary. Any income not so expended shall be accumulated and paid, together with the remaining principal, to the beneficiary upon his or her reaching twenty-one (21) years of age, or to his or her estate if he or she should die before reaching that age. Notwithstanding the foregoing provisions, if the principal payable to a beneficiary as aforesaid, whether initially or during the continuance of the trust as aforesaid, shall be or become of such value that, in the judgment of Trustees, it shall be uneconomical or otherwise inappropriate to set up or continue the trust, Trustees, in Trustees' absolute discretion, may distribute the principal and accumulated income directly to the beneficiary or to a parent of the beneficiary to be used exclusively for the beneficiary (in which case the receipt of the beneficiary or the parent shall be a full acquittance to Trustees), or deposit

-2-

EXHIBIT 24 - Page 30

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

such principal and accumulated income in a savings or money market account or certificate of deposit for the beneficiary, with or without restrictions as Trustees may deem appropriate.

FOURTH -- <u>Protective Provision</u>:  All interests hereunder, whether principal or income, while undistributed and in the possession of Trustees, and even though vested or distributable, shall not be subject to attachment, execution or sequestration for any debt, contract, obligation or liability of any beneficiary, and furthermore, shall not be subject to pledge, assignment, conveyance, or anticipation by any beneficiary.

FIFTH -- <u>Administrative Powers</u>:  Trustees shall have the following powers in addition to those otherwise provided herein or by law, to be exercised in their absolute discretion:

1.  To retain as an investment any asset received hereunder without liability, and to invest and reinvest in any kind of property, including common and preferred stocks, common trust funds, mutual investment funds, and real estate, without being restricted to classes of investments prescribed or authorized for trustees by statute or common law of any jurisdiction.

2.  To manage, mortgage, pledge, and to sell or exchange by public or private sale, on any terms, and to lease without limit as to term, any real or personal property; and to enter into binding agreements of sale or give binding options, without obligation to repudiate the same in favor of better offers.

3.  To compromise claims, without the necessity of court approval.

4.  To make distributions partially or wholly in kind, and without the necessity of distributing to each beneficiary a pro rata share of each asset.

5.  To vote in person or by proxy all stocks or other securities, and in connection therewith, to delegate

-3-

EXHIBIT 24 - Page 31

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

discretionary powers; to participate in any reorganization, consolidation, merger, recapitalization or other concerted action of security holders of any corporation; to deposit securities under protective agreements or with protective committees; and to receive securities issued as a result of such proceedings.

6.   To apply directly for the needs of any beneficiary, in case of the disability of such beneficiary due to any cause, any income or principal that is payable to such beneficiary.

7.   To engage attorneys-at-law, investment consultants, accountants, brokers, custodians or such other advisors or agents, and such persons shall be compensated currently from the income or principal of any trust hereunder.

8.   To make loans to any beneficiary hereunder and to determine the terms thereof; and to borrow money from any person or institution to facilitate renewal or payment of any debts due by Settlor or to raise money for the purpose of paying taxes, costs of administration, or for any other purpose.

9.   To combine any trust created hereunder with any other trust, whether created by Settlor or others, having the same beneficiary and similar terms.

10.   To change the situs for administrative and accounting purposes of any or all trusts created hereunder to any jurisdiction, without the necessity of court approval.

SIXTH -- _Irrevocability_:  This Agreement of Trust is expressly stated to be irrevocable and subject to no modification.

SEVENTH -- _Situs of Trust_:  The situs of this trust shall be the Commonwealth of Pennsylvania, and all questions pertaining to the construction and validity of the provisions of this Agreement of Trust shall be governed by the law of that Commonwealth.

-4-

**EXHIBIT 24 - Page 32**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

EIGHTH -- Trustees: Any Trustee is authorized to desig-
nate a substitute or successor to serve in the event that such
Trustee shall be or become unable or unwilling to serve or con-
tinue to serve; provided, however, that the designee be HERBERT H.
MIDDLETON, JR. or a descendant of his.  In addition, Trustees
serving hereunder from time to time, are authorized to appoint at
any time, by unanimous action, a corporate Trustee.  Trustees are
similarly authorized, by unanimous action, to remove any corporate
fiduciary, thereby terminating the services being rendered, and,
if they deem advisable, to appoint a successor.  Each such desig-
nation shall be made by a written instrument other than a will,
and may be revoked at any time prior to its becoming effective.
No individual Trustee serving hereunder shall be entitled to any
compensation.

Trustees shall qualify as such by attaching hereto
a written acceptance of the office, and thereupon shall undertake
all of the obligations and powers assigned to "Trustees" hereun-
der.

No Trustee acting hereunder shall be required to

*amb*

-5-

**EXHIBIT 24 - Page 33**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

give security in any jurisdiction.

     IN WITNESS WHEREOF, ANNA M. BAUER, Settlor and Trustee, and JOHN S. MIDDLETON and FRANCES S. MIDDLETON, Trustees, have hereunto set their hands and seals, the day and year first above written, all parties intending to be legally bound hereby.

WITNESS:

_Bethenia Herring_      _Anna M. Bauer_ (SEAL)
                            Anna M. Bauer,
                               Settlor and Trustee

_Joanne J. Jones_      _Jhn S. Middleton_ (SEAL)
                            John S. Middleton,
                                 Trustee

_Bethenia Herring_      _Frances S. Middleton_ (SEAL)
                            Frances S. Middleton,
                                 Trustee

-6-

**EXHIBIT 24 - Page 34**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

# EXHIBIT C

EXHIBIT 24 - Page 35

Cust# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

THIS AGREEMENT OF TRUST, executed this *first* day of February, 2001, between FRANCES S. MIDDLETON, of Montgomery County, Pennsylvania ("Grantor") and JOHN S. MIDDLETON ("Trustee"),

W I T N E S S E T H   T H A T:

Grantor hereby transfers and delivers to Trustee the property set forth in Schedule "A" attached hereto and made a part hereof ("original contribution"), which property Trustee agrees to hold as an annuity trust (the "Annuity Trust") in which Grantor retains a qualified annuity interest within the meaning of Section 2702(b)(1) of the Internal Revenue Code of 1986, as amended ("I.R.C."), and Treas. Reg. Section 25.2702-3, as amended, upon the following terms:

FIRST -- Trust Term:  The trust term shall begin on the date on which the original contribution is transferred, for federal gift tax purposes, from Grantor to Trustee ("trust creation date"), and shall continue until the day before the second anniversary of the trust creation date ("trust term").

SECOND -- Provisions During Trust Term:  1.  In each taxable year of the trust term, Trustee shall pay an annuity amount equal to 54.64% of the initial net fair market value of the property transferred to the Annuity Trust, as finally determined for federal tax purposes (the "annuity amount"), to or for the benefit of Grantor, or if Grantor is not then living, to the personal representatives of Grantor's estate. The annuity amount shall be paid from income and, to the extent income is not

**EXHIBIT 24 - Page 36**

sufficient, from principal in annual installments on the last day of each taxable year and on the last day of the trust term. Any income of the Annuity Trust for a taxable year in excess of the annuity amount shall be added to principal.

2.    Trustee must comply with Treas. Reg. Section 25.2702-3(b) in paying the annuity amount. Subject to the foregoing, Trustee may pay the annuity amount after the close of the taxable year, provided the payment is made no later than the date by which Trustee is or would be required to file the federal income tax return of the Annuity Trust for the taxable year (without regard to extension) pursuant to Treas. Reg. Section 1.671-4(a).

3.    Trustee shall prorate the annuity amount on a daily basis for a short taxable year and for the taxable year in which the trust term ends. The taxable year of the Annuity Trust shall be the calendar year.

4.    If the annuity amount is incorrectly determined, then within a reasonable period after the correct annuity amount is finally determined, Trustee shall pay to the recipient of the annuity amount (in the case of an underpayment) or shall receive from the recipient of the annuity amount (in the case of an overpayment) an amount equal to the difference between the annuity amount properly payable and the annuity amount actually paid.

5.    Trustee shall not pay or expend any portion of the income or principal of the Annuity Trust prior to the expiration of the trust term to or for any person other than Grantor for such time as Grantor is living during the trust term, or to or for any person other than the personal representatives of Grantor's estate, as provided in paragraph 1

-2-

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

**EXHIBIT 24 - Page 37**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

above, for such time as Grantor is not living during the trust term.

      6.    Notwithstanding any provision in this Agreement to the contrary, Trustee is prohibited from using notes, other debt instruments, options or similar financial arrangements that effectively delay receipt of the annuity amount by any annuitant; instead, Trustee shall pay the annuity amount in cash or other assets held by the Annuity Trust. Notwithstanding the foregoing, Trustee may borrow money from any person or institution other than Grantor as permitted in paragraph 11 of Item FIFTEENTH below.

      7.    No person or entity shall make any contribution to the Annuity Trust after the original contribution.

      8.    Upon the expiration of the trust term, the trust property shall be disposed of in accordance with the provisions of Item THIRD herein below.

      THIRD -- <u>Termination of the Annuity Trust</u>:  The Annuity Trust shall terminate upon the expiration of the trust term, and at such time, the principal of the Annuity Trust together with any accumulated income remaining after the payment of the final installment of the annuity amount and any interest thereon, and the payment of any amounts due to Grantor or the personal representatives of Grantor's estate under paragraph 4 of Item SECOND above (the "Annuity Trust Assets"), shall be administered and disposed of as follows:

      1.    The Annuity Trust Assets shall be divided into three (3) equal shares, one (1) share representing each of Grantor's children, JOHN S. MIDDLETON, LUCIA M. HUGHES and ANNA

-3-



**EXHIBIT 24 - Page 38**

Case 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

K. MIDDLETON.  Each share so apportioned shall be administered as follows:

        (a)  John's Share.  The share apportioned for Grantor's son, JOHN S. MIDDLETON, ("John's Share") shall be held in a separate trust ("JSM Family Trust") to be administered as follows:

        (i)  Until the termination date specified in subpart (iii) of this subparagraph (a), Trustee may pay to, or for the benefit of any one or more members of a class comprised of JOHN S. MIDDLETON, his spouse and his then living issue as much of the income and principal of the JSM Family Trust as Trustee, in Trustee's absolute discretion, may deem appropriate; provided that the total distributions made from the trust in any one calendar year shall not exceed the sum of ONE MILLION DOLLARS ($1,000,000). Since the needs of the members of the class may be of different natures, there is no requirement that an equal amount be expended for each member.  Any income not distributed or expended in any calendar year shall be accumulated and added to principal.

        (ii)  To the extent Grantor allocates any generation-skipping transfer tax ("GST") exemption to the JSM Family Trust, Trustee shall make a "qualified severance" of the JSM Family Trust in accordance with the provisions of Section

-4-

EXHIBIT 24 - Page 39

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

2642(a)(3) of the I.R.C. such that the portion of the JSM Family Trust to which the allocation of GST exemption is made is held as a separate GST exempt trust under the same terms and conditions as the JSM Family Trust.

(iii)  The JSM Family Trust shall terminate on the date that is four years after the trust term ("the termination date") and the remaining trust assets of the JSM Family Trust shall be distributed as follows:

(aa) If JOHN S. MIDDLETON is then living, the remaining trust assets shall be held in trust for his benefit and administered in accordance with the provisions of Item FOURTH.

(bb) If JOHN S. MIDDLETON is not then living but is survived by his wife, LEIGH POWERS MIDDLETON, the remaining trust assets shall be held in trust for her benefit and administered in accordance with the provisions of Item FIFTH.

(cc) If neither JOHN S. MIDDLETON nor LEIGH POWERS MIDDLETON is then living, the remaining trust assets shall be distributed to the descendants (other than JOHN S. MIDDLETON) of HERBERT H. MIDDLETON, JR. and Grantor, or to charitable organiza-

-5-

EXHIBIT 24 - Page 40

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

tions to the extent and in the manner that
the survivor of JOHN S. MIDDLETON and LEIGH
POWERS MIDDLETON shall so appoint by spe-
cific reference to this power in his or her
will.  To the extent that the survivor of
JOHN S. MIDDLETON and LEIGH POWERS MIDDLETON
does not so exercise this special power of
appointment, the remaining assets shall be
divided into as many equal shares as there
are children of JOHN S. MIDDLETON then liv-
ing and children of JOHN S. MIDDLETON then
deceased with issue then living, or, if
none, shall be distributed to Grantor's then
living issue per stirpes. Each share appor-
tioned for a child of JOHN S. MIDDLETON
shall be held in a separate equal trust for
such child in accordance with the provisions
of Item SEVENTH hereof.  Each share appor-
tioned for the then living issue of a de-
ceased child of JOHN S. MIDDLETON shall be
further apportioned among such issue per
stirpes, and each share apportioned for an
individual among the issue of the deceased
child shall be distributed to the individ-
ual; provided that if there shall then be in
existence a trust created under the terms of
this Agreement for the benefit of the indi-
vidual, such individual's share shall be
added to the existing trust and administered
and disposed of as if an original part

-6-

**EXHIBIT 24 - Page 41**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

thereof.  Notwithstanding the foregoing, in
the event Grantor has allocated GST exemp-
tion to the JSM Family Trust and Trustee is
holding a separate GST-exempt trust in ac-
cordance with the provisions of subparagraph
(ii) above, Trustee shall distribute the
separate GST-exempt trust to the Trust under
Agreement dated July 26, 1996 between John
S. Middleton, Settlor and Lucia M. Hughes,
Trustee and such distribution shall be added
thereto and administered and disposed of un-
der the terms of that Agreement.

      (b)  <u>Lucia's Share</u>. The share appor-
tioned for Grantor's daughter, LUCIA M. HUGHES,
("Lucia's Share") shall be held in a separate trust
("Hughes Family Trust") to be administered as follows:

      (i)  Until the termination
date specified in subpart (iv) of this sub-
paragraph (b), Trustee shall pay to any one
or more members of a class (the "Class")
comprised of LUCIA M. HUGHES and her then
living issue as much of the income and prin-
cipal of the Hughes Family Trust as Trustee,
in Trustee's absolute discretion, deems ap-
propriate; provided that the total distribu-
tions made to members of the Class in any
one calendar year shall not exceed the sum
of ONE MILLION DOLLARS ($1,000,000).  Since
the needs of the members of the Class may be
of different natures, there is no require-

-7-

EXHIBIT 24 - Page 42

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

ment that an equal amount be expended for each member.  Any income not distributed or expended in any calendar year shall be accumulated and added to principal.

(ii)  The individual Trustee of the Hughes Family Trust, if any, otherwise the Trustee may, at any time prior to the termination date, add any one or more charitable organizations to the Class by the terms of a duly executed and acknowledged written instrument to be maintained with the trust records.  Any charitable organizations added to the Class shall remain class members only until the termination date.

(iii)  To the extent Grantor allocates any generation-skipping transfer tax ("GST") exemption to the Hughes Family Trust, Trustee shall make a "qualified severance" of the Hughes Family Trust in accordance with the provisions of Section 2642(a)(3) of the I.R.C. such that the portion of the Hughes Family Trust to which the allocation of GST exemption is made is held as a separate GST-exempt trust under the same terms and conditions as the Hughes Family Trust.

(iv)  The Hughes Family Trust shall terminate on the date that is four years after the trust term ("the termination date") and the remaining assets of the trust

-8-

**EXHIBIT 24 - Page 43**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

shall be distributed to or among those members of a class comprised of LUCIA M. HUGHES, the issue of LUCIA M. HUGHES and any charitable organizations, in such amounts and proportions and subject to such terms and conditions, outright or in trust, as Grantor's son-in-law, THOMAS P. HUGHES, appoints and directs; subject to the following terms and conditions:

(aa) The power of appointment shall be exercised by the delivery of a signed writing to the Trustee no later than the termination date.

(bb) Any exercise of the power of appointment may be revoked or amended by THOMAS P. HUGHES at any time prior to the termination date.

(cc) Notwithstanding any other provision of this subparagraph (b) to the contrary, THOMAS P. HUGHES shall have no right to exercise the power of appointment nor shall he have any right to revoke or amend an exercise of the power of appointment unless he is married to and living with LUCIA M. HUGHES at the time of such exercise, revocation or amendment (or if Lucia M. HUGHES is deceased at the time of such exercise, revocation or amendment, if THOMAS P. HUGHES was married to and living with LUCIA M. HUGHES at the time of her death).



-9-

**EXHIBIT 24 - Page 44**

(v)   To the extent that THOMAS P. HUGHES does not exercise the special power of appointment granted under subparagraph (iv), the assets of the Hughes Family Trust and any other trust created pursuant to the provisions of subparagraph (iii) shall be distributed as follows:

(aa) Any GST-exempt assets shall be distributed to the then living issue of LUCIA M. HUGHES, per stirpes.

(bb) After satisfying the provisions of subdivision (aa), all remaining assets shall be distributed outright to LUCIA M. HUGHES, if she is then living; or, if she shall not be then living, to her then living issue, per stirpes.

(cc) Each share apportioned for a child of LUCIA M. HUGHES under the provisions of subdivision (aa) or (bb) shall be held in a separate equal trust for such child in accordance with the provisions of Item SEVENTH hereof.  Each share apportioned for a more remote lineal descendant of LUCIA M. HUGHES shall be distributed to the individual; provided that if there shall then be in existence a trust created under the terms of this Agreement for the benefit of the individual, such individual's share shall be added to the existing trust and

-10-

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

**EXHIBIT 24 - Page 45**

Case # 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

administered and disposed of as if an orig-
inal part thereof.

       (c)   <u>Anna's Share</u>. The share appor-
tioned for Grantor's daughter, ANNA K. MIDDLETON,
("Anna's Share") shall be held in a separate trust to
be administered as follows:

       (i)   Until the expiration of
the term specified in subpart (ii) of this
subparagraph (c), Trustee shall pay to, or
for the benefit of ANNA K. MIDDLETON the an-
nual sum of ONE MILLION DOLLARS ($1,000,000)
in convenient installments, not less fre-
quent than quarterly.  Such distributions
shall be made from principal.  Income shall
be accumulated in a separate income invest-
ment account in convenient installments, not
less frequent than annually.  If at any time
during this term ANNA K. MIDDLETON is not
then living, the aforesaid payments to her
shall cease.

       (ii)   The term of the trust
shall expire on the date that is four years
after the trust term ("the expiration date")
and the remaining assets of the trust shall
continue in trust for the benefit of ANNA K.
MIDDLETON in accordance with the provisions
of Item SIXTH hereof.  In the event ANNA K.
MIDDLETON dies prior to the expiration date,
the remaining assets shall be distributed in
accordance with paragraph 6 of Item SIXTH

-11-

**EXHIBIT 24 - Page 46**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

and the accumulated income shall be distrib-
uted in accordance with paragraph 7 of Item
SIXTH.

FOURTH - <u>JSM Family Trust for John S. Middleton</u>:  The
trust for Grantor's son, JOHN S. MIDDLETON, shall be adminis-
tered under the following terms:

1.   From time to time Trustees may pay to, or
expend for the benefit of, JOHN S. MIDDLETON, as much of the
income and principal of the JSM Family Trust as Trustees, in
Trustees' absolute discretion, shall deem appropriate to provide
for the medical care or support in reasonable comfort of JOHN S.
MIDDLETON.  Any income not so expended in any calendar year
shall be accumulated and added to principal.

2.   In making decisions concerning the invest-
ment and distribution of trust property, Trustees shall consider
JOHN S. MIDDLETON and not Grantor's daughter-in-law, LEIGH
POWERS MIDDLETON, or the issue of JOHN S. MIDDLETON as the pri-
mary beneficiary of the JSM Family Trust.  Trustees may, but
need not, take into consideration other assets readily available
to JOHN S. MIDDLETON (including other inter-vivos or testamen-
tary trusts established for his benefit by Grantor or other fam-
ily members) but shall take into consideration the claims of any
of his creditors.

3.   If the principal and accumulated income of
the JSM Family Trust shall be or become of such value that, in
the judgment of Trustees, it shall be uneconomical or otherwise
inappropriate to set up or continue the JSM Family Trust, Trus-
tees, in Trustees' absolute discretion, may anticipate the



-12-

**EXHIBIT 24 - Page 47**

termination of the JSM Family Trust and distribute the remaining principal and accumulated income to JOHN S. MIDDLETON.

4.    Upon the death of JOHN S. MIDDLETON, the remaining principal of the JSM Family Trust shall be distributed to such person or persons or charitable organizations (excluding JOHN S. MIDDLETON, his creditors, his estate or the creditors of his estate) in such amounts and proportions, for such purposes, absolutely or in trust, as JOHN S. MIDDLETON shall so appoint by specific reference to this power in his will.  To the extent that JOHN S. MIDDLETON does not so exercise this special power of appointment, the remaining principal shall be continued in trust for the benefit of Grantor's daughter-in-law, LEIGH POWERS MIDDLETON, if she is then living, in accordance with the provisions of Item FIFTH hereof, or if she is not then living, the remaining principal shall be divided into as many equal shares as there are children of JOHN S. MIDDLETON then living and children of JOHN S. MIDDLETON then deceased with issue then living, or, if none, shall be distributed to Grantor's then living issue per stirpes.  Each share apportioned for a child of JOHN S. MIDDLETON shall be held in a separate equal trust for such child in accordance with the provisions of Item SEVENTH hereof.  Each share apportioned for the then living issue of a deceased child of JOHN S. MIDDLETON shall be further apportioned among such issue per stirpes, and each share apportioned for an individual among the issue of the deceased child shall be distributed to the individual; provided that if there shall then be in existence a trust created under the terms of this Agreement for the benefit of the individual, such individual's share shall be added to the existing trust and administered and disposed of as if an original part thereof.

-13-

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

**EXHIBIT 24 - Page 48**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

FIFTH - <u>JSM Family Trust for Leigh Powers Middleton</u>:

The trust for Grantor's daughter-in-law, LEIGH POWERS MIDDLETON, if it becomes operative, shall be administered under the following terms:

1.   From time to time Trustee may pay to, or expend for the benefit of, LEIGH POWERS MIDDLETON as much of the income and principal of the JSM Family Trust as Trustee, in Trustee's absolute discretion, shall deem appropriate to provide for the health, support, other need, travel or comfort of LEIGH POWERS MIDDLETON.  Any income not so expended in any calendar year shall be accumulated and added to principal.

2.   In making decisions concerning the investment and distribution of trust property, Trustee shall consider LEIGH POWERS MIDDLETON and not the issue of JOHN S. MIDDLETON as the primary beneficiary of the JSM Family Trust.  Trustee may, but need not, take into consideration other assets readily available to LEIGH POWERS MIDDLETON (including other inter-vivos or testamentary trusts established for her benefit by Grantor or other family members) but shall take into consideration the claims of any of her creditors.

3.   If the principal and accumulated income of the JSM Family Trust shall be or become of such value that, in the judgment of Trustee, it shall be uneconomical or otherwise inappropriate to set up or continue the JSM Family Trust, Trustee, in Trustee's absolute discretion, may anticipate the termination of the JSM Family Trust and distribute the remaining principal and accumulated income to LEIGH POWERS MIDDLETON.

4.   Upon the death of LEIGH POWERS MIDDLETON, the remaining principal of the JSM Family Trust shall be distributed to the descendants of HERBERT H. MIDDLETON, JR. and

-14-

**EXHIBIT 24 - Page 49**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

Grantor or charitable organizations to the extent and in the manner that LEIGH POWERS MIDDLETON shall so appoint by specific reference to this power in her will.  To the extent that LEIGH POWERS MIDDLETON does not so exercise this special power of appointment, the remaining principal shall be divided into as many equal shares as there are children of JOHN S. MIDDLETON then living and children of JOHN S. MIDDLETON then deceased with issue then living, or, if none, shall be distributed to Grantor's then living issue per stirpes.  Each share apportioned for a child of JOHN S. MIDDLETON shall be held in a separate equal trust for such child in accordance with the provisions of Item SEVENTH hereof.  Each share apportioned for the then living issue of a deceased child of JOHN S. MIDDLETON shall be further apportioned among such issue per stirpes, and each share apportioned for an individual among the issue of the deceased child shall be distributed to the individual; provided that if there shall then be in existence a trust created under the terms of this Agreement for the benefit of the individual, such individual's share shall be added to the existing trust and administered and disposed of as if an original part thereof.

SIXTH -- Trust for Anna K. Middleton:  After the expiration date specified in paragraph 1(c)(ii) of Item THIRD, the trust for Grantor's daughter, ANNA K. MIDDLETON, shall be administered under the following terms:

1.    Trustee shall pay to, or expend for the benefit of, ANNA K. MIDDLETON the annual sum of ONE MILLION DOLLARS ($1,000,000) in convenient installments not less frequent than quarterly.  Distributions shall be made from principal.  For purposes of the calendar year in which the

-15-

EXHIBIT 24 - Page 50

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

expiration date falls, the total amount paid to ANNA K. MIDDLETON in accordance with the provisions of paragraph 1(c)(i) of Item THIRD and this paragraph shall not exceed the sum of ONE MILLION DOLLARS ($1,000,000). Income (together with income produced thereon) shall be accumulated in a separate income investment account in convenient installments, not less frequent than annually. In the event the principal of the trust has been exhausted, the aforesaid annual payment (to the extent necessary) shall be made from the income investment account.

2.    In addition, Trustee may make such distributions of principal to, or for the benefit of, ANNA K. MIDDLETON as Trustee, in Trustee's absolute discretion, shall deem appropriate to provide for the health, support, other need, travel or comfort of ANNA K. MIDDLETON. If the principal account has been exhausted, Trustee, in Trustee's absolute discretion, may make distributions from the income investment account for the aforesaid purposes.

3.    On February 15, 2028, Trustee shall distribute any remaining principal to ANNA K. MIDDLETON. Subject to the provisions of paragraph 2 hereof, Trustee shall continue to hold the income investment account (the income from which shall be accumulated).

4.    In making decisions concerning the investment and distribution of trust property, Trustee shall consider ANNA K. MIDDLETON and not Grantor's other issue as the primary beneficiary of the trust. Trustee may, but need not, take into consideration other assets readily available to ANNA K. MIDDLETON (including other inter-vivos or testamentary trusts established for her benefit by Grantor or other family members)

-16-

**EXHIBIT 24 - Page 51**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

or her other special considerations but Trustee shall take into consideration the claims of any of her creditors.

5.    If the principal and accumulated income of the trust shall be or become of such value that, in the judgment of Trustee, it shall be uneconomical or otherwise inappropriate to set up or continue the trust, Trustee, in Trustee's absolute discretion, may anticipate the termination of the trust and distribute the remaining principal and accumulated income to ANNA K. MIDDLETON.

6.    If ANNA K. MIDDLETON dies prior to February 15, 2028, any remaining principal, but not any accumulated income (which shall be distributed pursuant to the terms of paragraph 7 of this Item), shall be distributed as follows:

(a)  To such person or persons (excluding ANNA K. MIDDLETON, the estate of ANNA K. MIDDLETON, creditors of ANNA K. MIDDLETON and creditors of ANNA K. MIDDLETON'S estate) or charitable organizations in such amounts and proportions, for such purposes, and in such manner, absolutely or in trust, as ANNA K. MIDDLETON shall direct and appoint in her will, by specific reference to this power.

(b) To the extent that ANNA K. MIDDLETON does not so exercise this special power of appointment, the remaining principal shall be divided into as many equal shares as there are natural children of ANNA K. MIDDLETON then living and natural children of ANNA K. MIDDLETON then deceased with issue then living. Each share apportioned for a natural child of ANNA K. MIDDLETON shall be held in a separate equal trust for such child in accordance with the

-17-

**EXHIBIT 24 - Page 52**

provisions of Item SEVENTH hereof. Each share appor-
tioned for the then living issue of a deceased natural
child of ANNA K. MIDDLETON shall be further appor-
tioned among such issue per stirpes, and each share
apportioned for an individual among the issue of the
deceased natural child shall be distributed to the
individual; provided that if there shall then be in
existence a trust created under the terms of this
Agreement for the benefit of the individual, such
individual's share shall be added to the existing
trust and administered and disposed of as if an orig-
inal part thereof. In the event ANNA K. MIDDLETON is
not survived by natural issue, the remaining principal
shall be distributed as follows:

(i)   FORTY PERCENT (40%) to the
then living issue per stirpes of JOHN S.
MIDDLETON, if any; otherwise to JOHN S.
MIDDLETON, if living; otherwise to the then
living issue per stirpes of LUCIA M. HUGHES,
if any; otherwise to LUCIA M. HUGHES; and

(ii) SIXTY PERCENT (60%) to the
then living issue per stirpes of LUCIA M.
HUGHES, if any; otherwise to LUCIA M.
HUGHES, if living; otherwise to the then
living issue per stirpes of JOHN S.
MIDDLETON, if any; otherwise to JOHN S.
MIDDLETON.

The share of any beneficiary for whom a
part of the principal hereunder is then being held in
trust under the terms of this Agreement shall be added

-18-

Case #2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50



**EXHIBIT 24 - Page 53**

to such trust and shall be administered and distrib-
uted as if an original part thereof.

7. Upon ANNA K. MIDDLETON'S death on or after the
expiration date, or in the event ANNA K. MIDDLETON dies before
the expiration date, then upon the expiration date, the accumu-
lated income shall be distributed as follows:

(a) FORTY PERCENT (40%) shall be dis-
tributed to ANNA K. MIDDLETON'S natural issue or the
then living issue of JOHN S. MIDDLETON, in such
amounts and proportions, for such purposes, absolutely
or in trust, as ANNA K. MIDDLETON shall so appoint by
specific reference to this power in her will.

(b) SIXTY PERCENT (60%) shall be dis-
tributed to ANNA K. MIDDLETON'S natural issue or the
then living issue of LUCIA M. HUGHES, in such amounts
and proportions, for such purposes, absolutely or in
trusts, as ANNA K. MIDDLETON shall so appoint by spe-
cific reference to this power in her will.

(c) To the extent that ANNA K.
MIDDLETON does not so exercise this special power of
appointment, the accumulated income shall be divided
into as many equal shares as there are natural chil-
dren of ANNA K. MIDDLETON then living and natural
children of ANNA K. MIDDLETON then deceased with issue
then living.  Each share apportioned for a natural
child of ANNA K. MIDDLETON shall be held in a separate
equal trust for such child in accordance with the pro-
visions of Item SEVENTH hereof.  Each share appor-
tioned for the then living issue of a deceased natural
child of ANNA K. MIDDLETON shall be further

-19-

Case 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50



**EXHIBIT 24 - Page 54**

Case 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

apportioned among such issue per stirpes, and each
share apportioned for an individual among the issue of
the deceased natural child shall be distributed to the
individual; provided that if there shall then be in
existence a trust created under the terms of this
Agreement for the benefit of the individual, such
individual's share shall be added to the existing
trust and administered and disposed of as if an orig-
inal part thereof.  In the event ANNA K. MIDDLETON is
not survived by natural issue, the accumulated income
shall be distributed as follows:

    (i)   FORTY PERCENT (40%) to
the then living issue per stirpes of JOHN S.
MIDDLETON, if any; otherwise to JOHN S.
MIDDLETON, if living; otherwise to the then
living issue per stirpes of LUCIA M. HUGHES,
if any; otherwise to LUCIA M. HUGHES; and

    (ii) SIXTY PERCENT (60%) to
the then living issue per stirpes of LUCIA
M. HUGHES, if any; otherwise to LUCIA M.
HUGHES, if living; otherwise to the then
living issue per stirpes of JOHN S.
MIDDLETON, if any; otherwise to JOHN S.
MIDDLETON.

The share of any beneficiary for
whom a part of the principal hereunder is
then being held in trust under the terms of
this Agreement shall be added to such trust
and shall be administered and distributed as
if an original part thereof.

-20-

**EXHIBIT 24 - Page 55**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

SEVENTH -- <u>Grandchildren's Trusts</u>:  Each time Trustee is directed to hold assets in trust for the benefit of a grandchild of Grantor (the "Grandchild"), the assets shall be held in a separate Grandchild's Trust to be administered under the following terms:

1.    The principal of the Grandchild's Trust shall be distributed to the Grandchild, upon written request of the Grandchild to Trustee, in the following manner: Any time after reaching thirty-five (35) years of age, one-third (1/3) of the fair market value of the principal as constituted at the time of the request: any time after reaching forty (40) years of age, one-half (1/2) of the fair market value of the principal as constituted at the time of the request, exclusive of any prior distributable amount; and any time after reaching forty-five (45) years of age, the remaining principal.  In the event the Grandchild shall have reached one or more of these ages prior to the inception of his or her Grandchild's Trust, the Grandchild's Trust shall be valued as of the time of the inception of the trust, and the portion of the principal of the Grandchild's Trust then distributable shall be based on the Grandchild's age then attained.

2.    In addition to the provisions of paragraph 1 for distribution of principal, Trustee may, from time to time, pay from the income and principal of the Grandchild's Trust such amounts to, or for the benefit of, the Grandchild, both before twenty-one (21) years of age and thereafter, as Trustee, in Trustee's absolute discretion, may deem appropriate to provide for the Grandchild's support, education, medical care, other need, travel or comfort, or to provide financing of a business or a profession for the Grandchild, or to make gifts to the

-21-



**EXHIBIT 24 - Page 56**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

grandchild upon the Grandchild's marriage, the birth of chil-
dren, or upon other appropriate occasions, taking into consid-
eration, however, the claims of any creditors of the Grandchild.
Any income not expended in any calendar year shall be accumu-
lated and added to principal.  Furthermore, if at any time,
whether initially or during the continuance of the Grandchild's
Trust, the principal and accumulated income of the trust shall
be or become of such value that, in the judgment of Trustee, it
shall be uneconomical or otherwise inappropriate to set up or
continue the trust, Trustee, in Trustee's absolute discretion,
may anticipate the termination of the Grandchild's Trust and
distribute the remaining principal and accumulated income to the
Grandchild.

       3.    In the event the Grandchild should die be-
fore the entire principal of the Grandchild's Trust has been
distributed or expended, if any portion of the trust assets
would pass in default of the exercise of any power of appoint-
ment granted under the following provisions of this paragraph 3
to a "skip person" as defined in Section 2613 of the I.R.C., and
if a GST would be imposed on the portion so passing at a rate
equal to or higher than the marginal federal estate tax rate
which would be imposed on the Grandchild's estate (assuming that
the assets passing to the skip person were included in the
Grandchild's taxable estate for federal estate tax purposes),
then that portion of the assets of the Grandchild's Trust shall
be distributed to such person or persons, including the Grand-
child's own estate, in such amounts and proportions, for such
purposes, and in such manner, absolutely or in trust, as the
Grandchild shall direct or appoint in his or her will, by spe-
cific reference to this power. The remaining assets of the

-22-

**EXHIBIT 24 - Page 57**

Case # 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

Grandchild's Trust shall be distributed to those members of a class comprised of the Grantor's issue (other than the Grand-child), the spouses of the Grantor's issue, and charitable or-ganizations to the extent and in the manner that the Grandchild shall so appoint by specific reference to this power in his or her will (provided that in the case of an appointment to a spouse, the spouse may receive only an income interest hereun-der).  To the extent that the Grandchild does not so exercise the power or powers of appointment given to him or her hereun-der, the remaining principal shall be distributed to his or her then living issue per stirpes; or, if none, to the then living issue per stirpes of his or her parent who is a child of Grantor; or, if none, to such parent, if living; otherwise to Grantor's then living grandchildren, per stirpes, if any; otherwise to Grantor's then living issue, per stirpes; provided that if there shall then be in existence a trust created under the terms of this Agreement for any beneficiary hereunder, such beneficiary's share shall be added to the existing trust and administered and disposed of as if an original part thereof.

EIGHTH -- Miscellaneous Provisions:  The following miscellaneous provisions shall apply to any trust created here-under:

1.  If any shares of stock in any S corporation or corporations, as referred to in Section 1361 of the I.R.C., are acquired by the Trustee of any trust created hereunder, Trustee shall set aside, following the payment of the final annuity amount to Grantor, such S corporation stock in one or more separate trusts under one of the following two

-23-

EXHIBIT 24 - Page 58

Case #2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

subparagraphs selected by Trustee, in Trustee's absolute discretion:

    (a)  <u>QSST</u>. If the trust from which the S corporation stock was set aside was for the sole benefit of one income beneficiary, and if no interest in income and principal can be paid to anyone other than the income beneficiary during the income beneficiary's lifetime, such stock may be held in a separate trust, to be known as an "S Trust," for such time as Trustee, in Trustee's absolute discretion, shall deem it appropriate to so qualify the trust and until the Internal Revenue Service grants a revocation of the election to so qualify, for the sole benefit of the income beneficiary of the trust during his or her lifetime (the "Beneficiary"), and administered under the terms of this subparagraph (a).

    (i)  All of the net income of the S Trust shall be paid to or applied for the benefit of the Beneficiary in convenient installments at least annually.  If the Beneficiary of the trust is a minor, such income may be distributed to Trustee as guardian of the Beneficiary's property.

    (ii) Any part or all of the principal of the S Trust may, in the absolute discretion of Trustee, be paid to or applied for the benefit of the Beneficiary in such manner, at such intervals and in such amounts as Trustee shall from time to time deem requisite or desirable in provid-

-24-



**EXHIBIT 24 - Page 59**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

ing for the Beneficiary's maintenance, sup-
port, health and education or for any other
worthwhile purpose in Trustee's absolute
discretion, including the purchase of a home
or entering a business or profession.  If
the Beneficiary of any S Trust is subject to
taxation on all or any part of the taxable
income of the S corporation or gain from the
sale of S corporation stock that is not
actually received by the S Beneficiary,
Trustee may, in Trustee's absolute discre-
tion, distribute principal in a sufficient
amount to pay any federal or state income
taxes directly attributable to that income
or gain.

   (iii)  Each S Trust will ter-
minate upon the death of the Beneficiary,
unless previously terminated and the assets
of the S Trust will be administered and dis-
posed of in accordance with the provision of
the trust from which the S corporation stock
was set aside.  Notwithstanding the forego-
ing, if the interest of the Beneficiary has
vested indefeasibly under the provisions of
the controlling law, then the assets of the
S Trust will be distributed to the Benefi-
ciary or his or her estate.

   (iv) Each S Trust created
hereunder is intended to qualify as a "qual-
ified subchapter S trust" as referred to in

-25-

EXHIBIT 24 - Page 60

Case # 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

Section 1361(d)(3) of the I.R.C., and is to be administered so as to qualify as an eligible shareholder of an S corporation under the provisions of that Section or any successor thereto.  The Beneficiary of each S Trust, with the assistance of Trustee, shall make the necessary election to treat the trust as a qualified subchapter S trust with respect to any S corporation shares held in the S Trust.

(b)   ESBT.  Such stock may be held in a separate trust, to be known as an "ESBT Trust" for such time as Trustee, in Trustee's absolute discretion shall deem appropriate to so qualify the trust.  With respect to each ESBT Trust created by Trustee:

(i)   The terms of each ESBT Trust shall be identical to the terms governing the trust from which the S corporation stock was set aside ("the originating trust") except that the class of beneficiaries of the ESBT Trust shall be limited to any one or more individuals or charitable organizations who are members of a class of beneficiaries of the originating trust to be selected and specifically identified (by name or description) by Trustee at the time the ESBT Trust is set aside. Notwithstanding the foregoing, no individual may be selected as a beneficiary from an ESBT (whether a current beneficiary or a

-26-

EXHIBIT 24 - Page 61

future contingent beneficiary) other than (a) an individual who is a citizen or resident of the United States, including persons with a beneficial interest in a distributee trust as defined in IRS Notice 97-49 that is a trust described in I.R.C. Section 1361(c)(20(A); (b) an estate; or (c) a charitable organization.  An individual who is neither a citizen nor a resident of the United States shall be deemed to be deceased for purposes of the ESBT.

(ii) The Trustees shall qualify the ESBT Trust under Section 1361(e) of the I.R.C. as an "electing small business trust" so that the potential current beneficiaries of the trust will be treated as shareholders of the S corporation.

2.   During any time that the GST is in effect and applicable to the trust assets, Grantor intends for each trust created under this Agreement to have an inclusion ratio for purposes of the GST that is either zero ("exempt") or one ("non-exempt").   Notwithstanding any other provision of this Agreement, if any trust created hereunder would, but for the provisions of this paragraph, have an inclusion ratio which is greater than zero but less than one, then prior to the allocation of the transferor's GST exemption the Trustee shall divide the principal thereof into two separate trusts, one of which will be exempt by reason of such allocation and the other of which will be non-exempt. The severance may be carried out in any manner permitted under the applicable Treasury Regulations

-27-

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

EXHIBIT 24 - Page 62

Case 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

issued under Chapter 13 of the I.R.C.  Unless another method of severance is elected by Trustee in writing, the provisions of this paragraph will govern the separate trusts.  Upon receipt of any addition to an existing trust that would otherwise change its inclusion ratio, Trustee shall instead hold such addition as a separate trust.  Except as specifically provided, the separate trusts established by reason of this section shall be identical in all respects. All discretionary or mandatory distributions, including distributions in satisfaction of the exercise of a power of appointment or a power of withdrawal, shall be deter-mined on the basis of the combined value of the identical trusts, but shall be satisfied non-pro rata from the exempt and non-exempt trusts in a manner designed to minimize the current and potential GST incurred.  For example, all payments to a child of Grantor shall, to the extent possible, come from the non-exempt trust.

     3.    For the purposes of this Agreement, any person adopted while a minor shall be treated as though he or she were the natural child of his or her adopting parents, whether the adoption took place before or takes place after the execution of this Agreement.  Notwithstanding the foregoing, this provision shall not apply to children adopted by Grantor's daughter, ANNA K. MIDDLETON.

     4.    Unless sooner terminated by its terms, any trust created hereunder shall terminate on the expiration of the maximum period allowed for valid interests under the rule against perpetuities or similar rule to which such trust shall be subject, and at such time the principal of each separate trust shall vest in and be distributed to the respective then living income beneficiaries of the trust who are members of the

-28-

EXHIBIT 24 - Page 63

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

generation nearest to Grantor per stirpes (i.e., the primary beneficiaries).

5.   In exercising a power of appointment granted to a beneficiary hereunder, any reference to "charitable organizations" shall mean only those organizations described in I.R.C. Sections 170(c)(2), (3), (4) or (5).

NINTH -- <u>Taxes</u>:  If a GST is incurred as a result of a taxable termination (as defined in I.R.C. Section 2612(a)), the GST shall be paid by Trustee from the trust assets subject to the GST as a result of the termination.   For that reason, Grantor directs and authorizes Trustee to pay the GST by withholding such GST before making payment to the beneficiary or by taking such other action as Trustee may deem appropriate to effectuate such payment.

TENTH -- <u>Minimum Age for Distribution</u>:  If under the provisions of this Agreement any principal shall become payable to any beneficiary who has not reached twenty-one (21) years of age, Trustee shall retain such principal in trust, and shall expend as much of the income and principal as Trustee, in Trustee's absolute discretion, may deem appropriate to provide for the support, education, medical care, other need, travel or comfort of such beneficiary.  Any income not so expended shall be accumulated and paid, together with the remaining principal, to the beneficiary upon his or her reaching twenty-one (21) years of age, or to his or her estate if he or she should die before reaching that age.

Notwithstanding the foregoing provisions, if the principal payable to a beneficiary as aforesaid, whether ini-

-29-



**EXHIBIT 24 - Page 64**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

tially or during the continuance of the trust as aforesaid, shall be or become of such value that, in the judgment of Trustee, it shall be uneconomical or otherwise inappropriate to set up or continue the trust, Trustee, in Trustee's absolute discretion, may distribute the principal and accumulated income directly to the beneficiary or to a parent of the beneficiary to be used exclusively for the beneficiary (in which case the receipt of the beneficiary or the parent shall be a full acquittance to Trustee), or deposit such principal and accumulated income in a savings or money market account or certificate of deposit for the beneficiary, with or without restrictions as Trustee may deem appropriate, taking into consideration, however, the claims of any creditors of the respective beneficiary.

ELEVENTH -- <u>No Commutation</u>:  Grantor's interest hereunder shall not be subject to commutation.

TWELFTH -- <u>Power of Substitution</u>:  Notwithstanding anything in this Agreement to the contrary, Grantor reserves the power, exercisable in a non-fiduciary capacity at any time or from time to time until payment to the Grantor of the final annuity amount is made in accordance with the provisions of paragraph 2 of Item SECOND, to withdraw without the approval of any court or Trustee any asset of the Annuity Trust or any trust created from John's Share, Lucia's Share or Anna's Share (as those shares are defined in Item THIRD hereunder) provided Grantor simultaneously substitutes other assets of equivalent value.  This power shall be exercised by written notice to Trustee who shall promptly comply with the notice.  If Grantor exercises this power, Grantor shall certify that the substituted

-30-

**EXHIBIT 24 - Page 65**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

property is of equivalent value to the property for which it is substituted; Trustee may independently verify this certification of value.

THIRTEENTH -- <u>Protective Provision</u>:  All interests hereunder, whether principal or income, while undistributed and in the possession of Trustee or Trustees, and even though vested or distributable, shall not be subject to attachment, execution, or sequestration for any debt, contract, obligation or liability of any beneficiary, and furthermore, shall not be subject to pledge, assignment, conveyance, or anticipation by any beneficiary.

FOURTEENTH - <u>Bradford Holdings, Inc. Stock</u>:  A major asset held hereunder is stock in Bradford Holdings, Inc. ("BHI").  Grantor gives to Trustee or Trustees full discretion as to the retention or sale of any or all of the BHI stock held hereunder without the need for court approval and without regard to any state law requirement of diversification and despite the fact, that such stock may not pay dividends.  Notwithstanding anything in this Agreement to the contrary, during any period in which BHI stock is held by any trust hereunder, no distribution of either income or principal of such trust or transfer of any stock by BHI owned by such trust shall be permitted to the extent such distribution or transfer is prohibited by the Shareholders' Agreement dated November 17, 1982, as amended, among BHI and each of its stockholders.

FIFTEENTH -- <u>Administrative Powers</u>:  Except as may be prohibited hereinabove or by the I.R.C. and the Treasury Regula-

-31-



**EXHIBIT 24 - Page 66**

Case #2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

tions pertaining to qualified annuity interests, Trustee or Trustees shall have the following powers in addition to those otherwise provided herein or by law, to be exercised in Trustee's or Trustees' absolute discretion:

1.   To retain as an investment any asset received in accordance with the terms of this Agreement, without liability, and to invest and reinvest in any kind of property, including common and preferred stocks, common trust funds, mutual investment funds, membership interests in limited liability companies, and real estate, without being restricted to classes of investments prescribed or authorized for trustees by statute or common law of any jurisdiction.

2.   To manage, mortgage, pledge, and to sell or exchange by public or private sale, on any terms, and to lease without limit as to term, any real or personal property, and to enter into binding agreements of sale or give binding options without obligation to repudiate the same in favor of better offers.

3.   To hold any property in the name of a nominee or to hold it unregistered or in such other form as to make title pass by delivery.

4.   To compromise claims, without the necessity of court approval.

5.   To make distributions partially or wholly in kind, and without the necessity of distributing to each beneficiary a pro rata share of each asset.

6.   To vote in person or by proxy all stocks or other securities, and in connection therewith, to delegate discretionary powers; to participate in any reorganization, consolidation, merger, recapitalization or other concerted action of



-32-

EXHIBIT 24 - Page 67

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

security holders of any corporation; to deposit securities under protective agreements or with protective committees; and to receive securities issued as a result of such proceedings.

7.   To apply directly for the needs of any beneficiary, in case of the disability of such beneficiary due to any cause, any income or principal that is payable to such beneficiary.

8.   To engage attorneys-at-law, investment consultants, accountants, brokers, custodians or such other advisors or agents, and such persons shall be compensated currently from the income or principal of the trust.

9.   To reimburse Grantor or the personal representatives of Grantor's estate for any income taxes payable by Grantor or Grantor's estate on trust income not distributed to Grantor, or Grantor's estate.

10.   To hold cash as part of the principal of the trust.

11.   To make loans to any beneficiary hereunder and to determine the terms thereof; and to borrow money from any person (other than Grantor) or institution, to raise money for any purpose; provided, however, that at any time during the trust term as defined in Item FIRST, Trustee shall not use notes, other debt instruments, options or similar financial arrangements that effectively delay receipt of the annuity amount to Grantor.

12.   From time to time, to delegate in writing to a co-fiduciary any discretionary or ministerial powers, for such period of time as may be designated; provided, however, that no power may be delegated to a fiduciary otherwise specifically

-33-



**EXHIBIT 24 - Page 68**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

prohibited under the terms of this trust from exercising such power.

      13.   To divide any trust hereunder at any time into two or more separate trusts to minimize taxation, preserve or make an "S election," make optimal use of the various provisions of the I.R.C. and state law and otherwise to benefit the beneficiaries hereunder.

      14.   To combine any trust created hereunder with any other trust, whether created by Grantor or others, having the same beneficiary and similar terms.

      15.   To change the situs for administrative and accounting purposes of any trust created hereunder to any jurisdiction, without the necessity of court approval.

      16.   To determine which state's laws apply to the administration of any trust created hereunder, without the necessity of court approval.

      17.   To exercise all powers hereunder until final distribution of any trust created hereunder.

      SIXTEENTH -- <u>Business Powers</u>:  With respect to any business interest, whether such business is conducted as a proprietorship, partnership, corporation, or in any other form, held hereunder, Grantor gives to Trustee or Trustees the following additional powers:

      1.   To retain the business interest, without liability for any loss, for such period of time as Trustees, in Trustees' absolute discretion, shall deem appropriate, without regard to whether such business interest is producing income, and notwithstanding any law or provision that might otherwise require diversification of the trust assets.

-34-

**EXHIBIT 24 - Page 69**

Case 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

2.    To continue the business, without liability for any loss, for such period of time as Trustees, in Trustees absolute discretion, shall deem appropriate, and to invest in such business other assets of any trust hereunder.

3.    To direct, control, supervise, manage, and operate the business; to borrow money and pledge the assets of the business, or of any trust hereunder, for any purpose; and to sign binding contracts.

4.    To delegate managerial authority to others, whether by means of employment agreements or other arrangements, and to enter into voting trusts, or grant irrevocable proxies, as Trustees, in Trustees' absolute discretion, shall deem appropriate.

5.    To act as officer, partner, director, manager or employee of the business interest, and to exercise all rights of ownership for the election or appointment of any person, including any Trustee hereunder, as director, officer, manager or a similar position, and Grantor hereby exempts Trustees from the adverse operation of any law or provision that might otherwise prevent Trustees from exercising the powers hereunder by reason of a conflict of interest.

6.    To vote the shares of any business interest conducted as a corporation.

7.    To engage, compensate and discharge such managers, employees, agents, attorneys, accountants, consultants, or other representatives as may be deemed advisable, including anyone who may be a beneficiary or Trustee hereunder, and to delegate authority to such persons.

8.    To organize a corporation, limited liability company, partnership, or any other form of business entity, un-

-35-



**EXHIBIT 24 - Page 70**

Case # 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

der the laws of any state, and to transfer thereto all or any part of the assets of the business or of any trust, and to receive in exchange such shares of stock of one or more classes, such membership interests in a limited liability company, such bonds or other obligations of the corporation, or such interest in the partnership as may be deemed advisable in order effec-tively to carry on the business or a business in a similar or related line of activity.

9.    To sell or liquidate all or any part of the business at such time, for such prices, on such terms, with or without security, and to such persons as Trustees, in Trustees' absolute discretion, shall deem appropriate, notwithstanding any law or provision that might otherwise prohibit such transaction by reason of self-dealing or conflict of interest.

10.    To consent, or decline to consent, to the election of S corporation status as provided in the I.R.C.; and to elect, or to request the revocation of the election, to qualify any trust hereunder as a QSST or as an ESBT as defined in the I.R.C., as provided in the I.R.C.

11.    To amend any trust hereunder to ensure that such trust qualifies or continues to qualify as a QSST or an ESBT, as provided in the I.R.C., as Trustees, in Trustees' ab-solute discretion, shall deem appropriate.

SEVENTEENTH -- <u>Situs</u>:  The situs of this trust shall be the Commonwealth of Pennsylvania, and all questions pertain-ing to the construction and validity of the provisions of this Agreement (other than the provisions of paragraph 1(b) of Item THIRD) shall be governed by the law of that Commonwealth.  All questions pertaining to the construction and validity of the



-36-

**EXHIBIT 24 - Page 71**

Case #: 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

provisions of paragraph 1(b) of Item THIRD shall be governed by the law of North Carolina unless the Trustee makes an alternate choice of law selection under paragraph 16 of Item FIFTEENTH. Notwithstanding the foregoing, Trustee is prohibited from exercising any power granted under the law of the situs state that would be inconsistent with the qualification of the annuity retained by Grantor, as a qualified annuity interest within the meaning of I.R.C. Section 2702(b)(1) or Treas. Reg. Section 25.2702-3(b).

EIGHTEENTH -- <u>Irrevocability</u>:  This Agreement of Trust is expressly stated to be irrevocable and subject to no modification.  Notwithstanding the foregoing, Trustee shall have the power to amend the trust in any manner required to ensure that the annuity interest retained by Grantor qualifies and continues to qualify as a qualified annuity interest within the meaning of I.R.C. Section 2702(b)(1) and Treas. Reg. Section 25.2702-3; provided that each such amendment shall become effective only after providing notice of such amendment to Grantor if Grantor is then living, or to the personal representatives of Grantor's estate if Grantor is not then living.

NINETEENTH -- <u>Trustees</u>:  The following Trustee provisions shall apply:
1.    JOHN S. MIDDLETON shall serve as sole Trustee hereunder until the payment of the final annuity amount to Grantor.  Following the payment of the final annuity amount to Grantor, John S. Middleton shall serve as Trustee of each trust created hereunder except as follows:



-37-

**EXHIBIT 24 - Page 72**

Case 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

(a) Grantor shall serve as Trustee of the trust created for the benefit of Grantor's daughter, ANNA K. MIDDLETON, under paragraph 1(c) of Item THIRD of this Agreement, for a period of not more than two (2) years following the expiration of the "trust term" (as that term is defined in Item FIRST).  Upon the expiration of the two (2) year period or upon such earlier time as Grantor shall cease to serve as Trustee, Grantor directs her daughter, ANNA K. MIDDLETON, to appoint, with the approval of those members of a class comprised of JOHN S. MIDDLETON and LUCIA M. HUGHES who are sui juris at the time of such appointment, an individual other than herself as Trustee of her aforesaid trust.  Furthermore, in the event any vacancy should arise in the position of Trustee of the aforesaid trust, Grantor directs her daughter, ANNA K. MIDDLETON, to appoint a successor Trustee in the same manner.

(b)   THOMAS P. HUGHES shall serve as Trustee of any trust created for the benefit of LUCIA M. HUGHES or a child or more remote lineal descendant of LUCIA M. HUGHES.

2.   Grantor appoints LARRY P. LAUBACH (and each of his successors) as a Special Trustee of the JSM Family Trust hereunder with specific authorization to remove any Trustee of the JSM Family Trust, thereby terminating the services being rendered.  Grantor authorizes LARRY P. LAUBACH (and each of his successors) to appoint his successor as a Special Trustee to exercise the aforesaid authority in the event he shall be or become unable or unwilling to serve.  If despite the foregoing a

-38-

**EXHIBIT 24 - Page 73**

Ctrl# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

vacancy exists in the role of Special Trustee, Grantor autho-
rizes JOHN S. MIDDLETON to appoint a successor Special Trustee
who is a "non-family member" as defined in paragraph 4 below.
In addition, in the event LARRY P. LAUBACH has removed any Trus-
tee of the JSM Family Trust pursuant to the authority granted in
this paragraph, Grantor authorizes JOHN S. MIDDLETON to appoint
a successor Trustee who is a "non-family member" as defined in
paragraph 4 below.  Grantor authorizes JOHN S. MIDDLETON to
appoint a "non-family member" as defined in paragraph 4 below to
succeed to his power to fill any vacancy in the role of Trustee
of the JSM Family Trust that may be created by the Special
Trustee pursuant to this paragraph 2 as well as to fill any
vacancy in the role of Special Trustee in the event the Special
Trustee has not appointed his or her successor.

     3.    Subject to the foregoing, Trustee of each
trust created hereunder is authorized to appoint additional or
successor individual or corporate Trustees.  If more than one
Trustee is serving in the office of Trustee of a trust created
hereunder, the Trustees then serving must act unanimously in the
exercise of these powers, except that any Trustee who is a bene-
ficiary of the affected trust may abstain from the appointment
of a related or subordinate party.  Each such designation shall
be made by a written instrument other than a will, and may be
revoked at any time prior to its becoming effective.

     4.    During any such time that a beneficiary of a
trust created hereunder is serving as sole Trustee of such
trust, Grantor directs Trustee to appoint a non-family member
Co-Trustee whose sole duty and authority shall be to exercise
Trustee's fiduciary authority with respect to trust distribu-
tions and terminations to the extent that the Trustee is pro-

-39-

**EXHIBIT 24 - Page 74**

Case 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

hibited from doing so by reason of paragraph 9 of this Item NINETEENTH. A "non-family member Trustee or Co-Trustee" shall refer to a corporation or an individual who is neither a descendant of Grantor nor married to such a person, nor any person who is a "related or subordinate party" to Trustee as defined in I.R.C. Section 672(c). Notwithstanding the foregoing sentence, an individual who is an "adverse party" to Trustee, as defined in I.R.C. Section 672(a), may also serve as a "non-family member Trustee or Co-Trustee".

5.   The income beneficiary (if there is but one) of any trust created hereunder for the benefit of LUCIA M. HUGHES or one or more of the issue of LUCIA M. HUGHES, shall have the power to remove the corporate Trustee then serving as Trustee of such trust. If there is more than one income beneficiary of such trust, LUCIA M. HUGHES, if she is an income beneficiary of the trust and is competent, otherwise a majority of the then living competent adult income beneficiaries of the trust, shall have the power to remove the corporate Trustee then serving as Trustee of such trust. The removal power granted in this paragraph is subject to the following limitations:

(a)   The power granted in this paragraph shall be exercisable only in a manner designed to protect the best interests of all of the beneficiaries of the affected trust by providing for convenient and effective management and administration of the trust, and not in a manner having the purpose or effect of influencing the Trustee's exercise of discretion with respect to distributions from the trust, whether the Trustee is then serving or will serve at a future time.

-40-

**EXHIBIT 24 - Page 75**

Case # 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

(b)   The removal power granted in this paragraph shall be exercised by the delivery of a signed writing to the Trustee then serving and to the appointee.  Nothing in this Item NINETEENTH should be construed as requiring the corporate Trustee to file any petition or accounting in any court or with any public official as a condition of removal or as requiring the income beneficiary to obtain approval from any court or public official in order to remove the corporate Trustee.

(c)   Upon removal of the corporate Trustee, if LUCIA M. HUGHES is not living and competent, a successor corporate Trustee shall be appointed by the party or parties exercising the removal power (the "appointing parties").  If LUCIA M. HUGHES is living and competent, no successor corporate Trustee shall be required to be appointed.  Any successor corporate Trustee appointed must (i) be a corporation having assets under management of not less than $1,000,000,000 and (ii) be a corporation not related or subordinate to the appointing parties within the meaning of Section 672 of the Code.

6.   If, despite the foregoing provisions of this Item NINETEENTH, there is a vacancy in the position of Trustee of a trust created hereunder other than a trust for the benefit of LUCIA M. HUGHES or a child or more remote lineal descendant of LUCIA M. HUGHES, and if no other provision is made under this Agreement regarding the appointment of a successor Trustee, Grantor appoints BRUCE A. ROSENFIELD as Trustee. If, despite the foregoing provisions of this Item NINETEENTH, there is a vacancy

-41-

EXHIBIT 24 - Page 76

Case # 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

in the position of Trustee of a trust created for the benefit of LUCIA M. HUGHES or a child or more remote lineal descendant of LUCIA M. HUGHES, and if no other provision is made under this Agreement regarding the appointment of a successor Trustee, the competent adult income beneficiary or beneficiaries (by majority vote) of the affected trust shall appoint in writing a successor Trustee. If there are no competent adult income beneficiaries, the appointment shall be made by the income beneficiary or beneficiaries (by majority vote) and each minor or incompetent beneficiary shall be represented by (i) the guardian of the estate of the beneficiary, if any, or, if none, (ii) the beneficiary's attorney-in-fact acting under a durable power of attorney, if any, or, if none, (iii) the natural or legally appointed guardian of the person of the beneficiary.

7.    Each Trustee has the right to renounce and to resign as Trustee by giving thirty days' notice in writing to the successor Trustee, if any, and to all of the adult income beneficiaries of the trust from which Trustee wishes to renounce or resign. Each Trustee is hereby expressly authorized to renounce or resign as Trustee of any trust without filing any petition or accounting in any court or with any public official, and without obtaining any approval from any court or public official.

8.    Trustees designated or appointed pursuant to this Item NINETEENTH shall qualify as such by attaching hereto a written acceptance of the office and thereupon shall undertake all of the obligations and powers assigned to "Trustees" hereunder.

9.    Grantor recognizes that some persons may be hesitant to serve as a Trustee or Special Trustee hereunder be-



-42-

EXHIBIT 24 - Page 77

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

cause of a concern about potential liability. Therefore, with respect to any trust created hereunder: no Trustee or Special Trustee shall incur any liability by reason of any error of judgment, mistake of law, or action of any kind taken or omitted to be taken in connection with the administration of any trust created hereunder if such error or mistake was made or such action was taken or omitted to be taken as a result of the Trustee's or Special Trustee's reasonable belief, made in good faith, that he or she was acting in accordance with the provisions and intent hereof. This release from liability shall expressly not cover any and all matters involving or related to, directly or indirectly, such Trustee's or Special Trustee's willful misconduct or gross negligence (as proved by clear and convincing evidence). In addition, each Trustee or Special Trustee shall be fully indemnified by the respective trust corpus against any claim or demand by any trust beneficiary, except for any claim or demand arising from or based on such Trustee's or Special Trustee's willful misconduct or gross negligence (as proved by clear and convincing evidence). Expenses incurred by a Trustee or Special Trustee in defending any such claim or demand (other than a claim arising from or based on the Trustee's or Special Trustee's willful misconduct or gross negligence) shall be paid by the trust corpus in advance of the final disposition of such claim or demand, upon receipt of an undertaking by or on behalf of such Trustee or Special Trustee to repay such amount if it shall ultimately be determined that such Trustee or Special Trustee is not entitled to be indemnified as authorized hereunder.

10.   No person who at any time is acting as a Trustee or Special Trustee hereunder may (i) authorize discre-

-43-



**EXHIBIT 24 - Page 78**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

tionary distributions that will benefit that Trustee or Special Trustee, including distributions in satisfaction of that Trustee's or Special Trustee's legal obligations, (ii) authorize the discretionary termination of a trust if the termination would result in the distribution of assets to that Trustee or Special Trustee, or (iii) allocate receipts or expenses between principal and income in that Trustee's or Special Trustee's own favor except as provided in the applicable Principal and Income Act.

11.   No Trustee may exercise any fiduciary power to the extent that the power constitutes an "incident of ownership" with respect to any policy of insurance on the life of that Trustee.

12.   Any successor Trustee appointed shall be entitled to compensation for its services as agreed upon in the instrument appointing the successor Trustee.

13.   Each successor Trustee is expressly authorized to assume the duties of Trustee without obtaining approval from any court.  No successor Trustee shall be required to review or audit the accounts and transactions or otherwise to inquire into any act or omission of any predecessor Trustee or to assert any claim against any such predecessor Trustee, and no successor Trustee shall be liable for any acts or omissions of any predecessor Trustee.

14.   No Trustee acting hereunder shall be

-44-

**EXHIBIT 24 - Page 79**

required to give security in any jurisdiction.

   IN WITNESS WHEREOF, FRANCES S. MIDDLETON, Grantor, and
JOHN S. MIDDLETON, Trustee, have hereunto set their hands and
seals the day and year first above written, both parties intend-
ing to be legally bound hereby.

WITNESS:

_Bruc R Quinn_                    _Frances S. Middleton_ (SEAL)
                                  FRANCES S. MIDDLETON, Grantor

_Bruc R Quinn_                    _Jhn S. Middleton_ (SEAL)
                                  JOHN S. MIDDLETON, Trustee

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

-45-

**EXHIBIT 24 - Page 80**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

SCHEDULE A

258,029 shares of Class B, non-voting stock in Bradford
Holdings, Inc., divided into two certificates, B17 (130,174.5
shares) and B103 (127,854.5 shares).  B17 was acquired via the
estate of Herbert H. Middleton, Jr., while B103 was acquired via
ownership in joint tenancy with Herbert H. Middleton, Jr.

*F.S.M.*

GRANTOR RETAINED
ANNUITY TRUST
of
FRANCES S. MIDDLETON

**EXHIBIT 24 - Page 81**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

# EXHIBIT D

EXHIBIT 24 - Page 82

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

# Schnader
### ATTORNEYS AT LAW

1600 MARKET STREET   SUITE 3600
PHILADELPHIA, PA 19103-7213
215.751.2000   FAX 215.751.2205   schnader.com

*Family Settlement*

*Signatures - Fran*
*Anna*

Bruce A. Rosenfield
Direct Dial: 215-751-2080
Direct Fax: 215-972-7267
Internet Address: brosenfield@schnader.com

October 11, 2002

Frances S. Middleton
416 Morris Avenue
Bryn Mawr, PA 19010

Anna K. Middleton
20 Shamrock Lane
Bryn Mawr, PA 19010

John S. Middleton
C/O Larry Laubach, Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103

Re:   **Waiver of Conflict**

Dear Everyone:

Fran and Anna have requested that Schnader Harrison Segal & Lewis LLP represent them in connection with the contemplated family settlement agreement concerning various disputes within the family.

In this regard, you are each aware that in the past we have represented each of you individually in estate planning matters and various trusts of which you are trustees and beneficiaries - - although in this matter John is being represented by Larry Laubach of Cozen O'Connor. As you are further aware, I am a Director of Hunter Service Company, Inc.

The Supreme Court of Pennsylvania has adopted rules of professional conduct as to conflicts of interest which provide as follows:

"Rule 1.7. Conflict of Interest:  General Rule

(a)     A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1)     the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

PHDATAW2:923042

S c h n a d e r   H a r r i s o n   S e g a l   &   L e w i s  LLP

BOSTON, MA   NEW YORK, NY   PHILADELPHIA, PA   PITTSBURGH, PA   SAN FRANCISCO, CA   WASHINGTON, DC
CANONSBURG, PA   CHERRY HILL, NJ   HARRISBURG, PA

**EXHIBIT 24 - Page 83**



-2-

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

        (2)      each client consents after consultation.

(b)     A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

        (1)      the lawyer reasonably believes the representation will not be adversely affected; and

        (2)      the client consents after full disclosure and consultations. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved."

We believe that Rule 1.7 does not preclude us from representing either and both of Fran and Anna in this matter and that the criteria of Rule 1.7 (a) are satisfied, provided that we obtain the consent of each of you. If prior to giving your consent, you have any questions, please call me to discuss them.

We request that each of you execute a copy of this letter in the space provided below. Your execution of this letter acknowledges that you consent to Schnader Harrison Segal & Lewis LLP representation of both Fran and Anna in connection with the contemplated Family Settlement Agreement.

Thank you for your prompt and cooperative action on this matter.

Sincerely,

Bruce A. Rosenfield
For SCHNADER HARRISON SEGAL & LEWIS LLP

ACCEPTED AND AGREED:

_____     _____     _____
Frances S. Middleton            Anna K. Middleton               John S. Middleton

Dated: October 14, 2002      Dated: October ___, 2002      Dated: October ___, 2002

PHDATAW2:923042

Schnader Harrison Segal & Lewis LLP

**EXHIBIT 24 - Page 84**



Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

-2-

> (2)    each client consents after consultation.
>
> (b)    A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
>
> > (1)    the lawyer reasonably believes the representation will not be adversely affected; and
> >
> > (2)    the client consents after full disclosure and consultations. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved."

We believe that Rule 1.7 does not preclude us from representing either and both of Fran and Anna in this matter and that the criteria of Rule 1.7 (a) are satisfied, provided that we obtain the consent of each of you. If prior to giving your consent, you have any questions, please call me to discuss them.

We request that each of you execute a copy of this letter in the space provided below. Your execution of this letter acknowledges that you consent to Schnader Harrison Segal & Lewis LLP representation of both Fran and Anna in connection with the contemplated Family Settlement Agreement.

Thank you for your prompt and cooperative action on this matter.

Sincerely,

Bruce A. Rosenfield
For SCHNADER HARRISON SEGAL & LEWIS LLP

ACCEPTED AND AGREED:

_____        _____        _____
Frances S. Middleton            Anna K. Middleton                John S. Middleton

Dated: October __, 2002         Dated: October __, 2002          Dated: October __, 2002

PHDATAW2:923042

Schnader Harrison Segal & Lewis LLP

**EXHIBIT 24 - Page 85**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

# EXHIBIT E

EXHIBIT 24 - Page 86

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT (the "Agreement") is made and entered into this 20th day of February, 2003, by and among Bradford Holdings, Inc. (the "Corporation"); Frances S. Middleton ("Frances"); John S. Middleton ("John"); Lucia M. Hughes ("Lucia"); Anna K. Middleton ("Anna"); J. Alexander Hughes ("Alexander"); John S. Middleton, Trustee U/A/T 1/18/94 for the benefit of Frances S. Middleton's grandchildren, J. Alexander Hughes, Thomas M. Hughes, John C. Hughes, John P. Middleton and Frances B. Middleton (the "1994 Trust"); Anna K. Middleton, John S. Middleton and Frances S. Middleton, Trustees U/A/T 9/12/94 for the benefit of Anna K. Middleton (the "Anna Trust"); Lucia M. Hughes, Trustee, U/A/T 7/26/96 for the benefit of John P. Middleton and Frances B. Middleton (the "1996 Trust"); Frances S. Middleton, Grantor Retained Trust dated 2/1/01, John S. Middleton, Trustee (the "GRAT"); John S. Middleton, Trustee U/A/T/ 11/18/82 for Frances S. Middleton's children, Lucia M. Hughes, John S. Middleton and Anna K. Middleton (the "1982 Trust," and together with the 1994 Trust, the Anna Trust, the GRAT and the 1996 Trust, the "Trusts"); John S. Middleton, Custodian for Thomas M. Hughes (the "JSM Thomas Custodial Account"); John S. Middleton, Custodian for John C. Hughes (the "JSM John Custodial Account" together with the JSM Thomas Custodial Account, the "JSM Hughes Custodial Accounts"); Lucia M. Hughes, Custodian for Thomas M. Hughes (the "LMH Thomas Custodial Account"); Lucia M. Hughes, Custodian for John C. Hughes (the "LMH John Custodial Account" together with the LMH Thomas Custodial Account, the "LMH Hughes Custodial Accounts"); Lucia M. Hughes, Custodian for John P. Middleton (the "LMH JPM Custodial Account"); Lucia M. Hughes, Custodian for Frances B. Middleton (the "LMH FBM Custodial Account" together with the LMH JPM Custodial Account, the "LMH Middleton Custodial Accounts"); John S. Middleton, Custodian for John P. Middleton (the "JSM JPM Custodial Account"); John S. Middleton, Custodian for Frances B. Middleton (the "JSM FBM Custodial Account," together with the JSM JPM Custodial Account, the "JSM Middleton Custodial Accounts," and together with the JSM Hughes Custodial Accounts, the LMH Hughes Custodial Accounts and the LMH Middleton Custodial Accounts, the "Custodial Accounts"); John P. Middleton ("John P."); Thomas M. Hughes ("TM Hughes"); Leigh P. Middleton, John's wife ("Leigh"); and Thomas P. Hughes, Lucia's husband ("Thomas").

## W I T N E S S E T H:

WHEREAS, the parties to this Agreement (each a "Party" or collectively the "Parties") include all of the stockholders of the Corporation;

WHEREAS, John, Anna and Lucia, together, either as individuals, trustees for or beneficiaries of the Trusts or custodians for the Custodial Accounts, collectively control all of the issued and outstanding shares of Class A Voting Common Stock (the "Class A Stock") and a majority of the issued and outstanding shares of Class B Non-Voting Common Stock (the "Class B Stock") of the Corporation;

WHEREAS, certain disagreements have developed among various Parties and the Parties all believe that it is in their mutual best interests to encourage family harmony among the Parties by entering into this Agreement.

PHILA1\1788486\5 122995.000

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

EXHIBIT 24 - Page 87

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

**NOW, THEREFORE**, in consideration of the foregoing and the mutual promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged, the Parties hereto, intending to be legally bound hereby, agree as follows:

1.   <u>Confirmation of the GRAT</u>.  Each of the Parties agrees and confirms that the GRAT, a copy of which is attached hereto as <u>Exhibit A</u>, reflects the intent of Frances and all beneficiaries of the GRAT.  Each Party shall use his, her or its best efforts and cooperate in good faith in effectuating the terms of the GRAT and in defending the tax treatment of the GRAT.

2.   <u>Subdivision of the 1994 Trust</u>.  Each of the Parties agrees that, effective on the first business day following the Dividend Payment Date (as defined in Section 5 of this Agreement), the 1994 Trust shall be subdivided into five identical but separate trusts pursuant to the terms of a Family Settlement Agreement, in the form attached hereto as <u>Exhibit B</u>, with Alexander as the primary beneficiary of the first trust (the "Alexander 1994 Trust"), TM Hughes as the primary beneficiary of the second trust (the "TM Hughes 1994 Trust"), John C. Hughes as the primary beneficiary of the third trust (the "John C. Hughes 1994 Trust"), John P. as the primary beneficiary of the fourth trust (the "John P. 1994 Trust"), and Frances B. Middleton as the primary beneficiary of the fifth trust (the "Frances B. Middleton 1994 Trust" together with the Alexander 1994 Trust, the TM Hughes 1994 Trust, the John C. Hughes 1994 Trust, and the John P. 1994 Trust, the "1994 Grandchildren Trusts").  Each of the Parties, on behalf of him, her, it, his or her issue, trusts of which he or she is or was a trustee or a beneficiary and any custodial accounts of which he or she is or was a custodian or a beneficiary, agrees to, approves, confirms and ratifies the subdivision of the 1994 Trust, and agrees not to challenge or dispute such subdivision or any actions undertaken by the trustee of the 1994 Trust to effectuate such subdivision.  Immediately after the subdivision of the 1994 Trust (a) John shall execute and deliver to Lucia the Resignations of Trustee and Designations of Successor Trustee, in the forms attached hereto as <u>Exhibits C-1, C-2 and C-3</u>, resigning as trustee of the Alexander 1994 Trust, the TM Hughes 1994 Trust and the John C. Hughes 1994 Trust (collectively, the "Hughes Trusts") and designating Lucia as his successor trustee of the Hughes Trusts, (b) Lucia shall execute and deliver the Acceptances of Designation as Successor Trustee and Refunding Bond, in the forms attached hereto as <u>Exhibits D-1, D-2 and D-3</u>, accepting the designation to serve as successor trustee of each of the Hughes Trusts, and (c) Alexander, individually, TM Hughes, individually, Lucia, both individually and as parent and natural guardian of John C. Hughes, Thomas, both individually and as parent and natural guardian of John C. Hughes, Anna, individually and as parent and natural guardian of one or more potential beneficiaries of the 1994 Trust, and Frances, as a Settlor of the 1994 Trust, shall execute and deliver the Release and Indemnification Agreement, in the form attached hereto as <u>Exhibit E</u>.

3.   <u>Subdivision of the Anna Trust</u>.  Each of the Parties agrees that, effective on the first business day following the Dividend Payment Date, the Anna Trust shall be subdivided into two separate trusts (the "Anna Trust fbo Hughes" and the "Anna Trust fbo Middleton," collectively the "Anna Trusts") pursuant to the terms of a Family Settlement Agreement, in the form attached hereto as <u>Exhibit F</u>.  Each of the Parties, on behalf of him, her, it, his or her issue, trusts of which he or she is or was a trustee or a beneficiary and any custodial accounts of which he or she is or was a custodian or a beneficiary, agrees to, approves, confirms and ratifies the

EXHIBIT 24 - Page 88

subdivision of the Anna Trust, and agrees not to challenge or dispute such subdivision or any actions undertaken by the trustees of the Anna Trust to effectuate such subdivision.

4.  Sale of Class A Stock and Class B Stock.  Each of Lucia, the Anna Trust fbo Hughes, the GRAT, Alexander, the JSM Hughes Custodial Accounts, the LMH Hughes Custodial Accounts and the Hughes Trusts (each, a "Selling Stockholder") agrees to sell, and the Corporation agrees to purchase, all of the Class A Stock and Class B Stock owned by such Selling Stockholder at a price of $288.41 per share of Class A Stock and $275.00 per share of Class B Stock.  On February 28, 2003 (the "Stock Purchase Closing Date"), the Corporation and each respective Selling Stockholder shall execute and deliver a Stock Purchase Agreement in the respective forms attached hereto as Exhibits G-1, G-2, G-3, G-4, G-5, G-6, G-7, G-8, G-9, G-10, or G-11 (collectively, the "Stock Purchase Agreements"), with respect to such Selling Stockholder's Class A Stock and Class B Stock.  Lucia agrees that, when she becomes the successor trustee of the Hughes Trusts, she and the Hughes Trusts shall be bound by all of the provisions of this Agreement, including without limitation, the sale of the Class B Stock owned by the Hughes Trusts.  Thomas agrees that, when he becomes the custodian of the JSM Hughes Custodial Accounts, he and the JSM Hughes Custodial Accounts shall be bound by all of the provisions of this Agreement, including without limitation, the sale of the Class B Stock owned by the JSM Hughes Custodial Accounts.  The Parties agree that it is their intent that the purchases of stock pursuant to this Section 4 and the Stock Purchase Agreements will result in capital gains treatment pursuant to Section 302(b)(2) of the Internal Revenue Code of 1986, as amended (the "Code") or with respect to the sale of the stock owned by the GRAT, pursuant to Section 302(b)(3) of the Code.  Each of the Parties, on behalf of him, her, it, his or her issue, trusts of which he or she is or was a trustee or a beneficiary and any custodial accounts of which he or she is or was a custodian or a beneficiary, agrees to, approves, confirms and ratifies each such sale of the Class A and Class B Stock at the indicated price, and agrees not to challenge or dispute each such sale at the indicated price or any actions undertaken by the Corporation or each such Selling Stockholder to effectuate each such sale.  Each of the Parties hereby waives compliance with the provisions of the Shareholders' Agreement dated November 17, 1982, as amended, among the Corporation and each of its stockholders in connection with the sales of the stock pursuant to this Section 4 and the Stock Purchase Agreements and agrees that such Shareholders' Agreement does not apply to such sales.

5.  Declaration and Payment of Dividend.  By no later than February 24, 2003, the Corporation shall declare and pay (the date on which such dividend is paid shall be referred to herein as the "Dividend Payment Date") an aggregate dividend of $54,410,000.  Such dividend shall be payable pro rata to each stockholder of record of the Corporation as of the Dividend Payment Date in accordance with their aggregate holdings of Class A Stock and Class B Stock as of such date.  Such dividend, together with other dividends previously paid by the Corporation, are sufficient to pay any unpaid income tax liabilities payable by each Selling Stockholder on the income of the Corporation (as estimated by the Corporation and Ernst & Young) allocable to each Selling Stockholder through the Stock Purchase Closing Date.

6.  Bradford Matters.  As of the Stock Purchase Closing Date, all rights that the Selling Stockholders are or were entitled to as a stockholder of the Corporation shall cease, and except for the right to receive payment for their Class A Stock and Class B Stock pursuant to the terms of their respective Stock Purchase Agreements and as provided for in Sections 5 and 20

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

PHILA1\1788486\5 122995.000                    3

**EXHIBIT 24 - Page 89**

and the next sentence, no Selling Stockholder shall be entitled to receive payment of dividends or other distributions on his, her or its Class A Stock or Class B Stock, have any input into the operation, management or any other matters pertaining to the Corporation or receive any information pertaining to the Corporation. Until all the promissory notes of the Corporation executed pursuant to the Stock Purchase Agreements (the "Notes") are paid in full, the Corporation shall not take any of the following actions if the representative of the payee of any such outstanding Note objects in writing to such action within five (5) business days after the Corporation gives written notice of such action to such representative:  (a) conduct its business other than in the ordinary course (and ordinary course shall include the renovation of hotels owned by any subsidiary of the Corporation, the purchase of limited partnership interests of The Phillies upon the death of an individual limited partner or a principal or related principal of an entity that is a limited partner of The Phillies pursuant to the provisions of the agreement of limited partnership of The Phillies and the performance of any other obligations of the Corporation or its subsidiaries existing on the date of this Agreement); (b) sell any single asset, the selling price of which exceeds $1,000,000, unless the net proceeds of such sale are applied to the prepayment of the then outstanding Notes; (c) purchase any single asset, other than in the ordinary course of business, the purchase price of which exceeds $1,000,000; (d) merge with or into another entity if immediately after such merger John and his family or trusts for the benefit of his family own less than a majority of the outstanding voting stock of the entity surviving such merger; (e) sell all or substantially all of its assets, unless the net proceeds of such sale are applied to the prepayment of the then outstanding Notes; (f) adopt any amendment to its Certificate of Incorporation or Bylaws that would have a material adverse effect on the repayment of the Notes; or (g) pay aggregate salaries to the executive officers of the Corporation and its subsidiaries, as a group, that exceed 110 percent of the aggregate salaries of such officers as a group in effect on December 31, 2002 or pay bonuses to such executive officers that are not consistent with past practice.  The representative for the Notes issued to the Anna Trust fbo Hughes shall be Anna and for all the other Notes shall be Lucia.

   7. <u>Division of the Estate of Frances</u>. Frances shall execute, promptly following the execution of this Agreement, and maintain such legal documents and arrangements, including but not limited to a will, any one or more trust agreements, beneficiary designations, and ownership arrangements, such that upon her death, her Estate (as herein defined) passes in accordance with the following requirements:

     (a) No more than $1,000,000, not reduced by any death taxes, of her Estate may pass to individuals other than her issue.

     (b) After satisfying the provisions of Section 7(a), if Frances receives additional annuity payments from the GRAT at any time on or after April 1, 2003, then she shall be obligated to provide for an amount of her Estate equal in value to the total of such additional payments, not reduced by any death taxes, to be divided into three equal shares, one such share to pass to John, one such share to pass to Lucia and one such share to pass to Anna. Each child's share shall pass proportionately to the same trusts or individuals then holding the remaining assets of that child's share of the GRAT set aside under Item THIRD of the GRAT Agreement, taking into account any effective intervening exercise of any power of appointment granted under the GRAT Agreement.  Notwithstanding the provisions of the preceding sentence, no distribution of assets shall be made to a trust or individual to the extent the distribution would

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

**EXHIBIT 24 - Page 90**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

trigger generation-skipping transfer tax. Any death tax attributable to the amount described in this Section 7(b) shall not be charged against that amount, but instead shall be paid out of the remaining assets of Frances' Estate other than any amounts passing to individuals in accordance with Section 7(a). Notwithstanding the foregoing provisions of this Section 7(b), Frances may satisfy any part or all of her obligations under this Section 7(b) by lifetime transfers to the trusts or individuals described herein.

(c)     After satisfying the provisions of Section 7(a), if desired, and Section 7(b), as required, Frances may provide for any part or all of her remaining Estate to pass to any one or more charitable organizations or private foundations of her choice or creation.

(d)     After satisfying the foregoing provisions of this Section 7, Frances shall provide for the remainder of her Estate, if any, to be divided into a sufficient number of equal shares to provide one share for each of her then living children, and one share for the then living issue, collectively, of any deceased child. Each child's share, and each share for the issue of a deceased child, may be distributed to or among that child and his or her issue in any manner and subject to such terms and conditions as Frances chooses; provided, however, that if any share is distributed in trust, then any provisions dealing with the distribution of the trust assets upon failure of the child's issue must provide for the remaining trust assets to be divided equally between the other two children and/or their respective issue. Any generation-skipping transfer tax attributable to any portion of the amount described in this Section 7(d) shall be charged against and paid by the assets generating that tax.

(e)     Frances shall have the absolute right, in her sole discretion, (which may be exercised differently among the various beneficiaries), to determine whether amounts passing in accordance with the provisions of this Section 7 shall be distributed outright or in trust.

(f)     For purposes of this Section 7, the term "Estate" shall mean all assets owned by Frances at the time of her death or passing subject to a testamentary power of disposition retained by Frances, all assets held by Frances in joint tenancy with right of survivorship (but only to the extent that Frances contributed such assets to the joint tenancy), all assets held in any trust over which Frances holds either a right of revocation, a right of amendment, or a power of appointment, and all assets held in any trust or other arrangement whereby Frances retains an income interest or other beneficial interest for life, including, but not limited to any charitable remainder trust established by Frances.

(g)     For purposes of this Section 7, a reference to the "issue" shall not include any individual adopted by Anna or the issue of any such individual adopted by Anna, but may include individuals adopted by any of Frances' grandchildren (other than adopted children of Anna) or their issue, provided the adoption is final prior to the adoptee's attainment of age eighteen.

8.     The Anna Trust. By no later than December 31, 2003 (or if John has not received by December 31, 2003 the Release and Indemnification Agreement referred to in this Section 8 executed by all parties, then John agrees to resign within thirty (30) days after John receives such executed Release and Indemnification Agreement), (a) John shall execute and deliver to the trustees of the Anna Trusts Resignations of Trustee and Designations of Successor Trustees, in

PHILA1\1788486\5 122995.000                5

**EXHIBIT 24 - Page 91**

the forms attached hereto as <u>Exhibits H-1 and H-2</u>, in which John resigns as a trustee of the Anna Trusts and designates a person agreeable to Anna as his successor trustee of the Anna Trusts and (b) the person or entity designated as the successor trustee shall execute and deliver to the trustees of the Anna Trusts the Acceptances of Designation as Successor Trustee and Refunding Bond, in the forms attached hereto as <u>Exhibits I-1 and I-2</u>, accepting the designation to serve as successor trustee of the Anna Trust fbo Hughes and the Anna Trust fbo Middleton.  Such resignation by John shall be effective upon John's receipt of the Release and Indemnification Agreement, in the form attached hereto as <u>Exhibit J</u>, executed by Anna, individually and as Settlor, Trustee, income beneficiary and parent and natural guardian of one or more potential beneficiaries of the Anna Trust; Frances; individually and as Trustee; John, individually and as Trustee; John P.; Leigh; individually and as parent and natural guardian of Frances B Middleton; Lucia, individually and as parent and natural guardian of John C. Hughes; Thomas, individually and as parent and natural guardian of John C. Hughes; Alexander; and TM Hughes.

        9.    <u>The 1996 Trust</u>.  Effective on the first business day following the Stock Purchase Closing Date, (a) Lucia shall execute and deliver to Larry P. Laubach a Resignation of Trustee and Designation of Successor Trustee, in the form attached hereto as <u>Exhibit K</u>, resigning as trustee of the 1996 Trust and designating Larry P. Laubach as her successor trustee of the 1996 Trust, (b) Larry P. Laubach shall execute and deliver the Acceptance of Designation as Successor Trustee and Refunding Bond, in the form attached hereto as <u>Exhibit L</u>, accepting the designation to serve as successor trustee of the 1996 Trust, and (c) John, individually and as parent and natural guardian of Frances B. Middleton, Leigh, individually and as parent and natural guardian of Frances B Middleton, and John P., individually, shall execute and deliver the Release and Indemnification Agreement, in the form attached hereto as <u>Exhibit M</u>.

        10.    <u>The JSM Hughes Custodial Accounts</u>.  Prior to the Dividend Payment Date, (a) John shall execute and deliver to the Corporation a Designation of Successor Custodian and Resignation of Custodian, in the form attached hereto as <u>Exhibit N</u>, resigning as custodian of each of the JSM Hughes Custodial Accounts and appointing Thomas as successor custodian of each of the JSM Hughes Custodial Accounts, and stock powers transferring the Class B Stock owned by each JSM Hughes Custodial Account to Thomas as custodian for such JSM Hughes Custodial Account, (b) Thomas shall execute and deliver to the Corporation an Acceptance of Appointment as Successor Custodian and Refunding Bond, in the form attached hereto as <u>Exhibit O</u>, and (c) Alexander, individually, TM Hughes, individually, Lucia, individually and as parent and natural guardian of John C. Hughes, and Thomas, individually and as parent and natural guardian of John C. Hughes, shall execute and deliver a Release and Indemnification Agreement, in the form attached hereto as <u>Exhibit P</u>.

        11.    <u>The LMH Middleton Custodial Accounts</u>.  Effective on the first business day following the Stock Purchase Closing Date, (a) Lucia shall execute and deliver to the Corporation a Designation of Successor Custodian and Resignation of Custodian, in the form attached hereto as <u>Exhibit Q</u>, resigning as custodian of each of the LMH Middleton Custodial Accounts and appointing Larry P. Laubach as her successor custodian of each of the LMH Middleton Custodial Accounts, and stock powers transferring the Class B Stock owned by each LMH Middleton Custodial Account to Larry P. Laubach as custodian for such LMH Middleton Custodian Account, (b) Larry P. Laubach shall execute and deliver to the Corporation an Acceptance of Appointment as Successor Custodian and Refunding Bond, in the form attached

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

**EXHIBIT 24 - Page 92**

hereto as <u>Exhibit R</u>, and (c) John, individually and as parent and natural guardian of Frances B. Middleton, Leigh, individually and as parent and natural guardian of Frances B. Middleton, and John P., individually, shall execute and deliver a Release and Indemnification Agreement, in the form attached hereto as <u>Exhibit S</u>.

      12.    <u>The GRAT</u>. On the first business day following the Stock Purchase Closing Date, Frances, individually and as a Settlor and Trustee of the trust created for the benefit of Anna K. Middleton under paragraph 1(c) of Item THIRD of the GRAT, Anna, individually and as parent and natural guardian of one or more potential beneficiaries of the GRAT, Alexander, individually, TM Hughes, individually, John P., individually, Leigh, individually and as parent and natural guardian of Frances B. Middleton, John, individually and as Trustee of the GRAT and of the JSM Family Trust created under paragraph 1(a) of Item THIRD of the GRAT, Lucia, individually and as parent and natural guardian of John C. Hughes, and Thomas, individually and as Trustee of the Hughes Family Trust created under paragraph 1(b) of Item THIRD of the GRAT and as parent and natural guardian of John C. Hughes, shall execute and deliver to John a Release and Indemnification Agreement, in the form attached hereto as <u>Exhibit T</u>.

      13.    <u>GST Exemption</u>. Frances agrees that any GST exemption currently available to her (including any additional GST exemption to which Frances becomes entitled) will be allocated equally between transfers to John's and Lucia's families. Within forty-five (45) days after the date of this Agreement, Frances will file a gift tax return allocating Lucia's share of Frances' remaining GST exemption, if any, to the Hughes Family Trust created under the GRAT and allocating John's share of Frances' remaining GST exemption, if any, to the JSM Family Trust created under the GRAT. Within forty-five (45) days after any additional GST exemption is made available to Frances in the future, Frances, if living, or otherwise the personal representative of her estate, will file an appropriate return allocating Lucia's share of the additional GST exemption available to Frances to the Hughes Family Trust, if in existence, and allocating John's share of the additional GST exemption available to Frances to the JSM Family Trust, if in existence. If the Hughes Family Trust is no longer in existence, then Lucia's share of the additional GST exemption shall be allocated as directed by Thomas, if living, otherwise by Lucia, if living, otherwise as directed by the then serving trustee(s) of any trust or trusts established upon termination of the Hughes Family Trust whether through the exercise of a power of appointment, or otherwise, such direction to be given by such trustees jointly if more than one such trust is then in existence. If the JSM Family Trust is no longer in existence, then John's share of the additional GST exemption shall be allocated as directed by the then serving trustee(s) of any trust or trusts established (or receiving distributions) upon termination of the JSM Family Trust whether through the exercise of a power of appointment, or otherwise, such direction to be given by such Trustees jointly if more than one such trust is then in existence.

      14.    <u>Waiver of Family Attribution</u>. Frances shall waive any family attribution in the application of Section 302(b)(3) of the Code for the Corporation's purchase of the Class B Stock owned by the GRAT pursuant to Section 4 in accordance with the provisions of Section 302(c) of the Code and applicable Treasury regulations promulgated thereunder, including Regulation Section 1.302-4, and shall execute and deliver to the Corporation the agreements necessary or advisable in connection with such waiver and shall attach such agreements to her 2003 Federal and state income tax returns.

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

**EXHIBIT 24 - Page 93**

15.    Tax Matters.

(a)    Each of the Parties who is a stockholder of the Corporation agrees to execute and deliver to the Corporation a consent of stockholders, in the form attached hereto as Exhibit U, electing under Section 1377(a)(2) of the Code and any other applicable provisions of law, including comparable state and local provisions, to close the books of the Corporation and treat the taxable year of the Corporation as if it consisted of two taxable years, the first ending as of the Stock Purchase Closing Date.

(b)    If the Corporation determines that the S corporation election of the Corporation may have been inadvertently invalid or inadvertently terminated on or prior to the Stock Purchase Closing Date, each Selling Stockholder agrees to take such steps (including executing any required documents) and make such adjustments, as may be required by the Internal Revenue Service pursuant to Section 1362(f)(3) and (4) of the Code, to grant a waiver of such inadvertent invalid or terminated S election.

(c)    If there is any income tax due that was not previously paid or any refund of income tax that was not previously paid or credited with respect to any composite income tax return filed by the Corporation attributable to a period during which a Selling Stockholder is a stockholder of the Corporation, each Selling Stockholder shall reimburse the Corporation promptly following notice for such income tax that relates to such Selling Stockholder, and the Corporation shall promptly pay to each Selling Stockholder any income tax refund received that relates to such Selling Stockholder's taxes.

16.    Representations and Warranties.

(a)    The Corporation represents and warrants to each of the other Parties as follows:

(i)    The Corporation is a corporation duly organized, validly existing and in good standing under the laws of the state of Delaware.  The Corporation has the corporate power and authority to enter into this Agreement and to consummate the transactions contemplated hereby.

(ii)    This Agreement has been duly and validly executed and delivered by the Corporation and constitutes a valid and binding obligation of the Corporation, enforceable against the Corporation in accordance with its terms.

(iii)    The execution and delivery by the Corporation of this Agreement, the promissory notes issued pursuant to the Stock Purchase Agreements and the consummation of the transactions contemplated hereby have been duly and validly authorized by all necessary corporate action on the part of the Corporation.

(b)    Each of the Parties other than the Corporation represents and warrants to the Corporation and the other Parties as follows:

(i)    He, she or it has the requisite power and authority to enter into this Agreement and to consummate the transactions contemplated hereby.

PHILA1\1788486\5 122995.000                    8

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

**EXHIBIT 24 - Page 94**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

(ii)    He or she or it has the legal capacity to execute, deliver and perform its obligations under this Agreement and to the extent such Party is not an individual, such Party is duly and validly authorized to execute this Agreement.

(iii)    This Agreement has been duly and validly executed and delivered by such Party and constitutes a valid and binding obligation of such Party, enforceable against such Party in accordance with its terms.

17.    Confidentiality.  Each of the Parties agrees that all information that such Party has received prior to the date hereof or receives after the date hereof, whether in oral, written or other tangible form, relating or pertaining to the Corporation or any of its subsidiaries (collectively, the "Company"), any of their Class A Stock and/or Class B Stock or stockholders or this Agreement, including, but not limited to, the terms of this Agreement, any disagreements between the Parties leading to the execution of this Agreement, any actions taken to resolve the disagreements between the Parties, any appraisal reports, any tax returns of the Corporation or any Form K-1s, shall constitute confidential information of the Corporation and shall be governed by the existing Confidentiality Agreements (including without limitation the Confidentiality Agreement dated December 17, 2002, between Anna and the Corporation and the Confidentiality Agreement dated September 3, 2002, among Lucia, Thomas and the Corporation) between the Corporation and each Party.  For purposes of this Section 17, any references to "Party" or "Parties" shall not include the Corporation.

18.    General Releases.  Each of the Parties hereto, for such Party and, with respect to the Corporation only, for its predecessors, successors, affiliates, subsidiaries, assigns, directors, officers, agents and employees (including predecessors, successors, affiliates, assigns, directors, officers, agents and employees of the subsidiaries of the Corporation), and, with respect to all other Parties, for the trustees, beneficiaries of any trusts and custodial accounts, custodians, children, successors, assigns, heirs, executors and administrators of all or any of the above (collectively, the "Party Releasors") hereby releases, remises, forever discharges and agrees not to sue (other than a lawsuit to interpret any provision of this Agreement) the other Parties hereto and, for the Corporation only, the Corporation's predecessors, successors, affiliates, subsidiaries, assigns, directors, officers, agents and employees (including predecessors, successors, affiliates, assigns, directors, officers, agents and employees of the subsidiaries of the Corporation), and, with respect to all other Parties, the trustees, beneficiaries of any trusts and custodial accounts, custodians, children, successors, assigns, heirs, executors and administrators of all or any of the above (collectively, the "Party Releasees"), of and from any and all manner of actions, causes of actions, suits, sums of money, debts, bonds, covenants, contracts, controversies, agreements, judgments, plans, promises, damages, losses, liabilities, claims and demands whatsoever, in law or at equity, known or unknown, including but not limited to, those arising from or related to (i) the GRAT, (ii) the subdivision of the 1994 Trust or the Anna Trust, (iii) the subdivision of the assets of the 1994 Trust or the Anna Trust, including without limitation, all shares of Class B Stock owned by the 1994 Trust and all shares of Class A Stock and Class B Stock owned by the Anna Trust, (iv) the Corporation's purchase of the Class A Stock and Class B Stock at the purchase prices set forth in Section 4 of this Agreement, (v) self dealing or breach of any other legal or fiduciary obligation of any of the trustees or custodians of the Trusts or Custodial Accounts in connection with the administration or operation of any Trust or Custodial Account or the Corporation's purchase of the Class A Stock and Class B Stock provided in Section 4 of

**EXHIBIT 24 - Page 95**

this Agreement, (vi) the operation or management of the Corporation or any other matters pertaining to the Corporation, which against the Party Releasees such Party Releasors or any of them ever had, now have, or which such Party Releasors or any of them, can, shall or may have, for, upon or by reason of any cause, matter or thing whatsoever, from the beginning of the world up to and including the Stock Purchase Closing Date, except for those that may arise out of any breach or violation of this Agreement (including without limitation the representations and warranties in Section 16 hereof) or any Stock Purchase Agreement.

       19.    <u>Indemnification by the Parties.</u>

       (a)    Each Party hereto (the "Indemnifying Party") agrees to indemnify and hold harmless each other Party hereto from and against any and all damages, liabilities, losses, costs or deficiencies (including, but not limited to, costs of settlement, attorneys' fees and other costs and expenses incident to proceedings, investigations, preparations or the defense of any claim) (herein a "Loss") arising out of, resulting from or relating to, and shall pay the other Parties on demand the full amount of any Loss which the other Parties are or become obligated to pay or suffer on account of (i) any inaccuracy in any representation or the breach of any warranty of the Indemnifying Party, the spouse of the Indemnifying Party or the issue (including adopted persons) of the Indemnifying Party, (ii) the Indemnifying Party, the spouse of the Indemnifying Party or the issue (including adopted persons) of the Indemnifying Party contesting or challenging any term or provision of this Agreement, any Stock Purchase Agreement or any other document or agreement executed pursuant to or in connection with this Agreement or its exhibits or any other transaction contemplated hereby, including without limitation, the subdivision of the 1994 Trust or the Anna Trust or the subdivision of the assets of the 1994 Trust or the Anna Trust, including without limitation, all shares of Class B Stock owned by the 1994 Trust and all shares of Class A Stock and Class B Stock owned by the Anna Trust, or (iii) any failure of the Indemnifying Party, the spouse of the Indemnifying Party or the issue (including adopted persons) of the Indemnifying Party to perform, comply with or observe any term, provision, covenant or agreement to be performed or observed by the Indemnifying Party pursuant to this Agreement. Notwithstanding anything to the contrary contained in this Section 19, (x) Frances shall not be obligated to indemnify or hold harmless any other Party with respect to actions or inactions of her issue, (y) Thomas' individual liability pursuant to this Section 19 shall be limited in the case of claims by Lucia, Alexander or TM Hughes to assets which he owns jointly with Lucia and individual assets which he received at any time, directly or indirectly, from assets paid or payable to or for the benefit of Lucia as a result of the transactions referred to in or contemplated by this Agreement or any Exhibit hereto, and (z) Leigh's individual liability pursuant to this Section 19 shall be limited in the case of claims by John or John P. to assets which she owns jointly with John and individual assets which she received at any time, directly or indirectly, from assets paid or payable to or for the benefit of John as a result of the transactions referred to in or contemplated by this Agreement or any Exhibit hereto.

       (b)    The Party seeking indemnification pursuant to this Section 19 must notify the Indemnifying Party in accordance with the provisions of Section 28 within forty-five (45) business days after the assertion in writing of any claim against the Party seeking indemnification under this Section 19. The failure of such Party to so notify the Indemnifying Party will relieve the Indemnifying Party from any liability under this Agreement to the Party seeking indemnification with respect to such claim.

PHILA1\1788486\5 122995.000

10

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

**EXHIBIT 24 - Page 96**

20.   Review of Form K-1s.   Notwithstanding anything in this Agreement to the contrary, in order to prepare the income tax returns of Lucia and her family, Lucia's personal accountant will be permitted to review the 2002 and 2003 Form K-1s associated with Lucia and her family that are filed as attachments to the Corporation's federal and state income tax returns. Prior to the disclosure of the 2002 and 2003 Form K-1s to Lucia's personal accountant, such accountant must have executed the Representative Confidentiality Agreement in the form attached hereto as Exhibit V, and such Representative Confidentiality Agreement must have been delivered by Lucia to the Corporation.  Upon receipt of appropriate documentation therefor, the Corporation shall reimburse Lucia for the reasonable cost of Lucia's personal accountant in reviewing and addressing questions related to such K-1s, but not to exceed $5,000 in the aggregate.

21.   Entire Agreement.  This Agreement, including the Stock Purchase Agreements, the Notes and all other exhibits hereto, constitutes the entire understanding and agreement of the Parties hereto with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements and understandings, inducements or conditions, express or implied, oral or written.

22.   Waiver.  Except as otherwise specifically provided in this Agreement, neither the failure nor any delay on the part of any Party to exercise any right, remedy, power or privilege under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power or privilege preclude any other or further exercise of the same or of any other right, remedy, power or privilege, nor shall any waiver of any right, remedy, power or privilege with respect to any occurrence be construed as a waiver of such right, remedy, power or privilege with respect to any other occurrence.  No waiver shall be effective unless it is in writing and is signed by the Party asserted to have granted such waiver.

23.   Amendments.  No change, amendment or modification of any of the provisions of this Agreement shall be binding upon any Party hereto unless set forth in a writing signed by all the Parties hereto.

24.   Binding Agreement.  This Agreement shall be binding upon and inure to the benefit of the Parties hereto, their heirs, legal representatives, successors and assigns, including without limitation, the estate of Frances with respect to Section 7 hereof and the estate of Anna with respect to the ultimate distribution of the Anna Trusts.

25.   Governing Law; Consent to Jurisdiction.  This Agreement and all questions relating to its validity, interpretation, performance and enforcement (including, without limitation, provisions concerning limitations of actions) shall be governed by and construed under the laws of the Commonwealth of Pennsylvania, notwithstanding any conflict of laws doctrines of such state or any other jurisdiction to the contrary and without the aid of any canon, custom or rule of law requiring construction against the draftsman and notwithstanding the fact that one or more of the Parties to this Agreement is now or may become a resident or citizen of a different state or country.  Each of the Parties hereto hereby irrevocably and unconditionally consents to the exclusive jurisdiction of the courts of the Commonwealth of Pennsylvania, Montgomery County and of the United States of America located in the Eastern District of Pennsylvania (the "Pennsylvania Courts") for any litigation arising out of or relating to this

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

EXHIBIT 24 - Page 97

Agreement, waive any objection to the laying of venue of any such litigation in the Pennsylvania Courts and agree not to plead or claim in any Pennsylvania Court that such litigation brought therein has been brought in an inconvenient forum. Before any Party may bring suit against another Party, each such Party must attempt to settle such dispute by negotiation for at least 90 days after one Party gives the other Party written notice of such dispute.

26. <u>Representation by Counsel</u>. Each of the Parties hereto acknowledges and agrees that Cozen O'Connor ("Cozen") has represented John and the Corporation in connection with the negotiation and preparation of this Agreement and has not represented any other Party to this Agreement in connection with the preparation of this Agreement. Each of the Parties other than John and the Corporation acknowledges and agrees that he or she has had the opportunity to consult his or her own counsel in connection with this Agreement and is not looking to Cozen for legal representation in connection with this Agreement and is looking solely to his or her counsel, if any, for legal representation in connection with this Agreement.

27. <u>Severability</u>. If any provisions of this Agreement shall be determined to be illegal or unenforceable by any court of law, the remaining provisions shall be severable and enforceable in accordance with their terms.

28. <u>Notices</u>. Any notices or communications hereunder given or required to be given under this Agreement shall be in writing and be deemed delivered (a) upon receipt, if by hand delivery, (b) upon receipt, if sent by facsimile with confirmation of receipt, (c) the next business day, if sent by nationally recognized overnight delivery, or (d) on the fifth day following deposit in the United States mail, if sent by certified mail, postage prepaid, return receipt requested, in each case addressed to the Party to whom such notice or communication is to be sent at such Party's respective address as it appears on <u>Exhibit W</u> attached hereto. Any Party may alter the address or fax number to which such communications are to be sent by giving notice of such change in conformity with the provisions of this Section 28 for the giving of notice.

29. <u>Headings</u>. The headings of the various sections herein are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

30. <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original as against any Party whose signature appears thereon, and all of which shall together constitute one and the same instrument. This Agreement shall become binding when one (1) or more counterparts hereof, individually or taken together, shall bear the signatures of all of the Parties reflected hereon as the signatories.

31. <u>No Admission</u>. Nothing in this Agreement shall be deemed or construed to be an admission of any liability, and each of the Parties hereto expressly denies the same. Each of the Parties hereto further agrees and acknowledges that neither this Agreement nor the terms hereof shall be offered in evidence in any action or proceeding for any purpose whatsoever, except to enforce the terms hereof or as required by a lawful subpoena or order of any court of competent jurisdiction or by a governmental agency, but subject to the terms of the Confidentiality Agreement between such Party and the Corporation.

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

**EXHIBIT 24 - Page 98**

32.     <u>Further Assurances</u>.  Each of the Parties hereto agrees:

       (a)     To execute and deliver to each other Party such other and further documents and instruments as are necessary or appropriate to carry out the purposes of this Agreement; and

       (b)     To cooperate in taking whatever actions are necessary or appropriate to effectuate the provisions of this Agreement.

33.     <u>Gender</u>. Words used herein, regardless of the number or gender specifically used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine or neuter, as the context indicates is appropriate.

34.     <u>Number of Days</u>.  In computing the number of days for purposes of this Agreement, all days shall be counted, including Saturdays, Sundays and banking holidays; <u>provided</u>, <u>however</u>, that if the final day for any time period falls on a Saturday, Sunday or banking holiday on which banking institutions in the Commonwealth of Pennsylvania are authorized or obligated by law or executive order to close, then the final day shall be deemed to be the next day which is not a Saturday, Sunday or such banking holiday.

35.     <u>Exhibits</u>. All Exhibits attached hereto are hereby incorporated by reference into and made part of this Agreement.

36.     <u>Facsimile Signatures</u>.  This Agreement may be executed and delivered by facsimile and, upon such delivery, the facsimile will be deemed to have the same effect as if the original signature had been delivered by the other Party.  Each Party agrees to deliver to the Corporation the original signature copy by express overnight delivery.  The failure to deliver the original signature copy and/or the nonreceipt of the original signature copy shall have no effect upon the binding and enforceable nature of this Agreement.

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

**EXHIBIT 24 - Page 99**

IN WITNESS WHEREOF, this Agreement has been executed as of the date first above written.

ATTEST:                                              BRADFORD HOLDINGS, INC.

_John S. Middleton_
John S. Middleton, Secretary             By: _John S. Middleton_
                                                          John S. Middleton, President

[Corporate Seal]

John S. Middleton, Trustee U/A/T 1/18/94 for
the benefit of Frances S. Middleton's
grandchildren, J. Alexander Hughes, Thomas
M. Hughes, John C. Hughes, John P.
Middleton and Frances B. Middleton

By: _John S. Middleton_
      John S. Middleton, Trustee

John S. Middleton, Custodian for Thomas M.          John S. Middleton, Custodian for John C.
Hughes                                              Hughes

_John S. Middleton_                                  _John S. Middleton_
John S. Middleton, Custodian                         John S. Middleton, Custodian


Frances S. Middleton, Grantor
Retained Trust dated 2/1/01, John S.
Middleton, Trustee                                   _John S. Middleton_
                                                     John S. Middleton, individually and as the
By: _John S. Middleton_                              parent and natural guardian of Frances B.
      John S. Middleton, Trustee                     Middleton


_____          _____
Leigh P. Middleton, individually and as the          John P. Middleton
parent and natural guardian of Frances B.
Middleton

PHILA1\1788486\4 122995.000

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

**EXHIBIT 24 – Page 100**

IN WITNESS WHEREOF, this Agreement has been executed as of the date first above written.

ATTEST:                                                    BRADFORD HOLDINGS, INC.

_____         By:_____
John S. Middleton, Secretary                            John S. Middleton, President

[Corporate Seal]

John S. Middleton, Trustee U/A/T 1/18/94 for
the benefit of Frances S. Middleton's
grandchildren, J. Alexander Hughes, Thomas
M. Hughes, John C. Hughes, John P.
Middleton and Frances B. Middleton

By:_____
        John S. Middleton, Trustee

John S. Middleton, Custodian for Thomas M.        John S. Middleton, Custodian for John C.
Hughes                                                                Hughes


_____         _____
John S. Middleton, Custodian                            John S. Middleton, Custodian


Frances S. Middleton, Grantor
Retained Trust dated 2/1/01, John S.
Middleton, Trustee
                                                                     _____
                                                                     John S. Middleton, individually and as the
By:_____         parent and natural guardian of Frances B.
        John S. Middleton, Trustee                       Middleton


*Leigh P. Middleton*                                       *John P. Middleton*
_____         _____
Leigh P. Middleton, individually and as the         John P. Middleton
parent and natural guardian of Frances B.
Middleton


PHILA1\1788486\2 122995.000

**EXHIBIT 24 - Page 101**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

_____
Lucia M. Hughes, individually and as the
parent and natural guardian of John C. Hughes

_____
Thomas P. Hughes individually and as the
parent and natural guardian of John C. Hughes

_____
J. Alexander Hughes

_____
Thomas M. Hughes

Lucia M. Hughes, Custodian for John C.
Hughes
_____
Lucia M. Hughes, Custodian

Lucia M. Hughes, Custodian for Thomas M.
Hughes
_____
Lucia M. Hughes, Custodian

Lucia M. Hughes, Custodian for John P.
Middleton
_____
Lucia M. Hughes, Custodian

Lucia M. Hughes, Custodian for Frances B.
Middleton
_____
Lucia M. Hughes, Custodian

Lucia M. Hughes, Trustee, U/A/T 7/26/96 for
the benefit of John P. Middleton and
Frances B. Middleton

By: _____
      Lucia M. Hughes, Trustee

PHILA1\1788486\5 122995.000

**EXHIBIT 24 – Page 102**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

_____
Lucia M. Hughes, individually and as the
parent and natural guardian of John C. Hughes

_____
Thomas P. Hughes individually and as the
parent and natural guardian of John C. Hughes


_____
J. Alexander Hughes

*Thomas M. Hughes*
_____
Thomas M. Hughes


Lucia M. Hughes, Custodian for John C.
Hughes

Lucia M. Hughes, Custodian for Thomas M.
Hughes

_____
Lucia M. Hughes, Custodian

_____
Lucia M. Hughes, Custodian


Lucia M. Hughes, Custodian for John P.
Middleton

Lucia M. Hughes, Custodian for Frances B.
Middleton

_____
Lucia M. Hughes, Custodian

_____
Lucia M. Hughes, Custodian


Lucia M. Hughes, Trustee, U/A/T 7/26/96 for
the benefit of John P. Middleton and
Frances B. Middleton


By:_____
    Lucia M. Hughes, Trustee

PHILA1\1788486\5 122995.000

**EXHIBIT 24 - Page 103**

Anna K. Middleton, John S. Middleton and
Frances S. Middleton Trustees U/A/T 9/12/94
for the benefit of Anna K. Middleton

*Frances S. Middleton*

Frances S. Middleton

By:_____
     Anna K. Middleton, Trustee

_____
Anna K. Middleton

By:_____
     John S. Middleton, Trustee

By: *Frances S. Middleton*
     Frances S. Middleton, Trustee

John S. Middleton, Trustee U/A/T  11/18/82
for Frances S. Middleton's children, Lucia M.
Hughes, John S. Middleton and Anna K.
Middleton

By:_____
     John S. Middleton, Trustee

John S. Middleton, Custodian for John P.
Middleton

_____
John S. Middleton, Custodian

John S. Middleton, Custodian for Frances B.
Middleton

_____
John S. Middleton, Custodian

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

**EXHIBIT 24 - Page 104**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

Anna K. Middleton, John S. Middleton and
Frances S. Middleton Trustees U/A/T 9/12/94
for the benefit of Anna K. Middleton

By: _Anna K. Middleton_
      Anna K. Middleton, Trustee

By:_____
      John S. Middleton, Trustee

By:_____
      Frances S. Middleton, Trustee

John S. Middleton, Trustee U/A/T 11/18/82
for Frances S. Middleton's children, Lucia M.
Hughes, John S. Middleton and Anna K.
Middleton

By:_____
      John S. Middleton, Trustee


John S. Middleton, Custodian for John P.
Middleton

_____
John S. Middleton, Custodian


John S. Middleton, Custodian for Frances B.
Middleton

_____
John S. Middleton, Custodian


_____
Frances S. Middleton

_Anna K. Middleton_
_____
Anna K. Middleton

PHILA1\1788486\4 122995.000

**EXHIBIT 24 – Page 105**

Anna K. Middleton, John S. Middleton and
Frances S. Middleton Trustees U/A/T 9/12/94
for the benefit of Anna K. Middleton

Frances S. Middleton
_____

By:_____
    Anna K. Middleton, Trustee

Anna K. Middleton
_____

By:    _John S. Middleton_____
    John S. Middleton, Trustee

By:_____
    Frances S. Middleton, Trustee

John S. Middleton, Trustee U/A/T  11/18/82
for Frances S. Middleton's children, Lucia M.
Hughes, John S. Middleton and Anna K.
Middleton

By:    _John S. Middleton_____
    John S. Middleton, Trustee

John S. Middleton, Custodian for John P.
Middleton

_John S. Middleton_____
John S. Middleton, Custodian

John S. Middleton, Custodian for Frances B.
Middleton

_John S. Middleton_____
John S. Middleton, Custodian

PHILA1\1788486\4 122995.000

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

**EXHIBIT 24 – Page 106**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

# EXHIBIT F

EXHIBIT 24 – Page 107

COURT OF COMMON PLEAS OF
DELAWARE COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

TRUST UNDER AGREEMENT DATED SEPTEMBER 12, 1994, BETWEEN
ANNA K. MIDDLETON, SETTLOR AND TRUSTEE, AND
JOHN S. MIDDLETON AND FRANCES S. MIDDLETON, TRUSTEES

## FAMILY SETTLEMENT AGREEMENT

The circumstances leading to the execution of this instrument are as follows:

1.     Anna K. Middleton (formerly known as Anna M. Bauer) ("Anna") entered into an Agreement of Trust on September 12, 1994 (the "Anna Trust"), with herself, John S. Middleton and Frances S. Middleton (the "Trustees").  A copy of the Anna Trust is attached as Exhibit "1".

2.     Item FIRST of the Anna Trust gives Trustees discretion to pay to, or expend for the benefit of, Anna such amounts from income and principal as Trustees deem appropriate.

3.     Upon the death of Anna, Item FIRST of the Anna Trust provides that the remaining principal shall be distributed as Anna shall appoint in her will to the then living issue of Herbert H. Middleton, Jr. and Frances S. Middleton.  To the extent that Anna does not exercise her special power of appointment, Item FIRST further provides that the remaining principal shall be distributed to Anna's then living issue per stirpes, or, if none, to the then living grandchildren per capita of Herbert H. Middleton, Jr. and Frances S. Middleton, or, if none, to the then living issue per stirpes of Herbert H. Middleton, Jr. and Frances S. Middleton.

4.     At the time of the execution of this instrument, Anna does not have children. Anna has a brother, John S. Middleton ("John"), and a sister, Lucia M. Hughes ("Lucia").  John has two children, John P. Middleton and Frances B. Middleton.  Lucia has three children, J. Alexander Hughes, Thomas M. Hughes and John C. Hughes.  Frances B. Middleton and John C. Hughes are minors.  John's wife is Leigh P. Middleton ("Leigh").  Lucia's husband is Thomas P. Hughes ("Thomas").

PHILA1\1789398\7 122995.000

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

**EXHIBIT 24 – Page 108**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

5.      By document dated July 27, 1995, Anna irrevocably renounced her right to receive any distributions of principal from the Anna Trust.

6.      By document dated June 15, 1998, Anna irrevocably assigned to the Anna Trust all principal distributions to which she would otherwise be entitled from the (a) Agreement of Trust dated April 21, 1972, created by Herbert H. Middleton, Sr. and Anna E. Middleton; (b) Agreement of Trust dated May 19, 1982, created by John Middleton, Inc.; and (c) Agreement of Trust dated April 18, 1990, created by Herbert H. Middleton, Jr. and Frances S. Middleton.

NOW, THEREFORE, in consideration of the above premises, the promises and covenants contained herein, the parties hereto, intending to be legally bound, agree as follows:

1.      Anna hereby requests the Trustees to divide the Anna Trust into two (2) separate trusts to be known as the "Anna Trust fbo Middleton" and the "Anna Trust fbo Hughes". The Anna Trust fbo Middleton and the Anna Trust fbo Hughes shall be collectively referred to as the "Anna Trusts." In apportioning the assets (both principal and income) of the Anna Trust between the Anna Trust fbo Middleton and the Anna Trust fbo Hughes, the Trustees shall utilize the methodology described in paragraph 2 below.

2.      The Trustees of the Anna Trust shall divide, effective as of February 26, 2003, the assets (both principal and income) of the Anna Trust into the Anna Trust fbo Middleton and the Anna Trust fbo Hughes using the following methodology:

A.      The Trustees shall determine the Existing Tax Liability associated with the assets of the Anna Trust. Existing Tax Liability shall mean (i) any unpaid income tax liability arising from its ownership of capital stock of Bradford Holdings, Inc. (the "Corporation") from the beginning of the 2002 taxable year until the date of division ("Existing Stock Liability"), and (ii) any unpaid tax liability arising from any dividends, interest or other distributions received with respect to any other asset of the Anna Trust on or before the date of division ("Existing Other Asset Liability"). In addition, the Trustees shall determine the tax liability that would be incurred ("Hypothetical Tax Liability") upon (i) a sale of all capital stock of the Corporation owned by the Anna Trust at the price set forth in Section 4 of the Settlement Agreement of even date herewith ("Hypothetical Stock Liability"), and (ii) a sale of all other non-cash assets of the

**EXHIBIT 24 - Page 109**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

Anna Trust (other than real estate) at its fair market value as of the date of division ("Hypothetical Other Asset Liability").

B.      The Trustees shall subtract the Existing and Hypothetical Tax Liabilities determined under paragraph 2.A. from the aggregate fair market value of the cash, Corporation capital stock and other assets held in the Anna Trust, excluding any real estate, on the date of division (assuming for this purpose that the Corporation capital stock is valued at the price set forth in Section 4 of the Settlement Agreement of even date herewith) to determine the Net Asset Value of the Anna Trust.  The Target Value for the Anna Trust fbo Middleton is forty percent (40%) of the Net Asset Value of the Anna Trust and the Target Value for the Anna Trust fbo Hughes is sixty percent (60%) of the Net Asset Value of the Anna Trust.

C.      The Trustees shall allocate to the Anna Trust fbo Hughes (i) all of the capital stock of the Corporation owned by the Anna Trust, (ii) all of the Existing Stock Liability; and (iii) cash in an amount sufficient to cause the aggregate fair market value of the assets (assuming for this purpose that the Corporation capital stock is valued at the price set forth in Section 4 of the Settlement Agreement of even date herewith) (excluding any real estate and for the avoidance of doubt as to whether a liability constitutes an asset, excluding, in determining the fair market value of the assets, all liabilities assumed) allocated to such trust, less the amount of the Existing Stock Liability and the Hypothetical Stock Liability, to equal the Target Value for the Anna Trust fbo Hughes.  The Trustees shall allocate to the Anna Trust fbo Middleton (i) all other non-cash assets (assuming for this purpose that the other non-cash assets are valued at their fair market value at the date of division) (excluding any real estate and for the avoidance of doubt as to whether a liability constitutes an asset, excluding, in determining the fair market value of the assets, all liabilities assumed) owned by the Anna Trust, (ii) all of the Existing Other Asset Liability; (iii) cash in an amount sufficient to cause the aggregate fair market value of the assets (excluding any real estate) allocated to such trust, less the amount of the Existing Other Asset Liability and the Hypothetical Other Asset Liability, to equal the Target Value for the Anna Trust fbo Middleton.

D.      Any real estate owned by the Anna Trust shall be allocated as a sixty percent (60%) undivided interest to the Anna Trust fbo Hughes and a forty percent (40%)

PHILA1\1789398\7 122995.000                     3

**EXHIBIT 24 - Page 110**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

undivided interest to the Anna Trust fbo Middleton, without regard to Existing or Hypothetical Tax Liabilities and without regard to the value of such real estate.  All accrued and future expenses attributable to such real estate shall be paid by sixty percent (60%) by the Anna Trust fbo Hughes and forty percent (40%) by the Anna Trust fbo Middleton.

E.    Upon subdivision of the Anna Trust, the Anna Trust fbo Hughes shall assume the Existing Stock Liability and the Anna Trust fbo Middleton shall assume the Existing Other Asset Liability.  Any other tax liability of the Anna Trust, including any excess liability arising due to erroneous computation of the Existing Stock Liability or the Existing Other Asset Liability by the Trustees in carrying out the division and any tax liability relating to calendar years before 2002, shall be borne sixty percent (60%) by the Anna Trust fbo Hughes and forty percent (40%) by the Anna Trust fbo Middleton, and any refund or reduction in tax liability, including any reduction due to erroneous computation of the Existing Stock Liability or the Existing Other Asset Liability by the Trustees in carrying out the division, shall be received by or shall inure to the benefit of the respective Anna Trusts in that same proportion.

F.    Following the date of division, each of the respective Anna Trusts shall be responsible for and shall bear any tax liabilities thereafter incurred with respect to the assets allocated to it, including tax liabilities associated with the sale of any asset (including but not limited to the sale of the Corporation capital stock and the other non-cash assets) and tax liabilities associated with interest paid on any note issued by the Corporation or any other asset.

3.    Each of the respective Anna Trusts shall create a separate principal account and a separate income accumulation account.  Immediately following the date of the division, the amount of the separate principal account and separate income accumulation account for the Anna Trust fbo Hughes and the Anna Trust fbo Middleton shall equal sixty percent (60%) and forty percent (40%), respectively, of the Net Asset Value of the principal account and income accumulation account, respectively, of the Anna Trust immediately prior to the division.  Each such trust shall accumulate its income received after the date of the division (including income generated by its income accumulation account) in its respective income accumulation account in convenient installments at least annually.

PHILA1\1789398\7 122995.000                          4

EXHIBIT 24 - Page 111

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

4.      In accordance with Item FIRST of the Anna Trust, Trustees shall have discretion to distribute the current income of the Anna Trusts as well as the corpus of the income accumulation trusts to Anna.  It is the intent of the parties to this Agreement, but this is merely precatory, that all distributions of income to Anna shall be made proportionately from the Anna Trusts (i.e. forty percent (40%) from the Anna Trust fbo Middleton and sixty percent (60%) from the Anna Trust fbo Hughes).

5.      The Trustees shall distribute all principal assets passing at any time to the Anna Trust from the (a) Agreement of Trust dated April 21, 1972, created by Herbert H. Middleton, Sr. and Anna E. Middleton; (b) Agreement of Trust dated May 19, 1982, created by John Middleton, Inc.; and (c) Agreement of Trust dated April 18, 1990, created by Herbert H. Middleton, Jr. and Frances S. Middleton, as follows:  forty percent (40%) to the Anna Trust fbo Middleton and sixty percent (60%) to the Anna Trust fbo Hughes.

6.      Upon Anna's death, Anna agrees that the special power of appointment that she retains over the Anna Trust shall be limited as follows:  (a) to appoint the remaining principal of the Anna Trust fbo Middleton to Anna's then living natural issue and to the then living issue of her brother, John, to the extent and in the manner that Anna shall so exercise in her will, and (b) to appoint the remaining principal of the Anna Trust fbo Hughes to Anna's then living natural issue and to the then living issue of her sister, Lucia, to the extent and in the manner that Anna shall so exercise in her will.

7.      To the extent Anna does not effectively exercise the special power of appointment in her will in connection with the Anna Trust fbo Middleton, the principal of the Anna Trust fbo Middleton shall be held in trust for Anna's then living natural issue in accordance with the provisions of the Agreement of Trust of Frances S. Middleton dated February 1, 2001 (the "2001 Trust").  If Anna is not survived by natural issue, the principal of the Anna Trust fbo Middleton shall be held in trust for the then living issue per stirpes of John in accordance with the provisions of the 2001 Trust, or if there are no then living issue of John, the principal shall be distributed outright and free of trust to John, or if John is not then living, the principal shall be distributed outright and free of trust to Lucia's then living issue per stirpes (provided that if any issue of Lucia has not reached twenty-one (21) years of age, such beneficiary's share shall be

**EXHIBIT 24 - Page 112**

distributed to Lucia, if living and competent, otherwise to Thomas, if living and competent, as custodian for such beneficiary under the North Carolina Uniform Transfers to Minors Act), or if there are no then living issue of Lucia, the principal shall be distributed outright and free of trust to Lucia.

8.      To the extent Anna does not effectively exercise the special power of appointment in her will in connection with the Anna Trust fbo Hughes, the principal of the Anna Trust fbo Hughes shall be held in trust for Anna's then living natural issue in accordance with the provisions of the 2001 Trust.  If Anna is not survived by natural issue, the principal of the Anna Trust fbo Hughes shall be distributed outright and free of trust to Lucia's then living issue per stirpes (provided that if any issue of Lucia has not reached twenty-one (21) years of age, such beneficiary's share shall be distributed to Lucia, if living and competent, otherwise to Thomas, if living and competent, as custodian for such beneficiary under the North Carolina Uniform Transfers to Minors Act), or if there are no then living issue of Lucia, the principal shall be distributed outright and free of trust to Lucia, or if Lucia is not then living, the principal shall be held in trust for the then living issue per stirpes of John in accordance with the provisions of the 2001 Trust, or if there are no then living issue of John, the principal shall be distributed outright and free of trust to John.

9.      Anna, individually and as Settlor, Trustee, income beneficiary and parent and natural guardian of one or more potential beneficiaries of the Anna Trusts; Frances, individually and as Trustee; John P. Middleton; John, individually and as Trustee and parent and natural guardian of Frances B. Middleton; Leigh, individually and as parent and natural guardian of Frances B. Middleton; J. Alexander Hughes; Thomas M. Hughes; Lucia, individually and as parent and natural guardian of John C. Hughes; and Thomas, individually and as parent and natural guardian of John C. Hughes (collectively the "Undersigned") desire that the assets of the Trust be divided into the Anna Trust fbo Middleton and the Anna Trust fbo Hughes and administered as provided hereinabove without the formality of an accounting in the Orphans' Court Division of the Court of Common Pleas of Delaware County, Pennsylvania in order to save the expense, publicity and delay of a court accounting. The Trustees are willing to divide and administer the Anna Trust in the proportions and in the manner described herein, in reliance upon the execution of this Family Settlement Agreement.

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

PHILA1\1789398\7 122995.000                                6

**EXHIBIT 24 - Page 113**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

10.     Each of the Undersigned (a "Party") hereby:

A.     Represents and warrants that he or she has read and understands this Agreement, and that the facts set forth above are true and correct to the best of his or her information, knowledge and belief.

B.     Requests the Trustees to distribute, effective as of February 26, 2003, the assets of the Anna Trust between the Anna Trust fbo Middleton and the Anna Trust fbo Hughes in the proportions and in the manner described herein, and agrees to acknowledge receipt by the Trustees of such amounts once delivered by delivering to John a receipt in the form attached hereto as Exhibit 2.

C.     Agrees to decline to serve as a successor Trustee of the Anna Trust or Anna Trusts during Anna's lifetime; agrees that a corporate Trustee shall not serve as John's successor Trustee; and agrees that the qualification requirement that the individual Trustee be a descendant of Herbert H. Middleton, Jr. be removed.

D.     Agrees to refund on demand to the Trustees any amount which may at any time be determined by the Trustees, or by any court of competent jurisdiction to have been an erroneous distribution to such Party, consents to the refund by the Trustees of any trust of which such Party is a beneficiary (or acts on behalf of a beneficiary who is a minor) or by the custodian of any custodial account of which such Party is a beneficiary (or acts on behalf of a beneficiary who is a minor) of any amount determined to have been an erroneous distribution to the Trustees of such trust or the custodian of such custodial account, and agrees that any period for the limitation of actions for the collection of any erroneous distribution shall commence only at such time as the Trustees shall have obtained actual knowledge of such erroneous distribution, and that in no event shall this period for collection be less than two (2) years after the actual discovery thereof by the Trustees.

E.     Absolutely and irrevocably remises, releases, quit-claims and forever discharges the Trustees from any and all actions, suits, payments, accounts, reckonings, liabilities, and demands relating in any way to the administration of the Anna Trust from the

PHILA1\1789398\7 122995.000                    7

**EXHIBIT 24 - Page 114**

inception of the Anna Trust to the effective date hereof and the distribution of the assets of the Anna Trust in connection with this Family Settlement Agreement.

   F.  Agrees to indemnify and hold harmless (i) the Trustees of the Anna Trust and the Anna Trusts from and against any and all damages, liabilities, losses, costs and deficiencies (including legal fees and costs in connection therewith) (collectively, "Losses") which they or any of them may suffer or to which they or any of them may be subjected by reason of their or any of their administration of the Anna Trust or the Anna Trusts, the distribution of the assets of the Anna Trust and any other actions taken pursuant to or in connection with this Family Settlement Agreement or the consequences thereof, in each case without a formal accounting and without having the formal approval of the Orphans' Court Division of the Court of Common Pleas of Delaware County, Pennsylvania and (ii) any and all successor Trustee(s) from and against any and all Losses which they may suffer or to which they may be subjected in relation to any actions of any of the Trustees on or prior to the effective date of this Family Settlement Agreement.  Notwithstanding the foregoing, (x) no Party shall be required to indemnify for Losses arising out of or resulting from claims by or on behalf of any person, other than such Party, such Party's descendants (except that Frances shall not be required to indemnify for her descendants) and such Party's spouse, provided, however, that with respect to any claims against John and/or Lucia by or on behalf of any adopted descendant of Anna, if Anna does not have sufficient funds to indemnify for any Losses arising out of or resulting from any such claims, John shall pay, or reimburse Lucia for, 40% of the aggregate of such Losses and Lucia shall pay, or reimburse John for, 60% of the aggregate of such Losses; (y) Thomas' individual liability pursuant to this paragraph 10.F. shall be limited in the case of claims by or on behalf of Lucia, Alexander or Thomas M. Hughes to assets which he owns jointly with Lucia and individual assets which he received at any time, directly or indirectly, from assets paid or payable to or for the benefit of Lucia as a result of the transactions referred to in or contemplated by the Agreement or any Exhibit thereto; and (z) Leigh's individual liability pursuant to this paragraph 10.F. shall be limited in the case of claims by or on behalf of John or John P. Middleton to assets which she owns jointly with John and individual assets which she received at any time, directly or indirectly, from assets paid or payable to or for the benefit of John as a result of the transactions referred to in or contemplated by the Agreement or any Exhibit thereto.

PHILA1\1789398\7 122995.000      8

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

**EXHIBIT 24 - Page 115**

G.      Agrees that this instrument is governed by the laws of the Commonwealth of Pennsylvania, and is legally binding as an agreement under seal upon such Party, and such Party's respective heirs, executors, administrators and assigns, and also binds and inures to the benefit of the respective heirs, executors, administrators and assigns of the Trustees.

H.      Agrees that this instrument may be executed in counterparts.

11.     Each of Anna, John and Lucia hereby agree to indemnify each other for any and all Losses arising out of any claims of Anna's, John's or Lucia's (as the case may be) respective descendants in connection with any actions taken pursuant to this Family Settlement Agreement or the consequences thereof.

12.     John agrees to resign as a Trustee of the Anna Trusts, and agrees to appoint as his successor Trustee for the Anna Trusts an individual agreeable to Anna, by December 31, 2003 (or if John has not received by December 31, 2003 the release and indemnification agreement referred to in this paragraph 12 executed by all parties, then John agrees to take such actions within thirty (30) days after John receives such executed release and indemnification agreement) upon his receipt of an agreement providing a full and unconditional release and indemnification for all actions undertaken by each Trustee of the Anna Trust and Anna Trusts on or prior to the effective date of such agreement executed by Anna, individually and as Settlor, Trustee, income beneficiary and parent and natural guardian of one or more potential beneficiaries of the Anna Trusts; Frances S. Middleton, individually and as Trustee; John P. Middleton; Leigh, individually and as parent and natural guardian of Frances B. Middleton; J. Alexander Hughes; Thomas M. Hughes; Lucia, individually and as parent and natural guardian of John C. Hughes; and Thomas, individually and as parent and natural guardian of John C. Hughes, and providing any and all successor trustees with indemnification in relation to any actions of John or the other Trustees up to and including the effective date of John's resignation, subject to the limitations in the last sentence of paragraph 10.F. of this Family Settlement Agreement.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

**EXHIBIT 24 - Page 116**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

Dated: 02/25/2003

_Anna K. Middleton_
Anna K. Middleton, individually and as Settlor,
Trustee, income beneficiary and parent and natural
guardian of one or more potential beneficiaries of
the Anna Trusts

Dated: _____

_____
John S. Middleton, individually and as Trustee of
the Anna Trust and parent and natural guardian of
Frances B. Middleton

Dated: _____

_____
Leigh P. Middleton, individually and as parent and
natural guardian of Frances B. Middleton

Dated: _____

_____
John P. Middleton

Dated: _____

_____
Lucia M. Hughes, individually and as parent and
natural guardian of John C. Hughes

Dated: _____

_____
Thomas P. Hughes, individually and as parent and
natural guardian of John C. Hughes

Dated: _____

_____
J. Alexander Hughes

Dated: _____

_____
Thomas M. Hughes

[SIGNATURES CONTINUED ON NEXT PAGE]

PHILA1\1789398\6 122995.000

**EXHIBIT 24 - Page 117**

Dated: _____

_____
Anna K. Middleton, individually and as Settlor,
Trustee, income beneficiary and parent and natural
guardian of one or more potential beneficiaries of
the Anna Trusts

Dated: 02/25/2003

_____
John S. Middleton, individually and as Trustee of
the Anna Trust and parent and natural guardian of
Frances B. Middleton

Dated: 02/25/2003

_____
Leigh P. Middleton, individually and as parent and
natural guardian of Frances B. Middleton

Dated: 02/25/2003

_____
John P. Middleton

Dated: _____

_____
Lucia M. Hughes, individually and as parent and
natural guardian of John C. Hughes

Dated: _____

_____
Thomas P. Hughes, individually and as parent and
natural guardian of John C. Hughes

Dated: _____

_____
J. Alexander Hughes

Dated: _____

_____
Thomas M. Hughes

[SIGNATURES CONTINUED ON NEXT PAGE]

PHILA1\1789398\6 122995.000

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

**EXHIBIT 24 - Page 118**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

Dated: _____

_____
Anna K. Middleton, individually and as Settlor,
Trustee, income beneficiary and parent and natural
guardian of one or more potential beneficiaries of
the Anna Trusts

Dated: _____

_____
John S. Middleton, individually and as Trustee of
the Anna Trust and parent and natural guardian of
Frances B. Middleton

Dated: _____

_____
Leigh P. Middleton, individually and as parent and
natural guardian of Frances B. Middleton

Dated: _____

_____
John P. Middleton

Dated: 02/25/2003

_____
Lucia M. Hughes, individually and as parent and
natural guardian of John C. Hughes

Dated: 02/25/2003

_____
Thomas P. Hughes, individually and as parent and
natural guardian of John C. Hughes

Dated: 02/25/2003

_____
J. Alexander Hughes

Dated: _____

_____
Thomas M. Hughes

[SIGNATURES CONTINUED ON NEXT PAGE]

PHILA1\1789398\7 122995.000

**EXHIBIT 24 - Page 119**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

Dated: _____

_____
Anna K. Middleton, individually and as Settlor,
Trustee, income beneficiary and parent and natural
guardian of one or more potential beneficiaries of
the Anna Trusts

Dated: _____

_____
John S. Middleton, individually and as Trustee of
the Anna Trust and parent and natural guardian of
Frances B. Middleton

Dated: _____

_____
Leigh P. Middleton, individually and as parent and
natural guardian of Frances B. Middleton

Dated: _____

_____
John P. Middleton

Dated: _____

_____
Lucia M. Hughes, individually and as parent and
natural guardian of John C. Hughes

Dated: _____

_____
Thomas P. Hughes, individually and as parent and
natural guardian of John C. Hughes

Dated: _____

_____
J. Alexander Hughes

Dated: 02/25/2003

_____
Thomas M. Hughes

[SIGNATURES CONTINUED ON NEXT PAGE]

PHILA1\1789398\7 122995.000

**EXHIBIT 24 – Page 120**

Dated: 02/25/2003

Frances S. Middleton, individually and as Trustee
of the Anna Trust

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

PHILA1\1789398\7 122995.000

**EXHIBIT 24 - Page 121**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

# EXHIBIT G

**EXHIBIT 24 – Page 122**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

COURT OF COMMON PLEAS OF
MONTGOMERY COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

TRUST UNDER AGREEMENT DATED FEBRUARY 1, 2001, BETWEEN
FRANCES S. MIDDLETON, SETTLOR, AND
JOHN S. MIDDLETON, TRUSTEE

---

**RELEASE AND INDEMNIFICATION AGREEMENT**

---

Anna K. Middleton, individually and as parent and natural guardian of one or more potential beneficiaries of the Trust under Agreement dated February 1, 2001 (the "GRAT") between Frances S. Middleton, Settlor and John S. Middleton, Trustee ("Anna"); John S. Middleton, individually, as Trustee of the GRAT and as Trustee of the JSM Family Trust created under paragraph 1(a) of Item THIRD of the GRAT ("John"); J. Alexander Hughes ("Alexander"); Thomas M. Hughes; John P. Middleton; Leigh P. Middleton, individually and as parent and natural guardian of Frances B. Middleton ("Leigh"); Lucia M. Hughes, individually and as parent and natural guardian of John C. Hughes ("Lucia"); Thomas P. Hughes, individually, as parent and natural guardian of John C. Hughes and as Trustee of the Hughes Family Trust created under paragraph 1(b) of Item THIRD of the GRAT ("Thomas"); and Frances S. Middleton, individually, as Settlor of the GRAT and as Trustee of the Trust created for the benefit of Anna K. Middleton under paragraph 1(c) of Item THIRD of the GRAT ("Frances") (collectively the "Undersigned"), are parties to a Settlement Agreement dated February 20, 2003 (the "Agreement").  In accordance with the Agreement, and intending to be legally bound, effective as of March 4, 2003, each of the Undersigned (a "Party") hereby:

A.      Represents and warrants that he or she has received a copy of the Agreement and that he or she has read and understands the Agreement.

B.      Represents and warrants that he or she has received a copy of the GRAT and that he or she has read and understands the provisions of the GRAT.

PHILA1\1787751\4 122995.000

**EXHIBIT 24 - Page 123**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

C.      Agrees to refund on demand to the Trustee of the GRAT any amount which may at any time be determined by the Trustee of the GRAT or by any court of competent jurisdiction to have been an erroneous distribution to such Party, consents to the refund by the Trustee of any trust of which such Party is a beneficiary (or acts on behalf of a beneficiary who is a minor) or by the custodian of any custodial account of which such Party is a beneficiary (or acts on behalf of a beneficiary who is a minor) of any amount determined to have been an erroneous distribution to the Trustee of such trust or the custodian of such custodial account, and agrees that any period for the limitation of actions for the collection of any erroneous distribution shall commence only at such time as the Trustee of the GRAT shall have obtained actual knowledge of such erroneous distribution, and that in no event shall this period for collection be less than two (2) years after the actual discovery thereof by the Trustee of the GRAT.

D.      Absolutely and irrevocably remises, releases, quit-claims and forever discharges John S. Middleton ("John") as a Trustee of the GRAT from any and all actions, suits, payments, accounts, reckonings, liabilities, and demands relating in any way to the administration of the GRAT from the inception of the GRAT up to and including the effective date hereof.

E.      Agrees to indemnify and hold harmless John as a Trustee of the GRAT from and against any and all damages, liabilities, losses, costs and deficiencies (including legal fees and costs in connection therewith) (collectively, "Losses") which he may suffer or to which he may be subjected by reason of his administration of the GRAT and settlement of the assets of the GRAT, in each case without a formal accounting and without having the formal approval of the Orphans' Court Division of the Court of Common Pleas of Montgomery County, Pennsylvania. Notwithstanding the foregoing, (x) no Party shall be required to indemnify for Losses arising out of or resulting from claims by or on behalf of any person, other than such Party, such Party's descendants (except that Frances shall not be required to indemnify for her descendants) and such Party's spouse; (y) Thomas' individual liability pursuant to this subparagraph E shall be limited in the case of claims by Lucia, Alexander or Thomas M. Hughes to assets which he owns jointly with Lucia and individual assets which he received at any time, directly or indirectly, from assets paid or payable to or for the benefit of Lucia as a result of the transactions referred to in or contemplated by the Agreement or any Exhibit thereto; and (z) Leigh's individual liability pursuant to this subparagraph E shall be limited in the case of claims by John and John P.

PHILA1\1787751\4 122995.000                            2

EXHIBIT 24 - Page 124

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

Middleton to assets which she owns jointly with John and individual assets which she received at any time, directly or indirectly, from assets paid or payable to or for the benefit of John as a result of the transactions referred to in or contemplated by the Agreement or any Exhibit thereto.

F.    Agrees, jointly and severally, to indemnify and hold harmless any and all successor Trustee(s) of the GRAT from and against any and all Losses which any and all successor Trustee(s) may suffer or to which they may be subjected in relation to any actions of John as a Trustee of the GRAT.  Notwithstanding the foregoing, (x) no Party shall be required to indemnify for Losses arising out of or resulting from claims by or on behalf of any person, other than such Party, such Party's descendants (except that Frances shall not be required to indemnify for her descendants) and such Party's spouse; (y) Thomas' individual liability pursuant to this subparagraph F shall be limited in the case of claims by Lucia, Alexander or Thomas M. Hughes to assets which he owns jointly with Lucia and individual assets which he received at any time, directly or indirectly, from assets paid or payable to or for the benefit of Lucia as a result of the transactions referred to in or contemplated by the Agreement or any Exhibit thereto; and (z) Leigh's individual liability pursuant to this subparagraph F shall be limited in the case of claims by John and John P. Middleton to assets which she owns jointly with John and individual assets which she received at any time, directly or indirectly, from assets paid or payable to or for the benefit of John as a result of the transactions referred to in or contemplated by the Agreement or any Exhibit thereto.

G.    Agrees that any and all successor Trustee(s) of the GRAT shall not be required to review or audit the accounts and transactions or otherwise to inquire as to any act or omission of John as a Trustee of the GRAT or to assert any claim against John as such Trustee, and no successor Trustee(s) shall be liable for any acts or omissions of John as a Trustee.

H.    Agrees that this instrument is governed by the laws of the Commonwealth of Pennsylvania, and is legally binding as an agreement under seal upon such Party, and such Party's respective heirs, executors, administrators and assigns, and also binds and inures to the benefit of the respective heirs, executors, administrators and assigns of the Trustee.

I.    Agrees that this instrument may be executed in counterparts.

PHILA1\1787751\4 122995.000                    3

**EXHIBIT 24 - Page 125**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

Dated: 3/4/03 _____        _____
                                     Anna K. Middleton, individually and as
                                     parent and natural guardian of one or more
                                     potential beneficiaries of the GRAT


Dated: _____              _____
                                     John S. Middleton, individually, as Trustee
                                     of the GRAT and as Trustee of the
                                     JSM Family Trust created under
                                     paragraph 1(a) of Item THIRD of the GRAT


Dated: _____              _____
                                     J. Alexander Hughes


Dated: _____              _____
                                     Thomas M. Hughes


Dated: _____              _____
                                     John P. Middleton


Dated: _____              _____
                                     Leigh P. Middleton, individually and
                                     as parent and natural guardian
                                     of Frances B. Middleton


Dated: _____              _____
                                     Lucia M. Hughes, individually and
                                     as parent and natural guardian
                                     of John C. Hughes


[SIGNATURES CONTINUED ON NEXT PAGE]


PHILA1\1787751\4 122995.000                    4

**EXHIBIT 24 - Page 126**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

Dated: _____

_____
Anna K. Middleton, individually and as
parent and natural guardian of one or more
potential beneficiaries of the GRAT

Dated: 3|4|03

_*John S. Middleton*_
John S. Middleton, individually, as Trustee
of the GRAT and as Trustee of the
JSM Family Trust created under
paragraph 1(a) of Item THIRD of the GRAT

Dated: _____

_____
J. Alexander Hughes

Dated: _____

_____
Thomas M. Hughes

Dated: 3|4|03

_*John P. Middleton*_
John P. Middleton

Dated: 3|4|03

_*Leigh P. Middleton*_
Leigh P. Middleton, individually and
as parent and natural guardian
of Frances B. Middleton

Dated: _____

_____
Lucia M. Hughes, individually and
as parent and natural guardian
of John C. Hughes

[SIGNATURES CONTINUED ON NEXT PAGE]

PHILA1\1787751\4 122995.000                    4

**EXHIBIT 24 – Page 127**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

Dated: _____

_____
Anna K. Middleton, individually and as
parent and natural guardian of one or more
potential beneficiaries of the GRAT

Dated: _____

_____
John S. Middleton, individually, as Trustee
of the GRAT and as Trustee of the
JSM Family Trust created under
paragraph 1(a) of Item THIRD of the GRAT

Dated: 3|4|03

_____
J. Alexander Hughes

Dated: _____

_____
Thomas M. Hughes

Dated: _____

_____
John P. Middleton

Dated: _____

_____
Leigh P. Middleton, individually and
as parent and natural guardian
of Frances B. Middleton

Dated: 3|4|03

_____
Lucia M. Hughes, individually and
as parent and natural guardian
of John C. Hughes

[SIGNATURES CONTINUED ON NEXT PAGE]

PHILA1\1787751\4 122995.000

4

**EXHIBIT 24 – Page 128**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

Dated: _____

_____
Anna K. Middleton, individually and as
parent and natural guardian of one or more
potential beneficiaries of the GRAT

Dated: _____

_____
John S. Middleton, individually, as Trustee
of the GRAT and as Trustee of the
JSM Family Trust created under
paragraph 1(a) of Item THIRD of the GRAT

Dated: _____

_____
J. Alexander Hughes

Dated: 3|4|03

*Thomas M. Hughes*
_____
Thomas M. Hughes

Dated: _____

_____
John P. Middleton

Dated: _____

_____
Leigh P. Middleton, individually and
as parent and natural guardian
of Frances B. Middleton

Dated: _____

_____
Lucia M. Hughes, individually and
as parent and natural guardian
of John C. Hughes

[SIGNATURES CONTINUED ON NEXT PAGE]

PHILA1\1787751\4 122995.000                    4

**EXHIBIT 24 - Page 129**

Dated: 3/4/03

_____
Thomas P. Hughes, individually and
as parent and natural guardian
of John C. Hughes and as Trustee
of the Hughes Family Trust created under
paragraph 1(b) of Item THIRD of the GRAT

Dated: _____

_____
Frances S. Middleton, individually, as
Settlor of the GRAT and as Trustee of the
Trust created for the benefit of
Anna K. Middleton under
paragraph 1(c) of Item THIRD of the GRAT

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

PHILA1\1787751\4 122995.000

5

EXHIBIT 24 - Page 130

.Dated: _____

Thomas P. Hughes, individually and
as parent and natural guardian
of John C. Hughes and as Trustee
of the Hughes Family Trust created under
paragraph 1(b) of Item THIRD of the GRAT

Dated: 3|4|03

*Frances S. Middleton*
Frances S. Middleton, individually, as
Settlor of the GRAT and as Trustee of the
Trust created for the benefit of
Anna K. Middleton under
paragraph 1(c) of Item THIRD of the GRAT

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

PHILA1\1787751\4 122995.000

5

**EXHIBIT 24 - Page 131**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

# EXHIBIT H

EXHIBIT 24 – Page 132

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

# STOCK PURCHASE AGREEMENT

THIS STOCK PURCHASE AGREEMENT (the "Agreement") is made and entered this 28th day of February, 2003, by and between BRADFORD HOLDINGS, INC., a Delaware corporation (the "Corporation"), and Frances S. Middleton, Grantor Retained Trust dated 2/1/01, John S. Middleton, Trustee (the "Stockholder").

## BACKGROUND

WHEREAS, the Stockholder owns 258,029 shares of Class B Non-Voting Common Stock of the Corporation (the "Class B Stock");

WHEREAS, the Stockholder desires to sell, and the Corporation desires to purchase, all of the shares of the Class B Stock owned by the Stockholder, subject to the terms and conditions of this Agreement; and

WHEREAS, Frances S. Middleton presently has the right to substitute other assets for the Class B Stock owned by the Stockholder, which results in grantor trust treatment to Frances, such that she is treated as the owner of the assets of the Stockholder and pursuant to Section 671 of the Internal Revenue Code of 1986, as amended, must include in computing her taxable income all items of income, deduction and credits against tax of the Stockholder.

NOW THEREFORE, in consideration of the premises and the mutual promises contained herein, and in consideration of the representations, warranties, and covenants herein contained, the parties hereto, intending to be legally bound hereby, agree as follows:

## ARTICLE I
## PURCHASE AND SALE OF STOCK

1.1     In reliance upon the representations, warranties, covenants and agreements set forth in this Agreement and subject to the terms and conditions of this Agreement, the Stockholder hereby sells, assigns, transfers and delivers to the Corporation, and the Corporation hereby purchases from the Stockholder, all of the shares of Class B Stock (the "Class B Shares") owned by the Stockholder (collectively, the "Shares").

1.2     The purchase price to be paid by the Corporation to the Stockholder shall be Two Hundred Seventy-Five Dollars ($275.00) per share for the Class B Stock for an aggregate purchase price for the Shares (the "Purchase Price") of Seventy Million Nine Hundred Fifty-Seven Thousand Nine Hundred Seventy-Five Dollars ($70,957,975.00).  The Purchase Price shall be payable as set forth in Section 1.4(a).

1.3     On the date of this Agreement, the Stockholder shall deliver to the Corporation the following:

PHILA1\1782685\2 122995.000

**EXHIBIT 24 - Page 133**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

(a)     stock certificate numbers B132 and B133 representing 258,029 shares of Class B Stock, together with stock powers duly endorsed in blank by the Stockholder; and

(b)     such other documents and instruments as may reasonably be requested by the Corporation or its counsel to perform this Agreement and the transactions contemplated hereby.

1.4     On the date of this Agreement, the Corporation shall deliver to the Stockholder the following:

(a)     Seventy Million Nine Hundred Fifty-Seven Thousand Nine Hundred Seventy-Five Dollars ($70,957,975.00) of the Purchase Price by certified or cashier's check or wire transfer of immediately available funds, representing the Purchase Price for the 258,029 shares of Class B Stock; and

(b)     such other documents and instruments as may reasonably be requested by the Stockholder or its counsel to perform this Agreement and the transactions contemplated hereby.

1.5     All of the actions taken and instruments and other documents delivered on the date of this Agreement shall be taken or delivered, as the case may be, simultaneously.  No action taken or delivery made on the date of this Agreement is effective until all actions taken and deliveries made on the date of this Agreement are complete.

## ARTICLE II
## REPRESENTATIONS AND WARRANTIES

2.1     The Stockholder represents and warrants to the Corporation as follows:

(a)     258,029 shares are all of the Class B Stock of the Corporation owned by the Stockholder and are owned of record and beneficially by the Stockholder free and clear of all liens, security interests and encumbrances with no defects in title.

(b)     The Stockholder has full right, power, legal capacity and authority to convey the Class B Shares to the Corporation, to enter into this Agreement, to make the representations, warranties, covenants and agreements made in this Agreement and to carry out the transactions contemplated hereby.  Upon the conveyance and transfer of the Class B Shares as contemplated by this Agreement, the Corporation shall receive good and marketable title to the Class B Shares, free and clear of all liens, security interests and encumbrances or other restrictions arising by or through the Stockholder and with no defects in title.

(c)     The execution, delivery and performance by the Stockholder of this Agreement and the consummation by the Stockholder of the transactions contemplated hereby, have been duly authorized by all necessary actions.

(d)     Each of this Agreement and the stock powers referred to in Section 1.3(a) has been duly and validly executed and delivered by Stockholder and constitutes a valid and

**EXHIBIT 24 - Page 134**

binding obligation of the Stockholder, enforceable against the Stockholder in accordance with its terms.

(e)     Neither the Stockholder nor any of its agents or representatives has made any agreements or taken any actions which may cause anyone to be entitled to a commission or a finder's or broker's fee as a result of the execution, delivery or performance of this Agreement or consummation of the transactions contemplated hereby.

(f)     The Stockholder has been provided with and has carefully reviewed (i) the Corporation's audited financial statements as of and for the fiscal years ended January 31, 2000, January 31, 2001 and December 31, 2001, and (ii) the Corporation's unaudited financial statements as of and for the twelve (12) months ended December 31, 2002 (collectively the "Financial Statements").

(g)     The Stockholder has been provided with and has carefully reviewed the Valuation Report prepared by Fleet M&A Advisors issued on September 17, 2002 (the "Valuation Report"), which concluded that the fair market value as of February 1, 2001 of the Class A Stock was $215 per share and Class B Stock was $205 per share.  The Stockholder has been provided with and carefully reviewed all other information requested from the Corporation by the Stockholder.

(h)     The Stockholder has had the opportunity to discuss the Corporation's business, operations and financial affairs with the management of the Corporation and has been supplied with all documents, records, books and other information that the Stockholder has requested pertaining to the Corporation and its operations.  The Stockholder has been afforded the opportunity to obtain any additional information necessary to verify the accuracy of any representations or information set forth in the Financial Statements or the Valuation Report or otherwise provided by the Corporation to the Stockholder.  The Stockholder has consulted, or has had the opportunity to consult, with its counsel and its tax and financial advisors with respect to this Agreement and the transactions contemplated hereby.

2.2     The Corporation represents and warrants to the Stockholder as follows:

(a)     The Corporation is a corporation duly organized, validly existing and in good standing under the laws of the state of Delaware.  The Corporation has full corporate power and authority to enter into this Agreement and to consummate the transactions contemplated hereby.

(b)     Each of this Agreement and the Note has been duly and validly executed and delivered by the Corporation and constitutes a valid and binding obligation of the Corporation, enforceable against the Corporation in accordance with their respective terms.

(c)     The execution and delivery by the Corporation of this Agreement and the Note and the consummation of the transactions contemplated hereby have been duly and validly authorized by all necessary corporate action of the Corporation.

(d)     Neither the Corporation nor any of its agents or representatives has made any agreements or taken any actions which may cause anyone to be entitled to a commission or a

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

EXHIBIT 24 - Page 135

finder's or broker's fee as a result of the execution, delivery or performance of this Agreement or the Note or consummation of the transactions contemplated hereby.

## ARTICLE III
## INDEMNIFICATION

3.1    The Corporation shall indemnify and hold the Stockholder harmless from and against any and all damages, liabilities, losses, costs or deficiencies (including, but not limited to, costs of settlement, attorneys' fees and other costs and expenses incident to proceedings, investigations, preparations or the defense of any claim) arising out of, resulting from or relating to, and shall pay the Stockholder on demand the full amount of any sum which the Stockholder is or becomes obligated to pay or suffers on account of (a) any inaccuracy in any representation or the breach of any warranty of the Corporation under this Agreement, or (b) any failure of the Corporation to perform or observe any term, provision, covenant or agreement to be performed or observed by it pursuant to this Agreement.  In no event shall any indemnification obligation of the Corporation be paid by the issuance of shares of capital stock of the Corporation.

3.2    The Stockholder shall indemnify and hold the Corporation harmless from and against any and all damages, liabilities, losses, costs or deficiencies (including, but not limited to, costs of settlement, attorneys' fees and other costs and expenses incident to proceedings, investigations, preparations or the defense of any claim) arising out of, resulting from or relating to, and shall pay the Corporation on demand the full amount of any sum which the Corporation is or becomes obligated to pay or suffers on account of (a) any inaccuracy in any representation or the breach of any warranty of the Stockholder under this Agreement, or (b) any failure of the Stockholder to perform or observe any term, provision, covenant or agreement to be performed or observed by it pursuant to this Agreement.

3.3    The party seeking indemnification pursuant to Sections 3.1 or 3.2 must notify the indemnifying party in accordance with Section 4.6 within forty-five (45) business days after the assertion in writing of any claim against the party seeking indemnification under Sections 3.1 or 3.2.  The failure of such party to so notify the indemnifying party will relieve the indemnifying party from any liability under this Agreement to the party seeking indemnification with respect to such claim.

## ARTICLE IV
## MISCELLANEOUS

4.1    At any time or from time to time at and after the date of this Agreement, the Stockholder shall, at the request of the Corporation, execute and deliver or cause to be executed and delivered all such assignments, consents, documents and instruments, and in addition take or cause to be taken all such other actions not requiring the expenditure of funds by Stockholder unless reimbursed by the Corporation, as may reasonably be necessary or desirable in order to more fully and effectively vest in the Corporation or to confirm the Corporation's title to and possession of the Shares, to assist the Corporation in exercising rights with respect thereto or otherwise to carry out the intent and purposes of this Agreement.

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

PHILA1\1782685\2 122995.000                                      4

EXHIBIT 24 - Page 136

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

4.2    This Agreement, the Note and the documents referred to in this Agreement constitute the entire agreement and understanding between the parties hereto pertaining to the subject matter hereof and supersede all prior and contemporaneous discussions, understandings, agreements, or representations by or among the parties, written or oral, to the extent they relate in any way to the subject matter hereof.   There are no representations, warranties, or other agreements between the parties in connection with the subject matter hereof, except as specifically set forth herein.   No amendment, supplement, modification or waiver of this Agreement shall be binding unless executed in writing by both parties.

4.3    This Agreement shall be binding upon, inure to the benefit of and be enforceable by the parties hereto and their heirs, legal representatives, successors and permitted assigns.   No party may assign either this Agreement or any of its rights, interests, or obligations hereunder without the prior written approval of the other party.   Any attempted assignment in violation of this Section 4.3 shall be null and void.

4.4    All times provided for in this Agreement are and shall be of the essence of this Agreement, and each extension of such time or times shall continue to be of the essence of this Agreement.

4.5    All covenants, representations, warranties and agreements (including indemnification agreements) made by the parties in or pursuant to this Agreement shall survive the date of this Agreement and any investigation at any time made by or on behalf of any party to this Agreement.

4.6    All notices, requests, and other communications to either party hereunder shall be in writing and shall either be delivered personally or be mailed, certified or registered mail, return receipt requested, postage prepaid or overnight express courier or sent by facsimile transmission, and shall be deemed to have been given when so delivered personally, one business day after being so express couriered, when so mailed or so sent, to the parties at the following addresses or at such other addresses for which due notice of change shall have been given:

If to the Stockholder:

John S. Middleton
343 Avon Road
Bryn Mawr, Pennsylvania 19010

and

Frances S. Middleton
416 Morris Avenue
Bryn Mawr, PA  19010

and

Lucia M. Hughes
100 South Westview Drive
Winston-Salem, North Carolina 27104

PHILA1\1782685\2 122995.000

5

**EXHIBIT 24 - Page 137**

with a copy to:

Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103-7213
Attention: Bruce A. Rosenfield, Esquire

If to the Corporation:

Bradford Holdings, Inc.
510 Feheley Drive
King of Prussia, PA 19406
Attention: John S. Middleton

with a copy to:

Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103
Attention: Larry P. Laubach, Esquire

4.7     This Agreement and all questions relating to validity, interpretation, performance and enforcement (including, without limitation, provisions concerning limitations of actions) shall be governed by and construed under the internal laws of the Commonwealth of Pennsylvania, notwithstanding any conflict of laws doctrines of such state or any other jurisdiction to the contrary.

4.8     If any provisions of this Agreement shall be determined to be illegal or unenforceable by any court of law, the remaining provisions shall be severable and enforceable in accordance with their terms.

4.9     No forbearance to enforce any provision or right hereunder shall be deemed to be a waiver thereof, and no waiver of any breach of any term or covenant herein shall be construed as a waiver of any other breach of the same, or any other term or covenant herein. No waiver shall be effective unless it is in writing and is signed by the party asserted to have granted such waiver.

4.10     The parties acknowledge that this Agreement is the result of the joint efforts of the parties hereto and each provision has been subject to the mutual negotiation and agreement of the parties and that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement or any amendments hereto.

4.11     This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original but all of which shall together constitute one and the same instrument.

PHILA1\1782685\2 122995.000                  6

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

**EXHIBIT 24 - Page 138**

4.12    Words used herein, regardless of the number or gender specifically used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine or neuter, as the context indicates is appropriate.

4.13    This Agreement may be executed and delivered by facsimile and, upon such delivery, the facsimile will be deemed to have the same effect as if the original signature had been delivered to the other Party.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

PHILA1\1782685\2 122995.000                    7

EXHIBIT 24 - Page 139

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date set forth above.

ATTEST                                              **BRADFORD HOLDINGS, INC.**

*[signature]*                                       *[signature]*
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾                       ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
John S. Middleton, Secretary                        John S. Middleton, President

[CORPORATE SEAL]

**STOCKHOLDER**

Frances S. Middleton, Grantor
Retained Trust dated 2/1/01,
John S. Middleton, Trustee

By:   *[signature]*
      ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
      John S. Middleton, Trustee

The undersigned grantor of the Stockholder consents and agrees to the sale of the Class B Stock owned by the Stockholder at the price and pursuant to the terms of the above Agreement and understands that she will recognize and be taxed on the gain on the sale of the Class B Stock by the Stockholder.

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Frances S. Middleton

PHILA1\1782685\2 122995.000

**EXHIBIT 24 – Page 140**

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date set forth above.

ATTEST                                        **BRADFORD HOLDINGS, INC.**

_____                _____
John S. Middleton, Secretary                  John S. Middleton, President

[CORPORATE SEAL]


**STOCKHOLDER**

Frances S. Middleton, Grantor
Retained Trust dated 2/1/01,
John S. Middleton, Trustee


By: _____
      John S. Middleton, Trustee


The undersigned grantor of the Stockholder consents and agrees to the sale of the Class B Stock owned by the Stockholder at the price and pursuant to the terms of the above Agreement and understands that she will recognize and be taxed on the gain on the sale of the Class B Stock by the Stockholder.

*Frances S. Middleton*
Frances S. Middleton

PHILA1\1782685\1 122995.000

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

**EXHIBIT 24 – Page 141**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

# EXHIBIT I

EXHIBIT 24 – Page 142

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

**COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA**

**ORPHANS' COURT DIVISION**

**No. 2015-X_____**

**TRUST OF FRANCES S. MIDDLETON, SETTLOR,
UNDER AGREEMENT OF TRUST DATED FEBRUARY 1, 2001**

**EXHIBIT I**

**PARTIES IN INTEREST**

<u>Anna K. Nupson</u>, (formerly Anna K. Middleton, Anna Mastrangelo, Anna K. Bauer and Anna M. Bauer) individually, as Settlor and Trustee of the Anna 1994 Trusts (as defined below), and with respect to any actual or claimed beneficial interest in any one or more of the Middleton Family Trusts (as defined below);

<u>Lucia M. Hughes</u>, individually, as current or former Trustee of one or more of the 1994 GST Trusts (as defined below), as former custodian for Thomas M. Hughes, as former custodian for John C. Hughes, as co-Executor of the Estate of Frances S. Middleton, Deceased, and with respect to any actual or claimed beneficial interest in any one or more of the Middleton Family Trusts (as defined below);

<u>Thomas P. Hughes</u>, individually, as current or former Trustee of the 2001 GRAT Hughes Family Trust (as defined below), as former custodian for Thomas M. Hughes, and as former custodian for John C. Hughes;

<u>James Alexander Hughes</u>, individually, and with respect to any actual or claimed beneficial interest in any one or more of the Middleton Family Trusts (as defined below);

<u>Thomas M. Hughes</u>, individually, as a beneficiary of the former custodian accounts for his benefit, and with respect to any actual or claimed beneficial interest in any one or more of the Middleton Family Trusts (as defined below);

<u>John C. Hughes</u>, individually, as a beneficiary of the former custodian accounts for his benefit, and with respect to any actual or claimed beneficial interest in any one or more of the Middleton Family Trusts (as defined below);

<u>John P. Middleton</u>, individually, as beneficiary of the Trusts under Irrevocable Agreement of Trust of John S. Middleton, Settlor, dated July 26, 1996 fbo John P. Middleton and fbo Frances B. Middleton (collectively, the "1996 Trusts"), as co-Trustee of the 1996 Trust fbo John P. Middleton, as beneficiary of the Trust of John S. Middleton dated March 3, 2003 fbo John P. Middleton and fbo Frances B. Middleton (the "2003 Trusts"), and with respect to any actual or claimed beneficial interest in any one or more of the Middleton Family Trusts (as defined below);

I-1

**EXHIBIT 24 – Page 143**

Case# 2015-X1266-1 Received at Montgomery County Register of Wills Office on 04/07/2015 9:44 PM, Fee = $108.50

<u>Frances B. Middleton</u>, individually, as beneficiary of the 1996 Trusts, as beneficiary of the 2003 Trusts, and with respect to any actual or claimed beneficial interest in any one or more of the Middleton Family Trusts (as defined below);

<u>Larry P. Laubach, Trustee</u> of the 1996 Trusts and the 2003 Trusts, and as special trustee of the 2001 GRAT JSM Family Trust (as defined below);

<u>Bruce A. Rosenfield, Trustee</u> of 2001 GRAT Trust for Anna K. Middleton;

<u>Leigh P. Middleton</u>, individually, and as a beneficiary of the 2001 GRAT JSM Family Trust (as defined below);

<u>Estate of Frances S. Middleton, Deceased</u>; and

<u>Pine Street Group, LP</u>

For purposes of this Exhibit, "Middleton Family Trusts" shall collectively refer to and include:

(a) the Trust under Agreement of Trust of Anna M. Bauer dated September 12, 1994, including the trusts fbo Hughes and fbo Middleton (collectively, the "Anna 1994 Trusts");

(b) the February 1, 2001 Grantor Retained Annuity Trust of Frances S. Middleton, Settlor, and any trusts created thereunder including the "JSM Family Trust," the "Hughes Family Trust" and "Trust for Anna K. Middleton," and any subdivided generation skipping tax exempt and non-exempt shares (collectively, the "2001 GRAT");

(c) the Trust of Herbert Middleton, Jr., dated November 18, 1982 (the "1982 Trust"); and

(d) the Trust under Agreement of Trust of Herbert H. Middleton, Jr., and Frances S. Middleton dated January 18, 1994, including any divided trusts thereunder (collectively, the "1994 GST Trusts").

I-2

**EXHIBIT 24 – Page 144**