## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANNA K. NUPSON,<br><br>                    Plaintiff,<br><br>        v.<br><br>SCHNADER HARRISON SEGAL &<br>LEWIS, LLP, AND BRUCE A.<br>ROSENFIELD, ESQ.,<br><br>                    Defendants. | **Civil Action No. 2:18-cv-02505-NIQA** |

---

**NON-PARTY SUBPOENA RECIPIENT BLANK ROME LLP'S
MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF ANNA K. NUPSON'S
RENEWED MOTION TO COMPEL COMPLIANCE WITH SUBPOENA**

---

# TABLE OF CONTENTS

**Page**

I.     **INTRODUCTION.** ................................................................................1

II.    **STATEMENT OF RELEVANT FACTS.** .........................................3

     A.     The Orphans' Court Litigation. ....................................................3

     B.     The Subpoena and Blank Rome's Initial Objections Thereto. ...............6

     C.     The Meet-and-Confer. ................................................................9

III.   **ARGUMENT.** ...........................................................................12

     A.     Mr. Middleton, In Any Capacity, and Bradford Cannot Be Compelled to Comply with a Subpoena That Does Not Name Them And That Was Not Served Upon Them. ..............................................14

     B.     Blank Rome Is Prohibited By Statute, By Jurisprudence And By Ethical Rules From Producing Its Clients' Privileged Documents. ..................16

     C.     Ms. Nupson's Motion to Compel Production of Documents Subject to a Privilege Held by Mr. Middleton and Ms. Hughes Jointly as Co-Executors of Frances S. Middleton's Estate Should Be Denied. ..........18

          1.     Blank Rome cannot produce documents subject to the privilege held jointly by the co-Executors. ...............................18

          2.     The testamentary exception to the attorney-client privilege does not permit Ms. Nupson to pierce the privilege held by Frances S. Middleton's co-Executors for her communications with counsel prior to her death. ..............................................20

          3.     Despite Ms. Nupson's assertions to the contrary, all the FSM co-Executors' Privileged Documents listed on the Compiled Logs from Frances S. Middleton's Schnader client files are protected by the privilege. .............................................23

     D.     Ms. Nupson's Argument that the Clients Waived Privilege Simply by *Offering* to Produce *Some* Documents in the Orphans' Court Litigation Is Meritless. ..............................................................................26

     E.     Ms. Nupson Continues to Mischaracterize and Misrepresent the Nature of the Documents She Seeks. ............................................28

          1.     The FSM co-Executors' Privileged Documents. ........................30

          2.     Already produced documents. ................................................30

3. Documents that are not in Blank Rome's possession, custody or control. ............................................................................................31

4. "Personal Documents." ...................................................................33

5. Documents subject to Bradford's (or an affiliate's or subsidiary's) privilege. ....................................................................34

6. Documents relating to trusts/estates for which Mr. Middleton served or serves as a fiduciary and for which Ms. Nupson was or is a beneficiary, and their interests were adverse. ...................35

7. Previously offered documents. ......................................................36

IV. CONCLUSION. ........................................................................................37

# I.    __INTRODUCTION__.

Plaintiff Anna K. Nupson ("Plaintiff" or "Ms. Nupson") has brought this Renewed Motion to Compel[1] against non-party Respondent, Blank Rome LLP ("Blank Rome"), and asks this Court to order Blank Rome to produce hundreds of documents for which its clients have invoked the protections of either the attorney-client privilege or the work product doctrine. The Motion must be denied for several reasons. As an initial matter, despite Ms. Nupson's styling of her Motion as directed to Blank Rome and its clients, she chose to direct the subpoena to ***Blank Rome alone***: The clients, who hold the privilege, were ***never*** the subject of a subpoena to produce documents, and she cannot enforce a subpoena against persons who were neither named in nor served with the subpoena. Blank Rome, of course, is prohibited by statute, ethical rule and jurisprudence from disclosing privileged communications with its clients without their consent.

In any event, Ms. Nupson has not advanced a viable basis for overriding the clients' attorney-client privilege or other protections for the three categories of documents addressed in her Renewed Motion. ***First,*** she argues that at one time, the clients (who, again, are not parties to this litigation, the subpoena or to this Motion) offered to produce *some* disputed documents in prior litigation[2] in an effort to resolve discovery disputes that were then pending before the state court. But no actual production occurred before Ms. Nupson

---

[1] Plaintiff's Renewed Motion to Compel (ECF No. 199) is referred to herein as the "Motion," "Brief" or "Br.," and exhibits thereto are referenced similarly.

[2] In prior submissions to the Court, that litigation, in numerous dockets before the Orphans' Court Division for the Court of Common Pleas of Montgomery County, Pennsylvania, has been referred to collectively as the "Orphans' Court Litigation." The "Orphans' Court Litigation" is defined in the Subpoena as "the legal proceedings in the Orphans' Court Division of the Court of Common Pleas of Montgomery County, Pennsylvania having the following docket numbers: 1998-x1871; 2012-x3503; 2014-x3827; 2015-x1266; 2016-x4305; 2017-x1239; and 2017-x1364."

withdrew, with prejudice, her then-pending state court motions against the clients and released all rights she had to make any "demands" upon them.  In short, a past offer to produce a very limited set of documents under a set of conditions that were never met cannot waive privilege as to the offered documents where the offer was not accepted and the documents were never produced, much less can such an offer operate as a wavier with respect to numerous *other* documents for which the clients have always maintained their privilege.

*Second*, Ms. Nupson relies on – for the first time, in this Renewed Motion – the testamentary exception to the attorney-client privilege as a basis for obtaining documents that are subject to a privilege held by Mr. Middleton and their sister, Lucia M. Hughes ("Ms. Hughes"), as co-Executors for their late mother, Frances S. Middleton ("Frances").[3]  Simply stated, there *is no dispute* between the co-Executors and Ms. Nupson about the validity of *any* trust or will executed by Frances:  Ms. Nupson has stipulated and agreed, in a binding settlement agreement, that the operative documents *are* valid and binding between herself and Mr. Middleton and herself and her mother's estate.  Regardless of whether she has a viable malpractice claim against her former attorneys, she has *no* claim against the co-Executors or the Estate and the testamentary exception does not apply.

*Third,* Ms. Nupson argues – again, for the first time, in this Renewed Motion – that a small category of documents should be produced because they simply reflect "facts" and are not "communications" between client and counsel.  Under her theory, a document

---

[3] Notably, Ms. Hughes is not a party to this action, to the Subpoena or to this Motion – and Mr. Middleton, as *co*-Executor, cannot unilaterally waive Frances' privilege without Ms. Hughes' consent or joinder.  *See* discussion *infra* at pages 18-20.

prepared by counsel for purposes of advising a client, or by a client for purposes of obtaining legal advice, cannot be a "communication" unless it is a "letter," an "email," a "memorandum" or the like.  But the privilege is not so narrow – regardless of its form as a "draft," or an "agenda," or a "list," a document can be a "communication" protected by the privilege even if the facts reflected in them might otherwise be discoverable through other means (for example, from *non-privileged* documents).  And all such documents in question here are exactly that:  communications between client and counsel for the purposes of obtaining legal advice.

In sum, Ms. Nupson's demand for Blank Rome's clients' privileged communications lacks any basis in law or fact, and her Motion should be denied.

## II.   **STATEMENT OF RELEVANT FACTS.**

### A.   **The Orphans' Court Litigation.**

Ms. Nupson served Blank Rome with a subpoena *duces tecum* dated July 7, 2020 (the "Subpoena," Motion Ex. 1) in which she demanded production of documents that the firm had collected in connection with the Orphans' Court Litigation[4] as part of its representation of Bradford Holdings, Inc. ("Bradford") and her brother John S. Middleton both individually and in various representative capacities, including:

- As former Trustee of the Trust of Frances S. Middleton, Settlor, dated February 1, 2001, as modified (the "2001 GRAT");

---

[4] As part of the meet-and-confer on the Subpoena at issue herein, Ms. Nupson's counsel confirmed that she does *not* seek production (and therefore would not require a privilege log) of documents generated by Blank Rome, its co-counsel or anyone else *in the course of* the Orphans' Court Litigation or after. Rather, she sought only documents from those collected as part of the effort to respond to her discovery requests and petitions for documents in the Orphans' Court Litigation.

3

- As co-Trustee along with Ms. Nupson and the now-deceased Frances S. Middleton of the Trusts under Agreement of Trust of Anna M. Bauer (*n.k.a.* Ms. Nupson), Settlor, dated September 12, 1994;

- As co-Trustee of the Trust under Agreement of Trust along with Ms. Nupson and their sister, Lucia M. Hughes, of the Trust under Agreement of Trust of Herbert H. Middleton and Anna E. Middleton dated April 21, 1972;

- As Trustee of the Trust under Agreement of Trust of John Middleton, Inc. dated May 19, 1982;

- As Trustee of the Trust under Agreement of Trust of Herbert H. Middleton, Jr. and Frances S. Middleton dated April 18, 1990;

- As co-Executor along with his sister, Ms. Hughes, of the Estate of Frances S. Middleton;

- As Trustee of the QTIP Marital Trust u/w/o Herbert H. Middleton, Jr.;

- As Trustee of the Revocable Trust of Frances S. Middleton as amended;

- As surviving co-Executor of the Estate of Herbert H. Middleton, Jr.; and

- As former co-agent under Power of Attorney for Frances S. Middleton (collectively, "Mr. Middleton").

As acknowledged by Ms. Nupson in her Renewed Motion, Mr. Middleton and Bradford produced hundreds of thousands of pages of documents to Ms. Nupson in the Orphans' Court Litigation, along with a consolidated log of documents that were either redacted or withheld in their entirety (the "Compiled Logs"). *See* Br. at 5 and Ex. 10 thereto. Ms. Nupson filed multiple motions in the Orphans' Court Litigation challenging the bases for Mr. Middleton's and Bradford's (or its subsidiaries'/affiliates') assertions of privilege over hundreds of documents. *See* Br. at 6. In the course of motion practice before the Orphans'

Court and related negotiations, Mr. Middleton and Bradford raised the *possibility* of disclosing *certain* documents *subject to specific conditions*. *See* Motion, Ex. 12 at 2 (stating that Mr. Middleton would not object to producing specified documents relating to the pre-death estate planning of his mother, Frances S. Middleton, but advising that he cannot do so "without the agreement of his co-Executor – Ms. Hughes – or an Order of this Court."); Ex. 12 at 3 (stating that Mr. Middleton was willing to produce a document "*provided that* the production of this document shall not constitute a waiver of John's right to assert any privilege or objection with respect to any other documents, and that the production is without prejudice to John's right to assert any privilege or objection with respect to any further discovery requests.") (emphasis added); Ex. 14 at 3 (stating that Mr. Middleton would be willing to produce certain categories of documents *if* Ms. Nupson would agree "that the fact of production will not be used to argue that production creates a sword/shield issue resulting in a waiver for all privileged communications.").[5]

For most of the offered documents, John (individually or in some representative capacity) and/or Bradford (or a subsidiary or affiliate) were the sole holders of the privilege, and therefore could make the offer to produce without requiring consent from anyone else. However, other documents could not be produced without the consent of a co-holder of the privilege. More specifically, one category of documents was covered by a privilege jointly

---

[5] Each of the foregoing examples of Mr. Middleton's and Bradford's discovery negotiations with Ms. Nupson in the Orphans' Court Litigation is misleadingly represented in Ms. Nupson's brief as a wholesale withdrawal of objections based on privilege, which they obviously were not. *See* Br. at 6 ("John and Bradford withdrew their objections to producing approximately 433 documents withheld and listed on their redaction and privilege logs."), at 9 ("John, in his capacity as Executor of Frances' Estate, withdrew objections to producing certain documents. . . .").

held by John Middleton with another sister, Lucia M. Hughes, as co-Executors of the Estate of their (and Plaintiff's) late mother, Frances S. Middleton.[6]

Importantly, none of the conditions precedent to Mr. Middleton's and Bradford's disclosure of those documents in Orphans' Court was ever satisfied:  Ms. Nupson declined to enter into a stipulation, Ms. Hughes never responded to the request for consent to produce documents subject to the joint co-Executors' privilege and the special master appointed by the state court to consider the discovery motions never issued a recommendation before Ms. Nupson settled her claims and withdrew, with prejudice, her motions seeking production of those documents. More importantly, as Ms. Nupson concedes, Mr. Middleton and Bradford never disclosed even one of the offered documents to her in the Orphans' Court Litigation. *See generally*, Br. (failing to identify a single offered document that was disclosed).

### B.      The Subpoena and Blank Rome's Initial Objections Thereto.

The Subpoena is directed solely to Blank Rome. *See* Motion, Ex. 1 (ECF No. 199-1) at 4 of 26 (identifying "Blank Rome LLP" as the subpoena recipient) and at 8 of 26 (defining "You").[7]  The Subpoena sets forth eight Requests for documents falling within certain categories.[8]

---

[6] That latter category of documents shall be referred to as the "FSM co-Executors' Privileged Documents." Mr. Middleton and Ms. Hughes have been represented by separate counsel in connection with the administration of their mother's Estate after her death.  Ms. Nupson has never sought the consent of Ms. Hughes for the production of these FSM co-Executors' Privileged Documents, either directly or through Ms. Hughes's counsel.

[7] This is significant because Ms. Nupson misleadingly and falsely presents her Motion as one to compel compliance *from the clients* as well as from Blank Rome. But the subpoena only names, and was served on, the firm – not Mr. Middleton in any capacity or Bradford, much less others who hold the privilege as to various documents sought by the Subpoena.  Blank Rome advised Ms. Nupson on

- Request No. 1 sought documents redacted or withheld in the Orphans' Court Litigation relating to expert valuations of Bradford prepared by Robert Siwicki at either of two employers (Howard Lawson or Fleet Advisors) from 1995 to 2003.[9]

- Request Nos. 2 and 3 sought documents redacted or withheld in the Orphans' Court Litigation relating to the "pre-death estate planning by or for Frances S. Middleton, and the probate and non-probate (gross) Estate of Frances S. Middleton."

- Request No. 4 sought documents redacted or withheld in the Orphans' Court Litigation relating to the "probate and non-probate (gross) Estate of [Ms. Nupson's and Mr. Middleton's father] Herbert H. Middleton, Jr."

- Request No. 5 sought documents redacted or withheld in the Orphans' Court Litigation relating to a "tenancy by the entireties agreement executed" by Herbert H. Middleton, Jr., and Frances S. Middleton. (There is only one such entry – Privileged Document No. 387.**)**

- Request Nos. 6 and 7 sought documents redacted or withheld in the Orphans' Court Litigation "regarding … request[s]" that Ms. Nupson made to, respectively, Schnader Harrison Segal & Lewis LLP ("Schnader," a defendant herein) or Cozen O'Connor, P.C. ("Cozen")

---

multiple occasions that the Subpoena improperly sought to compel counsel to produce documents for which the privilege, or work product production, is held by its clients. *See* Motion, Ex. 2 (letter dated July 16, 2020), Ex. 5 (letter dated October 29, 2020), Ex. 8 (letter dated November 27, 2020) and Ex. 11 (letter dated December 15, 2020). Nevertheless, Ms. Nupson chose *not* to serve a subpoena *duces tecum* upon the persons who control the privilege/work product, and pressed forward with her demands against the firm. As explained in Section III(A) below, Ms. Nupson's choice to direct the Subpoena solely to Blank Rome is fatal to her efforts to compel compliance *by the clients* who were neither named nor served and to her demand that Blank Rome disclose privileged communications and work product belonging to its clients.

[8] As set forth by Blank Rome in various communications during the meet-and-confer process from October 29th – December 15th, the Compiled Logs provide information that assist in determining whether any particular entry for redacted portions or documents withheld in their entirety are or are not responsive to the respective requests. *See, e.g.,* Motion, Ex. 8, December 15, 2020 Letter from Rebecca D. Ward to Ben Davis at pp. 2-8.

[9] Some of those documents – namely, ones reflecting communications with Mr. Siwicki himself – were previously offered to Ms. Nupson, subject to certain conditions, in the Orphans' Court Litigation. However, other "Siwicki Documents" – namely, communications by Bradford (through Mr. Middleton or otherwise) only with its then-counsel – were not offered, and Bradford has never wavered from its invocation of privilege as to those communications.

7

for either her "client files" (as to Schnader only) or "documents relating to trust(s) and estate(s) of which she holds a beneficial interest[.]"[10]

- Request No. 8 sought all documents listed on the Attachment to the Subpoena. Notably, Request Nos. 1 to 7 each contained a limiting clause at the end stating that the documents sought by each were "specifically … listed" on the Attachment.[11]

Blank Rome served its Objections to the Subpoena on July 16, 2020. (Motion, Ex. 2). Those Objections made clear that the firm could not and would *not* produce any documents for which its clients invoked privilege, work product or other protections. *See* Motion, Ex. 2, July 16, 2020 Letter at pp. 1-2, Objection No. 1 and last paragraph starting on page 2 and concluding on page 3. Blank Rome also objected on the grounds that to the extent Ms. Nupson sought to override Mr. Middleton's or Bradford's privilege, she had waived and released any such rights as part of the 2018 Settlement Agreement. *Id.* at p. 2, Objection No. 2.[12]

For three months thereafter, Ms. Nupson took no action on the Subpoena.

---

[10] The "requests" in question were made to those firms starting with correspondence from Ms. Nupson's attorney, Thomas J. Budd Mucci, to Schnader in late 2013 after Ms. Nupson's and Mr. Middleton's mother's death, and continuing thereafter. Thus, necessarily no document dated *prior to* Ms. Nupson making such "requests" to Schnader or Cozen could be responsive to these paragraphs of the Subpoena.

[11] During the meet-and-confer process, Ms. Nupson's counsel took the position that the clause did not, in fact, limit Request Nos. 1-7 despite the clear meaning of the Requests as written.

[12] The remaining Objections were resolved during the meet-and-confer process. As a result, the arguments presented in Section III(B)(4)-(5) of Ms. Nupson's brief are now moot.

C.     **The Meet-and-Confer**.

On October 21, 2020, Ms. Nupson took issue with the Objections for the first time. *See* Motion, Ex. 3, October 21, 2020 Letter from Ms. Nupson's counsel, Ben Davis.[13]  That letter purported to initiate a "good faith" effort to meet-and-confer, coupled with a demand that Blank Rome respond within less than 48 hours. *See* Motion, Ex. 3. Blank Rome responded by letter dated October 23, 2020 from Rebecca D. Ward, rejecting Ms. Nupson's contention that the firm, or its clients, had caused "undue delay" when she herself had permitted 3+ months to lapse. *See* Motion, Ex. 4. Nevertheless, Blank Rome stated it would respond by October 29th and would engage in video or telephone conferences to discuss the Subpoena. In the interim, Ms. Ward asked that Mr. Davis (who had not been involved in the Orphans' Court Litigation) become familiar with the history of the lengthy meet-and-confer and discovery motion briefing that had occurred in state court.

Blank Rome provided a more detailed response to the issues raised by Mr. Davis in a letter dated October 29, 2020 and, *inter alia*, again reiterated that Blank Rome could not and

---

[13] The timing is curious given the 3+ months that had passed since the Objections. Blank Rome has since learned, through recent filings, that on the same day Plaintiff demanded the firm meet, confer and resolve objections in less than 48 hours, she asked Defendants for an agreement to extend completion of discovery (then set to end on November 30, 2020) in light of already-pending discovery motions. A week thereafter, she and Defendants agreed to a stipulation for an extension *only* as to depositions and forthcoming court orders. Of course, at that time, there was no pending motion against Blank Rome, and she took no steps to file one before November 30th. Plaintiff served additional written discovery on Defendants on December 22, 2020, and filed the instant motion against Blank Rome on January 7, 2021. Defendants moved to enforce the October stipulation on January 15, 2021. *See* ECF No. 169. The Court granted Defendants' Motion, prohibiting Plaintiff from expanding written discovery beyond what was already teed up before the stipulation. (*See* ECF No. 171 (January 20, 2021 Order). Accordingly, Plaintiff filed a notice to withdraw her December discovery requests to Defendants. *See* ECF No. 172. She has not, however, withdrawn this Motion – and rather moved forward to serve an *additional* document subpoena on another non-party attorney, James Mannion, who also represented Mr. Middleton and Bradford in the Orphans' Court Litigation.

would not produce documents for which its clients invoked privilege or work product. *See* Motion, Ex. 5. A telephonic conference was held on November 11, 2020, after which Ms. Ward sent an email summarizing her understanding of the discussion. *See* Motion, Ex. 6. As reflected therein, Ms. Ward again stated – during the call, and in the summary email – the firm's position that it could not and would not produce documents for which its clients invoked privilege and/or work product. However, Blank Rome was willing to confer with its clients to determine whether they would re-extend the offer Ms. Nupson had previously rebuffed in state court – to authorize Blank Rome to produce *some* subset of documents, such as communications with Robert Siwicki, subject to an agreement that such production would not be used as a basis to argue for subject matter waiver, and as long as the documents in question were actually responsive to the Subpoena.[14]

The efforts to meet-and-confer continued thereafter. Mr. Davis responded by letter dated November 18, 2020, offering annotations to the Compiled Redaction and Privilege Logs to identify documents he contended were "Siwicki Documents" that had been previously offered, as well as numerous other documents purportedly responsive to the Subpoena. *See* Motion, Ex. 7. Ms. Ward responded on November 27th, (a) pointing out that many documents he classified as "Siwicki Documents" (and therefore responsive to Request No. 1) had nothing to do with Mr. Siwicki, Howard Lawson or Fleet Advisors (*see* Motion, Ex. 8 at pp. 3-5), (b) explaining that many documents identified by Mr. Davis were not responsive to the Subpoena at all (*see, e.g.,* Motion, Ex. 8 at pp. 6-7), and (c) again asserting

---

[14] In other words, Ms. Ward made clear that even if a document was offered in the Orphans' Court Litigation, if it was not responsive to the Subpoena served on the firm *in this case*, it would not agree to expand the scope of the Subpoena nor seek her clients' approval to produce it. *See, e.g.,* Motion, Ex. 8 at p. 6.

that many were subject to a privilege objection that had never been, and never would be, withdrawn by the clients. *See* Motion, Ex. 8 at pp. 7-8.[15]  Another telephonic conference was held on November 30th and Mr. Davis provided a replacement annotated Compiled Log. *See* Motion at Ex. 9 and 10. Ms. Ward responded in a December 15th letter in which she detailed how Ms. Nupson continued to mischaracterize numerous documents on the Logs and how to determine, based upon the description and the identified "holder" of a privilege, which ones were and were not responsive to any given Request in the Subpoena. *See* Motion, Ex. 8.

Throughout, one of the issues discussed both in the correspondence and during the telephonic conferences was the need to obtain Ms. Hughes' consent before any "FSM co-Executors' Privileged Documents" could be produced. Blank Rome does not represent and never has represented Ms. Hughes in any capacity. It objected, and continues to object, to any effort by Ms. Nupson to impose an obligation upon Blank Rome to pursue discovery from Ms. Hughes on Ms. Nupson's behalf.

---

[15] Simply by way of example, and without limitation, Plaintiff asked Blank Rome – as she had asked its clients in the Orphans' Court Litigation – to produce privileged information relating to Mr. Middleton's and his wife's own personal estate planning or other personal matters, without making even a token effort to explain (a) why that information is relevant to her dispute with Defendants herein, or (b) what was the basis for overriding their privilege. *See* Motion, Ex. 8 (December 15, 2020 Letter from Ms. Ward) at p. 7 and Ex. 3 thereto. Similarly, Ms. Nupson again demanded documents for which Bradford invoked privilege, relating to legal advice for the business, but failed to explain why she was permitted to override the privilege. *Id.* at p. 7 and Ex. 4 thereto. Ms. Nupson's Renewed Motion is less than clear on the question of whether she still seeks to compel production of such documents.  For instance, on the one hand, she says she does *not* want Mr. Middleton's and his spouse's "personal" documents, but then adds a caveat that she *does* want any such documents – even, apparently, privileged ones – that relate in any way to the "family businesses." *See, e.g.,* Renewed Motion at p. 2 (describing generally the documents still sought).  Yet, strikingly, the Renewed Motion again fails to articulate how such documents might be relevant – and even more strikingly, utterly fails to explain why she can pierce the privilege held by Mr. Middleton and his spouse.

Ms. Nupson never responded to that letter before bringing her first Motion to Compel. *See* ECF No. 166. After Blank Rome filed its response (*see* ECF No. 174), the Court denied the motion without prejudice with leave for Ms. Nupson to refile after a ruling by Magistrate Judge Lynne Sitarski on Ms. Nupson's separate motion against Defendants herein. *See* ECF No. 178. On April 7, 2001, Magistrate Judge Sitarski issued her opinion and order on that separate motion (*see* ECF No. 194-195); the findings set forth therein disposed of certain arguments made by Ms. Nupson and Blank Rome, but left others unaddressed.[16]

Ms. Nupson has now brought her Renewed Motion. For the reasons set forth below, the Renewed Motion should be denied.

## III.   **ARGUMENT**.

Ms. Nupson seemingly tenders Exhibit 10 to her Renewed Motion (which she provided to Blank Rome via email download link on December 8th) as the identification of documents she seeks: Those highlighted in green are purportedly the ones previously offered in the Orphans' Court Litigation. *See* Motion at p. 4 n. 3.[17] Those highlighted in

---

[16] Among other things, Judge Sitarski noted that certain provisions of the 2018 Settlement Agreement regarding the formal dismissal of Ms. Nupson's *Rosenblum* Motions had not yet been triggered. That statement was not necessary to the ultimate result on Ms. Nupson's Motion to Compel against the Defendants, as the Court upheld Mr. Middleton's and Bradford's invocation of privilege on other grounds. Judge Sitarski did not address whether the broad Release in the 2018 Settlement Agreement affected Ms. Nupson's rights to reassert her demands for documents subject to the invocation of privilege and/or work product.

[17] Again, Ms. Nupson claims falsely that the clients "have already withdrawn" any objection based on privilege as to those documents. *Id.* However, several documents, or redacted portions of documents, Ms. Nupson has highlighted in green were in fact *not* offered to be produced in the Orphans' Court Litigation: Blank Rome's clients never offered to produce full, unredacted copies of BHICOZ019427 or BHISH003751. Further, although the clients did agree to produce – ***and did produce*** in the summer of 2017 – redacted versions of Privilege Log entries 479, 541, 973, 1085, 1193, 1194 and 1279, they never authorized production of full, unredacted versions. Finally, the

yellow are documents listed on the Attachment to the Subpoena (*id.*), which limited the documents sought in Request Nos. 1-7 and provides the only description of what is sought in Request No. 8. *See* Motion, Ex. 1, Subpoena, Request No. 8. As an initial matter, given the limitation of Request Nos. 1-7 to only "specifically the items listed on [the] Attachment," and the express statement that Request No. 8 seeks *only* those items, if a document does not appear on the Attachment, it is not responsive to the Subpoena as served – and any Motion to Compel any document beyond those on the Attachment must be denied.[18]

Furthermore, even if Ms. Nupson could expand the scope of the Subpoena beyond the clear and express language of her own Requests (she cannot), her Motion sets forth no bases for her to compel Blank Rome to produce documents for which its clients – *who received **no** subpoena* – have invoked the attorney-client privilege and/or work product doctrine. Regardless of whether *some* documents identified on Exhibit 10 were offered in the

---

clients never agreed to produce – and never produced – any version of Privilege Log entries 281, 568 or 761. Blank Rome noted these discrepancies in its response to Ms. Nupson's first motion. *See* ECF No. 174 at p. 11 fn. 15.

Further, Ms. Nupson identifies at least some documents that have already been the subject of motion practice in this case:  Blank Rome inadvertently produced native files of some redacted documents to Defendants, who thereafter provided them to Plaintiff's counsel.  When the error was discovered, Blank Rome made a clawback demand under the protective order governing discovery in this case – and when Plaintiff's refused, moved to enforce the protective order. *See* ECF No. 133. Ms. Nupson opposed, but challenged only 2 of the affected 105 documents.  *See* ECF No. 143.  The Court granted the Motion in its entirety, and required Plaintiff and her counsel to certify to the destruction of all 105 documents at issue. *See* ECF No. 163.  When she filed the instant Motion to Compel, she asked for documents *she has already been told she cannot have.*  For this reason, to the extent she seeks *any* documents at issue in the prior Motion to Enforce (*see* ECF No. 133-16, listing the 105 inadvertently produced documents), this Motion should be denied.

[18]As she did in her original motion, Ms. Nupson does not make clear in her Renewed Motion whether she seeks documents listed on Exhibit 10, but not highlighted in any color. For purposes of this Response, Blank Rome assumes she seeks to compel only the highlighted documents. If Ms. Nupson takes a different position in her Reply, Blank Rome will seek leave to file a Sur Reply to address any additional arguments Ms. Nupson may make about other documents.

Orphans' Court Litigation, *they were not produced*.[19]  Thus, there cannot have been *any* "waiver" as to those documents – much less as to the numerous *other* documents that were *neither* offered *nor* produced.  Similarly, Ms. Nupson has again failed to present any basis for piercing privilege for the documents she seeks – especially those subject to her late mother's privilege, now held jointly by her siblings, Mr. Middleton and Lucia Hughes, as co-Executors.

For the reasons set forth below, Ms. Nupson's Renewed Motion should be denied in its entirety.

### A.    Mr. Middleton, In Any Capacity, and Bradford Cannot Be Compelled to Comply with a Subpoena That Does Not Name Them And That Was Not Served Upon Them.

As explained above, the Subpoena is directed to, and was served upon, Blank Rome and not to its clients, Mr. Middleton (individually or in any representative capacity) or Bradford.  Ms. Nupson attempts to hand-wave this away in her Renewed Motion, pointing out that she asked the firm to accept service "via email on behalf of [its] clients." *See* Br. at pp. 1-2 fn. 1.  She fails to inform the Court, however, that the firm did *not* accept service on anyone's behalf – either its clients or itself.  Rather, the Subpoena was formally served upon the firm at its place of business.  And the Subpoena, as served, named only one "person": Blank Rome itself.

---

[19]  Further, under Pennsylvania law, voluntary disclosure of documents claimed to be protected by the attorney-client privilege to resolve disputes between the parties has been found not to operate as a waiver of other protected, confidential communications, even as to communications involving the same subject matter. *See, e.g., Minatronics Corp. v. Buchanan Ingersoll, P.C.,* 23 Pa. D. & C.4th 1, 20-21 (C.C.P. Allegh. 1995).  Thus, even if production *had occurred*, it would not operate as a subject matter waiver.

The distinction is important because Federal Rule of Civil Procedure 45 sets out explicit requirements for issuing and serving a valid subpoena. First, for purposes of the instant case, the subpoena "**must** … command **each person to whom it is directed**" to take certain actions, such as appear for testimony or produce documents. *See* Rule 45(a)(1)(A)(iii) (emphasis added). Further, proper service "requires delivering a copy **to the named person**." *See* Rule 45(b)(1) (emphasis added). The mandates to (a) explicitly name the person obligated to respond to the subpoena, and (b) serve *that person* are not mere technicalities. For instance, in *Application of Johnson and Johnson*, 59 F.R.D. 174 (D. Del. 1973), the court considered subpoenas naming individuals as the targets rather than their corporate employer, though some of the subpoenas did parenthetically refer to the individuals' status as employees. Because the subpoenas were served upon the corporation's registered agent, they were unenforceable against *either* the individuals (who were not served) *or* the corporation (which was not named). *Johnson and Johnson*, 59 F.R.D. at 177 ("The only reasonable inference to be drawn from the notices and the subpoenas is that they were directed to" the individual targets "named" therein); *McClendon v. Dougherty*, Civil Action No. 2:10-cv-1339, 2011 WL 4971847, at *2 (W.D. Pa. Oct. 19, 2011) (subpoena could not be enforced against entity not named in the subpoena itself); *Dopson-Troutt v. Novartis Pharmaceuticals Corp.*, 295 F.R.D. 536, 538 (M.D. Fla. 2013) (individuals could not be compelled to appear in response to a subpoena served upon corporation); *Smith v. Midland Brake, Inc.*, 162 F.R.D. 683, 687 (D. Kan. 1995) (compliance with subpoena cannot be ordered against person who was neither named in nor served with the subpoena).

Further, *even if* the Subpoena named one or more of the clients (Mr. Middleton in his individual and/or various representative capacities, or Bradford and/or its numerous subsidiaries and affiliates), service upon Blank Rome would have rendered it unenforceable *against the clients. See, e.g., Harrison v. Prather*, 404 F.2d 267, 273 (5th Cir. 1968) (service of subpoena on target's lawyer is insufficient under Rule 45*); Cadlerock Joint Venture, L.P. v. Adon Fruits & Vegetables, Inc.*, No. 09-CV-2507 (RRM) (RER), 2010 WL 2346283, at *3 (E.D.N.Y. Apr. 21, 2010) (same); *In re Smith*, 126 F.R.D. 461, 462 (E.D.N.Y. 1989) (same); *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Am*ericas, 262 F.R.D. 293, 304 (S.D.N.Y. 2009) (same); *Khachikian v. BASF Corp.*, No. 91–CV-573, 1994 WL 86702, at *1 (N.D.N.Y. Mar. 4, 1994) (same); *Roofers Local 149 Sec. Benefit Trust Fund v. Milbrand Roofing Group, Inc.*, No. 05-CV-60218, 2007 WL 2421479, at *1 (E.D. Mich. Aug. 22, 2007) (same); 9A WRIGHT & MILLER, FED. PRAC. & PROC. CIV. § 2454 (3d ed. 2021 Update) (("[U]nlike service of most litigation papers after the summons and complaint, service [of a subpoena] on a person's lawyer will not suffice.").

In short, neither Mr. Middleton (in any capacity) nor Bradford – nor anyone related to or affiliated with them – can be compelled to comply with the Subpoena.

**B.     Blank Rome Is Prohibited By Statute, By Jurisprudence And By Ethical Rules From Producing Its Clients' Privileged Documents.**

The fact that Blank Rome necessarily asserted privilege and similar objections "on behalf of" its clients does not change this analysis:  Controlling statutory law, jurisprudence and ethical rules all require Blank Rome to assert the privilege on behalf of its clients and prohibit Blank Rome from disclosing materials for which its clients, Mr. Middleton and

16

Bradford, are the holders of the privilege. *See* 42 Pa.C.S.A. § 5928 ("In a civil matter counsel ***shall not*** be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.") (emphasis added); Pennsylvania Rules of Prof. Conduct, Rule 1.6(a) ("A lawyer ***shall not*** reveal information relating to representation of a client unless the client gives informed consent. ...") (emphasis added); *Maleski v. Corporate Life Ins. Co.*, 646 A.2d 1, 4 (Pa. Commw. 1994) ("The purpose of the attorney-client privilege is to benefit the client, and accordingly, the client is the holder of the privilege."); *Commonwealth v. McKenna*, 213 A.2d 223, 226 (Pa. Super. 1965) ("the right to assert the privilege is that of the client") (citing *Dowie's Estate*, 19 A. 936 (Pa. 1890)). *Even if* certain documents are (a) responsive to the Subpoena, and (b) actually are relevant to Plaintiff's dispute with Defendants,[20] Blank Rome is not authorized or otherwise empowered to disclose the requested materials absent consent from its clients. Ms. Nupson's Motion to Compel – which can be properly directed only to Blank Rome, and not the clients who were never served with a subpoena *duces tecum* – must be denied.[21]

---

[20] As noted in Ms. Ward's December 15, 2020 Letter (*see* Motion, Ex. 11 at p. 7), a number of the documents Plaintiff seeks are privileged or otherwise confidential communications by Mr. Middleton and/or his wife about their own personal legal matters. Despite repeated requests – both in the Orphans' Court Litigation, in the meet-and-confer process or the instant Subpoena – Ms. Nupson has *never* articulated *any* basis for her attempt to pierce Mr. Middleton's and his wife's privilege. And her Renewed Motion, once again, tellingly lacks any justification for how those documents could have even tangential relevance to her dispute with Defendants regarding the 2001 GRAT and the 2003 Redemption.

[21] As an aside, Blank Rome notes that Ms. Nupson purports to bring her motion to compel under Federal Rules of Civil Procedure 26 and 37, in addition to Rule 45. But Blank Rome – like Mr. Middleton and Bradford – is not a "party" to this action and Rules 26 and 37 do *not* apply to the document subpoena served upon it. *See, e.g., Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 (9th Cir. 1983) (only authority for relief against non-party for failure to comply with a subpoena is Rule 45); *In re Exxon Valdez*, 142 F.R.D. 380, 385 (D.D.C. 1992) (Rule 37 applies only to parties and

**C.     Ms. Nupson's Motion to Compel Production of Documents Subject to a Privilege Held by Mr. Middleton and Ms. Hughes Jointly as Co-Executors of Frances S. Middleton's Estate Should Be Denied.**

**1.     Blank Rome cannot produce documents subject to the privilege held jointly by the co-Executors.**

Ms. Nupson's demand for the FSM co-Executors' Privileged Documents simply compounds the issue. *See* Br. at 12-16; Motion, Ex. 1 (the Subpoena, specifically, document Request Nos. 2 and 3.). Under Pennsylvania law, following the death of a client, the attorney-client privilege survives and is held by the deceased client's personal representative(s), *i.e.*, her executors or administrators. *See, e.g., Law Office of Douglas T. Harris, Esquire v. Philadelphia Waterfront Partners, LP*, 957 A.2d 1223, 1230 n.4 (Pa. Super. 2008) (quoting 8 WIGMORE, EVIDENCE § 2329 (McNaughton rev. 1961)); 1 MCCORMICK ON EVID. § 94 (7th ed.) (citations omitted).   Mr. Middleton's sister, Lucia Hughes, is co-Executor with him of the Estate of their mother, Frances. As such, Ms. Hughes *jointly* controls the privilege that protects communications that Frances had, before her death, with her own attorneys.

Significantly, Ms. Hughes is not represented by, and has *never* been represented by, Blank Rome. Because Blank Rome's client, Mr. Middleton, jointly controls the privilege with respect to and shares a common interest in these privileged documents with Ms. Hughes, controlling jurisprudence requires Ms. Hughes' consent to disclose privileged documents and

---

under Rule 34 relief against *non*-parties for failure to produce documents must be sought under Rule 45); *General Ins. Co. of America v. Eastern Consol. Utilities*, 126 F.3d 215, 220-21 (3d Cir. 1997) (discussing limited scope of Rule 37 when applied to non-parties and finding it applicable only where non-party refuses to answer a question at a deposition); *Fisher v. Marubeni Cotton Corp.*, 526 F.2d 1338, 1341 (8th Cir. 1975) (Rule 37 "has no application to a non-party's refusal to produce documents").

information relating to Frances's estate planning. *See Serrano v. Chesapeake Appalachia, LLC*, 298 F.R.D. 271, 284 (W.D. Pa. 2014) (holding that the "common interest" privilege arises where information is shared among parties "pursuant to a common legal interest" and that "[t]he consent of all clients generally is required to waive privileged communications generated from the shared attorney-client communications.")(citing *In re Teleglobe Communications Corp.*, 493 F.3d 345 (3d Cir. 2007)). Further, under Pennsylvania law co-Executors operating outside the ordinary administration of an estate, such as a litigation decision to waive the attorney-client privilege, *cannot* act without the consent of *both* co-Executors. *See In re Estate of Moskowitz*, 115 A.3d 372 (Pa. Super. 2015). Accordingly, Blank Rome is obligated to uphold the privilege for those documents unless *both* Co-Executors – Mr. Middleton *and* Ms. Hughes – consent to their production.

Pennsylvania's Probate, Estates and Fiduciaries Code, 20 Pa. C.S.A. § 101 *et seq.*, provides a mechanism to resolve an impasse: When a dispute arises between co-Executors regarding the exercise of their powers, including a decision to waive the attorney-client privilege, the Orphans' Court, upon petition by an interested party, may direct the exercise or non-exercise of the power "as the court shall deem for the best interest of the estate." *See* 20 Pa. C.S.A. § 3328(b). Ms. Nupson has not sought Ms. Hughes's consent to disclose Frances's privileged documents; nor has she petitioned the Orphans' Court to direct Ms. Hughes to do so.

By letter dated November 27, 2020, Blank Rome advised Ms. Nupson (not for the first time) that, because Ms. Hughes "also holds" the privilege over Frances's estate planning documents, Blank Rome "may not be able to produce such documents without her express

consent." Motion, Ex. 8 at 7. But neither in her original and Renewed Motions nor in her pre-motion correspondence does Ms. Nupson provide any means for resolving this dilemma of her own making. Indeed, there is no indication in the Subpoena or in Ms. Nupson's Renewed Motion that she has even contacted Ms. Hughes or her counsel regarding the FSM co-Executors' Privileged Documents.[22] Additionally, in the subpoena that was allegedly served upon Ms. Hughes by Ms. Nupson (and which is subject to a separate motion filed by Ms. Nupson), Ms. Nupson does not seek the production of *any documents* from Ms. Hughes. *See* ECF No. 196.

Because Blank Rome, as the sole recipient of the Subpoena, is prohibited by statute, rule of professional conduct and controlling jurisprudence from disclosing the requested privileged materials absent the consent of its clients and others holding a common interest, Ms. Nupson's Motion to Compel must be denied.

> **2.    The testamentary exception to the attorney-client privilege does not permit Ms. Nupson to pierce the privilege held by Frances S. Middleton's co-Executors for her <u>communications with counsel prior to her death</u>.**

Ms. Nupson attempts to evade the co-Executors' privilege by relying on the "testamentary exception" to the attorney-client privilege.  *See* Br. at pp. 15-17.  In addition to two United States Supreme Court opinions and the Restatement (Third) of the Law Governing Lawyers, Ms. Nupson cites only a single Pennsylvania opinion, from the Orphans' Court of Centre County,  *In re Thevaos Estate*, 2010 WL 1435160, 30 Fiduc. Rep.2d

---

[22] Even if she had, Ms. Nupson cannot force Ms. Hughes to take a position on, much less waive, the co-Executors' privilege by bringing a Motion against Blank Rome. Nor is it reasonable for her to ask Blank Rome to bear the risk of an ethics complaint by producing documents for which Ms. Hughes is co-owner of the privilege, or pursue an appeal that would necessarily follow any order directing such production without Ms. Hughes' consent.

140 (C.C.P. Centre 2010) in support of this argument.  However, *even if* Pennsylvania courts were to recognize this exception, it does *not* apply here because the instant lawsuit *is not between* the "heirs or next of kin" of a common devisee, Frances S. Middleton.  *See Glover v. Patten*, 165 U.S. 394, 406 (1987) (testamentary exception applies where "the contest is between the heirs or next of kin").

Simply put, this suit is not between or among Frances S. Middleton's heirs.  It does *not* seek to determine whether Frances S. Middleton's true intentions were to gift all her Class B Nonvoting shares of stock of Bradford to one child, Mr. Middleton, under the Original 2001 GRAT or whether she would have truly wanted for her children to share equally in her beneficence:  All three *already* have shared equally, including Ms. Nupson – who received her 1/3 share of her mother's Class B Bradford stock under the Amended 2001 GRAT in 2003.  Rather, here she sues her own former attorneys for money damages allegedly caused by their malpractice in giving her bad advice on whether to sell her stock – including her 1/3 share in her mother's stock – back to Bradford at a particular price in 2003.  Neither Ms. Nupson's percentage interest in her mother's assets, nor the interests of her siblings who are not even parties here, will change one whit as a result of a judgment in her favor in this case.  As a result, the "testamentary exception" *does not apply.  See, e.g., Swidler & Berlin v. U.S.*, 524 U.S. 399, 405-10 (1998) (discussing rationale for exception in suits between heirs claiming as devisees from a common benefactor, and holding that exception does not apply in other contexts); *Collautt v. Li*, Civil Action No. 14-632, 2014 WL 6988657, at *3 (E.D. Pa. Dec. 11, 2014) (discussing *Thevaos Estate* and *Glover* and declining to extend exception to other contexts); *Wesp v. Everson*, 33 P.3d 191, 201 (Colo. 2001) ("This case is not

21

a will contest and [the daughter] does not attempt to claim by succession. … Hence, the testamentary exception does not apply"); *Morrow v. Pappas*, 90 N.E.3d 501, 511-12 (Ill. App. 2017) (discussing rationale for the exception and holding that it did not apply in tort suit by beneficiaries under first will against testator's former attorneys and beneficiaries under second will).

Further, to the extent Ms. Nupson had any dispute with Mr. Middleton (in any capacity, including as heir of and co-Executor for his mother) about their respective shares in their mother's assets (whether devised by will, or through *any inter vivos* trust), *that* was resolved in the 2018 Settlement Agreement, in which she *agreed and stipulated* that the Original and Amended 2001 GRAT are valid and enforceable.   *See* Exhibit B, 2018 Settlement Agreement at pp. 20-21, § II.A.3.   *Even if* this action were a dispute between Frances S. Middleton's heirs – and it is not – the testamentary exception would not apply once the validity of a previously contested document was no longer at issue. *Morrow* is illustrative on that point – in that case, beneficiaries under a testator's first will, which was revoked and replaced by a second will, sought to rely upon the exception to pierce the testator's privilege in a tort suit with those attorneys and the beneficiaries under the second will.   But the second will had already been accepted simply by the plaintiffs' failure to timely object to its validity – in effect, conceding the dispute about validity to the other beneficiaries.   Because there was no longer a "contest to the distribution scheme," even if only by inaction, the testamentary exception did not apply. *Morrow*, 90 N.E.3d at 512.   The same reasoning applies here, but even more forcefully: Ms. Nupson *actively and knowingly agreed* with Mr. Middleton –

in every capacity, including as his mother's co-Executor – that there is no longer a dispute between them regarding their respective shares in their mother's assets.

For these reasons, the testamentary exception to the attorney-client privilege cannot be used to override the invocation of privilege over the FSM co-Executors' Privileged Documents in this suit by Ms. Nupson against her former attorneys.

> ### 3. Despite Ms. Nupson's assertions to the contrary, all the FSM co-Executors' Privileged Documents listed on the Compiled Logs from Frances S. Middleton's Schnader <u>client files are protected by the privilege.</u>

Finally, Ms. Nupson attempts to pierce her mother's privilege for a small set of documents – all from Frances S. Middleton's client files at Schnader – on the theory that they contain nothing more than "facts" and therefore are not "communications." *See* Br. at pp. 12-14.[23]  Ms. Nupson points to draft documents (*id.* at 13 and 14), charts and summaries of ownership interests, assets and the like (including handwritten material by Schnader attorneys) (*id.* at 14) and an agenda for a meeting between Frances S. Middleton and her

---

[23] The documents in question are listed in the color-coded chart attached hereto as Exhibit A at pp. 176-195.  All of the documents identified in Ms. Nupson's Renewed Motion are from the same production – a final production of hard-copy files that occurred on January 31, 2017 (the "1/31/17 Production"), the deadline set by the Orphans' Court for producing documents responsive to Ms. Nupson's Requests for Production in that litigation.  As Blank Rome noted on Exhibit A when it responded to Ms. Nupson's original Motion to Compel, the entries on the "1/31/17 Production" privilege log were not collected into the Compiled Privilege Logs in the Orphans' Court Litigation because Ms. Nupson did not challenge any entries contained thereon in those proceedings.  Thus, these particular entries did not, at that time, receive the same types of revision and elaboration as the other logs.  For purposes of responding to Ms. Nupson's original Motion, Blank Rome expanded upon (and at times corrected) the document descriptions and the identification of the holder(s) of any privilege.  Though referred to at the time, and in the Subpoena attachment, as a production of "Schnader Hardcopy Documents," as shown by the descriptions for the last documents, the log for the 1/31/17 Production also included some materials from the files of Cozen O'Connor, P.C.

attorneys. *Id.*  Ms. Nupson contends such documents cannot possibly be protected by the attorney-client privilege.  However, under Pennsylvania law, she is wrong.

First, to be clear, Blank Rome agrees that "facts," as such, are discoverable. However, communications with counsel about those facts – *even if* the communications amount to *nothing more* than a recitation of facts – *are not. Upjohn Co. v. U.S.*, 449 U.S. 383, 395-96 (1981) (discovering "[a] fact is one thing" but discovering "a communication concerning that fact is an entirely different thing" and [t]he client cannot be compelled to answer the question, 'What did you say or write to the attorney?'"); *Gould v. City of Aliquippa*, 750 A.2d 934, 938 (Pa. Commw. 2000) (citing, *inter alia*, *Upjohn*); *Newsuan v. Republic Services Inc.*, 213 A.3d 279, 288 (Pa. Super. 2019); *Van Every v. Ambrozyak*, No. 797 MDA 2017, 2018 WL 1886724, at *5 (Pa. Super. Apr. 20, 2018); *McElwee v. Leber*, 59 Pa. D. & C.4th 462, 469-70, 2002 WL 32085677 (C.P. Lycoming 2002) *Serrano v. Chesapeake Appalachia, LLC*, 298 F.R.D. 271, 281-82 (W.D. Pa. 2014).

Further, it *does not matter* that these particular documents are draft trusts, or charts, or an agenda.  Indeed, the Pennsylvania Supreme Court has expressly stated that the "determination of the applicability of the attorney-client privilege does not turn on the category of the information … or the category of a document."  *Levy v. Senate of Pennsylvania*, 619 Pa. 586, 606, 65 A.3d 361, 373 (2013).  The "relevant question is whether the content of the writing" contains information communicated between attorney and client for purposes of obtaining legal advice.  *Id.* As a result, draft documents – such as the draft trusts at issue here – are protected.  *See, e.g., Andritz Spourt-Bauer, Inc. v. Beazer East, Inc.*, 174 F.R.D. 609, 633 (M.D. Pa. 1997) ("Preliminary drafts of contracts are generally protected by attorney client

privilege, since [they] may reflect not only client confidences, but also legal advice and opinions of attorneys, all of which is protected by the attorney client privilege.") (internal quotations and citations omitted); *Southeastern Pennsylvania Transp. Authority v. Caremarkpcs Health, L.P.*, 254 F.R.D. 253, 265 (E.D. Pa. 2008) (same, finding draft addendum to contract was privileged). Similarly, handwritten notes are protected if they were taken for purposes of obtaining legal advice. *See, e.g., Farrell v. Regola*, 150 A.3d 87, 102 (Pa. Super. 2016). Whatever the form of the document – even if it contains *only* "facts" – if it was prepared so that the client could obtain legal advice and was given to the attorney, then it is privileged. *See, e.g., LightStyles, Ltd. v. Marvin Lumber and Cedar Co.*, Civil No. 1:13-CV-1510, 2014 WL 2115214, at *2 (M.D. Pa. May 21, 2014); *McElwee*, 59 Pa. D. & C.4th at 470 (documents privileged because they "would not have been generated absent the need for them by counsel to assist the" client).

In other words, if Frances S. Middleton were alive today, Ms. Nupson could ask her about the underlying "facts" – but Mrs. Middleton could not be compelled to answer questions about what she communicated to her attorneys, or what they communicated to her, about those facts. It does not matter that the documents at issue are not formal letters, emails or memoranda – the "category" of the document (a chart, a summary, an agenda) is irrelevant. All of the documents in question were in the Schnader files for the 1/31/17 Production because they reflect information *communicated* between Mrs. Middleton and her attorneys for purposes of obtaining their advice about her trusts and estate planning.

For these additional reasons, Ms. Nupson's request that this Court pierce Mrs. Middleton's privilege and order production of any of the FSM co-Executors' Privileged Documents should be denied.

### D. Ms. Nupson's Argument that the Clients Waived Privilege Simply by *Offering* to Produce *Some* Documents in the Orphans' Court Litigation Is Meritless.

Ms. Nupson claims that Mr. Middleton and Bradford waived **all** privilege as to *every* document she seeks (even if not responsive to the Subpoena) simply because they offered to produce *some* documents as part of a resolution of since-dismissed discovery motions in the Orphans' Court Litigation[24] – even though, as she must admit, *the offered documents were never actually produced.* There is no legal support for Ms. Nupson's argument, not even in the cases she cites. Indeed, Ms. Nupson advocates a vast expansion of the well-settled, limited waiver exception to the attorney-client privilege.

Blank Rome acknowledges that the Third Circuit has held that "voluntary disclosure to a third party of purportedly privileged communications has long been considered inconsistent with an assertion of the [attorney-client] privilege." *See* Br. at 8 (citing *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1424 (3d Cir. 1991)). Accordingly, "once a client **has** revealed privileged information to a third party, the basic justification for the privilege no longer applies." *Id.* (emphasis added) (citing same). It is in fact the law of this Circuit that "voluntary disclosure of a communication protected by the attorney-client privilege may result in waiver of the privilege for all communications pertaining to the same subject matter ('subject matter waiver')," as Ms. Nupson also states in

---

[24] *See* Footnote 19 above.

26

her brief. *See* Br. at 8 (citing *United States ex rel. Lord v. NAPA Mgmt. Servs. Corp.*, Civil Action

No. 3:13-2940, 2019 WL 5829535, at *12 (M.D. Pa. Nov. 7, 2019) (citations omitted)).

But in these cases and every other case cited by Plaintiff, the party accused of waiving

the attorney-client privilege *actually disclosed* privileged documents or information.[25] Ms.

Nupson does not and cannot make such an allegation in this case, where, at most, Ms.

Nupson only had discussions with Mr. Middleton and Bradford about conditions under

which they might disclose specific documents to her in the Orphans' Court Litigation,

subject to certain conditions. (*See supra* Section II(A).) Importantly, those conditions were

never met and ***no actual disclosure ever occurred***. In other words, there has been no

"selective disclosure" by Blank Rome or its clients, nor has Blank Rome or its clients

"use[d] … the attorney-client privilege as both a sword and a shield". In sum, there is no

support in Ms. Nupson's brief or in the law of this Circuit that would support a claim of

subject matter waiver under these circumstances.

To the extent Ms. Nupson contends that Mr. Middleton's and Bradford's disclosure

of, or offer to disclose, what she contends are ***non***-privileged information in prior litigation

affected a waiver of the privilege for protected attorney-client communications pertaining to

the same subject matter – which is not entirely clear from Ms. Nupson's Renewed Motion –

Ms. Nupson is again wrong as a matter of law. The privilege cannot be waived by producing

***non-privileged*** documents, much less by *offering* to produce them. *See, e.g., Nationwide Mut.*

*Ins. Co. v. Fleming*, 924 A.2d 1259, 1262-63 (Pa. Super.) (acknowledging subject matter waiver

where a party uses the attorney-client privilege as "both a sword and a shield" by selectively

---

[25] Even then, under Pennsylvania law, such production to resolve a dispute does not waive
privilege as to other documents. *See* Footnote 19, *supra*.

disclosing privileged documents that were favorable to its litigation position, and withholding unfavorable documents on the same subject, but declining to find it because documents disclosed were not privileged), *alloc. granted,* 935 A.2d 1270 (Pa. 2007), *aff'd by an equally divided court*, 992 A.2d 65 (Pa. 2010); *Scranton Cultural Center at the Masonic Temple v. Philadelphia Indemnity Ins. Co.*, No. 2012-CV-4490, 2015 WL 13778567, at *4-5, 46 Pa. D.&C.5th 393 (C.C.P. Phila. Cty. 2015) (production of non-privileged document did not waive privilege as to others on same subject matter).[26]

Because Ms. Nupson has failed to provide any legal support for her broad claim of subject matter waiver in the absence of any actual disclosure of privileged material, her Motion must be denied.

### E.    Ms. Nupson Continues to Mischaracterize and Misrepresent the Nature of the Documents She Seeks.

Ms. Nupson tenders to the Court Exhibit 10 to her Motion as an identification of the documents she seeks to compel Blank Rome to produce. She has highlighted in green on Exhibit 10 those entries that, she contends,[27] Blank Rome's clients once offered to produce to her in the Orphans' Court Litigation, though she misrepresents that offer as a "waiver" of privilege.[28]  Ms. Nupson has highlighted in yellow on Exhibit 10 the specific entries that are

---

[26] Until her Renewed Motion, Ms. Nupson had not challenged the basis for the assertion of privilege over any specific document. Instead, she asserted a legally infirm claim that Mr. Middleton and Bradford waived the privilege over **all** of the documents she seeks.

[27] As noted in Footnote 17 above, a number of the documents or redacted portions thereof that Ms. Nupson highlights in green were *not* offered in the Orphans' Court Litigation, and the clients have always maintained their objections to production.

[28] Again, to be clear, no production occurred, and there was no "waiver". Ms. Nupson declined to accept the offer upon the conditions stated by the clients at the time, and Ms. Nupson subsequently withdrew, with prejudice, her motions seeking the production of those documents.

listed on the Attachment to her Subpoena. For each one, regardless of highlighting, she has also identified which of the eight Requests in the Subpoena she believes covers each entry.

Simply so that the record is complete, and its position is clear, Blank Rome has attached hereto a compilation of all of the documents highlighted in Plaintiff's Exhibit 10. Column G (entitled "Redacted or Withheld Information Is Responsive to What Subpoena Request?") identifies by number which of the eight Requests Blank Rome believes the document (or redacted portion thereof) is responsive to, *assuming* the Court will permit Ms. Nupson to now avoid the express limitation her own Subpoena places on Request Nos. 1 to 7. However, Blank Rome respectfully submits that she should not be permitted to rewrite Request Nos. 1 to 7 to remove that limitation – and the Motion to Compel should be denied as to any document that lacks a reference to "8" in Column G.

Alternatively, if the Court permits Ms. Nupson to expand the scope of Subpoena Request Nos. 1-7 beyond their express terms, it should deny the Motion as to any document for which "None" appears in Column G: They are not responsive to *any* Request (nor even remotely relevant to any issue in this suit), even if the express limits on Request Nos. 1-7 are ignored. Ms. Nupson should not be permitted to expand the scope of the Subpoena simply by unilaterally designating a document as relating to any of the topics set forth in Request Nos. 1-7 without consideration of its *actual* description.

Ms. Ward's December 15, 2020 Letter provides detailed information about how the descriptions (in Column B) and identification of the holder(s) of the privilege (in Column D) can be used to analyze whether the content relates to the topics described in Request Nos. 1-7. *See* Motion, Ex. 11 at pp. 3-10. The entries have been further color-coded as follows.

### 1. The FSM co-Executors' Privileged Documents.

> **Green indicates documents that are subject to a privilege held jointly by John S. Middleton and Lucia Hughes as co-Executors of their mother's Estate. Such documents are also indicated by identifying both Mr. Middleton and Ms. Hughes, as their mother's Executors, as the holders of the privilege in Column D.**

This category of documents has already been addressed in Section III.C above. Plaintiff had ample opportunity to serve a subpoena upon Ms. Hughes, or to open up her own discussions with Ms. Hughes or her counsel about this issue. Ms. Nupson attempted to serve a subpoena upon Ms. Hughes for a deposition, but not for documents. Notably, even if she had properly served the subpoena and included a request for documents, she could not *compel* Ms. Hughes to waive the privilege. In any event, Blank Rome does not have an obligation to pursue, for Plaintiff's benefit, Ms. Hughes' consent to waive her mother's privilege, and it is unduly burdensome to require the firm to either pursue an appeal from an order directing disclosure or risk an ethics complaint or other action by Ms. Hughes by producing the FSM co-Executors' Privileged Documents without her consent.

Ms. Nupson's Motion should be denied to the extent it seeks any documents for which Ms. Hughes holds a co-Executor's privilege.

### 2. Already produced documents.

> **Light gray indicates documents that were in fact produced to Ms. Nupson in the Orphans' Court Litigation.**

Ms. Nupson has highlighted in green a number of entries where a statement was made, in the Orphans' Court Litigation, that a document "will be" produced, and asks that this Court compel Blank Rome to produce it here. But she already received any such entries

in the summer of 2017, as part of a supplemental production *after* the Compiled Logs were served – as Ms. Nupson's counsel there *and here*, Kimberly Brusuelas, is well aware. Blank Rome pointed that out to Mr. Davis (who was not involved in the Orphans' Court Litigation) in Ms. Ward's November 27, 2020 Letter. *See* Motion, Ex. 8 at p. 4 n. 4, and then again in its response to Ms. Nupson's original Motion. *See* ECF No. 174 at p. 20.  It is perplexing that Ms. Nupson continues to pursue relief relating to documents that have been in her possession for 3-1/2 years. Indeed, because – as Ms. Nupson acknowledges – the Subpoena seeks only documents that were *not* produced to her previously, such documents are not even responsive to the Subpoena.[29]

> ### 3.   Documents that are not in Blank Rome's possession, custody or control.

> **Purple indicates documents that are not in Blank Rome's possession, custody or control.**

Though the issue was not discussed during the meet-and-confer process, there are two sets of documents sought by Plaintiff that Blank Rome simply does not have – as Blank Rome noted in its response (*see* ECF No. 174 at pp. 20-21) to Ms. Nupson's original Motion, but that she has failed to acknowledge in her Renewed Motion. The first consists of a set of documents, listed on the Attachment to the Subpoena, that were subject to a "clawback" request by Schnader during discovery in the Orphans' Court Litigation as documents improperly, and inadvertently, produced to Blank Rome as part of a turnover of

---

[29] There are additional documents that were originally withheld in their entirety as privileged, for which the clients authorized production of redacted versions in the summer of 2017.  Ms. Nupson has highlighted them in green in her Exhibit 10, as if the clients authorized production of a full copy in unredacted form.  Although she already has *what was offered*, those entries have *not* been color-coded in gray, because the clients have not authorized production of the unredacted versions.

electronically stored information ("ESI"). Blank Rome promptly honored that clawback request and directed its vendor to remove all copies of the identified documents (including Log Entries 1398 – 1406, which are highlighted on Plaintiff's Exhibit 10) from its systems. Blank Rome listed the documents on the Logs so that Plaintiff could pursue production directly from Schnader if she wished to do so. Presumably, she did not.

The second category consists of documents marked with Bates numbers beginning with the JSM-82-CO Bates prefix. That prefix follows a numbering system used by a different law firm – Mannion Prior LLP ("Mannion Prior") – to identify documents collected and logged *by that firm* on Mr. Middleton's behalf relating to certain petitions for trust administration documents filed by Ms. Nupson in the Orphans' Court Litigation. Although Blank Rome received copies of the *log* prepared by Mannion Prior, it did not receive copies of the *documents* withheld or redacted by Mannion Prior. Mannion Prior is not Blank Rome's agent, and Blank Rome has no obligation – nor any right – to scour another law firm's files for documents sought by Ms. Nupson.  Again, Blank Rome pointed this out in its response to Ms. Nupson's original Motion (*see* ECF No. 174 at pp. 20-21), but she still apparently pursues these documents in her Renewed Motion.

Ms. Nupson's Motion should be denied to the extent she seeks any documents that were (a) logged and redacted or withheld by Mannion Prior, or (b) "clawed back" by Schnader.

4.     **"Personal Documents."**

> **Light blue indicates documents that have been redacted or withheld in their entirety because they contain privileged communications relating to personal legal, or other private and irrelevant personal information, belonging to Mr. Middleton, his wife and/or their children, and/or relating to trusts for which Ms. Nupson is not a beneficiary.**

As she did in the Orphans' Court Litigation, Ms. Nupson seeks again to obtain documents that relate to (a) Mr. Middleton's, his wife's or their children's personal legal affairs, (b) trusts created by Mr. Middleton and/or his wife for their children, or (c) trusts for which Mr. Middleton is or was trustee that were created by Herbert J. Middleton, Jr., and/or Frances S. Middleton for their grandchildren (Mr. Middleton's or Ms. Hughes' children), but which are not and cannot be the subject of any relief sought by Ms. Nupson in her claims against Defendants in this action. Some of these documents are listed on the Attachment to the Subpoena and therefore are responsive to Request No. 8 *only*; others are not on the Attachment and therefore are responsive to *no* Request. Regardless of whether she thought to list them on the Attachment, Ms. Nupson has *never* been able to explain why any such information (privileged or not) is even remotely relevant to her claims either in the Orphans' Court Litigation or here[30] – much less why she should be permitted to pierce the privilege held by Mr. Middleton (individually or as a trustee of a trust in which she has no interest) or his wife.

To be clear, Blank Rome's clients will not consent to the production of such irrelevant, confidential and/or privileged information to Plaintiff. Accordingly, Ms.

---

[30] As before, Blank Rome pointed out this omission in its response to Ms. Nupson's first Motion. *See* ECF No. 174 at p. 22.

Nupson's Motion should be denied to the extent it seeks production of any such information.

### 5. Documents subject to Bradford's (or an affiliate's or subsidiary's) privilege.

> **Teal indicates documents subject to a privilege asserted by Bradford (or an affiliate or subsidiary[31]), at times jointly with Mr. Middleton individually, for documents not referring or relating to any trust for which Ms. Nupson is a beneficiary.**

As she did in the Orphans' Court Litigation, Ms. Nupson again seeks production of numerous documents relating to privileged communications Bradford or Mr. Middleton (in a capacity *other than* as trustee for which Ms. Nupson is a beneficiary) had with counsel.[32] Some of the documents appear on the Attachment to the Subpoena and are therefore responsive to *only* Request No. 8. Others were not listed on the Subpoena Attachment and therefore are responsive to *no* Requests. Regardless, Ms. Nupson has not offered *any* justification for piercing the privilege as to any of these documents, whether they are listed on the Attachment or not. The clients received no subpoena, are not parties to this Motion and have never wavered from their invocation of privilege as to such documents. Ms. Nupson has never offered an argument about why she is entitled to such documents, even after Blank Rome pointed out that omission in its response to her original Motion. *See* ECF

---

[31] Blank Rome notes that some of the documents sought by Ms. Nupson in her Motion are subject to a privilege held by a former subsidiary, John Middleton, Inc. (or "JMI"), that was purchased by Altria, Inc. in 2007. To the extent JMI is the sole holder of a privilege – or shares that privilege with Mr. Middleton and/or Bradford – for any documents, those documents are subject to a similar analysis as the FSM co-Executors' Privileged Documents.

[32] To be clear, Mr. Middleton has served from time to time as trustee for a number of trusts for which Ms. Nupson is or was a beneficiary. Only two of those trusts – the 1994 Anna Trusts and the Modified or Amended 2001 GRAT established by his mother – are at issue in the instant Action.

No. 174 at p. 23. Blank Rome cannot produce the documents without the consent of the persons who hold the privilege.

For these reasons, Ms. Nupson's Motion should be denied to the extent she seeks production of any such documents.

> **6. Documents relating to trusts/estates for which Mr. Middleton served or serves as a fiduciary and for which Ms. Nupson was or is a beneficiary, and their interests <u>were adverse.</u>**

> **Dark orange indicates documents for which at least one holder of the privilege is Mr. Middleton in his capacity as a fiduciary of a trust or estate for which Ms. Nupson is a beneficiary, and their interests were adverse.**

Ms. Nupson seeks again – as she did in the Orphans' Court Litigation – numerous documents relating to legal advice Mr. Middleton received in connection with his service as a fiduciary of a trust or estate for which Ms. Nupson is or was a beneficiary at a time when the two had adverse interests. Without overly belaboring the point, the application of privilege in such an instance under the law of Pennsylvania was the subject of extensive briefing in the state court, and has been touched upon by submissions by Mr. Middleton as an Intervenor for the limited purpose of opposing Ms. Nupson's separate Motion to Compel (ECF No. 102) against Defendants. *See* ECF No. 121-4, Intervenors' Opposition to Ms. Nupson's Motion to Compel and ECF No. 121-19, the Consolidated Response to Ms. Nupson's "*Rosenblum* Motions" filed in the Orphans' Court Litigation. In sum, as set forth therein, Ms. Nupson cannot pierce privilege to obtain the trustee's communications with his counsel on matters where he and Ms. Nupson were adverse. Ms. Nupson did not offer any justification during the meet-and-confer process.  Further, neither her original nor her Renewed Motion

makes any effort to address that point, despite Blank Rome pointing out the omission in its response to the first motion. See ECF No. 174 at pp. 24-25.

In any event, again, Ms. Nupson did not serve a subpoena upon the only person who could decide to waive the privilege for such documents: Mr. Middleton. And without his consent (which he has not given and will not give), Blank Rome cannot legally or ethically produce these documents. For these reasons, Ms. Nupson's Motion should be denied to the extent it seeks such production.

7.    **Previously offered documents.**

> **Light orange indicates documents for which Mr. Middleton (individually or in some representative capacity) or Bradford (or a subsidiary or affiliate) are the sole holder(s) of the privilege, and that were previously offered to Ms. Nupson, subject to certain conditions, in the Orphans' Court Litigation.**

During the meet-and-confer process relating to this Subpoena, Blank Rome indicated that its clients would entertain again extending such an offer to produce certain documents actually responsive to the Subpoena, subject to an agreement not to assert that such production caused a subject matter waiver as to other documents, and *if* Ms. Nupson would withdraw her demands that the firm produce certain other documents that either (a) are not at all relevant to her dispute with Defendants (such as Mr. Middleton's and his wife's privileged communications about personal legal matters), or (b) for which there was no basis for piercing the privilege. *See, e.g.,* Motion, Ex. 8, December 15, 2020 Letter from Rebecca Ward at pp. 10-11. Ms. Nupson's only response to that offer was the filing of her original and now her Renewed Motion – though even now, she offers no explanation about why Mr.

2505-NIQA Document 201 Filed 05/06/21 Page 40 of 41

Middleton's and his wife's personal legal affairs are relevant, nor any reason for piercing the privilege as to any documents not offered.

Again, the clients were never served with a document subpoena, and therefore are *not* parties to the instant Motion despite Ms. Nupson's misidentification of them as subpoena recipients. Blank Rome cannot produce even these previously-offered documents, much less documents for which the clients have *always* maintained privilege, without the clients' consent.

## IV. **CONCLUSION**.

For the foregoing reasons, Blank Rome LLP respectfully requests that Plaintiff's Motion to Compel Compliance with Subpoena be denied.

Dated: May 6, 2021                                    Respectfully submitted,


                                    */s/ Rebecca D. Ward*
                                    James T. Smith, I.D. No. 39933
                                    smith-jt@blankrome.com
                                    Rebecca D. Ward, I.D. No. 79547
                                    ward@blankrome.com
                                    BLANK ROME LLP
                                    One Logan Square
                                    130 North 18th Street
                                    Philadelphia, PA 19103
                                    Tel:    (215) 569-5500
                                    Fax:    (215) 569-5555

                                    *Attorneys for Non-Party Subpoena Recipient*
                                    *Blank Rome LLP*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 6th day of May 2021, I caused a true and accurate copy of the foregoing to be served via the Court's ECF system upon all counsel of record.

<u>*s/Rebecca D. Ward*</u>

Rebecca D. Ward, Esq.

38