# EXHIBIT B

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "Agreement") is entered into as of this 26th day of February, 2018, by and among **JOHN S. MIDDLETON**, individually, as former Trustee of the Trust of Frances S. Middleton, Settlor, dated February 1, 2001, as modified (the "2001 GRAT"), as co-Trustee of the Trusts under Agreement of Trust of Anna M. Bauer, Settlor, dated September 12, 1994 and of the fbo Hughes and fbo Middleton trusts created thereunder (collectively the "Anna 1994 Trusts"), as co-Trustee of the Trust under Agreement of Trust of Herbert H. Middleton and Anna E. Middleton dated April 21, 1972 (the "1972 Trust"), as Trustee of the Trust under Agreement of Trust of John Middleton, Inc., dated May 19, 1982 (the "1982 Trust"), as Trustee of the Trust under Agreement of Trust of Herbert H. Middleton, Jr., and Frances S. Middleton dated April 18, 1990 (the "1990 Trust"), as co-Executor of the Estate of Frances S. Middleton, Deceased (the "FSM Estate"), as Trustee of the QTIP Marital Trust u/w/o Herbert H. Middleton, Jr. (the "QTIP Marital Trust"), as Trustee of the Revocable Trust of Frances S. Middleton as amended (the "FSM Revocable Trust"), as surviving co-Executor of the Estate of Herbert H. Middleton, Jr. (the "HHM Jr. Estate"), and as former co-agent under Power of Attorney for Frances S. Middleton (collectively, "John"); **LEIGH P. MIDDLETON**, individually and as former agent under the Power of Attorney for Frances S. Middleton (collectively, "Leigh"); **BRADFORD HOLDINGS, INC.**, and its shareholders, subsidiaries, affiliates, predecessors-in-interest, and successors-in-interest (collectively, "Bradford"); **PINE STREET GROUP L.P.** ("Pine Street") and its general and limited partners, subsidiaries, affiliates, predecessors-in-interest, and successors-in-interest; and **ANNA K. NUPSON** (previously known as Anna K. Middleton, Anna Mastrangelo and Anna M. Bauer), individually, as virtual representative of her unborn and unascertained issue, as virtual representative of all

potential appointees and takers in default of all powers of appointment she holds, as co-Trustee of the Anna 1994 Trusts, and as co-Trustee of the 1972 Trust (collectively, "Anna") (sometimes referred to as a "Party" and collectively referred to as the "Parties").

## I.  BACKGROUND RECITALS

### A.  1972 Trust.

1.      Herbert H. Middleton and Anna E. Middleton executed an Agreement of Trust dated April 21, 1972 (the "1972 Agreement of Trust") with their son, Herbert H. Middleton, Jr. ("Herbert, Jr."), and his wife, Frances S. Middleton ("Frances"), as Trustees.  All of the various trusts and shares created under the 1972 Agreement of Trust are sometimes collectively referred to as the "1972 Trust."

2.      During Herbert, Jr.'s life he was entitled to all of the income.

3.      Herbert, Jr. died May 11, 1998, survived by his wife, Frances, and his three children, John, Lucia M. Hughes ("Lucia") and Anna.  Frances and John were appointed co-Executors of Herbert, Jr.'s Estate.

4.      After Herbert, Jr.'s death, the principal of the trust was divided into equal shares for John, Lucia, Anna and Frances.  The shares for John and Lucia were distributed to them.  The share for Anna was distributed to the Anna 1994 Trust, of which Anna, Frances and John were co-Trustees.  The share for Frances continued in trust for her under the terms of the 1972 Agreement of Trust with Frances as sole Trustee.

5.      By Resignation of Trustee dated June 5, 2013, and pursuant to the authority granted under the Durable Financial Power of Attorney of Frances S. Middleton dated April 9, 2010, Frances, through her Agents, John, Lucia and Anna, resigned as Trustee of the continuing trust; John, Lucia and Anna each accepted their appointment as co-Trustees of the continuing trust on the same date.

2

6.     Frances died September 24, 2013, and John and Lucia were appointed co-Executors of the FSM Estate.

7.     Pursuant to the terms of the 1972 Agreement of Trust, upon Frances' death the remaining assets are distributable outright in equal shares to John, Lucia and Anna.

8.     Litigation was initiated by Anna in the Orphans' Court Division of the Court of Common Pleas of Montgomery County, Pennsylvania (the "Court") at docket No. 2017-X1239 with respect to the 1972 Trust, including a request for accounts of the various trusts and shares under the Agreement of Trust, a request for trust administration records, and a declaratory judgment regarding the effect of a June 15, 1998 Assignment (the "1998 Assignment") by Anna of her interest in the 1972 Trust to the Anna 1994 Trust. The litigation docketed at No. 2017-X1239 is sometimes referred to as the "1972 Trust Litigation." John, Lucia and Anna asserted positions with respect to the 1972 Trust Litigation as reflected in their filings with the Court.

9.     John has obtained and produced to Anna (and Lucia) such of the 1972 Trust administration records as he had in his possession or could obtain from third parties, which Anna and her counsel have reviewed.

**B.    The 1982 Trust.**

10.    John Middleton, Inc., by and through its then-President, Herbert, Jr., created a trust by Agreement of Trust dated May 19, 1982 (the "1982 Trust"), with Frances and John as co-Trustees. Under the terms of the 1982 Trust, upon Herbert, Jr.'s death the proceeds of life insurance were to be held in trust for Frances's lifetime benefit, and upon Frances's death the remaining assets are distributable in equal shares to John, Lucia and Anna.

11.    Litigation was initiated by Anna in the Court at docket No. 2014-X3827 with respect to the 1982 Trust, including a request for an account, a request for trust administration

3

records, and a declaratory judgment regarding the effect of the 1998 Assignment by Anna of her interest in the 1982 Trust to the Anna 1994 Trust. The litigation docketed at No. 2014-X3827 and Superior Court docket No. 3389 EDA 2015 is sometimes collectively referred to as the "1982 Trust Litigation." John, Lucia and Anna asserted positions with respect to the 1982 Trust Litigation as reflected in their filings with the Court and Superior Court.

12.     John as Trustee of the 1982 Trust filed a First Account of his administration of that trust with the Court from May 19, 1982 through October 31, 2014 (the "1982 Trust Account"). Anna and Lucia filed objections to the 1982 Trust Account as reflected in their filings with the Court. John also provided Anna (and Lucia) with a Supplemental Account for the period November 1, 2014 through October 19, 2017, a copy of which is attached as Exhibit 1 and incorporated by reference (the "1982 Trust Supplemental Account").

13.     John has obtained and produced to Anna (and Lucia) such of the 1982 Trust administration records as he had in his possession or could obtain from third parties, which Anna and her counsel have reviewed.

**C.     The 1990 Trust.**

14.     Herbert, Jr. and Frances created a trust under Agreement of Trust dated April 18, 1990 (the "1990 Trust") with John as Trustee.

15.     During the lifetime of Herbert, Jr. and/or Frances, John, Lucia and Anna and their children have certain rights of withdrawal over the 1990 Trust as set forth in its Agreement of Trust, notice of which Anna acknowledges receiving.

16.     Upon the death of the survivor of Herbert, Jr. and Frances, the principal of the 1990 Trust shall be held in further trust as provided in Item SECOND (3) of the Agreement of Trust until five years after the death of the survivor of Herbert, Jr. and Frances (*i.e.*, September

4

24, 2018); provided, however, that John as Trustee may, in his absolute discretion, terminate the trusts sooner. Upon termination, the principal of the separate trusts for John, Lucia and Anna shall be distributed to them, or if not then living to their respective then-living issue, *per stirpes*, or if none to Herbert, Jr. and Frances's then-living issue, *per stirpes*.

17.     In 2004, all beneficiaries of the 1990 Trust entered into an Acknowledgement, Release and Indemnification Agreement (the "2004 Acknowledgement"), with respect to certain life insurance transactions.

18.     Litigation was initiated by Anna in the Court at docket No. 2017-X1364 with respect to the 1990 Trust, including a request for an account of the various trusts and shares under the 1990 Trust, a request for trust administration records, and a declaratory judgment regarding the effect of the 1998 Assignment by Anna of her interest in the 1990 Trust to the Anna 1994 Trust. The litigation docketed at No. 2017-X1364 is sometimes referred to as the "1990 Trust Litigation." John, Lucia and Anna asserted positions with respect to the 1990 Trust Litigation as reflected in their filings with the Court.

19.     John as Trustee of the 1990 Trust filed a First Account of his administration of that trust with the Court from April 18, 1990 through August 31, 2017 (the "1990 Trust Account"). Anna and Lucia filed objections to the 1990 Trust Account as reflected in their filings with the Court.

20.     John has obtained and produced to Anna (and Lucia) such of the 1990 Trust administration records as he had in his possession or could obtain from third parties, which Anna and her counsel have reviewed.

5

**D.**   **The HHM Jr. Estate and QTIP Marital Trust.**

21.     Herbert Jr. created a QTIP Marital Trust (the "QTIP Marital Trust") under his Will dated September 7, 1994.

22.     Under the Middleton 2012 Family Agreement dated as of December 21, 2012 (the "Middleton 2012 Family Agreement"), a copy of which is attached as Exhibit 2 , most of the assets of the QTIP Marital Trust have been distributed to the FSM Revocable Trust and in turn distributed to Lucia, John and Anna by way of gifts from Frances; the remaining assets of the QTIP Marital Trust will be distributed to the FSM Revocable Trust upon the termination of the QTIP Marital Trust, and will thereafter be distributed in accordance with the Middleton 2012 Family Agreement.

23.     Litigation was initiated by Anna in the Court at docket No. 1998-X1871 with respect to the QTIP Marital Trust, including a request for an account, a request for trust administration records, and a request for rescission and surcharge with respect to the 2003 redemption by Bradford Holdings, Inc. ("Bradford") of shares of stock held by the Anna 1994 Trust and the Modified 2001 GRAT (the "2003 Redemption"). The litigation docketed at No. 1998-X1871 is sometimes referred to as the "QTIP Marital Trust Litigation."

24.     John as surviving co-Trustee of the QTIP Marital Trust and as co-Executor of the FSM Estate filed a First and Final Account of his and Frances's administration of the QTIP Marital Trust from October 19, 2000 through February 29, 2016 (the "QTIP Marital Trust Account"). The First and Final Account of John and Frances as co-Executors of the HHM Jr. Estate (the "HHM Jr. Estate Account") was piggybacked to the QTIP Marital Trust Account. Lucia and Anna filed objections to the QTIP Marital Trust Account and the HHM Jr. Estate Account as reflected in their filings with the Court.

6

25.     John has obtained and produced to Anna (and Lucia) such of the QTIP Marital Trust administration records and the HHM Jr. Estate administration records as he had in his possession or could obtain from third parties, which Anna and her counsel have reviewed.

E.     **The FSM Estate and FSM Revocable Trust.**

26.     Frances executed a Declaration of Trust dated June 5, 1998, under which she created a Revocable Trust (the "FSM Revocable Trust"). The Declaration of Trust dated June 5, 1998 was amended on July 30, 2003, August 18, 2003, October 3, 2005, and May 17, 2011 (as amended, the "1998 Trust Declaration"). A copy of the 1998 Trust Declaration is attached as Exhibit 3.

27.     Under the 1998 Trust Declaration, Frances named herself as Trustee of the FSM Revocable Trust and named John as Successor Trustee upon her resignation, incapacity or death. *See* Exhibit 3 at Item ELEVENTH.

28.     By Acceptance dated April 1, 2013, John succeeded Frances S. Middleton as Trustee of the FSM Revocable Trust.

29.     Under Frances's Will, the assets of the FSM Estate pour into the FSM Revocable Trust and, under the FSM Revocable Trust, are distributed equally to John, Anna and Lucia. Under the 1998 Trust Declaration, Anna's share was to be held in trust, but that provision was changed by the Middleton 2012 Family Agreement.

30.     Certain jewelry and tangible personal property were included in the FSM Estate and were previously distributed to Lucia, John and Anna by agreement. Certain items of jewelry remain in the possession of Mannion Prior, LLP ("Mannion Prior"), counsel for John as co-Executor of the FSM Estate, and have been the subject of a selection process by Anna and Lucia.

7

Anna has selected seven (7) pieces of the remaining jewelry, two (2) of which were also selected by Lucia and are listed on Exhibit 4 (the "Contested Jewelry").

31.     Litigation was initiated by Anna in the Court at docket No. 2016-X4305 with respect to the FSM Revocable Trust, including a request for accounts and a request for trust administration records.  The litigation docketed at No. 2016-X4305 is sometimes referred to as the "FSM Revocable Trust Litigation."

32.     John as Trustee filed an account of his administration of the FSM Revocable Trust from September 24, 2013 through June 30, 2017 (the "FSM Revocable Trust Account"). Lucia and Anna filed objections to the FSM Revocable Trust Account as reflected in their filings with the Court.

33.     John has obtained and produced to Anna (and Lucia) such of the FSM Revocable Trust administration records and the FSM Estate administration records as he had in his possession or could obtain from third parties, which Anna and her counsel have reviewed.

**F.    The 2001 GRAT.**

34.     On or about February 1, 2001, Frances created an oral trust under Pennsylvania law, namely a two-year grantor retained annuity trust ("GRAT") with John and his family as the primary beneficiaries, John as the sole Trustee, and Anna and Lucia as remote contingent beneficiaries.  The GRAT was funded with all of Frances's shares of Class B Non-voting common stock in Bradford.

35.     Following the creation of the GRAT, Frances's attorneys at Schnader Harrison Segal & Lewis, LLP (the "Schnader firm") memorialized its creation in a written trust agreement, which Frances signed on or about November 19, 2001 (the "Original GRAT"), a copy of which is attached as Exhibit 5.  Although the trust agreement was signed in November

8

2001, the trust agreement was dated February 1, 2001 because Frances created the trust on February 1, 2001.

36.     In order to prevent threatened litigation among Frances and her children, in mid-October 2002, Frances requested her attorney, Bruce A. Rosenfield, to change the remainder provisions of the Original GRAT so that following the expiration of Frances's annuity the then-remaining principal of the Original GRAT would no longer continue in trust for the sole benefit of John and his descendants, but instead would be divided into three equal trusts for the benefit of each of Frances's children and their descendants.

37.     Thereafter, Lucia's attorneys from Womble Carlyle Sandridge and Rice, LLP (the "Womble firm"), Anna and Frances's attorneys at the Schnader firm, and John's attorneys at Cozen O'Connor, P.C. (the "Cozen firm"), each began drafting changes to the terms of the trust instrument for the Original GRAT.

38.     On December 19, 2002, Lucia, Anna, Frances and John, along with their respective counsel, attended a family meeting.  At the meeting, Lucia's counsel made a written proposal for a buy-out of Lucia's and her family's Bradford shares, held in trust and outright.

39.     Although she was initially inclined not to participate in the buyout, on or about December 24, 2002, Anna's attorney advised that Anna changed her mind and now desired to explore a buy-out pursuant to the same price, terms and conditions sought by Lucia.

40.     In mid-January 2003, John, on behalf of Bradford, made a written counter-proposal to Anna's and Lucia's attorneys that increased the proposed purchase price and included (a) Bradford redeeming all shares owned by or for their (and their families') benefit at a price of $288.41 per Class A voting share, and $275.00 per Class B Non-voting share, payable within one year, and (b) Anna's sharing equally in the FSM Estate.

9

41.     Lucia, Lucia's family and Anna accepted Bradford's offer.  Anna accepted the offer on the advice of her counsel.

42.     Thereafter, a comprehensive, master family settlement agreement dated February 20, 2003 (the "2003 Master Settlement Agreement") was signed by all parties in interest in all applicable capacities following consultation with their respective attorneys.  A copy of the 2003 Master Settlement Agreement, without its exhibits, is attached as Exhibit 6.

43.     A material part of the global family resolution and the redemption of the Bradford shares was that certain terms of the trust instrument for the Original GRAT would be changed in a new trust document modifying the Original GRAT under Pennsylvania law, and which document would be executed by Frances in connection with the global family resolution.

44.     The new trust document (hereinafter referred to as the "Modified 2001 GRAT") modified the remainder provisions of the Original GRAT with the agreement of Frances as Settlor and all parties in interest.  The qualified annuity for Frances remained unchanged.  A copy of the Modified 2001 GRAT is attached as Exhibit 7.

45.     Upon the advice and direction of her attorney, Frances dated the Modified 2001 GRAT February 1, 2001, the same date as the Original GRAT.

46.     The Modified 2001 GRAT changed the beneficiaries after the end of the annuity period, and provided that the assets would be divided into three equal and separate family trusts for each of Lucia, Anna and John.

47.     Under Item SIXTH of the Modified 2001 GRAT, a new trust (the "2001 GRAT fbo Anna") was created for the benefit of Anna.

48.     Under the terms of the 2001 GRAT fbo Anna created under the Modified 2001 GRAT, the Trustee is to pay Anna the annual sum of $1 million from the principal of the 2001

10

GRAT fbo Anna.  In addition, the Trustee may make such additional distributions of principal to, or for the benefit of, Anna in the Trustee's absolute discretion to provide for her health, support, other need, travel or comfort.  On February 15, 2028, the Trustee shall distribute any remaining principal of the 2001 GRAT fbo Anna to Anna.

49.     If Anna dies before termination of the 2001 GRAT fbo Anna, Anna may appoint the principal of the 2001 GRAT fbo Anna to such person or persons (excluding Anna, her creditors and the creditors of her estate) or charitable institutions, in such amounts and proportions, as Anna shall direct and appoint in her Will.  In default of such exercise, the principal shall be divided into as many equal shares as there are natural children of Anna, then living and then deceased with issue then living; and in the event Anna is not survived by natural issue, the remaining principal shall be distributed 40% to the then living issue, *per stirpes*, of John, if any, and 60% to the then living issue, *per stirpes*, of Lucia, if any.

50.     Anna may appoint the accumulated income, if any, 40% to the natural issue of Anna or the then living issue of John, in such amounts and proportions, and for such purposes, as Anna may appoint by will, and 60% to the natural issue of Anna or the then living issue of Lucia, in such amounts and proportions, and for such purposes, as Anna may appoint by will.

51.     Under the terms of the Modified 2001 GRAT, Frances served as Trustee of the 2001 GRAT fbo Anna from March 4, 2003 to January 31, 2005.  The Modified 2001 GRAT expressly authorized Anna to appoint a successor Trustee, with the approval of Lucia and John.  Absent such appointment by Anna, the Modified 2001 GRAT designated Bruce A. Rosenfield as successor Trustee of the Trust.  By document effective February 1, 2005, Bruce A. Rosenfield began serving as Trustee of the 2001 GRAT fbo Anna.

11

52.     A material part of the global family resolution, the amendment of the Original 2001 GRAT, and the redemption of the Bradford shares from the Modified 2001 GRAT, was the execution by Lucia and Anna of a Side Letter Agreement dated February 20, 2003 regarding indemnification (the "February 20, 2003 Side Letter Agreement"). A copy of the February 20, 2003 Side Letter Agreement is attached as Exhibit 8.

53.     Another material part of the global family resolution was the execution of a Release and Indemnification Agreement with respect to the 2001 GRAT, executed the day after the redemption of the Bradford shares (the "2003 Release and Indemnification Agreement"). A copy of the 2003 Release and Indemnification Agreement is attached hereto as Exhibit 9.

**G.     The Anna 1994 Trusts.**

54.     On September 12, 1994, Anna executed a trust (the "Anna 1994 Trust") for her lifetime benefit. Anna named herself, Frances and John as Trustees of the Anna 1994 Trust. A copy of the Anna 1994 Trust is attached as Exhibit 10.

55.     The Anna 1994 Trust provides that the Trustees "shall from time to time pay to, or expend for the benefit of, Settlor such amounts from the income and principal of the trust (including all accumulated income as well as the entire principal hereunder) as Trustees, in their absolute discretion, may deem appropriate." *See* Exhibit 10 at Item FIRST(1).

56.     On July 27, 1995, Anna executed an irrevocable renunciation of her right to receive any distributions of principal from the Anna 1994 Trust (the "1995 Renunciation"). A copy of the 1995 Renunciation is attached as Exhibit 11.

57.     Anna executed the 1998 Assignment assigning her interest in the 1972 Trust, the 1982 Trust and the 1990 Trust to the Anna 1994 Trust. A copy of the 1998 Assignment is attached as Exhibit 12.

12

58.     Under the terms of the Anna 1994 Trust, upon her death Anna could appoint the remaining principal to and among the issue of Herbert, Jr. and Frances, and in default of complete appointment, the remaining principal would be paid to Anna's issue, or if none, to the then living grandchildren, *per capita*, of Herbert, Jr. and Frances, or if none, to the then living issue, *per stirpes*, of Herbert, Jr. and Frances. *See* Exhibit 10 at Item FIRST(2).

59.     At the time of funding and thereafter, all of Anna's shares of Bradford were transferred to the Anna 1994 Trust.

60.     The 2003 Master Settlement Agreement provides that the Anna 1994 Trust would be divided into two separate trusts pursuant to the terms of a separate family settlement agreement (the "2003 Family Settlement Agreement"): namely 60% in one subtrust with the Hughes family as remainder beneficiaries (the "Anna 1994 Trust fbo Hughes") and 40% in a separate subtrust with the Middleton family as remainder beneficiaries (the "Anna 1994 Trust fbo Middleton"). A copy of the 2003 Family Settlement Agreement is attached as Exhibit 13. The Anna 1994 Trust fbo Hughes and the Anna 1994 Trust fbo Middleton are sometimes collectively referred to as the "Anna 1994 Trusts."

61.     When the Anna 1994 Trust was divided, the shares of Bradford held by the Anna 1994 Trust were allocated solely to the Anna 1994 Trust fbo Hughes for tax reasons, and all of the shares of Bradford held by the Anna 1994 Trust fbo Hughes were redeemed by Bradford pursuant to the 2003 Master Settlement Agreement.

62.     Anna, Frances and John as Trustees of the Anna 1994 Trust signed the Anna 1994 Trust Stock Purchase Agreement attached to the 2003 Master Settlement Agreement; John also signed as President of Bradford. *See* Exhibit 14.

145161.00601/106632296v.17

63.     At some point in mid-2008, Anna, feeling that the circumstances for which the Anna 1994 Trust had originally been created no longer existed, began to express frustration about the restraints imposed upon her by the trust, including wanting to receive the assets (whether allocated fbo Middleton or fbo Hughes) outright and free of trust.  Initially, Anna sought advice from her longtime counsel, Bruce A. Rosenfield. .

64.     Anna retained Jonathan Freund of Freund & Brackey, and John Stoviak and Maurice Lee of Saul Ewing, regarding the Anna 1994 Trusts and other issues, including the 2003 Redemption.  Anna considered several options, including filing an account in the Anna 1994 Trust (which was necessary for John's resignation as Trustee), converting the Anna 1994 Trust to a unitrust that would guarantee her a minimum annual distribution of 4.0% of the assets of the Anna 1994 Trust, and seeking to terminate the Anna 1994 Trust and have the principal of the trust returned to her.

65.     Also during this time period, John and Anna, as co-Trustees of the Anna 1994 Trusts, had a dispute with Lucia and her family regarding accounting "true up" adjustments to the Anna 1994 Trust fbo Hughes.  John and Anna were not able to amicably resolve Lucia's issues with regard to the accounting adjustments to the Anna 1994 Trust fbo Hughes. Accordingly, Anna and John filed the First Accounts for the Anna 1994 Trusts – both the fbo Middleton and the fbo Hughes subtrusts – with the Court on October 3, 2012.  Then on April 5, 2013, Anna and John filed an account for the pre-division Anna 1994 Trust as it existed prior to the 2003 Family Settlement Agreement.

66.     On April 19, 2013, the Court issued adjudications confirming all Accounts of the Anna 1994 Trusts.

14

## H.   The 2003 Master Settlement Agreement Litigation.

67.     Beginning November 2013 through 2014, Anna's counsel, Thomas J. Budd Mucci, had numerous communications with Margaret G. Thompson of the Cozen firm (who represented John as co-Executor of the FSM Estate) and Bruce A. Rosenfield.  Mr. Mucci requested information about the FSM Estate, the 1972 Trust, the 1982 Trust, the 1990 Trust, and the Anna 1994 Trusts, among other things.

68.     On October 9, 2014, Anna revoked and repudiated the 1998 Assignment.

69.     On October 31, 2014, Anna filed a petition in the docket for the 1982 Trust challenging the 1998 Assignment and requesting that the Court direct John, as Trustee of the 1982 Trust, to distribute 1/3 of the principal of the 1982 Trust to Anna, outright.  Anna thereafter filed similar petitions in the dockets for the 1972 Trust and the 1990 Trust.

70.     Meanwhile, in January 2015, in the context of the trust accounting for the 1982 Trust, Anna accused John of having breached his fiduciary duties as Trustee and of fraud in connection with the 2003 Master Settlement Agreement.

71.     As a result of Anna's accusations, in April 2015, John, individually, as Trustee and as former Trustee, and Bradford filed Petitions for Declaratory and Other Relief (the "Original DJ Petitions") in both the Anna 1994 Trust Litigation (as defined below) and the 2001 GRAT Litigation (as defined below) in which they sought, *inter alia*, a declaration that the 2003 Master Settlement Agreement and all the transactions carried out thereunder, were valid.  Anna opposed the Original DJ Petitions and filed counterclaims and objections to various accounts filed by John.  Among other things, Anna asserted that her 1995 Renunciation was invalid and asserted that the assets in the Anna 1994 Trusts should be returned to her, outright and free of trust.

15

72.     In March 2017, all pending pleadings in the dockets for the 2001 GRAT and Anna 1994 Trusts were dismissed, without prejudice.  On May 22, 2017, John, individually, as Trustee and as former Trustee, and Bradford filed amended Petitions for Declaratory and Other Relief (the "Amended DJ Petitions") in both dockets for the Anna 1994 Trust and the 2001 GRAT in which they again sought, *inter alia*, a declaration that the 2003 Master Settlement Agreement and all the transactions carried out thereunder, were valid.

73.     Anna, Lucia, and Lucia's children – J. Alexander Hughes, Thomas M. Hughes and John C. Hughes – opposed the Amended DJ Petitions.

74.     In addition to alleging that the redemption of shares was void *ab initio* as an alleged self-dealing transaction, Anna also alleged fraud and conspiracy with respect to the 2003 Master Settlement Agreement, the 2003 Family Settlement Agreement, the creation of the Anna 1994 Trust and her 1995 Renunciation of principal.

75.     In addition to the Original and Amended DJ Petitions by John and Bradford, litigation was also filed by Anna in the Court at docket No. 2015-X1266 with respect to the Modified 2001 GRAT Trust, including a request for accounts and a request for trust administration records.  The litigation docketed at No. 2015-X1266 is sometimes collectively referred to as the "2001 GRAT Litigation."

76.     John filed an account of his administration as Trustee of the 2001 GRAT for the period from February 1, 2001 to July 24, 2003 (the "JSM GRAT Account") and an account of Frances's administration as Trustee of the 2001 GRAT fbo Anna for the period from March 4, 2003 to January 31, 2005 (the "FSM GRAT Account"), and Bruce A. Rosenfield filed an account of his administration as Trustee of the 2001 GRAT fbo Anna for the period from February 1, 2005 to November 30, 2015 (the "BAR GRAT Account") in the 2001 GRAT

16

Litigation.  Lucia and Anna filed objections to the JSM GRAT Account, the FSM GRAT Account and the BAR GRAT Account, and John filed objections to the BAR GRAT Account, as reflected in their filings with the Court.

77.     John has obtained and produced to Anna (and Lucia) such of the administration records for the Original 2001 GRAT and the Modified 2001 GRAT as he had in his possession or could obtain from third parties, which Anna and her counsel have reviewed.

78.     Litigation was also filed by Anna in the Court at docket No. 2012-X3503 with respect to the Anna 1994 Trust, including a request for an account, a request for trust administration records, and a request for the removal of John as co-Trustee.  The litigation docketed at No. 2012-X3503 is sometimes collectively referred to as the "Anna 1994 Trust Litigation."

79.     John filed Second Interim Accounts of his administration of the Anna 1994 Trusts (the "Second Anna 1994 Trust Accounts") in the Anna 1994 Trust Litigation.  Lucia and Anna filed objections to the Second Anna 1994 Trust Accounts as reflected in their filings with the Court.

80.     John has obtained and produced to Anna (and Lucia) such of the Anna 1994 Trust records as he had in his possession or could obtain from third parties, which Anna and her counsel have reviewed.

81.     Further, with respect to the Original DJ Petitions, Anna and Lucia served discovery requests upon John and Bradford, and Anna, John and Bradford served subpoenas upon third parties.  John and Bradford served written responses to the discovery requests, provided responsive documents and identified documents withheld or redacted on privilege and redaction logs, and third parties responded to subpoenas and produced responsive documents.

145161.00601/106632296v.17

Anna (and Lucia) and her counsel received and reviewed such documents and logs.  Anna (and Lucia) served written responses to John's and Bradford's discovery requests to the Original DJ Petitions and Lucia provided responsive documents that Anna and her counsel (and John and Bradford) received and reviewed.  Anna provided responsive documents and identified documents withheld or redacted on privilege and redaction logs, but her document production was not complete before the dismissal of the Original DJ Petitions.

82.     With respect to the Amended DJ Petitions, Anna and Lucia served discovery requests upon John and Bradford.  The Parties acknowledge that these discovery requests are still outstanding, and have not been responded to.

83.     For all of the reasons stated above, discovery has not yet been completed.

I.     **John's and Bradford's Indemnification Notices.**

84.     John and Bradford provided timely written notification to Anna of their intention to seek indemnification under various provisions of the 2003 Master Settlement Agreement, the 2003 Family Settlement Agreement, the February 20, 2003 Side Letter Agreement and/or the Stock Purchase Agreements under which Bradford redeemed shares held by or for the benefit of Anna from the Modified 2001 GRAT and the Anna 1994 Trusts.  In filings with the Court, John also sought indemnification from Anna under these agreements and also the 2003 Release and Indemnification Agreement and the Middleton 2012 Family Agreement.  John and Bradford also served notices upon Lucia (as well as Lucia's spouse and Lucia's children) under the 2003 Master Settlement Agreement, the 2003 Family Settlement Agreement, the February 20, 2003 Side Letter Agreement and/or Stock Purchase Agreements under which Bradford redeemed shares held by, or for the benefit of Lucia or Lucia's children from the Modified 2001 GRAT and

145161.00601/106632296v.17

the Anna 1994 Trusts or from certain other trusts or custodial accounts for the benefit of Lucia's children.

*        *        *

85.     In order to avoid the continued delay, expense and uncertainty incident to litigation, the Parties have agreed to fully and finally resolve all of their differences with respect to the 1972 Trust, the 1982 Trust, the 1990 Trust, the Anna 1994 Trust, the Original 2001 GRAT, the Modified 2001 GRAT, the FSM Revocable Trust, the QTIP Marital Trust, the FSM Estate and the HHM Jr. Estate, and the 1972 Trust Litigation, the 1982 Trust Litigation, the 1990 Trust Litigation, the Anna 1994 Trust Litigation, the 2001 GRAT Litigation, the FSM Revocable Trust Litigation, and the QTIP Marital Trust Litigation in docket Nos. 1998-X1871, 2012-X3503, 2014-X3827, 2015-X1266, 2016-X4305, 2017-X1239, and 2017-X1364 (collectively, the "Actions") on the terms set forth in this Agreement.

**NOW, THEREFORE**, in consideration of the foregoing and the mutual promises, covenants and agreements hereinafter set forth, the Parties, and each of them, for himself, herself or itself, and for his, her or its respective heirs, personal representatives, successors and assigns, and intending to be legally bound hereby, mutually agree as follows:

## II. <u>TERMS AND PROVISIONS</u>

1.     <u>Incorporation of Recitals</u>.  The recitals set forth above are true and correct and are incorporated herein by reference, including all Exhibits.

**A.     <u>Ratification and Reaffirmation</u>**

1.     Excepting any claims Anna may have or assert against the Schnader firm, its partners, and each of them, Anna hereby ratifies and reaffirms (a) the 2003 Master Settlement Agreement and all the Exhibits thereto, (b) the February 20, 2003 Side Letter Agreement regarding indemnification,  (c) the 1995 Renunciation, (d) the 2004 Acknowledgment, and (e)

19

the Middleton 2012 Family Agreement, and ratifies and reaffirms all of her obligations, undertakings, agreements, representations, and indemnities under (a) the 2003 Master Settlement Agreement and all the Exhibits thereto, (b) the February 20, 2003 Side Letter Agreement regarding indemnification, (c) the 1995 Renunciation, (d) the 2004 Acknowledgment, and (e) the Middleton 2012 Family Agreement.

2.      Excepting any claims Anna may have or assert against the Schnader firm, its partners, and each of them, Anna further acknowledges and agrees that her obligations under the following documents remain unmodified and in full force and effect, notwithstanding the execution and delivery of this Agreement and the Exhibits hereto, or any other or further modifications of such documents: (a) the 2003 Master Settlement Agreement and all the Exhibits thereto, (b) the February 20, 2003 Side Letter Agreement regarding indemnification, (c) the 1995 Renunciation, (d) the 2004 Acknowledgment, and (e) the Middleton 2012 Family Agreement.

3.      Anna hereby represents and warrants to John and to Bradford, which representations survive closing, that

a)   her undertakings, obligations, agreements, representations and indemnities under (i) the 2003 Master Settlement Agreement and all the Exhibits thereto, (ii) the February 20, 2003 Side Letter Agreement regarding indemnification, (iii) the 2003 Release and Indemnification Agreement, (iv) the 1995 Renunciation, (v) the 2004 Acknowledgment, and (vi) the Middleton 2012 Family Agreement are fully enforceable by, and subject to the rights and/or remedies of, John and/or Bradford under such documents;

b)   the Original 2001 GRAT was properly created, funded and administered, that all GRAT annuity payments were made to Frances, and that the remainder interest was modified and the Modified 2001 GRAT reflects Frances's and all beneficiaries' intentions, and Anna forever waives her right to contest the Modified 2001 GRAT;

c)   that all prior transfers of Bradford stock through and including the redemptions from the Anna 1994 Trusts and the Modified 2001 GRAT, were in accordance with the Shareholders' Agreement and/or a proper waiver thereof;

20

d) each of (i) the 2003 Master Settlement Agreement and all the Exhibits thereto, (ii) the February 20, 2003 Side Letter Agreement regarding indemnification, (iii) the 2003 Release and Indemnification Agreement, (iv) the 1995 Renunciation, (v) the 2004 Acknowledgment, and (vi) the Middleton 2012 Family Settlement and each Exhibit thereto is legal, valid and binding, and enforceable against Anna in accordance with its own terms;

e) the covenants, representations and warranties of Anna set forth in (i) the 2003 Master Settlement Agreement and all the Exhibits thereto, (ii) the February 20, 2003 Side Letter Agreement regarding indemnification, (iii) the 2003 Release and Indemnification Agreement, (iv) the 1995 Renunciation, (v) the 2004 Acknowledgment, and (vi) the Middleton 2012 Family Agreement are true and correct in all material respects on and as of the date hereof as though the same were made by her on and as of the date hereof;

f) Anna agrees that Bradford and its subsidiaries faced substantial risks as a result of the tobacco litigation, that it was possible that the value of Bradford stock would decrease significantly based on industry-wide legal changes, and that the purchase price paid for the stock redeemed from the Modified 2001 GRAT and the Anna 1994 Trusts represented the fair value of the stock;

g) the 2003 Master Settlement Agreement and all the transactions carried out thereunder were not the subject of any fraud or conspiracy by John, in any capacity, or Bradford, and that there were no misrepresentations, omissions of fact, or concealment of facts by John or Bradford prior to executing the 2003 Master Settlement Agreement and the exhibits thereto;

h) Anna shall at all times hereafter only take actions consistent with (i) the 2003 Master Settlement Agreement and all the Exhibits thereto, (ii) the February 20, 2003 Side Letter Agreement regarding indemnification, (iii) the 2003 Release and Indemnification Agreement, (iv) the 1995 Renunciation, (v) the 2004 Acknowledgment, and (vi) the Middleton 2012 Family Agreement, and her ratification and reaffirmation of each one in this Agreement.

However, nothing in Paragraphs A.3.(a)-(h) above shall be construed to mean that Anna believes she received the correct advice by the Schnader firm, its partners, and each of them, regarding the 2003 Redemption, and she reserves the right to pursue such a claim against the Schnader firm, its partners, and each of them.

21

4.      Excepting any claims Anna may have or assert against the Schnader firm, its partners, and each of them, Anna hereby consents to and ratifies (a) all of John's actions as Trustee, co-Trustee or Executor of the 1972 Trust, 1982 Trust, 1990 Trust, the QTIP Marital Trust, the FSM Revocable Trust, the Anna 1994 Trusts, the Original 2001 GRAT, the Modified 2001 GRAT, the FSM Estate and the HHM Jr. Estate from the inception of John's trusteeship or executorship or the beginning of such trust or estate, whichever is the earlier date, through and including the date of the execution of this Agreement, and (b) John's or Leigh's actions as agents under Power of Attorney for Frances, and Anna agrees not to contest any estate, gift or income tax filings with respect to such trusts or estates.

5.      Excepting any claims Anna may have or assert against the Schnader firm, its partners, and each of them, Anna hereby consents to and ratifies all of John's actions as officer or director, or majority shareholder, of Bradford from the beginning of time to the date of this Agreement.

**B.    Payment by Bradford to Anna.**

1.      Not later than one (1) business day after Court approval of this Agreement, Anna's General Counsel, Thomas J. Budd Mucci, shall provide wire transfer instructions to Bradford's counsel, James T. Smith and Rebecca D. Ward, and to John's counsel, James F. Mannion and Jennifer D. Gayle.

2.      Not later than five (5) business days after the Court's final approval of this Agreement, Bradford shall remit $22,000,000 (Twenty-Two Million Dollars) to Anna, individually, by way of wire transfer into Mr. Mucci's "Interest on Lawyer Trust Account" in accordance with instructions sent by Mr. Mucci as set forth in Paragraph B.1. above.  Under no circumstances shall John, Bradford, Pine Street, Leigh or any of his, her, its or their agents,

22

attorneys, representatives, heirs, shareholders, affiliates, subsidiaries, predecessors-in-interest, successors-in-interest, or general or limited partners have any responsibility to ensure, confirm or otherwise oversee any distributions by Mr. Mucci to Anna or to any other person.

3.     The Parties' agreement to require Court approval of this binding Settlement Agreement does not include, reflect or imply any agreement by Anna to disclose to anyone, or to submit to Court review and approval of, her fee agreement with her lawyers, nor shall any Party to this Agreement seek to require disclosure of such fee agreement to the Court or any other person.

## C.   **The 2001 GRAT.**

1.     **Anna's Nomination of Successor Trustee and Choice of Account Custodian and Investment Advisor.**  Anna shall nominate a successor Trustee for the 2001 GRAT fbo Anna pursuant to her right under Item NINETEENTH (1)(a) of the Agreement of Trust for the 2001 GRAT.  John shall not object to or interfere, directly or indirectly, with Anna's choice of Trustee, account custodian or investment advisor for the 2001 GRAT fbo Anna.

2.     **Anna's Rights in the 2001 GRAT fbo Anna.**  Anna shall have all rights to and in the 2001 GRAT fbo Anna as provided in the Agreement of Trust attached hereto as Exhibit 7, including, but not limited to, her power of appointment over the principal and accumulated income of the 2001 GRAT fbo Anna provided under Items SIXTH (6) and (7).  John shall not object to or interfere, directly or indirectly, with Anna's exercise of her rights under the 2001 GRAT fbo Anna, or with the administration of the 2001 GRAT fbo Anna.

3.     **Withdrawal of Objections and Litigation by Anna.**  Concurrently with the execution of this Agreement, Anna will execute and file with the Court the Praecipe attached as Exhibit 15 withdrawing, with prejudice, her objections to the JSM GRAT Account, the FSM

GRAT Account and the BAR GRAT Account, and all other petitions, answers, new matters, replies, motions, responses, objections, claims, and other pleadings (including original, amended, and/or supplemental) and litigation filed by or on behalf of Anna in the 2001 GRAT Litigation, effective upon approval of this Agreement.

4.     **Withdrawal of Claims by John and Bradford in 2001 GRAT Litigation.** Concurrently with the execution of this Agreement, John and Bradford will execute and file with the Court the Praecipe attached as Exhibit 22 withdrawing, with prejudice, the following claims asserted in the Amended DJ Petition filed in the 2001 GRAT Litigation: the claim for turnover/disgorgement against Anna, individually, and the 2001 GRAT fbo Anna only (Count IV), the claim for breach of contract against Anna, individually and as Trustee of the Anna 1994 Trusts, with respect to 2003 Master Settlement Agreement (Count VI), and the claim for indemnification against Anna, individually and as Trustee of the Anna 1994 Trusts (Count VII), effective upon approval of this Agreement.

5.     **Adjudication of JSM GRAT Account and FSM GRAT Account.**  The Parties recognize that due to the passage of time not all trust administration records are available for the Original 2001 GRAT and the Modified 2001 GRAT.  Nevertheless, Anna accepts and approves the JSM GRAT Account and FSM GRAT Account and requests the Court to issue adjudications confirming the JSM GRAT Account and the FSM GRAT Account as set forth in the Petitions for Adjudication, subject to this Paragraph C.5.  Anna will execute a waiver in the form attached hereto as Exhibit 16 waiving any right to (i) open such adjudication under the provisions of 20 Pa. C.S.A. §§ 3521 and 7799.2 (relating to rehearing), or (ii) challenge this Agreement on the non-disclosure of documents or information related to the 2001 GRAT, within five (5) business days after the last to occur of the following:  (1) the execution of this Agreement by the Parties;

24

(2) the payment by Bradford to Anna under Paragraph B.2. above; and 3) the issuance of adjudications by the Court.

**D.    The Anna 1994 Trusts.**

1.    **Anna's Confirmation of the Anna 1994 Trusts and 1995 Renunciation**. Anna ratifies and confirms the Agreement of Trust for the Anna 1994 Trusts and agrees not to challenge the validity of the Agreement of Trust for the Anna 1994 Trusts or of her 1995 Renunciation of principal.  Notwithstanding the foregoing, Anna reserves the right to file a petition to convert the Anna 1994 Trusts to unitrusts pursuant to applicable law.

2.    **Anna's Nomination of Successor Corporate Co-Trustee and Choice of Account Custodian and Investment Advisor.** Anna shall nominate a successor corporate co-Trustee for the Anna 1994 Trusts.  John shall not object to or interfere, directly or indirectly, with Anna's choice of corporate co-Trustee, account custodian or investment advisor for the Anna 1994 Trusts.  Pending John's discharge as co-Trustee and appointment of a successor corporate co-Trustee, regular monthly distributions to Anna from the income accumulation accounts for the Anna 1994 Trusts shall continue without interruption, consistent with the Trustees' pattern and practice for the past several years.

3.    **No Objection by John to Conversion to Unitrusts.**  The Anna 1994 Trusts shall continue in effect, but John shall not object to or interfere, directly or indirectly, with any petition filed by Anna to convert the Anna 1994 Trusts to unitrusts pursuant to applicable law.

4.    **Waiver of Right to Re-Open April 19, 2013 Adjudication.**  Anna waives any right to open the April 19, 2013 account adjudications issued in the Anna 1994 Trusts under the provisions of 20 Pa. C.S.A. §§ 3521 and 7799.2 (relating to rehearing).

25

5.   **Withdrawal of Objections and Litigation by Anna.**  Concurrently with the execution of this Agreement, Anna will execute and file with the Court the Praecipe attached as Exhibit 15 withdrawing, with prejudice, her objections to the Second Anna 1994 Trust Accounts, and all other petitions, answers, new matters, replies, motions, responses, objections, claims, and other pleadings (including original, amended, and/or supplemental) and litigation filed by or on behalf of Anna in the Anna 1994 Trust Litigation effective upon approval of this Agreement.

6.   **Withdrawal of Claims by John and Bradford in the Anna 1994 Trust Litigation.**  Concurrently with the execution of this Agreement, John and Bradford will execute and file with the Court the Praecipe attached as Exhibit 23 withdrawing, with prejudice, the following claims asserted in the Amended DJ Petition filed in the Anna 1994 Trust Litigation: the claim for breach of contract against Anna, individually and as Trustee of the Anna 1994 Trusts with respect to 2003 Master Settlement Agreement (Count IV), the claim for breach of contract against Anna, individually, with respect to the revocation of the 1998 Assignment (Count V), and the claim for indemnification against Anna, individually and as Trustee of the Anna 1994 Trusts (Count VI), effective upon approval of this Agreement.

7.   **Modification of Certain Requests/Credits by John.**  With the agreement of Anna, John, as co-Trustee of the Anna 1994 Trusts, modifies the following requests set forth in the Petitions for Adjudication/Statements of Proposed Distribution filed in conjunction with the Second Anna 1994 Trust Accounts:

a)   The request that William L. Thorkelson and Turner C. Smith be appointed as successor Trustees upon the confirmation of the Second Account and John's discharge for serving as Trustee of the Anna 1994 Trusts (Rider II, Item 13, Paragraph B) is withdrawn.  Anna shall nominate a successor corporate Trustee to serve upon court approval of the resignation and discharge of John as Trustee.

26

      b)     The request for approval of the payment of legal fees and disbursements that have been paid from the Anna 1994 Trusts since the closing date of the Second Account to the Cozen firm is increased from $14,447 to $49,877.48 in the Anna 1994 Trust fbo Middleton (Rider II, Item 13, Paragraph D) and from $21,670 to $74,815.76 in the Anna 1994 Trust fbo Hughes (Rider II, Item 13, Paragraph D).

8.     **Requests Not Modified or Withdrawn.**  The Parties acknowledge that the following requests set forth in Rider II, Item 13 to the Petitions for Adjudication/Statements of Proposed Distribution filed in conjunction with the Second Anna 1994 Trust Accounts remain as stated:  Paragraph 1 (approval for transactions and distributions during accounting period), Paragraph 2 and Paragraph B (court approval of resignation and discharge of John), Paragraph A (adjustments between the principal and income accumulation accounts), and (as modified by Paragraph D.7.(b) above) Paragraph D (approval of professional fees and expenses).

9.     **Attorneys' Fees in the Second Anna 1994 Trust Accounts.**  Anna acknowledges that there is $2,400.00 in the Petition for Adjudication/Statement of Proposed Distribution for the Anna 1994 Trust fbo Middleton (Rider II, Item 13, Paragraph D) and $3,600.00 in the Petition for Adjudication/Statement of Proposed Distribution for the Anna 1994 Trust fbo Hughes (Rider II, Item 13, Paragraph D) reflected as being paid to Mannion Prior, LLP, and that there is an additional $1,024,046.38 in costs and fees for legal services to Mannion Prior, LLP following the closing date of the Anna 1994 Trust Accounts, and that such costs and fees have been paid or will be paid by the Anna 1994 Trusts, and that such costs and fees will not be reimbursed by John or recovered from any other person.  Further, Anna approves of the payment of such costs and fees from the Anna 1994 Trusts.

10.     **Adjudication of Second Anna 1994 Trust Accounts.**  The Parties recognize that due to the passage of time not all trust administration records are available for the Anna 1994 Trusts.  Nevertheless, the Parties accept and approve the Second Anna 1994 Trust Accounts and

27

jointly request the Court to issue an adjudication confirming the Second Anna 1994 Trust Accounts as set forth in the Petitions for Adjudication/Statements of Proposed Distribution filed by John, subject to Paragraphs D.8. and D.9. above, and this Paragraph D.10.  Anna will execute a waiver in the form attached hereto as Exhibit 16 waiving any right to (i) open such adjudication under the provisions of 20 Pa. C.S.A. §§ 3521 and 7799.2 (relating to rehearing), or (ii) challenge this Agreement on the non-disclosure of documents or information related to the Anna 1994 Trusts, within five (5) business days after the last to occur of the following: (1) the execution of this Agreement by the Parties; (2) the payment by Bradford to Anna under Paragraph B.2. above; and (3) the issuance of adjudications by the Court.

E.   **The 1972 Trust.**

1.   **Acknowledgment of Receipt of Shares**.  John acknowledges that he and Lucia each received their one-quarter share of the 1972 Trust following Herbert, Jr.'s death; Anna acknowledges that her one-quarter share of the 1972 Trust was distributed to the Anna 1994 Trust following Herbert, Jr.'s death.  John and Anna acknowledge that the one-quarter share for Frances remained in trust with Frances as sole Trustee until June 2013, at which time John, Anna and Lucia became successor co-Trustees.

2.   **Payment of Expenses.**  Anna acknowledges that the assets remaining in the 1972 Trust and held at Vanguard totaled $365,895.52 as of September 30, 2017, and that the following amounts will be paid from the 1972 Trust prior to final distribution as provided below:

    a)  $5,179.00 to the FSM Revocable Trust, in reimbursement of taxes and tax preparation fees advanced by the FSM Revocable Trust for the benefit of the 1972 Trust in 2014, 2015 and 2016;

    b)  $1,700.00 to Grant Thornton LLP, for preparation of the 2014 income tax returns;

    c)  $1,800.00 to Grant Thornton LLP, for preparation of the 2015 income tax returns;

28

d)  $1,800.00 to Grant Thornton LLP, for preparation of the 2016 income tax returns;

e)  $1,800 to Grant Thornton for preparation of the 2017 income tax returns;

f)  $3,803.00 to Grant Thornton LLP, for time and expenses incurred in responding to a subpoena and producing documents related to the 1972 Trust;

g)  $1,925.00 to Grant Thornton, LLP, for preparation of the final income tax returns for the 1972 Trust;

h)  $516.94 to the 2001 GRAT fbo Anna, for reimbursement of legal fees and expenses paid to the Schnader firm from the 2001 GRAT fbo Anna but chargeable to the 1972 Trust; and

i)  $71,070.65 to Mannion Prior, LLP, for legal fees and expenses incurred by John as Trustee of the 1972 Trust.

3.  **Trust Administration Records/Waiver of Accounts.**  Anna recognizes that due to the passage of time not all trust administration records are available for the 1972 Trust. Nevertheless, Anna agrees to accept and approve statements of transactions for the Trust and other trust administration records produced by John with the same force and effect as if formal accounts had been prepared and duly filed with, audited, adjudicated and confirmed absolutely by the Court, awarding the assets of the 1972 Trust as provided in this Agreement. Anna and John acknowledge that formal accounts (the "1972 Trust Accounts") will be prepared and filed with the Court for various shares of the 1972 Trust, the Petitions for Adjudications/Statements of Proposed Distribution filed with the 1972 Trust Accounts will request the Court to discharge Frances as former Trustee and John, Lucia and Anna as co-Trustees, and Anna and John waive any objections to such Accounts and Petitions for Adjudication/Statements of Proposed Distribution. Anna will execute a waiver in the form attached hereto as Exhibit 16 waiving any right to (i) open such adjudication under the provisions of 20 Pa. C.S.A. §§ 3521 and 7799.2 (relating to rehearing), or (ii) challenge this Agreement on the non-disclosure of documents or

29

information related to the 1972 Trust, within five (5) business days after the last to occur of the following: (1) the execution of this Agreement by the Parties; (2) the payment by Bradford to Anna under Paragraph B.2. above; and (3) the issuance of adjudications by the Court.

4. **Schedule of Distribution.**  Anna acknowledges that, following the Court's adjudication of the 1972 Trust Accounts, John will file a schedule of distribution with the Court prior to final distribution of the 1972 Trust assets in equal one-third shares to John, Lucia and Anna.  Anna waives any objections to the transactions expressly approved by this Agreement.

5. **Tax Matters.**  John and Anna acknowledge that Grant Thornton, LLP will prepare the final income tax returns for the 1972 Trust and that, as co-Trustees, they will sign the Statement of Work for that engagement, to be paid as set forth in Paragraph E.2. above.  John and Anna further acknowledge that, as beneficiaries, they and Lucia will receive tax information forms from Grant Thornton, LLP for the final income tax year of the 1972 Trust, which forms will report any items of income (including capital gains) or deduction reportable by them on their individual income tax returns.

6. **Withdrawal of 1972 Trust Litigation.**  Concurrently with the execution of this Agreement, Anna will execute and file with the Court the Praecipe attached as Exhibit 15 withdrawing, with prejudice, all petitions, answers, new matters, replies, motions, responses, objections, claims, and other pleadings (including original, amended, and/or supplemental) and litigation filed by or on behalf of Anna in the 1972 Trust Litigation, effective upon the Court's approval of this Agreement.

F. **The 1982 Trust.**

1. **Withdrawal of Objections and Litigation by Anna.**  Concurrently with the execution of this Agreement, Anna will execute and file with the Court the Praecipe attached as

145161.00601/106632296v.17

Exhibit 15 withdrawing, with prejudice, her objections to the 1982 Trust Account and all other petitions, answers, new matters, replies, motions, responses, objections, claims, and other pleadings (including original, amended, and/or supplemental) and litigation filed by or on behalf of Anna in the 1982 Trust Litigation, effective upon approval of this Agreement.

2.   **Modification of Certain Requests/Credits by John.**   With the agreement of Anna, John, as Trustee of the 1982 Trust, modifies the following requests set forth in the Petition for Adjudication/Statement of Proposed Distribution filed in conjunction with the 1982 Trust Account:

a)   The $60,000.00 reserve for unpaid administrative expenses (Page 8, Paragraph 18, and Paragraph 6 of the Rider to Paragraph 13), is modified and reduced to a reserve of $10,603.00, from which the following amounts will be paid: $3,400.00 to Grant Thornton LLP, for preparation of the 2016 income tax returns; $3,400.00 to Grant Thornton for preparation of the 2017 income tax returns; $3,803.00 to Grant Thornton LLP, for time and expenses incurred in responding to a subpoena and producing documents related to the 1982 Trust; and $3,400.00 to Grant Thornton, LLP, for preparation of the final income tax returns for the 1982 Trust. All other expenses for which the reserve had initially been requested have been paid from the 1982 Trust as reflected in the 1982 Trust Supplemental Account which is being approved as provided in Paragraph F.5. below and/or addressed by this Agreement, and therefore the balance of the requested reserve is withdrawn;

b)   The $25,000.00 requested credit to the Cozen firm for legal fees and expenses (Paragraph 6 of the Rider to Paragraph 13) is subsumed within the legal fees paid to the Cozen firm from the 1982 Trust as reflected in the 1982 Trust Supplemental Account, which is being approved as provided in Paragraph F.5. below;

c)   The $872.19 requested credit to the Cozen firm for advancing the 1982 Trust Account filing fee (Paragraph 6 of the Rider to Paragraph 13) is subsumed within the legal fees paid to the Cozen firm from the 1982 Trust as reflected in the 1982 Trust Supplemental Account, which is being approved as provided in Paragraph F.5. below;

d)   The $3,056.00 requested credit to the Cozen firm for Zach Zacharia's account preparation fee (Paragraph 6 of the Rider to

31

Paragraph 13) is subsumed within the legal fees paid to the Cozen firm from the 1982 Trust as reflected in the 1982 Trust Supplemental Account, which is being approved as provided in Paragraph F.5. below;

e)      The $6,178.00 requested credit to the Schnader firm for legal fees (Paragraph 6 of Rider to Paragraph 13) is subsumed within the legal fees paid to the Schnader firm from the 1982 Trust as reflected in the 1982 Trust Supplemental Account, which is being approved as provided in Paragraph F.5. below; and

f)      The $4,000.00 requested credit to Mannion Prior, LLP for legal fees (Paragraph 6 of the Rider to Paragraph 13) is increased to $21,976.40, representing legal fees incurred after the closing date of the 1982 Trust Supplemental Account (which Supplemental Account also discloses legal fees which are being approved as provided in Paragraph F.5. below).

3.      **Requests Not Modified or Withdrawn.**  Anna and John acknowledge that the following requests set forth in the Rider to Paragraph 13 of the Petition for Adjudication/Statement of Proposed Distribution remain as stated, and Anna and John jointly request the Court to approve them:  Paragraph 1 (Court approval of transactions) and Paragraph 2 (discharge of John and the FSM Estate).

4.      **Adjudication of 1982 Trust Account.**  Anna recognizes that due to the passage of time not all trust administration records are available for the 1982 Trust.  Nevertheless, Anna and John accept and approve the 1982 Trust Account and jointly request the Court to issue an adjudication confirming the 1982 Trust Account as set forth in the Petition for Adjudication/Statement of Proposed Distribution filed by John as Trustee, subject only to Paragraph F.2. above, this Paragraph F.4., and the Court's Order and Opinion dated October 2, 2015 and the related Opinion of the Superior Court at Docket No. 3389 EDA 2015 (related to the validity of the 1998 Assignment).  Anna will execute a waiver in the form attached hereto as Exhibit 16 waiving any right to (i) open such adjudication under the provisions of 20 Pa. C.S.A. §§ 3521 and 7799.2 (relating to rehearing), or (ii) challenge this Agreement on the non-

145161.00601/106632296v.17

disclosure of documents or information related to the 1982 Trust, within five (5) business days after the last to occur of the following: (1) the execution of this Agreement by the Parties; (2) the payment by Bradford to Anna under Paragraph B.2. above; and (3) the issuance of adjudications by the Court.

5. **Approval of 1982 Trust Supplemental Account.**  Anna approves in all respects the 1982 Trust Supplemental Account attached as Exhibit 1, with the same force and effect as if it had been filed with, audited, adjudicated and confirmed absolutely by the Court.  Anna acknowledges that, following the Court's adjudication of the 1982 Trust Account, John will file a schedule of distribution with the Court prior to final distribution of the 1982 Trust assets in equal one-third shares to John, Lucia and Anna, and Anna waives any objections to the transactions set forth in the 1982 Trust Supplemental Account or expressly approved by this Agreement.

6. **Schedule of Distribution.**  Anna acknowledges that, following the Court's adjudication of the 1982 Trust Account, John will file a schedule of distribution with the Court prior to final distribution of the 1982 Trust assets in equal one-third shares to John, Lucia and Anna.  Anna waives any objections to the transactions expressly approved by this Agreement.

7. **Tax Matters.**  John and Anna acknowledge that Grant Thornton, LLP will prepare the final income tax returns for the 1982 Trust and further acknowledge that John, Anna and Lucia will receive tax information forms from Grant Thornton, LLP for the final income tax year of the 1982 Trust, which forms will report any items of income (including capital gains) or deduction reportable by them on their individual income tax returns.

G. **The 1990 Trust.**

1. **Withdrawal of Objections and Litigation by Anna.**  Concurrently with the execution of this Agreement, Anna will execute and file with the Court the Praecipe attached as

33

Exhibit 15 withdrawing, with prejudice, her objections to the 1990 Trust Account and all other petitions, answers, new matters, replies, motions, responses, objections, claims, and other pleadings (including original, amended, and/or supplemental) and litigation filed by or on behalf of Anna in the 1990 Trust Litigation, effective upon the Court's approval of this Agreement.

2. **Termination of 1990 Trust.** Anna requests that John exercise his discretion under Item SECOND of the Agreement of Trust to terminate the 1990 Trust at this time and to distribute the remaining assets (subject to the terms of this Agreement) in equal one-third shares to John, Lucia and Anna. John is willing to do so on the terms set forth in this Agreement and concurrently with the execution of this Agreement John will execute the Praecipe to Substitute attached as Exhibit 17.

3. **Modification of Certain Requests/Credits by John.** With the agreement of Anna, John modifies the following requests set forth in the Petition for Adjudication/Statement of Proposed Distribution filed in conjunction with the 1990 Trust Account:

a) The $35,000.00 credit to Mannion Prior, LLP for legal fees and expenses (Paragraph 2(a) of the Rider to Paragraph 14) is increased to $80,229.26;

b) John requests the Court to approve a reserve in the amount of $14,003.00, from which the following will be paid: $3,400.00 to Grant Thornton LLP, for preparation of the 2016 income tax returns; $3,400.00 to Grant Thornton for preparation of the 2017 income tax returns; $3,803.00 to Grant Thornton LLP, for time and expenses incurred in responding to a subpoena and producing documents related to the 1990 Trust; and $3,400.00 to Grant Thornton, LLP, for preparation of the final income tax returns for the 1990 Trust.

4. **Requests Not Modified or Withdrawn.** Anna and John acknowledge that the following requests set forth in the Rider to Paragraph 14 of the Petition for Adjudication/Statement of Proposed Distribution remain as stated: denial of the $32.75 claimed reimbursement by the 2001 GRAT fbo Anna (Paragraph 1), payment of the filing fee (Paragraph

34

2(b)), payment of the account preparation fee (Paragraph 2(c)), request for additional legal fees to Mannion Prior, LLP in connection with the litigation (Paragraph 3), payment of fiduciary commissions to John (Paragraph 4), and discharge of John as Trustee (Paragraph 5).

5.   **Adjudication of 1990 Trust Account.**  Anna recognizes that due to the passage of time not all trust administration records are available for the 1990 Trust.  Nevertheless, Anna and John accept and approve the 1990 Trust Account and jointly request the Court to issue an adjudication confirming the 1990 Trust Account as set forth in the Petition for Adjudication/Statement of Proposed Distribution filed by John, subject to Paragraph G.3. above and this Paragraph G.5.  Anna will execute a waiver in the form attached hereto as Exhibit 16 waiving any right to (i) open such adjudication under the provisions of 20 Pa. C.S.A. §§ 3521 and 7799.2 (relating to rehearing), or (ii) challenge this Agreement on the non-disclosure of documents or information related to the 1990 Trust, within five (5) business days after the last to occur of the following: (1) the execution of this Agreement by the Parties; (2) the payment by Bradford to Anna under Paragraph B.2. above; and (3) the issuance of adjudications by the Court.

6.   **Schedule of Distribution.**  Anna acknowledges that, following the Court's adjudication of the 1990 Trust Account, John will file a schedule of distribution with the Court prior to final distribution of the 1990 Trust assets in equal one-third shares to John, Lucia and Anna.  Anna waives any objections to the transactions expressly approved by this Agreement.

7.   **Tax Matters.**  John and Anna acknowledge that Grant Thornton, LLP will prepare the final income tax returns for the 1990 Trust and further acknowledge that John, Anna and Lucia will receive tax information forms from Grant Thornton, LLP for the final income tax

35

year of the 1990 Trust, which forms will report any items of income (including capital gains) or deduction reportable by them on their individual income tax returns.

**H.** **The HHM Jr. Estate and QTIP Marital Trust.**

1. **Withdrawal of Objections and Litigation by Anna.** Concurrently with the execution of this Agreement, Anna will execute and file with the Court the Praecipe attached as Exhibit 15 withdrawing, with prejudice, her objections to the QTIP Marital Trust Account and the HHM Jr. Estate Account that was piggy-backed to the QTIP Marital Trust Account, and all other petitions, answers, new matters, replies, motions, responses, objections, claims, and other pleadings (including original, amended, and/or supplemental) and litigation filed by or on behalf of Anna in the QTIP Marital Trust Litigation, effective upon the Court's approval of this Agreement.

2. **Attorneys' Fees in QTIP Marital Trust Account.** Anna acknowledges that there is $27,283.06 in costs and fees for legal services reflected in the QTIP Marital Trust Account (p. 65) as having been paid to Mannion Prior, LLP, and that there is an additional $128,885.09 in costs and fees for legal services to Mannion Prior, LLP following the closing date of the QTIP Marital Trust Account, and that such costs and fees have been or will be paid by the QTIP Marital Trust, and that such costs and fees will not be reimbursed by John or recovered from any other person. Further, Anna approves of the payment of such costs and fees from the QTIP Marital Trust.

3. **Requests Not Modified or Withdrawn.** Anna and John acknowledge that the requests set forth in the Rider to Paragraph 13 of the Petition for Adjudication/Statement of Proposed Distribution remain as stated.

36

4.    **Adjudication of QTIP Marital Trust Account and HHM Jr. Estate.**  Anna recognizes that due to the passage of time not all administration records are available for the QTIP Marital Trust or the HHM Jr. Estate.  Nevertheless, Anna and John accept and approve the QTIP Marital Trust Account and jointly request the Court to issue an adjudication confirming the QTIP Marital Trust Account and the HHM Jr. Estate Account that was piggy-backed on the QTIP Marital Trust Account as set forth in the Petition for Adjudication/Statement of Proposed Distribution filed by John, subject to Paragraph H.2. above and this Paragraph H.4.  Anna will execute a waiver in the form attached hereto as Exhibit 16 waiving any right to (i) open such adjudication under the provisions of 20 Pa. C.S.A. §§ 3521 and 7799.2 (relating to rehearing), or (ii) challenge this Agreement on the non-disclosure of documents or information related to the QTIP Marital Trust or the HHM Jr. Estate, within five (5) business days after the last to occur of the following: (1) the execution of this Agreement by the Parties; (2) the payment by Bradford to Anna under Paragraph B.2. above; and (3) the issuance of adjudications by the Court.

5.    **Schedule of Distribution.**  Anna acknowledges that, following the Court's adjudication of the QTIP Marital Trust Account and the HHM Jr. Estate Account that was piggy-backed on the QTIP Marital Trust Account, John will file a schedule of distribution with the Court prior to final distribution of the QTIP Marital Trust assets to the FSM Revocable Trust. Anna waives any objections to the transactions expressly approved by this Agreement.

6.    **Tax Matters.**  John and Anna acknowledge that Grant Thornton, LLP will prepare the final income tax returns for the QTIP Marital Trust and the HHM Jr. Estate and further acknowledge that John, Anna and Lucia will receive tax information forms from Grant Thornton, LLP for the final income tax year of the QTIP Marital Trust and/or the HHM Jr.

37

Estate, which forms will report any items of income (including capital gains) or deduction reportable by them on their individual income tax returns.

## I.   The FSM Estate and FSM Revocable Trust.

1.   **Withdrawal of Objections and Litigation by Anna.**  Concurrently with the execution of this Agreement, Anna will execute and file with the Court the Praecipe attached as Exhibit 15 withdrawing, with prejudice, her objections to the FSM Revocable Trust Account, and all other petitions, answers, new matters, replies, motions, responses, objections, claims, and other pleadings (including original, amended, and/or supplemental) and litigation filed by or on behalf of Anna in the FSM Revocable Trust Litigation, effective upon the Court's approval of this Agreement.

2.   **Distribution of the Jewelry.**  Anna requests that John, as Trustee of the FSM Revocable Trust and co-Executor of the FSM Estate, distribute to Anna the five items of jewelry selected by Anna that were not also selected by Lucia (the "Anna Jewelry") and distribute to Lucia any jewelry selected by Lucia that was not also selected by Anna.  Resolution of the conflicting requests for the Contested Jewelry will be resolved either by agreement between Lucia and Anna or further order of the Court.

3.   **Attorneys' Fees in FSM Revocable Trust Account.**  Anna acknowledges that there is $59,568.41 in costs and fees for legal services reflected in the FSM Revocable Trust Account (p. 10) as having been paid to Mannion Prior, LLP, and that there is an additional $50,723.65 in costs and fees for legal services to Mannion Prior, LLP following the closing date of the FSM Revocable Trust Account, and $11,394.50 in costs and fees for legal services to the Cozen firm, and that such costs and fees have been or will be paid by the FSM Revocable Trust,

38

and that such costs and fees will not be reimbursed by John or recovered from any other person. Further, Anna approves of the payment of such costs and fees from the FSM Revocable Trust.

4.   **Requests Not Modified or Withdrawn.**  Anna and John acknowledge that the requests set forth in the Rider to Paragraph 14 of the Petition for Adjudication/Statement of Proposed Distribution remain as stated.

5.   **Adjudication of the FSM Estate and FSM Revocable Trust Account.**  Anna recognizes that due to the passage of time not all trust administration records are available for the FSM Revocable Trust.  Nevertheless, Anna and John accept and approve the FSM Revocable Trust Account and jointly request the Court to issue an adjudication confirming the FSM Revocable Trust Account as set forth in the Petition for Adjudication/Statement of Proposed Distribution filed by John as Trustee, subject to Paragraph I.3. above and this Paragraph I.5. Anna will execute a waiver in the form attached hereto as Exhibit 16 waiving any right to (i) open such adjudication under the provisions of 20 Pa. C.S.A. §§ 3521 and 7799.2 (relating to rehearing), or (ii) challenge this Agreement on the non-disclosure of documents or information related to the FSM Estate or FSM Revocable Trust, within five (5) business days after the last to occur of the following: (1) the execution of this Agreement by the Parties; (2) the payment by Bradford to Anna under Paragraph B.2. above; and (3) the issuance of adjudications by the Court.

6.   **Schedule of Distribution.**  Anna acknowledges that, following the Court's adjudication of the FSM Revocable Trust Account, John will file a schedule of distribution with the Court prior to final distribution of the FSM Revocable Trust assets in equal one-third shares to John, Lucia and Anna.  Anna waives any objections to the transactions expressly approved by this Agreement.

39

7.      **Tax Matters.**  John and Anna acknowledge that Grant Thornton, LLP will prepare the final income tax returns for the FSM Revocable Trust and the FSM Estate and further acknowledge that John, Anna and Lucia will receive tax information forms from Grant Thornton, LLP for the final income tax year of the FSM Revocable Trust, which forms will report any items of income (including capital gains) or deduction reportable by them on their individual income tax returns.

**J.    Releases.**

1.      **General Release of John, Leigh, Bradford, Pine Street, the Trusts and the Estates.**  Except as provided in this Agreement, and specifically excepting any claims that Anna may have or assert against the Schnader firm, its partners and each of them, Anna for herself, the Represented Parties (as defined in Paragraph K.12. below), and their respective heirs, personal representatives, predecessors, successors, employees, agents, partners, attorneys, insurers, and assigns, releases, quitclaims and discharges

    a)  John, individually, as Trustee of the 1972 Trust, the 1982 Trust, the 1990 Trust, the Anna 1994 Trusts, the Original 2001 GRAT, the Modified 2001 GRAT, the QTIP Marital Trust, and the FSM Revocable Trust, and any other trust created or settled by Herbert, Jr. and/or Frances for the benefit of their children, grandchildren or more remote issue, and as surviving Executor of the HHM Jr. Estate and co-Executor of the FSM Estate, and as agent under the Power of Attorney for Frances,

    b)  the 1972 Trust, the 1982 Trust, the 1990 Trust, the Anna 1994 Trusts, the Original 2001 GRAT, the Modified 2001 GRAT, the QTIP Marital Trust, the FSM Revocable Trust, the HHM Jr. Estate and the FSM Estate, and any other trust created or settled by Herbert, Jr. and/or Frances for the benefit of their children, grandchildren, or more remote issue, or by John and/or Leigh for the benefit of any person or persons,

    c)  Leigh, individually, as a beneficiary or permissible appointee of any trust and as former agent under the Power of Attorney for Frances,

    d)  Bradford and Pine Street, and

40

e) his, her, its and/or their respective heirs, personal representatives, shareholders, predecessors, successors, subsidiaries, affiliates, employees, agents, partners, officers, directors, attorneys, insurers, assigns and any other person or entity that is or may be entitled to indemnification, contribution or exoneration from John, Bradford or Pine Street,

from and against any and all claims, debts, demands, causes of action, suits, damages, obligations, costs, fees, losses, expenses, compensation, and liabilities whatsoever, at law or in equity, known or unknown, asserted or unasserted, contingent or accrued, discovered or undiscovered, which occurred or existed at any time from the beginning of time to the date this Agreement is approved by the Court, including, but not limited to, claims regarding (a) the 2003 Master Settlement Agreement and all of its Exhibits, the transactions under the 2003 Master Settlement Agreement, the February 20, 2003 Side Letter Agreement regarding indemnification, the 2003 Release and Indemnification Agreement, the 2004 Acknowledgement, and the Middleton 2012 Family Settlement Agreement; (b) the funding, administration and distribution of the 1972 Trust, the 1982 Trust, the 1990 Trust, the Anna 1994 Trust, the Original 2001 GRAT, the Modified 2001 GRAT, the Anna 1994 Trusts, the QTIP Marital Trust, the FSM Revocable Trust, the FSM Estate, the HHM Jr. Estate, or any other trust created or settled by Herbert, Jr. and/or Frances for the benefit of their children or grandchildren, or created or settled by John and/or Leigh for the benefit of any person or persons; and/or (c) any claims that were or could have been asserted in the 1972 Trust Litigation, the 1982 Trust Litigation, the 1990 Trust Litigation, the QTIP Marital Trust Litigation, the FSM Revocable Trust Litigation, the 2003 Master Settlement Agreement Litigation, the 2001 GRAT Litigation or the Anna 1994 Trust Litigation, or for any other trust created or settled by Herbert, Jr. and/or Frances for the benefit of their children, grandchildren, or more remote issue, or created or settled by John and/or Leigh for the benefit of any person or persons. The Parties expressly intend and agree that this General

41

Release set forth in this Paragraph J.1. of this Agreement is a *pro rata* release pursuant to the Uniform Contribution Among Joint Tortfeasors Act, 42 Pa. C.S.A. § 8321 et seq. ("UCAJTA"), and other applicable law, and not a *pro tanto* release. Accordingly, to the extent John, Bradford, Leigh or Pine Street (the "John Released Parties") or any of them is determined to be a joint tortfeasor along with any non-party on any claim Anna may assert hereafter arising from or relating to the 2001 GRAT, the Anna 1994 Trusts, the 1972 Trust, the 1982 Trust, the 1990 Trust, the QTIP Marital Trust, the FSM Revocable Trust, Frances, the FSM Estate, the HHM, Jr., Estate, Bradford, the 2003 Master Settlement Agreement or any of its Exhibits or transactions carried out thereunder, the Middleton 2012 Family Settlement Agreement, or any of the Actions (collectively, "Related Claims"), Anna shall not recover from, and her recovery shall be reduced against, that non-party (a) to the extent of the *pro rata* or percentage share of liability allocated to any or all of the John Released Parties, or (b) should it be determined that the law of another jurisdiction and not UCAJTA applies to determine the effect of this release on contribution claims by a non-party, by such amount as may be necessary under that law to render the release a bar to all contribution claims by that non-party against any or all of the John Released Parties on any Related Claims.

2. **Receipt, Release and Refunding Agreement for FSM Estate and FSM Revocable Trust**. Anna agrees (a) to refund to John, in his capacity as co-Executor of the FSM Estate, and Lucia, in her capacity as co-Executor of the FSM Estate (each individually, a "co-Executor" and collectively, the "co-Executors"), and to John in his capacity as Trustee of the FSM Revocable Trust, and subject to their fiduciary duties in such capacities, any distribution to Anna from the FSM Estate and/or the FSM Revocable Trust that is subsequently determined should not have been distributed to her, whether such distribution was a result of negligence,

42

mistake of law or fact, or otherwise; and (b) to the extent not refunded, to indemnify and hold harmless (i) John as co-Executor, individually, and as Trustee of the FSM Revocable Trust, as the case may be, (ii) Lucia as co-Executor and individually, as the case may be, and (iii) their respective heirs and personal representatives, successors, assigns, agents, investment managers, directors, officers, employees and affiliates, from and against any liability (including taxes, attorneys' fees, costs, claims or other expenses), which the co-Executors may incur as a result of the administration of the FSM Estate and/or which John may incur as a result of the administration of the FSM Revocable Trust, including without limitation the distribution of the remaining balances of principal and income from the FSM Estate, the distribution of the remaining balances of principal and income from the FSM Revocable Trust and any tax matters, whether arising out of negligence, mistake of law or fact, or otherwise; provided, however, that Anna's liability shall be limited to the value of the property distributed to her; and provided further, however, that any period of limitation of actions shall commence only at such time as the co-Executors have obtained actual knowledge of a claim against them related to the FSM Estate or the FSM Revocable Trust, and in no event shall the period be less than two years after the actual discovery thereof.

3. **Limited Releases of Anna.**

    a)    Except as provided in this Agreement and excepting the Schnader firm, its partners and each of them, John, individually and as Trustee of the 1972 Trust, the 1982 Trust, the 1990 Trust and the QTIP Marital Trust and as surviving co-Executor of the HHM Jr. Estate, for himself and his respective heirs, representatives, predecessors, successors, employees, agents, partners, attorneys, insurers, and assigns, releases, quitclaims and discharges Anna, individually and as Trustee of the 1972 Trust, and her respective heirs, personal representatives, attorneys of record in the Actions since October 2014 and Thomas J. Budd Mucci, Esq., successors and assigns, from and against any and all claims, debts, demands, causes of action, suits, damages, obligations, costs, fees, losses,

43

expenses, compensation, and liabilities whatsoever, at law or in equity, known or unknown, asserted or unasserted, contingent or accrued, discovered or undiscovered, which occurred or existed at any time from the beginning of time to the date of the execution of this Agreement by all parties related to the funding, administration and distribution of the 1972 Trust, the 1982 Trust, the 1990 Trust, the QTIP Marital Trust, the HHM Jr. Estate, and/or related to the 1972 Trust Litigation, the 1982 Trust Litigation, the 1990 Trust Litigation, and the QTIP Marital Trust Litigation.

b)  Except as provided in this Agreement and excepting the Schnader firm, its partners, and each of them, John, individually and as Trustee of the Anna 1994 Trusts, the Original 2001 GRAT, the Modified 2001 GRAT, and the FSM Revocable Trust and as co-Executor of the FSM Estate, Bradford and Pine Street and his or its respective heirs, representatives, predecessors, successors, subsidiaries, affiliates, employees, agents, partners, attorneys, insurers, and assigns release, quitclaim and discharge Anna, individually and as co-Trustee of the Anna 1994 Trusts, and her respective heirs, personal representatives, attorneys of record in the Action since October 2014 and Thomas J. Budd Mucci, Esq., successors and assigns from any claim or demand for attorneys' fees, costs or expenses incurred in the 2003 Master Settlement Agreement Litigation, the 2001 GRAT Litigation, the Anna 1994 Trust Litigation, and the FSM Revocable Trust Litigation.

c)  Notwithstanding the foregoing, in addition to all rights not released in Paragraphs J.3.(a)-(b) above, John, individually, as Trustee or as co-Trustee of the Anna 1994 Trusts, the Modified 2001 GRAT and the FSM Revocable Trust and as co-Executor of the FSM Estate, and Bradford, and any of his or its respective heirs, personal representatives, predecessors, successors, subsidiaries, affiliates, employees, agents, partners, attorneys, insurers, and assigns, expressly retains any other claims, suits, liabilities, actions, transactions, causes of action and demands of any type or nature whatsoever, known or not yet known against any person, including, but not limited to, Anna individually and as co-Trustee of the Anna 1994 Trusts, and her respective heirs, personal representatives, attorneys (expressly excluding Anna's counsel of record in the Actions since October 2014, and each of them, and Thomas J. Budd Mucci, Esq.), successors and assigns, related to rights to indemnification under the 2003 Master Settlement Agreement or any of its exhibits, the February 20, 2003 Side Letter Agreement, the 2003 Release and Indemnification Agreement and the Middleton 2012 Family Agreement.

44

K.   **Miscellaneous Provisions.**

1.    **Colloquy on February 26, 2018.**  Anna and John will appear in Court on February 26, 2018 for an evidentiary hearing and agree that they will answer any questions by the Court and will recommend that the Court ask the colloquy questions set forth in Exhibit 18. Anna and John shall provide such testimony in person.

2.    **Petition for Court Approval.**  Promptly after execution of this Agreement by all Parties, John will file a petition with the Court in the dockets for the 1972 Trust, the 1982 Trust, the 1990 Trust, the Anna 1994 Trust, the 2001 GRAT, the QTIP Marital Trust, the FSM Revocable Trust, the HHM Jr. Estate and the FSM Estate requesting that the Court approve this Agreement, and will give notice to all parties in interest as required by law.  Anna agrees to fully support the Petition for Court Approval.

3.    **Conditions Precedent.**  This Agreement is expressly contingent upon, and shall not be effective until, the last to occur of each of the following:

a)    Execution of this Agreement by all Parties;

b)    Execution and filing with the Court of Exhibits 15, 17, 19, 22 and 23 ; and

c)    Approval of this Agreement in its entirety by the Court pursuant to 20 Pa. C.S.A. §§ 3323, 7792, 7710.1(e) and 7772(b)(2), as contemplated by Paragraph K.2. above, and the entry of a final Decree substantially in the form attached as Exhibit 19.

4.    **Execution of Acknowledgements of Receipt of Distributions/Personal Property.**  Within five (5) calendar days of receipt of any distribution to her of the Anna Jewelry or from the 1972 Trust, the 1982 Trust, the 1990 Trust, the QTIP Marital Trust and the FSM Revocable Trust, Anna shall execute an Acknowledgment of Receipt in the form attached hereto as Exhibit 20.

45

5.     **No Third Party Beneficiaries/Reservation of Rights Against Non-Parties.**
This Agreement is entered into solely for the benefit of the Parties and does not confer any rights or benefits on any person or entity not a Party to this Agreement. Nothing in this Agreement shall be construed to waive or limit any Party's rights against any person or entity not a Party to this Agreement. Anna, John, Leigh, Bradford, Pine Street and his, her, its and/or their respective heirs, personal representatives, shareholders, predecessors, successors, subsidiaries, affiliates, employees, agents, partners, attorneys, insurers, and assigns retain any claims or demands they may have against any person or entity who is not a Party to this Agreement.

6.     **No Admission of Liability.** This Agreement, and acts or proceedings taken hereunder, shall not in any way be construed as, or deemed to be, evidence of any admission or concession on the part of any Party, in any capacity, of any liability or wrongdoing whatsoever, and any such liability, wrongdoing or status is hereby expressly denied and disclaimed.

7.     **Adequacy of Consideration.** The parties hereby acknowledge that the payment identified in Paragraph B.2. above and the agreements and releases set forth in this Agreement are adequate and sufficient consideration for this Agreement.

8.     **Entire Agreement.** This Agreement represents the entire understanding of the Parties. No Party has executed this Agreement in reliance upon any express or implied representation, whether as to law or fact, or any other statement, promise or covenant, oral or written, made by any other person (including, but not limited to, any other Party or his, her or its representative), which is not expressly set forth herein. This Agreement cannot be modified or amended other than in a writing signed by each and every Party.

9.     **No Novation.** This Agreement is a not intended to be, and shall not be construed or interpreted to be, a novation of the 2004 Acknowledgement, the 2003 Master Settlement

46

Agreement or any Exhibit thereto, the February 20, 2003 Side Letter Agreement, the 2003 Release and Indemnification Agreement, or the Middleton 2012 Family Agreement or any Exhibit thereto.

10.   **Further Documents.**  Each Party agrees that he, she or it will take such action and execute such further documents as may be reasonably necessary or appropriate to fulfill the purposes expressed in this Agreement and to perform its terms and conditions.

11.   **Competency and Authority to Execute and Representation of Counsel.**  John as Trustee and Executor is represented by Mannion Prior, LLP.  John individually, Bradford, Pine Street and Leigh, in all her capacities, are represented by Blank Rome LLP.  Anna is presently represented by Thomas J. Budd Mucci, Esq. and Kimberly Brusuelas, Esq.  All Parties recognize that this Agreement is a compromise of contested litigation, that not all discovery has been completed, and that they have been advised by their respective, independent counsel as to the consequences of this Agreement and believe that the execution of this Agreement is in their respective best interests.  All Parties agree and acknowledge that they are entering into this Agreement freely and of their own volition, and without compulsion or duress of any kind.  All Parties waive any right to challenge this Agreement on the non-disclosure of documents or information and agree that the provisions hereof were not induced by improper conduct of any other Party.

Anna, individually and in her capacity as co-Trustee of the Anna 1994 Trusts and the 1972 Trust, represents and warrants that she is competent to execute this agreement, that she has not relied on any representations or statements of anyone else, including John, Leigh, Bradford, Pine Street, or their counsel with respect to the subject matter of this Agreement other than as expressly set forth in this Agreement, and understands that she is relinquishing and releasing in

47

its entirety the claims she has or may have against John, Leigh, Bradford or Pine Street and his, her and its respective heirs, personal representatives, predecessors, successors, subsidiaries, affiliates, employees, agents, partners, attorneys, insurers, assigns and any other person or entity that is or may be entitled to indemnification, contribution or exoneration from John, Leigh, Bradford or Pine Street.  Anna and her counsel, Thomas J. Budd Mucci, Esq. and Kimberly Brusuelas, Esq., shall sign the confirmation attached hereto as Exhibit 21-A that Mr. Mucci and Ms. Brusuelas have reviewed this Agreement with Anna, explained to her that she is compromising disputed claims, explained its terms, responded to any questions she presented, and certify that in their judgment she is competent, acting free of her own volition and without coercion or duress to execute this Agreement.

John, individually and in his capacity as Trustee, co-Trustee, former Trustee, co-Executor or officer/director of Bradford, represents and warrants that he is competent to execute this Agreement, he has not relied on any representations or statements of anyone else, including Anna or her counsel with respect to the subject matter of this Settlement Agreement other than as expressly set forth in this Agreement, and understands that he and Bradford are relinquishing and releasing in its entirety the claims within Paragraphs J.3.(a)-(b) above.  John and his counsel, Mannion Prior, LLP and Blank Rome, LLP, and Bradford and its counsel, Blank Rome, LLP, shall sign the confirmation attached hereto as Exhibit 21-B that John and Bradford have reviewed this Agreement with their lawyers, who have explained to them that they are compromising disputed claims, explained its terms, responded to any questions they presented, and certify that in their judgment John (in all capacities) is competent, acting free of his own volition and without coercion or duress to execute this Agreement.

48

12.    **Virtual Representation**.  Anna agrees to represent her minor, unborn and unascertained descendants pursuant to 20 Pa. C.S.A. § 7723(9) and all potential appointees and all takers in default of exercise of all powers of appointment she holds pursuant to 20 Pa. C.S.A. §§ 7723(7)-(8) (collectively, the "Represented Parties").  Anna represents that she has no conflict of interest with respect to the Represented Parties whom she represents with respect to this Agreement.  Anna further agrees that this Agreement serves as notice pursuant to 20 Pa. C.S.A. § 7725 of her representation of the Represented Parties whom she is to represent with respect to their interests in connection with this Agreement, that she agrees to so represent such Represented Parties, and waives the 30-day period to decline such representation, and that she wishes to begin such representation immediately.

13.    **Authorization to Execute on Behalf of Bradford and Pine Street.**  The person(s) signing this Agreement on behalf of Bradford and/or Pine Street hereto represents and warrants that he or she is authorized to sign on behalf of the party or parties for whom he or she is acting in executing this Agreement.

14.    **Neutral Construction.**  All Parties agree and acknowledge that they and their counsel have participated in the negotiation and drafting of this Agreement and, accordingly, the language and all parts of this Agreement shall be construed as a whole, according to its fair meaning, and shall not be strictly construed for or against any Party.

15.    **Successors.**  This Agreement shall inure to the benefit of and bind the Parties hereto, their respective agents, successors, representatives, heirs and assigns.

16.    **No Assignment of Causes of Action.**  The Parties hereby represent that there has been no assignment of any cause of action to any third-parties.

49

145161.00601/106632296v.17

17.   **Legal Fees and Expenses.**  Except as provided in this Agreement, each Party shall, pursuant to the American Rule, bear his, her or its own legal fees and expenses incurred in connection with the 1972 Trust Litigation, the 1982 Trust Litigation, the 1990 Trust Litigation, the QTIP Marital Trust Litigation, the 2003 Master Settlement Agreement Litigation, the FSM Revocable Trust Litigation, the 2001 GRAT Litigation, the Anna 1994 Trust Litigation and this Agreement.  Notwithstanding the foregoing, the various trusts at issue in the Actions have paid attorneys' fees, costs and expenses incurred by John as Trustee, John and Lucia as co-Executors, or by John and/or Anna as co-Trustees.  Subject to the provisions set forth above in this Agreement corresponding to each such trust and estate, those fees, costs and expenses will not be reimbursed to the trust or estate or recovered from any other person.  The Parties further agree that if an action, suit, or legal proceeding is brought by any Party to enforce or redress a breach of this Agreement, in addition to all other relief awarded by a court of competent jurisdiction, the substantially prevailing Party shall be entitled to an award of reasonable legal fees and costs incurred in connection with such matter.

18.   **Governing Law/Venue.**  This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania, without regard to conflicts of law principles.  Venue for enforcement of this Agreement shall lie exclusively in Montgomery County, Pennsylvania, either in the Orphans' Court Division or the Civil Trial Division, as appropriate.

19.   **Counterparts.**  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original but all of which together shall constitute one and the same instrument, provided that every Party shall promptly receive a complete and legible copy of each such counterpart upon its execution.  Anna, John, Leigh, Bradford and Pine Street

50

are each required to provide a blue ink original signature on all documents to be executed by her, him, it, and by her, his or its counsel.

20.     **Headings Not Part of Agreement.**  Any headings preceding text of any of the paragraphs of this Agreement shall be solely for convenience of references and shall not constitute part of this Agreement or affect its interpretation.

**BALANCE OF THIS PAGE INTENTIONALLY LEFT BLANK**

51

**IN WITNESS WHEREOF**, the Parties, intending to be legally bound, have hereunto set their respective hands and seals on five (5) originals hereof.

_____ (SEAL)
John S. Middleton, Individually, and
as Trustee, former Trustee or co-Trustee of the
1972 Trust, the 1982 Trust, the 1990 Trust,
the Original and Modified 2001 GRAT, the
QTIP Marital Trust, the FSM Revocable Trust,
and the Anna 1994 Trusts, as defined above,
as former agent under Power of Attorney
for Frances S. Middleton, and as surviving
Executor of the HHM, Jr., Estate, and as
co-Executor of the FSM Estate, as defined above

_____ (SEAL)
Anna K. Nupson, Individually, as
virtual representative, as the
co-Trustee of the 1972 Trust and the
Anna 1994 Trusts, as defined above

BRADFORD HOLDINGS, INC.

PINE STREET GROUP, L.P.

_____ (SEAL)
By: John S. Middleton, President

_____ (SEAL)
By: John S. Middleton, Chairman

_____ (SEAL)
Leigh P. Middleton, individually,
as beneficiary or permissible appointee,
and as former Agent under the Power of
Attorney for Frances S. Middleton

52

**Exhibits to Settlement Agreement**

| 1. | Supplemental Account for the period November 1, 2014 through October 19, 2017 for the 1982 Trust |
|---|---|
| 2. | Middleton 2012 Family Agreement dated as of December 21, 2012 |
| 3. | Declaration of Trust for the 1998 Revocable Trust of Frances S. Middleton (with amendments) |
| 4. | List of Contested Jewelry |
| 5. | Original 2001 GRAT |
| 6. | 2003 Master Settlement Agreement (without exhibits) |
| 7. | Modified 2001 GRAT |
| 8. | February 20, 2003 Side Letter Agreement |
| 9. | 2003 Release and Indemnification Agreement |
| 10. | Anna 1994 Trust |
| 11. | 1995 Renunciation of Principal |
| 12. | 1998 Assignment |
| 13. | 2003 Family Settlement Agreement |
| 14. | SPA for Anna 1994 Trust |
| 15. | Praecipe withdrawing, with prejudice, objections to any accounts (all dockets) and all other petitions, answers, new matters, replies, motions, responses, objections, claims, and other pleadings (including original, amended, and/or supplemental) and litigation filed by or on behalf of Anna (all dockets) |
| 16. | Waiver of any right to (i) open such adjudication under the provisions of 20 Pa. C.S.A. §§ 3521 and 7799.2 (relating to rehearing), or (ii) challenge this Agreement on the non-disclosure of documents or information related to the trust accounts (all dockets) |
| 17. | Praecipe to Substitute for 1990 Trust |
| 18. | Colloquy |

| 19. | Form of Decree for Court Approval |
|-----|-----------------------------------|
| 20. | Acknowledgment of Receipt of Distributions (any trust/estate) |
| 21. | Mucci/Brusuelas Confirmation |
| 22. | Praecipe withdrawing claims against Anna in 2001 GRAT Litigation |
| 23. | Praecipe withdrawing claims against Anna in Anna 1994 Trust Litigation |

2