IN THE UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANNA K. NUPSON, )<br>)<br>       **Plaintiff,** )<br>)<br>v. )<br>)<br>SCHNADER HARRISON SEGAL )<br>& LEWIS, LLP, and BRUCE A. )<br>ROSENFIELD, ESQ., )<br>)<br>       **Defendants.** ) | Civil Action No.: 2:18-cv-02505-NIQA |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
NON-PARTY SUBPOENA RECIPIENT LUCIA M. HUGHES'
MOTION TO QUASH OR MODIFY SUBPOENA AND FOR PROTECTIVE ORDER**

Plaintiff Anna K. Nupson ("Plaintiff" or "Ms. Nupson"), through undersigned counsel, submits her Response in Opposition to Non-Party Subpoena Recipient Lucia M. Hughes' ("Ms. Hughes") Motion to Quash or Modify Subpoena and for Protective Order [Doc. 208]. In support of her Response, Plaintiff states as follows:

### I.    INTRODUCTION

Ms. Hughes moves this Court for an order to quash or modify and for a protective order from Plaintiff's subpoena arguing that Plaintiff must be required to show the following: (1) "the areas of inquiry being sought from Ms. Hughes, or (2) the relevance of [Ms. Hughes'] testimony to Ms. Nupson's case, or (3) why that information cannot otherwise be obtained from other sources without imposing undue burden on a retired grandmother in Texas." See **Motion**, at 9 [Doc. 208].

As an initial matter, Ms. Hughes failed to make any good faith effort to resolve her issues with the subpoena before filing her Motion. Plaintiff has no objection to identifying and discussing with Ms. Hughes the nature and subjects of the testimony sought by Plaintiff. On Wednesday, May 26, 2021 Ms. Nupson's attorneys contacted Ms. Hughes' attorney, Mr. Rethore, by phone to

1

discuss the Motion and Ms. Hughes' requests to identify the areas of inquiry sought at deposition. Mr. Rethore appeared to be generally agreeable to working through the logistics of a deposition of his client, and indicated his willingness to resolve this issue without the Court's intervention. Plaintiff's counsel agreed to provide general topics and areas of inquiry to Mr. Rethore and agreed to depose Ms. Hughes through remote means (e.g. Zoom). Out of an abundance of caution, Plaintiff Nupson is submitting this response to ensure the deposition moves forward in an orderly manner, and to provide context and further information to the Court in the event intervention is necessary.

## BACKGROUND FACTS

Since December 7, 2020 Plaintiff through her counsel has attempted to communicate with Ms. Hughes and her attorneys to set her deposition for discovery purposes in this case. *See* Letter sent to Mr. Rethore, attached hereto as **Exhibit 1**. In an effort to serve Ms. Hughes with a subpoena for testimony, Ms. Nupson sent more than nine (9) unanswered letters or emails to Ms. Hughes and/or her attorneys, and hired costly process servers and personal investigators to locate Ms. Hughes and attempt service on Ms. Hughes in three (3) separate states: Texas, North Carolina, and Florida. *See* Plaintiff Anna K. Nupson's Motion to Enforce Subpoena and Request for Service by Alternative Methods, Doc. No. 196, at ¶¶ 2-14. Exhausting nearly all her options to serve Ms. Hughes, Ms. Nupson requested, and this Court granted, an Order allowing service on Ms. Hughes through her counsel and by certified first-class mail. *See* Doc. 202. Ms. Nupson complied with the service requirements stated in the May 10, 2021 Order and Ms. Hughes does not argue in her Motion that service was defective.

Rather, Ms. Hughes seeks an order to quash or modify and for a protective order from Plaintiff's subpoena on the grounds that it "fails to provide any information as to the nature of the

2

information being sought." *See* Motion, at 4 [Doc. 208]. Ms. Hughes further argues that Plaintiff's subpoena is "overly broad, [and] non-specific" and that "Plaintiff cannot prove the relevance of the information." *Id*. at 5.

However, on January 5, 2021 at the request of Ms. Hughes' attorney and to avoid any undue burden on Ms. Hughes, Ms. Nupson agreed to remove the attachment to the subpoena for testimony duces tecum which identified the nature of documents and testimony sought from Ms. Hughes. *See* Email to Mr. Rethore, attached hereto as **Exhibit 2.** Ms. Hughes now claims she is clueless as to the areas of inquiry Ms. Nupson seeks pursuant to her subpoena for testimony. Ms. Hughes' position is without merit and her motion is another attempt to delay and/or avoid her deposition in this matter. Ms. Hughes' status as a "retired grandma from Texas" who "has no dog in Ms. Nupson's fight" does not excuse her from complying with the Federal Rules of Civil Procedure. As such, the Motion should be denied.

## II. ARGUMENT AND AUTHORITIES

A court may quash or modify a subpoena if it subjects a person to undue burden, or if it requires disclosure of protected matter. Fed.R.Civ.P. 45. Discovery may be limited if the discovery sought is unreasonably cumulative and duplicative, or can be obtained from another less burdensome source, or if the party seeking discovery has had ample opportunity to obtain the information by discovery. Fed.R.Civ.P. 26(b). The movant bears the burden on a motion to quash, and that burden is a "heavy one." *In re Martino*, MISC. 10-81, 2010 WL 1257686, at *1 (W.D. Pa. Mar. 26, 2010).

### A. Ms. Hughes fails to demonstrate that Plaintiff's subpoena for testimony should be quashed or modified under Rule 45(d)(3)(A).

Rule 45(d)(3)(A) states that "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that: (i) fails to allow a reasonable time

to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden."

Since December 7, 2020 Ms. Hughes has been made aware that Plaintiff sought to schedule her deposition. On May 11, 2021 Ms. Nupson served Ms. Hughes' attorney, Kevin Rethore, pursuant to this Court's May 10, 2021 Order. The date identified on the subpoena for Ms. Hughes deposition is June 3, 2021. Aside from the nearly six months of advanced notice provided to Ms. Hughes that Ms. Nupson intended to take her deposition, Ms. Hughes was provided approximately twenty-three (23) days to comply with the subpoena from the time of service. Thus, pursuant to Rule 45(d)(3)(A)(i), Ms. Hughes was provided ample time to comply with Ms. Nupson's subpoena.

Similarly, the subpoena does not require Ms. Hughes to comply beyond the geographical limits specified under Rule 45(c). In fact, Ms. Nupson requested in multiple emails that Ms. Hughes provide her general location so that Ms. Nupson's attorneys could travel to Ms. Hughes' location to take the deposition in person, to avoid the necessity of Ms. Hughes travelling herself. *See* Emails to Mr. Rethore, attached hereto as **Exhibit 3**. Ms. Hughes and her attorneys flatly ignored Ms. Nupson's requests to identify Ms. Hughes' location for the deposition, resulting in Plaintiff setting the deposition via Zoom or other video methods.

Further, Ms. Nupson does not request the disclosure of privileged material or other protected information and her subpoena does not impose an undue burden on Ms. Hughes. Ms. Nupson had originally presented to Ms. Hughes a subpoena for deposition duces tecum. However, on January 5, 2021, Ms. Nupson agreed to remove the document request from the subpoena and to only seek Ms. Hughes' deposition testimony. *See* **Exhibit 2.**

4

Last, Ms. Nupson's subpoena for deposition testimony via video methods or near Ms. Hughes' home does not impose an undue burden on Ms. Hughes. There is no authority to support Ms. Hughes' position that because she is "a retired grandma from Texas" she should not have to comply with Plaintiff's subpoena, or the federal rules more generally. In response to similar arguments, courts have held that busy or important persons must comply with subpoenas for testimony. *See In re Martino*, 2010 WL 1257686, at *1 (W.D. Pa. Mar. 26, 2010) (the Court "know[s] of no authority to support the proposition that an important or busy employee must be excused from complying with a subpoena").

In conclusion, Ms. Nupson's subpoena should not be quashed or modified and the request for a protective order should be denied because Ms. Hughes' cannot demonstrate that the subpoena violates any section of Rule 45(d)(3)(A)(i)-(iv).

### B. **Ms. Hughes' request for a protective order should be denied because Ms. Hughes' testimony is relevant to the issues in this matter since she was party to the transactions and negotiations that are central to the claims and defenses in this case, and the information sought from Ms. Hughes cannot be obtained from other sources.**

"Rule 26(c) permits a court to enter a protective order to shield a party 'from annoyance, embarrassment, oppression, or undue burden or expense.' " *Mains v. Sherwin-Williams Co.*, 5:20-CV-00112-JMG, 2021 WL 1298237, at *1 (E.D. Pa. Apr. 7, 2021), *citing Midwest Athletics & Sports All. LLC v. Ricoh USA, Inc.*, 332 F.R.D. 159, 160 (E.D. Pa. 2019) (quoting FED. R. CIV. P. 26(c)(1)). A protective order is "intended to offer litigants a measure of privacy, while balancing against this privacy interest the public's right to obtain information concerning judicial proceedings." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994), *citing In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 924 F.3d 662, 671 (3d Cir. 2019)

Under Rule 26(c)(1), the party requesting the protective order "must demonstrate that 'good cause' exists." *Pansy*, 23 F.3d at 786. The Third Circuit has provided "various factors—which are neither mandatory nor exhaustive—that courts may consider when determining whether good cause exists and, by extension, whether a protective order should issue." *In re Avandia*, 924 F.3d at 671 (internal quotation marks omitted). These factors include:

1. whether disclosure will violate any privacy interests;
2. whether the information is being sought for a legitimate purpose or for an improper purpose;
3. whether disclosure of the information will cause a party embarrassment;
4. whether confidentiality is being sought over information important to public health and safety;
5. whether the sharing of information among litigants will promote fairness and efficiency;
6. whether a party benefitting from the order of confidentiality is a public entity or official; and
7. whether the case involves issues important to the public.

*Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (*citing Pansy*, 23 F.3d at 787–91).

Federal Rule of Civil Procedure 26 sets forth the general scope of discovery in civil suits: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). The subpoenaing party must first show that its requests are relevant to its claims or defenses, within the meaning of Federal Rule of Civil Procedure 26(b)(1). *Mycogen Plant Sci., Inc. v. Monsanto Co.,* 164 F.R.D. 623, 625-626 (E.D.Pa.1996). "Next, the burden shifts to the subpoenaed nonparty who must show that disclosure of the information is protected under Rule 45(d)(3)(A) or (B)." *Id.* at 626.

If the subpoenaed nonparty claims the protections under Rule 45(d)(3)(B) or asserts that disclosure would subject it to undue burden under Rule 45(d)(3)(A), it must show that disclosure will cause it a "clearly defined and serious injury." *City of St. Petersburg v. Total Containment, Inc.,* Case No. 06–cv–20953, 2008 WL 1995298, at *2 (E.D.Pa. May 5, 2008) (undue burden under Rule 45(d)(3)(A)); *In re Mushroom Direct Purchaser Antitrust Litig.,* Case No. 06–cv–0620, 2012

6

WL 298480, at *5 (E.D.Pa. Jan. 31, 2012) (disclosure of trade secrets under Rule 45(d)(3)(b)(i)). "This burden is particularly heavy to support a motion to quash as contrasted to some more limited protection such as a protective order." *Frank Brunckhorst Co. v. Ihm,* Case No. 12–cv–0217, 2012 WL 5250399, at *4 (E.D.Pa. Oct. 23, 2012).

Ms. Hughes argues that a protective order should be issued because Plaintiff's subpoena seeks irrelevant, duplicative, or cumulative discovery that may be obtained from other sources. Ms. Hughes' testimony is relevant to the claims asserted in this case because she has made assertions in sworn pleadings filed before the Pennsylvania Montgomery County Orphans' Court that critically support Plaintiff's claims asserted in this case against Defendants' Schnader and Rosenfield.

Plaintiff, through her subpoena to Ms. Hughes, also seeks deposition testimony from her regarding her knowledge as a party to the 2003 Master Settlement Agreement and as a participant in the negotiations regarding Frances Middleton's GRAT(s). In 2017, during the Orphans' Court Litigation, Ms. Hughes made allegations in sworn pleadings that Frances' 2001 GRAT instrument was procured by John Middleton through undue influence and that the 2001 GRAT instrument was invalid and not formed on February 1, 2001. *See* **Exhibit 4.** Amongst other topics, Ms. Nupson seeks testimony from Ms. Hughes regarding her knowledge that support the allegations that Ms. Hughes made in 2017 in her Orphans' Court pleadings. Ms. Hughes' knowledge in 2001-2003 with regards to Frances' GRAT instruments are central to Plaintiff's claims of malpractice against Defendants. Ms. Hughes' sworn pleadings made allegations that refute Schnader and Rosenfield's defense in this case and support Plaintiff's position that Frances' 2001 GRAT instrument was invalid and unenforceable. Ms. Hughes is a critical witness to Plaintiff's case.

Additionally, Ms. Hughes is a party to the 1982 Shareholder's Agreement and a beneficiary of the Estate of Herbert H. Middleton Jr. and may have knowledge regarding Herbert's assets before and after death as they relate to the claims asserted in paragraphs 15-25 of Plaintiff's Third Amended Complaint.

Furthermore, between 1998 and approximately 2013, Ms. Hughes acted as power of attorney for Ms. Nupson. While acting as power of attorney, Ms. Hughes made several known and likely more unknown transfers of Ms. Nupson's stock in the family held company to trusts that benefitted Ms. Hughes and her issue which were ultimately sold during the 2003 transactions. The information regarding Ms. Hughes acts a power of attorney for Plaintiff cannot be obtained from any other source.

Lastly, Plaintiff seeks information from Ms. Hughes with regards to any additional consideration offered and/or accepted from John Middleton or Bradford Holdings following the 2003 transactions. Deposition testimony in this case has revealed that John Middleton and/or Bradford Holdings provided additional consideration to Mr. and Mrs. William and Susan Thorkelson as compensation for the sale of their stock in the family held company. *See* Deposition of William Thorkelson, attached hereto as **Exhibit 5**, 103:18-104:17. In 2001, Bradford purchased/redeemed all of Susan Thorkelson's and Nancy Flood Smith's stock in a transaction similar to the stock purchase transaction between Bradford and Plaintiff and Frances' GRAT instruments. By 2012, both Susan and Nancy were each paid an additional $15 million dollars by John Middleton and/or Bradford to compensate them further for their prior stock interests in the company. Mr. Thorkelson testified that no receipts, agreements, acknowledgements, or other documents describing the payments or reasons for the payments were exchanged for the additional $15 million dollars in compensation. *See* **Exhibit 5,** 117:18-118:18**.** Plaintiff seeks to question

Ms. Hughes on her knowledge of any similar payments offered to Ms. Hughes, which too may be lacking documentation. Any information regarding additional compensation offered to Ms. Hughes following the 2003 transactions likely may not be obtained from any source other than her deposition testimony.

In conclusion, Ms. Hughes' request for a protective order should be denied because Plaintiff's subpoena seeks relevant and noncumulative discovery that may not be obtained from other sources.

### III.   CONCLUSION

For all of the reasons stated above, Plaintiff respectfully requests that the Court deny Ms. Hughes' Motion to Quash or Modify Subpoena and for Protective Order, and enter an order requiring that Ms. Hughes comply with Plaintiff's subpoena and present for her deposition as soon as possible, and for any other relief as the Court deems proper.

**Respectfully Submitted,**

*/s/ Ben Davis*
Ben Davis
Davis Kelin Law Firm, LLC
127 Bryn Mawr Dr., SE
Albuquerque, NM 87106
Tel:   (505) 242-7200
Fax:   (505) 213-3399
E-mail: bdavis@daviskelin.com

Courtney Johnson Vidales
Mucci Law Firm
P.O. Box 6908
Albuquerque, NM 87106
Tel: (505) 247-2211
courtney@muccilaw.com

Justin R. Kaufman
Durham, Pittard & Spalding, LLP
505 Cerrillos Rd., Suite A209
Santa Fe, NM 87501

Tel: (505) 986-0600
Fax: (505) 986-0632
jkaufman@dpslawgroup.com

Brian A. Gordon
Gordon & Ashworth, P.C.
One Belmont Ave., Suite 519
Bala Cynwyd, PA 19004
Tel: (610) 667-4500
Briangordon249@gmail.com

Kimberly Brusuelas
5th Street Law
312 San Pasquale, NW
Albuquerque, NM 87104
Tel: (505) 247-9333
kim@fifthstreetlaw.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

     I hereby certify that a true and complete copy of the foregoing instrument was served on all counsel via the ECF system on this 7th day of June 2021.

*/s/ Ben Davis*
Ben Davis