


December 7, 2020

**<u>Via E-Mail Only</u>**

Kevin W. Rethore
Greenberg Traurig, LLP
1717 Arch Street, Suite 400
Philadelphia, PA 19103
Email: rethorek@gtlaw.com

**Re:** ***Anna K. Nupson v. Schnader Harrison Segal & Lewis, LLP, et. al.*, No. 2:18-CV-02505: Subpoena and Deposition.**

Dear Mr. Rethore:

I represent Anna Nupson in the above referenced litigation. My understanding is you may still be representing Lucia Hughes in some capacity.

I would like to depose Ms. Hughes and have her produce certain documents. I am writing to determine if you will accept service for Ms. Hughes and to discuss appropriate dates and times for Ms. Hughes' deposition. Enclosed herein is a proposed subpoena and notice of deposition for Ms. Hughes.

If you would like to discuss this matter further, I can be reached at my direct line: (505) 903-6891.

Sincerely,

DAVIS KELIN LAW FIRM, LLC

Ben Davis
(505) 903-6891
bdavis@daviskelin.com

EXHIBIT 1



AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

Anna K. Nupson
*Plaintiff*
v.
Schnader Harrison Segal & Lewis LLP, and Bruce A. Rosenfield
*Defendant*

Civil Action No. 2:18-cv-02505-NIQA

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To: Lucia Hughes c/o Kevin Rethore, Esq., Greenberg Traurig, LLP, 1717 Arch Street, Suite 400, Philadelphia, PA, 19103

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: | Date and Time: |
|---|---|
| | |

The deposition will be recorded by this method: __________

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See all items listed on the attached document titled Exhibit 1.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: __________

*CLERK OF COURT*

OR

*Signature of Clerk or Deputy Clerk* — *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* __________, who issues or requests this subpoena, are:

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 2:18-cv-02505-NIQA

## PROOF OF SERVICE

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* ______________________
on *(date)* ____________ .

☐ I served the subpoena by delivering a copy to the named individual as follows: ____________

______________________________________________

______________________________ on *(date)* ____________ ; or

☐ I returned the subpoena unexecuted because: ______________________________

______________________________________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ ________________ .

My fees are $ ____________ for travel and $ ____________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ____________

______________________________
*Server's signature*

______________________________
*Printed name and title*

______________________________
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** ***For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person

**(i)** is a party or a party's officer; or

**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** ***For Other Discovery.*** A subpoena may command:

**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena.***

**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**

The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

Exhibit 1 to Subpoena to Testify at a Deposition Duces Tecum directed at:
Lucia Hughes
c/o Kevin Rethore, Esq.
Greenberg Traurig
1717 Arch Street, Suite 400
Philadelphia, PA,

**DEFINITIONS**

1. "Document" means, without limitation, any type of information contemplated by Federal Rule of Civil Procedure 34, including but not limited to the original and all copies and translations of any information in any written, recorded, graphic, or electronic form, including all memoranda of oral conversations, communications, letters, emails, notes, messages, as well as all compilations, catalogs, diaries, calendars and summaries of information or data, whether typed, handwritten, printed, recorded, digitally coded, or otherwise produced or reproduced, and shall include, without limitation, each and every note, memorandum, letter, telegram, publication, telex, circular, release, article, book, report, prospectus, record, financial statement, computer disc, computer tape, microfilm, microfiche, microform, index, list, claims file, analysis, chart, money order, account book, draft, summary, diary, transcript, agreement, calendar, graph, receipt, chart, business record, insurance policy, computer printout, contract, and order. "Document" also means any tape or audible recording, photograph, motion picture, videotape, computer and word processor disks, data cells, drums, print outs, and all other data compilations and any non-identical copy thereof, either by virtue of other material appearing thereon, such as handwriting or typewriting, or otherwise. "Document" also includes "electronic data," which means the original and any non-identical copies and drafts of mechanical, facsimile, electronic, magnetic, digital, or other programs (whether private, commercial, or work-in-progress), programming notes, instructions, comments or

remarks, program change logs, and activity listings of electronic mail receipts and/or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, operating systems, source codes of all types, programming languages, linkers and compilers, peripheral drivers, PDF files, batch files, ASCII files, and any and all miscellaneous files and/or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists in an active or deleted file or file fragment. Electronic data includes any and all items stored on computer memories or computer chips including, but not limited to, EPROM, PROM, RAM, and ROM, hard disks, floppy disks, CD-ROM, Bernoulli Boxes and their equivalent, magnetic tape of all types, microfiche, punched media, jump drives, portable media, or any other vehicle for digital data storage and/or transmittal. The term also includes all Electronic Bulletin Board Services, including all levels of access, sub-boards, conferences, and all information contained therein.

2. "Orphans' Court Litigation" is defined as the legal proceedings in the Orphans' Court Division of the Court of Common Pleas of Montgomery County, Pennsylvania having the following docket numbers: 1998-x1871; 2012-x3503; 2014-x3827; 2015-x1266; 2016-x4305; 2017-x1239; and 2017-x1364.

3. "You" is defined as Lucia Hughes in your individual capacity and in any capacity as trustee (or co-trustee) and/or executor (or co-executor) of any estate(s) or trust(s) (including any and all sub-trust(s)) connected to the above referenced Orphans' Court Litigation cases, and/or as a beneficiary of any trust(s) or estate(s) connected to the above referenced Orphans' Court Litigation cases, and/or as the agent of any power of attorney

previously executed by Anna K. Nupson, Frances S. Middleton, Herbert H. Middleton Jr., John S. Middleton, Thomas Hughes Sr., Leigh Middleton, and/or any issue, assigns, heirs, beneficiary, child, spouse, or parent of the above referenced person(s), and/or in any capacity for any Middleton Family Company, and/or as representative for the Hughes Family which includes you, your spouse, your children, and any issue, assigns, heirs, beneficiary, child, spouse, or parent of the Hughes Family referenced person(s).

4. "The Hughes Family" means you, your spouse, your children, and any issue, assigns, heirs, beneficiary, child, spouse, or parent of your children, your spouse, and/or you.
5. The "2012 FSA" means the 2012 Family Settlement Agreement, dated December 21, 2012.
6. The "2003 MSA" the 2003 Master Settlement Agreement, dated February 20, 2003, and all exhibits referenced therein.
7. The terms referencing Frances Middleton's "Grantor Retained Annuity Trust(s)" and/or "GRAT(s)" are defined as the two documents attached hereto as exhibits 1 and 2.
8. The term "Middleton Family Company" means all corporations, companies, subsidiaries, entities, businesses, partnerships, or any other business that is associated with John S. Middleton, Frances S. Middleton, Anna K. Nupson, or their assigns, heirs, issue, agents, representatives, spouse, and/or children, regardless of the place of incorporation, formation, registration, or location, including, but not limited to John Middleton, Inc., G.W. Hunter, Inc., Bradford Holdings, Inc., New Bradford Holdings, Inc., Bradford Holdings (Delaware), Inc., Double Play, MDH Co., Inc., Atlantic Properties, Inc., Delfin Corp., Delfin, Inc., Delfinco, Inc., Delfinco SP, Delfinco GP, JMTM, Inc., JMHC, Inc., John Middleton Company, McIntosh Motors Inns, Inc., McIntosh Inns, Inc., McIntosh

Motor Inns of New Jersey, Inc., Hunter Service Company, Inc., Hunter Services, Inc., CMM, LLC, Pine Street Group, LP, Dock Street Capital, and any and all other corporation, partner, business, entity and/or subsidiaries of the above listed entities.

9. The "1994 Anna Trust(s)" means the Trust Under Agreement of Anna M. Bauer, dated September 12, 1994.

10. The "2001 Anna Trust" means the trust formed for the benefit of Anna Nupson under the Agreement of Trust of Frances S. Middleton, Settlor, Under Agreement of Trust, dated February 1, 2001.

11. The "Middleton Family Trust(s)" means the trust formed for the benefit of John S. Middleton, or his heirs, assigns, issue, children, spouse or dependents, under the Agreement of Trust of Frances S. Middleton, Settlor, Under Agreement of Trust, dated February 1, 2001, including any sub-trust or any other trust, either tax exempt or non-tax exempt trust, formed using any proceeds received from any of Frances' GRAT(s).

12. The "Hughes Family Trust(s)" means the trust formed for the benefit of you (Lucia Hughes), or your heirs, assigns, issue, children, spouse or dependents, under the Agreement of Trust of Frances S. Middleton, Settlor, Under Agreement of Trust, dated February 1, 2001, including any sub-trust or any other trust, either tax exempt or non-tax exempt trust, formed using any proceeds received from any of Frances' GRAT(s).

13. The "1998 Revocable Trust" means the trust formed by Frances S. Middleton, dated June 5, 1998.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1. All documents, records, files, communications, letters, notes, emails, messages, reports, memorandum, and any other information not previously produced by either you, John S. Middleton, and/or Bradford Holdings, Inc., in the Orphans' Court Litigation regarding all matters in which you ever acted as power of attorney for Anna K. Nupson, Frances S. Middleton, John S. Middleton, Herbert H. Middleton, Jr., and/or any of their issue, assigns, heirs, beneficiary(ies), child(ren), spouse, or parent(s).
2. All documents, files, communications, letters, notes, emails, messages, reports, memorandum, and any other information not previously produced by either you, John S. Middleton, and/or Bradford Holdings, Inc., in the Orphans' Court Litigation regarding all actions you and/or John S. Middleton took individually or as co-executors for the Estate of Frances S. Middleton, including the probate and non-probate (gross) Estate of Frances S. Middleton, including but not limited to matters regarding the 2003 MSA, the 2012 FSA, any estate tax matters, transfer(s) of any direct or indirect beneficial or ownership interests, and/or any other assignment, modification, transfer, disclaimer, or other transaction regarding any asset or interests held by Frances or Frances' Estate.
3. All documents, files, communications, letters, notes, emails, messages, reports, memorandum, draft documents, and any other information not previously produced by either you, John S. Middleton, and/or Bradford Holdings, Inc., in the Orphans' Court Litigation regarding a tenancy by the entireties agreement executed by Herbert H. Middleton, Jr and/or Frances S. Middleton.
4. All documents, files, communications, letters, notes, emails, messages, reports, memorandum, draft documents, and any other information not previously produced by

either you, John S. Middleton, and/or Bradford Holdings, Inc., in the Orphans' Court Litigation regarding Frances Middleton's 1998 Revocable trust and GRATs and any other trust or estate planning document executed by Frances S. Middleton, including but not limited to all drafts and final versions (executed and unexecuted) of the following items: trust instrument(s), wills(s), stock certificate(s) and/or stock power(s) for any and all shares held by Frances in any Middleton Family Company that were or may have been committed to the corpus of any trust(s) or partnership, any and all purchase agreement(s) for any item(s) committed to a trust by Frances S. Middleton, any and all valuation report(s) for items placed in trust or partnership(s) by Frances, any and all listing(s) or schedule(s) of assets or interests committed to or exchanged as principal at any time in any trust settled by Frances S. Middleton.

5. All documents, files, communications, letters, notes, emails, messages, reports, memorandum, draft documents, and any other information not previously produced by either you, John S. Middleton, and/or Bradford Holdings, Inc., in the Orphans' Court Litigation regarding any trust or estate planning document executed by Herbert H. Middleton, Jr., including but not limited to all drafts and final versions (executed and unexecuted) of the following items: trust instrument(s), wills(s), stock certificate(s) and/or stock power(s) for any and all shares held by Herbert (individually or jointly) in any Middleton Family Company that were or may have been committed to the corpus of any trust(s) or partnership, any and all purchase agreement(s) for any item(s) committed to a trust by Herbert H. Middleton, Jr., any and all valuation report(s) for items placed in trust or partnership(s) by Herbert, any and all listing(s) or schedule(s) of assets or

interests committed to or exchanged as principal at any time in any trust settled by Herbert H. Middleton, Jr.

6. All documents, files, communications, letters, notes, emails, messages, reports, memorandum, draft documents, and any other information not previously produced by either you, John S. Middleton, and/or Bradford Holdings, Inc., in the Orphans' Court Litigation regarding any trust or estate planning document executed by you or any member of the Hughes Family, or by John S. Middleton, including but not limited to all drafts and final versions (executed and unexecuted) of the following items: trust instrument(s), wills(s), stock certificate(s) and/or stock power(s) for any and all shares held by you, any member of the Hughes Family (individually or jointly), and/or John S. Middleton in any Middleton Family Company that were or may have been committed to the corpus of any trust(s) or partnership, any and all purchase agreement(s) for any item(s) committed to a trust by you, any member of the Hughes Family (individually or jointly), and/or John S. Middleton, any and all valuation report(s) for items placed in trust or partnership(s) by you, any member of the Hughes Family (individually or jointly), and/or John S. Middleton, any and all listing(s) or schedule(s) of assets or interests committed to or exchanged as principal at any time in any trust settled by you, any member of the Hughes Family (individually or jointly), and/or John S. Middleton.
7. All documents, files, communications, letters, notes, emails, messages, reports, memorandum, draft documents, and any other information not previously produced in the Orphans' Court Litigation by either you, John S. Middleton, and/or Bradford Holdings, Inc., regarding or relating to all trust(s) and estate(s) of which Anna K. Nupson, the 1994 Anna Trust(s), and/or the 2001 Anna Trust currently holds, previously held, or has an

expectation to receive in the future any beneficial interest from Frances S. Middleton, Herbert H. Middleton, Jr. and/or any Middleton Family Company.

8. A copy of any trust, agreement, instruction, assignment, note, loan, contract, directive or other document demonstrating the formation, or intent to form, a partnership, including but not limited to a family limited partnership, by any Middleton Family Company, you, any member of the Hughes Family, John S. Middleton, Herbert H. Middleton, Jr., Herbert's estate, or any person acting on behalf of Herbert or his Estate, or Frances S. Middleton, Frances' estate, or any person acting on behalf of Frances or her estate regarding any interest or ownership in any Middleton Family Business.
9. All documents regarding any entity or entities holding, or that previously held, any partnership interest(s), asset(s), assignment(s), note(s), loan agreement(s), beneficial interest(s), or any other direct or indirect ownership or interest of Herbert H. Middleton, Jr. or his estate, or Frances S. Middleton, or her estate, in which you or any member of the Hughes Family, or Herbert H. Middleton, Jr., Frances S. Middleton and/or John S. Middleton were named, or acted at any point in time as General Partner or Limited Partner, or a partner or member, or beneficiary in anyway.
10. All communication, letters, notes, emails, messages, memorandum, and any other information not previously produced in the Orphans' Court Litigation by either you, John S. Middleton, and/or Bradford Holdings, exchanged between you (or any attorney or person acting on your behalf) and Frances S. Middleton, Anna K. Nupson, and/or John S. Middleton relating to the preparation of any accountings, reports, tax returns, bank records, financial accounts, and/or investment accounts for the Estate of Herbert H.

Middleton, Jr., the Estate of Frances S. Middleton, and/or any trust or other estate planning instrument executed by Herbert and/or Frances.

11. All communication, letters, notes, emails, messages, memorandum, and any other information not previously produced in the Orphans' Court Litigation by either you, John S. Middleton, and/or Bradford Holdings, exchanged between you (or any attorney or person acting on your behalf) and Frances S. Middleton, Anna K. Nupson, and/or John S. Middleton relating to the preparation of any accountings, reports, tax returns, bank records, financial accounts, and/or investment accounts for the Middleton Family Trust(s) and Hughes Family Trust(s) formed under Frances' GRAT(s), and for any trust settled by you in 2012 which received a subsequent gift from Frances S. Middleton.
12. All documents, files, communications, letters, notes, emails, messages, reports, memorandum, draft documents, and any other information not previously produced in the Orphans' Court Litigation by either you, John S. Middleton, and/or Bradford Holdings, regarding any beneficial interest that you and/or your issue, heirs, assigns, children, devisee, or spouse retained or received from any Middleton Family Company after entering the 2003 MSA.
13. All documents, files, communications, letters, notes, emails, messages, reports, memorandum, draft documents, and any other information not previously produced in the Orphans' Court Litigation by either you, John S. Middleton, and/or Bradford Holdings, regarding any beneficial interest that you and/or your issue, heirs, assigns, children, devisee, or spouse retained or received resulting from the sale of John Middleton Inc.
14. Any and all documents, correspondence, and all information regarding any request for a private letter ruling from the Internal Revenue Service regarding the Estate of Frances S.

Middleton and/or the Estate of Herbert H. Middleton, or any trust or estate planning instrument settled by Herbert or Frances, or any Middleton Family Company, or any trust or estate planning instrument or company or partnership formed using any gift or proceed from Frances S. Middleton, Herbert H. Middleton, Jr., or the Estate of Frances and/or Herbert, including any lifetime gifts made or received by Frances and/or Herbert, and/or any trust settled by Frances S. Middleton and/or Herbert H. Middleton, Jr., or settled for the benefit of Frances S. Middleton and/or Herbert H. Middleton, Jr.

15. Any and all correspondence, documents, and information regarding or relating to your involvement in the 2012 FSA, including but not limited to any documents regarding the terms of the agreement, any draft of the agreement, any modification to Frances S. Middleton's and/or Herbert H. Middleton, Jr., estate plan prior to or after the agreement which may or may not have been exchanged as consideration for entering the agreement, and or any other information regarding the 2012 FSA not previously produced to Ms. Nupson in the Orphans' Court Litigation.

16. Any and all operating agreement, shareholder agreements, articles of incorporation, federal tax identification number(s), certificates of authenticity, partnership agreements, stockholder records, partnership records, and dissolution records not previously produced to Ms. Nupson in the Orphans' Court Litigation for any Middleton Family Company, whether or not they still exist or are active today or have were dissolved in the past.

17. Any and all financial records, bank statements, tax records, and investment records for the Middleton Family Trust(s) and Hughes Family Trust(s) formed under Frances' GRAT(s), and for any trust settled by you in 2012 which received a subsequent gift from

Frances S. Middleton not previously produced to Ms. Nupson in the Orphans' Court Litigation.

18. Any and all documents and communication not previously produced to Ms. Nupson in the Orphans' Court Litigation regarding any modification, amendment, family settlement agreement, court ordered reformation, or any other transaction or agreement that changes the terms of any trust settled by you, John S. Middleton, Frances S. Middleton, Herbert H. Middleton, and/or Anna K. Nupson, or any subtrust formed therefrom, which ever held at any point in time any interest or ownership in any Middleton Family Company.