Case# 2015-X1266-58.9 Received at Montgomery County Register of Wills Office on 09/25/2017 1:03 PM, Fee = $20.00

23. Admitted, upon information and belief.

24. Admitted.

25. Denied. After reasonable investigation, the Hughes Family is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 25, as stated. As such, they are denied and strict proof thereof demanded at time of trial.

26. Admitted in part; denied in part. It is specifically admitted only that, through a corporate restructuring in early 1997, G.W. Hunter was liquidated and Bradford Holdings, Inc. became the holding company for numerous wholly-owned subsidiaries, including John Middleton, Inc., the McIntosh Inn chain of hotels, and an interest in the Philadelphia Phillies. After reasonable investigation, the Hughes Family is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 26, as stated. As such, they are specifically denied.

### June 1999 Meeting

27. Admitted in part; denied in part. The Hughes Family specifically admits only that Herbert, Jr. passed away from a sudden, unexpected heart attack on May 11, 1998. After reasonable investigation, the Hughes Family is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 27, as stated. As such, they are denied and strict proof thereof demanded at time of trial.

28. Denied. The Hughes Family specifically denies the suggestion by Mr. Middleton that Frances' Middleton took the lead in discussing her assets or estate planning. Evidence produced to date refutes Petitioner's narrative of events, which claims that Frances conceived of an "estate plan" and subsequently drove the process of creating and funding the original GRAT as a means of realizing that plan. As such, strict proof of the occurrence of Frances' alleged



of further response, upon information and belief, Frances Middleton's state of mind is reflected in documents produced in discovery to date, including her own handwritten notes.

33. Denied. After reasonable investigation, the Hughes Family is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 33, as stated. As such, they are denied and strict proof thereof demanded at time of trial.

34. Denied. After reasonable investigation, the Hughes Family is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 34, as stated. As such, they are denied and strict proof thereof demanded at time of trial.

### The Norristown Meeting

35. Denied. Upon information and belief, Frances Middleton's state of mind is reflected in documents produced in discovery to date, including her own handwritten notes. These documents not only contradict Petitioner's version of events, but also evidence both a lack of comprehension by Frances as to the implications of the original GRAT and a sincere desire for a reasonably equitable division of her assets amongst the *entirety* of her family. For example:

- " ███████████████████████████████████████████████████████ " (BHI046222)[1]
- " ███████████████████████████████████████ " (BHI046232)[2]

Further, these production documents directly contradict John's claims that Frances had intended for him to receive a "significantly disproportionate" share of the family business at the expense of both her other two children and her grandchildren. For example:

- " ███████████████████████████████████████████████  " (BHI046103)[3]

---

[1] Quotation subject to Confidentiality Agreement
[2] Quotation subject to Confidentiality Agreement
[3] Quotation subject to Confidentiality Agreement

Case# 2015-X1266-58.9 Received at Montgomery County Register of Wills Office on 09/25/2017 1:03 PM, Fee = $20.00

multiple estate planning concepts were discussed in broad and non-specific terms at the Norristown meeting, no course of action was decided at the meeting, nor were any specifics discussed, let alone decided by Frances at that time. Moreover, no discussion of John benefitting disproportionately relative to Lucia's or Anna's shares in the family business took place at this meeting.

Additionally, documents produced in discovery directly contradict Petitioner's chronology of events. Specifically, correspondence between John Middleton and Attorney Rosenfield, as well as between Attorney Rosenfield and Frances Middleton, suggests that the idea for a gifting program that would benefit John Middleton in Bradford shares to the exclusion of his sisters was (a) conceived primarily by John and Bruce Rosenfield (not Frances Middleton), and (b) not conceived until well after John Middleton claims that Ms. Hughes had already been apprised of and agreed to the original GRAT and "estate plan." (*See e.g.*, BHICOZ027092, email between J. Middleton and Br. Rosenfield, dated 3/10/2001). The details and substance of Frances' "plan" as presented in Petitioner's narrative are further contradicted by production documents that make it clear that the original GRAT had still not yet been created or funded, by April 25, 2001, if not later. (*See e.g.*, BHI086203, April 25, 2001 "Fran Middleton Estate Planning - Alternatives.") Lucia Hughes was not aware of her mother's "estate plan," as Petitioner has repeatedly claimed. Further, Lucia did not actively or passively sanction or approve an "estate plan" by her mother that would both exclude her as an heir or beneficiary of her mother's Bradford assets and have her inheriting all of her mother's non-company assets at the expense of her sister, Anna. Moreover, Ms. Hughes would not have agreed to such a plan had it actually been presented to her.

Case# 2015-X1266-58.9 Received at Montgomery County Register of Wills Office on 09/25/2017 1:03 PM, Fee = $20.00

9

38. Admitted in part; denied in part. It is specifically admitted only that, after Bruce Rosenfield departed the meeting, Lucia Hughes remained in a conference room with Frances Middleton and John Middleton and had a discussion. The Hughes Family specifically denies that Frances, John, and Lucia discussed the specifics of Frances' "estate plan" or the reasoning behind those "certain" decisions, because no such "estate plan" existed at that time. Further, the Hughes Family specifically denies John Middleton's claim that Bradford's value and the risks facing the company (as compared with other assets or otherwise) were discussed.

By way of further response, documents produced in discovery directly contradict Petitioner's narrative in many regards. Lucia Hughes had no preexisting knowledge of her mother's "estate plan," as Petitioner has repeatedly claimed. To the contrary, Lucia first learned about the existence of the original GRAT inadvertently, during a conversation with her mother in spring of 2002, when Frances made a comment in passing to the effect of having signed some papers for John, which she referred to as "a 'GAT' [sic]." This conversation occurred after the GRAT had already been signed by Frances. Lucia did not actively or passively sanction or approve an estate plan by her mother that would both exclude her as an heir or beneficiary of her mother's Bradford assets and have her inheriting all of her mother's non-company assets at the expense of her sister, Anna. Moreover, Ms. Hughes would not have agreed to such a plan had it actually been presented to her. As such, the Hughes Family denies all of the allegations of Paragraph 38 of the Petition, except as specifically admitted, and demands strict proof thereof at time of trial.

39. Denied. Upon information and belief, the litigation to which Petitioner refers was predominantly directed to cigarette companies, not cigar companies or companies utilizing pipe tobacco. As such, strict proof of Petitioner's claims as they relate directly to Bradford is

Case# 2015-X1266-58.9 Received at Montgomery County Register of Wills Office on 09/25/2017 1:03 PM, Fee = $20.00