Case 2:18-cv-02505-NIQA   Document 209-5   Filed 06/07/21   Page 1 of 5

Anna K. Nupson v. Schnader Harrison Segal & Lewis LLP, et al.  
William Thorkelson

March 11, 2021  
No. 2:18-CV-02505-NIQA

UNITED STATES DISTRICT COURT  
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANNA K. NUPSON,

    Plaintiff,

vs.    No. 2:18-CV-02505-NIQA

SCHNADER HARRISON  
SEGAL & LEWIS LLP and  
BRUCE A. ROSENFIELD, ESQ.,

    Defendants.

RECORDED DEPOSITION OF WILLIAM L. THORKELSON  
March 11, 2021  
8:05 a.m.  
Taken Via Zoom Videoconference

PURSUANT TO THE FEDERAL RULES OF CIVIL PROCEDURE, this deposition was:

TAKEN BY: Ben Davis  
    Attorney for Plaintiff

WITH CONFIDENTIALITY DESIGNATIONS BY NON-PARTIES JOHN S. MIDDLETON AND BRADFORD HOLDINGS, INC. PURSUANT TO THE FEBRUARY 28, 2020 STIPULATED PROTECTIVE ORDER ENTERED IN THIS MATTER

REPORTED BY: Deborah L. O'Connor

New Mexico CCR No. 297  
Trattel Court Reporting & Videography  
609 12th Street, NW  
Albuquerque, New Mexico 87102

**EXHIBIT 5**

Case 2:18-cv-02505-NIQA   Document 209-5   Filed 06/07/21   Page 2 of 5

Anna K. Nupson v. Schnader Harrison Segal & Lewis LLP, et al.  
William Thorkelson

March 11, 2021  
No. 2:18-CV-02505-NIQA

Page 103

| | | |
|---|---|---|
| 11:52 | 1 | Hunter, although that was dissolved, pay Susan or |
| | 2 | yourself or a trust that you or Susan are a |
| | 3 | beneficiary to additional money related in any way |
| | 4 | to the sale of the stock? |
| 11:53 | 5 | A   I'm just struggling with a time period. |
| | 6 | Maybe you could just put some years on it, and then |
| | 7 | I can get focused on your answer -- or the answer |
| | 8 | you're perhaps looking for. |
| | 9 | Q   All right.  This sale occurred in 2001, |
| 11:53 | 10 | my understanding is the springtime of that year, |
| | 11 | and I want to fast forward to 10 to 15 years later. |
| | 12 | Did your wife or yourself or a trust that you all |
| | 13 | are a beneficiary to receive any additional funding |
| | 14 | from Mr. Middleton, Bradford or any of his |
| 11:53 | 15 | companies? |
| | 16 | MR. BUCKLEY:  Objection to form.  You can |
| | 17 | answer. |
| | 18 | A   In 2012, as I recall, Susan and I |
| | 19 | received a gift from John and his wife. |
| 11:54 | 20 | Q   And how much was that gift? |
| | 21 | A   There were two parts.  One was a |
| | 22 | $3 million forgivable loan, and the second was a |
| | 23 | $12 million cash payment. |
| | 24 | Q   Why did you receive that gift? |
| 11:54 | 25 | A   I'm afraid you're going to have to ask |

Case 2:18-cv-02505-NIQA   Document 209-5   Filed 06/07/21   Page 3 of 5

Anna K. Nupson v. Schnader Harrison Segal & Lewis LLP, et al.  
William Thorkelson

March 11, 2021  
No. 2:18-CV-02505-NIQA

Page 104

| 11:54 | 1 | John Middleton that question. |
| | 2 | Q   Okay. So you received a total of |
| | 3 | $15 million from Mr. Middleton, and you don't have |
| | 4 | any information as to why he gave that to you? |
| 11:55 | 5 | A   I do, but can you just be -- if you can |
| | 6 | just be a little more concise with the question, a |
| | 7 | little more precise, if you don't mind. |
| | 8 | Q   Why did you get $15 million from John |
| | 9 | Middleton in 2012? |
| 11:55 | 10 | MR. BUCKLEY: Objection, foundation. |
| | 11 | A   So in roughly 2006, John and Susan and I |
| | 12 | had a conversation in which John, as I recall, |
| | 13 | indicated that the company had sold their real |
| | 14 | estate, their motel business, at a price that was |
| 11:56 | 15 | higher than what he had expected and that he felt |
| | 16 | that Susan should benefit from that higher |
| | 17 | expected -- higher expected sale price. |
| | 18 | Q   Did he say why? I'm sorry. I cut you |
| | 19 | off. |
| 11:56 | 20 | A   I think I just did, didn't I? |
| | 21 | Q   Well, I'm asking a little bit different. |
| | 22 | I mean, obviously, was there any -- well, let me |
| | 23 | get, as you say, more precise in my question. Did |
| | 24 | you or Susan in 2006 approach Mr. Middleton about |
| 11:56 | 25 | the sale of that hotel business? |

Case 2:18-cv-02505-NIQA   Document 209-5   Filed 06/07/21   Page 4 of 5

Anna K. Nupson v. Schnader Harrison Segal & Lewis LLP, et al.  
William Thorkelson

March 11, 2021  
No. 2:18-CV-02505-NIQA

Page 117

| Time | Line | | |
|---|---|---|---|
| 12:19 | 1 | A | That's correct. |
| | 2 | Q | And what about Bradford Holdings, |
| | 3 | | Pennsylvania? Are you familiar with that company? |
| | 4 | A | I don't recall ever seeing Bradford |
| 12:19 | 5 | | Holdings, Pennsylvania. |
| | 6 | | MR. DAVIS: All right. Let me take about |
| | 7 | | a five-minute break. I'm going to go over my |
| | 8 | | notes, but I should be pretty close to finished |
| | 9 | | with you, Mr. Thorkelson. Thank you. And I know |
| 12:19 | 10 | | Mr. Ford has questions as well, so not time to |
| | 11 | | leave yet. But let's take about a five-minute |
| | 12 | | break. |
| | 13 | | THE VIDEOGRAPHER: The time is 12:19 p.m. |
| | 14 | | We're off the record. |
| 12:20 | 15 | | (A recess was taken.) |
| | 16 | | THE VIDEOGRAPHER: The time is 12:27 p.m. |
| | 17 | | We're back on the record. |
| | 18 | Q | (By Mr. Davis) Mr. Thorkelson, of the -- |
| | 19 | | I'm going to call it the 2012 gift. I think we |
| 12:27 | 20 | | both know what I'm referring to when I say that. |
| | 21 | | That gift, did you have or did Susan execute any |
| | 22 | | documents related to that gift? |
| | 23 | A | Wow. I do not recall if we signed a |
| | 24 | | nondisclosure agreement or not precisely for that. |
| 12:27 | 25 | | I do not recall. |

Case 2:18-cv-02505-NIQA   Document 209-5   Filed 06/07/21   Page 5 of 5

Anna K. Nupson v. Schnader Harrison Segal & Lewis LLP, et al.  
William Thorkelson

March 11, 2021  
No. 2:18-CV-02505-NIQA

Page 118

| | | | |
|---|---|---|---|
| 12:27 | 1 | Q | Beyond a nondisclosure agreement, do you |
| | 2 | | recall signing another type of document, perhaps |
| | 3 | | even just a receipt of funds type of document or |
| | 4 | | anything like that? |
| 12:28 | 5 | A | As it pertained to the 12, correct, not |
| | 6 | | the 3? |
| | 7 | Q | Well, no, it is broader. I mean, it's -- |
| | 8 | | I guess, let me break it up. Let's first take the |
| | 9 | | 2012. I think you described it as a cash gift. |
| 12:28 | 10 | A | Yes. |
| | 11 | Q | And for $12 million. Did you sign any |
| | 12 | | documents related to that? |
| | 13 | A | I don't believe that we did. |
| | 14 | Q | Okay. Did you receive any documents? |
| 12:28 | 15 | | Perhaps you didn't sign them, but did you and Susan |
| | 16 | | receive any -- like a cover letter or anything |
| | 17 | | related to that? |
| | 18 | A | I do not recall. |
| | 19 | Q | Okay. |
| 12:28 | 20 | A | I just don't. |
| | 21 | Q | Okay. And the reason I ask is you saw |
| | 22 | | the spreadsheet that I believe is Mr. Middleton's |
| | 23 | | spreadsheet where he kind of broke down how he made |
| | 24 | | his calculation, I think. Again, we'd have to ask |
| 12:29 | 25 | | him about that. But did you receive any kind of |