# TAB 1

# EXCERPTS FROM THE DEPOSITION OF BRUCE A. ROSENFIELD

Case 2:18-cv-02505-NIQA   Document 226-1   Filed 07/00/21   Page 2 of 14

Anna K. Nupson v. Schnader Harrison Segal & Lewis, LLP, et al.                                                                June 24, 2021
Bruce Rosenfield, Esq.                                                                                                 NO.  2:18-cv-02505-NIQA

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - -

ANNA K. NUPSON,

    Plaintiff,

  VS.

SCHNADER HARRISON SEGAL
& LEWIS, LLP, and BRUCE A.
ROSENFIELD, ESQ.,

    Defendants.    NO.  2:18-cv-02505-NIQA

- - -

CONFIDENTIAL

- - -

    Videotaped deposition of BRUCE A.

ROSENFIELD, ESQUIRE, taken at Dilworth Paxon, LLP,

1500 Market Street, Suite 3500E, Philadelphia,

Pennsylvania, on Thursday, June 24, 2021, beginning

at approximately 9:11 a.m., before Elizabeth Kelly,

Professional Reporter and Notary Public in and of

the Commonwealth of Pennsylvania.

WITH CONFIDENTIALITY DESIGNATIONS BY NON-PARTIES
JOHN S. MIDDLETON AND BRADFORD HOLDINGS, INC.,
PURSUANT TO THE FEBRUARY 28, 2020 STIPULATED
PROTECTIVE ORDER ENTERED IN THIS MATTER

- - -

Case 2:18-cv-02505-NIQA   Document 226-1   Filed 08/00/21   Page 3 of 14

Anna K. Nupson v. Schnader Harrison Segal & Lewis, LLP, et al.  June 24, 2021
Bruce Rosenfield, Esq.  NO. 2:18-cv-02505-NIQA

Page 63

1    around?

2         MR. MANNION:  So to the extent that

3    involves discussions with Mrs. Middleton that

4    were not in the presence of a third party

5    and/or Mr. Rosenfield was not authorized to

6    reveal those communications to the third party,

7    John Middleton as co-executor of Frances

8    Middleton's estate will assert a privilege.  So

9    I'll caution the witness to be thinking about

10   those parameters.

11        MR. MCMICHAEL:  Okay.  Mr. Rosenfield, the

12   question is:  When was the topic of a GRAT

13   first -- when did it first come about?  You can

14   answer the question of when without referring

15   to any discussions that might be privileged.

16   So we'll take it one question at a time.

17        THE WITNESS:  Somewheres around 1999.

18        MR. DAVIS:  Okay.

19        THE WITNESS:  Possibly before that.

20   BY MR. DAVIS:

21   Q    Okay.  Let me back up and just see if I

22   understand.

23        Did Frances Middleton ever authorize

24   you to discuss either the oral GRAT or GRAT 1 with

25   Anna Nupson?

Anna K. Nupson v. Schnader Harrison Segal & Lewis, LLP, et al.　　　　　　　　　　　　　　　June 24, 2021
Bruce Rosenfield, Esq.　　　　　　　　　　　　　　　　　　　　　　　　　　　　　NO.  2:18-cv-02505-NIQA

Page 64

1　　　　　MR. MCMICHAEL:  Yeah.  At what point in
2　　time?
3　BY MR. DAVIS:
4　　Q　At any point in time?
5　　**A　Yes.  In 2002.**
6　　Q　Okay.
7　　**A　Later in 2002.**
8　　Q　Do you have a writing of that
9　authorization?
10　　**A　No.**
11　　Q　She just orally provided that?
12　　**A　Yes.**
13　　Q　When did she do that?
14　　**A　I think at -- well, I think it was in -- I**
15　**think at the meeting that I had with Fran and Anna**
16　**was in September of 2002.**
17　　Q　And did she permit you to discuss all of
18　the details of the oral GRAT or GRAT 1 with Anna
19　Nupson?
20　　**A　Yes.**
21　　Q　Okay.  So I don't think the privilege
22　stands anymore.  It seems to be waived.  Perhaps I'm
23　wrong.  We'll just keep going on the questions and
24　see where we get.
25　　　　　MR. MCMICHAEL:  Yeah.  I mean, I think

Case 2:18-cv-02505-NIQA   Document 226-1   Filed 08/00/21   Page 5 of 14

Anna K. Nupson v. Schnader Harrison Segal & Lewis, LLP, et al.   June 24, 2021
Bruce Rosenfield, Esq.   NO. 2:18-cv-02505-NIQA

Page 65

1   that -- I think we probably all agree that
2   there is no privilege with respect to the
3   September meeting and the directions that Mr.
4   Rosenfield had from Fran in connection with
5   that meeting. I think if you ask questions
6   about what their discussions were in 1999 about
7   GRAT and other, you know, alternative estate
8   plans, there's going to be an assertion of
9   privilege.
10  BY MR. DAVIS:
11      Q   Well, I am going to ask you those
12  questions.
13          What were those discussions with Fran
14  --
15      A   What --
16          **(Indecipherable cross-talk.)**
17          THE WITNESS: I'm sorry, I don't
18  understand what you're saying.
19  BY MR. DAVIS:
20      Q   Sure. Let me -- well, first, let me --
21  we're going to mark as Exhibit 44 the billing from
22  3/12/99. Let me get you your billing, and then
23  hopefully, that will kind of center us a little bit.
24              - - -
25          (Exhibit 44 was marked for

Page 66

1  identification.)

2          - - -

3  [redacted]

4  [redacted]

5  [redacted]

6  [redacted]

7  [redacted]

8  [redacted]

9  [redacted]

10 [redacted]

11     Q   Okay.  And who is Roy Ross?

12     **A   Well, a colleague of mine in the trust and**

13 **estates group at Schnader.**

14     Q   Would he be drafting for GRATs, and

15 trusts, and things?

16     **A   Yes.**

17     Q   Okay.  So this appears, at least in the

18 documentation, the first time I've seen the term

19 GRAT mentioned with Frances, all right.  And so I'm

20 trying to -- and I think that coincides with about

21 the timeframe that you mentioned earlier.

22         And so what I would like to know is:

23 What are the discussions you had with Frances

24 regarding a GRAT in this timeframe?

25

Anna K. Nupson v. Schnader Harrison Segal & Lewis, LLP, et al.
Bruce Rosenfield, Esq.
June 24, 2021
NO. 2:18-cv-02505-NIQA

Page 67

1  MR. MANNION: Again, on behalf of Mr.
2  Middleton as co-executor, I'm going to object
3  to the extent that it involves a discussion
4  with Mrs. Middleton that did not include a
5  third party or that Mr. Rosenfield was not
6  specifically authorized to reveal to third
7  parties.
8  And, Mr. Davis, you made a reference to
9  authorizing information to be revealed to Ms.
10  Nupson. There is a difference between
11  authorizing specifics and authorizing every
12  aspect of every conversation that Mrs.
13  Middleton had with Mr. Rosenfield.
14  So again, if it's been authorized by Mrs.
15  Middleton to be released or there was a third
16  party present, there is no objection.
17  Otherwise, we are asserting the privilege.
18  MR. MCMICHAEL: All right. So I'm going
19  to ask you a couple of questions to determine
20  whether I'm going to direct you not to answer.
21  Did you have a conversation with Mrs. Middleton
22  around March of 1999? Do you recall? And just
23  answer yes or no. I don't want you to describe
24  the conversation, obviously.
25  THE WITNESS: I don't recall.

Case 2:18-cv-02505-NIQA   Document 226-1   Filed 07/00/21   Page 8 of 14

Anna K. Nupson v. Schnader Harrison Segal & Lewis, LLP, et al.　　　　　　　　　　　　　June 24, 2021
Bruce Rosenfield, Esq.　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　NO.  2:18-cv-02505-NIQA

Page 68

1　　　MR. MCMICHAEL:  All right.  Okay.  What's
2　　your question now?
3　BY MR. DAVIS:
4　　Q   Well, let me back up.  My understanding of
5　your testimony was you recalled that a GRAT was
6　being discussed in the 1999 timeframe.
7　　　That was the first time that there
8　was any discussions of a GRAT with Ms. Middleton?
9　　**A   There may have been discussions before**
10　**that.**
11　　Q   Okay.  I am asking you now, those
12　discussions, either before that or in 1999, what
13　were those discussions?
14　　　MR. MCMICHAEL:  All right.  Don't answer
15　　that question.  Let me ask you a couple
16　　questions first.  Did Mrs. Middleton authorize
17　　you to reveal those discussions to third
18　　parties, whatever discussions you were having
19　　at that point in time?
20　　　THE WITNESS:  No.
21　　　MR. MCMICHAEL:  And were there other
22　　parties present, other than Schnader lawyers,
23　　during those discussions?
24　　　THE WITNESS:  Yes.
25　　　MR. MCMICHAEL:  Who else was present?

Case 2:18-cv-02505-NIQA   Document 226-1   Filed 08/00/21   Page 9 of 14

Anna K. Nupson v. Schnader Harrison Segal & Lewis, LLP, et al.  June 24, 2021
Bruce Rosenfield, Esq.  NO. 2:18-cv-02505-NIQA

Page 69

1   THE WITNESS: John Middleton would have
2   been present. And it is possible that in some
3   discussions, John Stein could have been
4   present.
5   MR. MCMICHAEL: And who is John Stein?
6   THE WITNESS: The family accountant.
7   MR. MCMICHAEL: Okay. So I need some
8   guidance on your privilege assertion with
9   respect to conversations where John Middleton
10  was present.
11  (Discussion was held off the record.)
12  MR. MCMICHAEL: Mr. Rosenfield, at the
13  time that these discussions occurred with Ms.
14  Middleton, was John a co-client?
15  THE WITNESS: Yes.
16  MR. MCMICHAEL: He was a co-client. Sorry
17  about this.
18  (Discussion was held off the record.)
19  MR. MCMICHAEL: Okay. So now, Mr.
20  Rosenfield, we just want to make the record
21  clear. At the time of the discussion, was John
22  a co-client for purposes of the discussion you
23  were having?
24  THE WITNESS: I'm sorry, I don't
25  understand that.

Case 2:18-cv-02505-NIQA   Document 226-1   Filed 07/00/21   Page 10 of 14

Anna K. Nupson v. Schnader Harrison Segal & Lewis, LLP, et al.  June 24, 2021
Bruce Rosenfield, Esq.                                          NO. 2:18-cv-02505-NIQA

Page 70

1       MR. MCMICHAEL: When you were having the
2    discussions with Ms. Middleton and with John,
3    were you, in your mind, representing both of
4    them in connection with that discussion that
5    you were having?
6       MR. DAVIS: With the GRAT discussion.
7       MR. MCMICHAEL: The GRAT discussion, yes.
8       THE WITNESS: I mean, John was involved in
9    it. I mean, they were primarily for -- for
10   Fran and for estate planning for Fran.
11      MR. MCMICHAEL: Yeah. I'm going to direct
12   the witness not to answer at this point.
13      MR. DAVIS: All right.
14      MR. MCMICHAEL: I mean, if you want to go
15   off the record, I can have a more fulsome
16   discussion with counsel for Mr. Middleton about
17   it right now, or we can just keep moving and
18   deal with it later. It's your call.
19      MR. DAVIS: Let me -- let me ask one
20   follow-up question, and I --
21      MR. MCMICHAEL: Sure.
22      MR. DAVIS: -- may let you do that.
23   BY MR. DAVIS:
24      Q   Mr. Rosenfield, the 2002 permission
25   provided by Frances Middleton, did she authorize you

Anna K. Nupson v. Schnader Harrison Segal & Lewis, LLP, et al.  June 24, 2021
Bruce Rosenfield, Esq.  NO.  2:18-cv-02505-NIQA

Page 71

1    to speak to her daughter, Anna Nupson, about the --
2    everything related to the GRAT, GRAT 1 or the oral
3    GRAT as I'm defining them?
4        A    Yes.
5        Q    She did, okay.
6             And that would include discussions
7    prior to the actual formation of the oral GRAT or
8    GRAT -- the execution of GRAT 1?
9        **A    No.  She simply asked me to discuss with**
10   **Anna the terms of the GRAT.**
11       Q    Okay.  And did you take that authorization
12   to include an authorization to discuss the formation
13   of the GRAT and all of the surrounding
14   circumstances?
15       **A    No, I didn't.  No.**
16       Q    Okay.  Just to make sure I understand, is
17   there any writing that you made to Frances Middleton
18   or to Anna Nupson related to your authorization to
19   speak about the -- either the oral GRAT or GRAT 1?
20       **A    No.**
21       Q    Okay.  If you could, and let me not lead
22   you, explain what you understood as the authority
23   you received from Frances Middleton to discuss the
24   GRAT?
25       **A    Fran invited me to her house to -- for the**

Anna K. Nupson v. Schnader Harrison Segal & Lewis, LLP, et al.
Bruce Rosenfield, Esq.
June 24, 2021
NO. 2:18-cv-02505-NIQA

Page 72

1 express purpose of describing it to Anna.

2     Q   Okay. And when you say "describing it to
3 Anna," you're referring to the oral GRAT and GRAT 1?
4 That's what I'm calling them. I know you have a
5 different name for them.

6     A   I do have a different name for them, but
7 yes.

8     Q   Okay. And you didn't understand that
9 authorization to include discussions prior to the
10 formation, the oral -- the oral GRAT in
11 February 1st, 2001?

12     A   The discussions -- I'm sorry, there's one
13 GRAT, and --

14     Q   Okay.

15     A   -- the discussions were of that GRAT.

16     Q   Okay. I'm just trying to understand the
17 scope because that's what these gentlemen are going
18 to want to discuss. And that's what I'm trying to
19 understand.

20     What was your understanding of the
21 scope of your authorization to speak with Anna
22 Nupson about it?

23     A   It was a meeting that Fran was at. She
24 asked me to take the lead and to tell her -- tell
25 Anna how the GRAT worked, and that it was there.

Anna K. Nupson v. Schnader Harrison Segal & Lewis, LLP, et al.  June 24, 2021
Bruce Rosenfield, Esq.  NO. 2:18-cv-02505-NIQA

Page 73

1       MR. DAVIS: Let's go off the record.
2       THE VIDEOGRAPHER: 10:49, off the record.
3           - - -
4       (Recess was taken from 10:49 a.m. to
5   11:01 a.m.)
6           - - -
7       THE VIDEOGRAPHER: 11:01, back on the
8   record.
9       MR. MCMICHAEL: Okay. Mr. Davis, having
10  had a further discussion with Mr. Rosenfield
11  off the record to explore the privilege issues,
12  I'm going to withdraw the direction not to
13  answer the question that was asked immediately
14  prior to the break.
15      And to make our position clear on the
16  record, we will permit Mr. Rosenfield to answer
17  questions concerning his discussions with
18  Frances Middleton prior to the formation of the
19  February 1, 2001 GRAT, provided that John
20  Middleton or another third party was present in
21  those discussions.
22      MR. DAVIS: All right. And for purposes
23  today, Ms. -- John Middleton is going to be
24  considered a third party, and I appreciate that
25  he is a client, but --

Anna K. Nupson v. Schnader Harrison Segal & Lewis, LLP, et al.　　　　　　　　　　　　　　June 24, 2021
Bruce Rosenfield, Esq.　　　　　　　　　　　　　　　　　　　　　　　　　　　　NO.  2:18-cv-02505-NIQA

Page 74

1          MR. MCMICHAEL:  Well, yeah.

2          MR. DAVIS:  Yeah.

3          MR. MCMICHAEL:  He is considered a third

4    party at this point in time.

5          MR. DAVIS:  Okay.

6          MR. MCMICHAEL:  Prior to the formation of

7    the February 1, 2001 GRAT.  In connection with

8    the GRAT and thereafter, he was a co-client, as

9    he was trustee of the GRAT.

10   BY MR. DAVIS:

11      Q   Okay.  With that explanation, can you

12   describe the conversation you had with Mrs.

13   Middleton, Frances Middleton?

14      **A   I would have had conversations describing**

15   **the advantages of a GRAT, how they worked, the**

16   **required terms, and how they fit in with her overall**

17   **estate planning and the possible benefits, if they**

18   **were successful.**

19      Q   I'm going to ask you some questions.

20   These gentlemen are definitely going to have some

21   heartburn.  So give them a second.  They may need to

22   interrupt you.

23          Okay?

24      **A   Thank you, thank you.**

25      Q   During those conversations -- first of