# TAB 4

# RIDER – EXHIBIT 45 TO DEPOSITION OF BRUCE A. ROSENFIELD



TRUST UNDER AGREEMENT OF FRANCES S. MIDDLETON FBO ANNA K. NUPSON
DATED FEBRUARY 1, 2001
**RIDER I**

**Item 4: History of Trust**

After the death of her husband, Herbert S. Middleton, in 1998, Frances S. Middleton, Grantor of the Trust ("Grantor"), owned a substantial number of non-voting shares of Bradford Holdings Co., a closely held corporation (the "Company"). The remaining voting and non-voting shares were held by family members.

Beginning in 1999 and continuing to late 2000, Grantor discussed with her son, John S. Middleton ("John"), and her advisors, including her estate planning attorney, Bruce A. Rosenfield ("Bruce"), an inter vivos transfer of Grantor's shares in the Company as part of her estate plan. Those discussions focused on the use of grantor retained annuity trusts, or "GRATs," as a tax efficient way to accomplish the transfer.

By December 2000, Grantor had confirmed that she would fund a two-year GRAT using all of her Company shares. On or before February 1, 2001, Grantor clearly and irrevocably made a gift of her shares in the Company to a two-year GRAT. Grantor had signed stock powers and directed transfer of her shares in the Company. Consistent with those directions and as recorded in the Company stock register, on February 1, 2001, Grantor's shares in the Company were transferred to John, as trustee of the GRAT. February 1, 2001 was a significant date, as it was also intended to be the effective date of the Company's redemption of all shares held by the families of Herbert Middleton's sister. And it was the effective date of the Company's conversion to an S corporation.

Over the next several months, Bruce prepared and forwarded confirmatory trust documents for review by Grantor and John. At all times, those documents confirmed that, on February 1, 2001, Grantor had established a two-year annuity trust whereby John, as trustee, was required to make annuity payments to Grantor calculated as a specified percentage of the value

1

Case# 2015-X1266-46.1 Received at Montgomery County Register of Wills Office on 05/02/2017 10:32 AM, Fee = $0.00

TRUST UNDER AGREEMENT OF FRANCES S. MIDDLETON FBO ANNA K. NUPSON
DATED FEBRUARY 1, 2001
**RIDER I**

**Item 4: History of Trust**

of her original gift to the trust. Those documents also provided that, upon termination of the two-year annuity trust, the remaining trust assets should be delivered to another trust. That trust would continue for the benefit of John and his family. On November 19, 2001, Grantor signed the Original Trust Agreement, dated February 1, 2001, the date on which she had transferred her Company shares to the GRAT. (A copy of the Original Trust Agreement, which has previously been filed with the Court, is attached as an exhibit to this **Rider I**.) The Original Trust Agreement confirmed the oral terms upon which Grantor had established her GRAT on February 1, 2001, and upon which her trustee had been administering the trust: Grantor established a two-year annuity trust, beginning on February 1, 2001, of which Grantor was the sole beneficiary, entitled to distributions of specified annuity payments; upon termination of the two-year annuity trust, the trustee would deliver the remaining property to a trust to be established for the benefit of John and his family.[1]

Some time after March 2002, Grantor's elder daughter, Lucia M. Hughes ("Lucia"), raised strong objections to the provision that, upon expiration of the two-year annuity trust, the remaining property would be distributed to a trust for the benefit of John and his family. Lucia objected that this would result in a greater benefit for John and his family and would reduce the eventual benefit for Lucia's children. Lucia claimed that this was a mistake, it was not what her mother had intended and it was due to John's undue influence. Lucia

---

[1] Pennsylvania law governing the attorney-client privilege, along with Rule 1.6 of the Pennsylvania Rules of Professional conduct, do not allow Bruce to reveal confidential information relating to his representation of Grantor unless and until Grantor's representatives waive the privilege and direct Bruce to disclose all information relevant to Grantor's establishment of the GRAT. Accordingly, at this time, Bruce is constrained to describe in further detail the planning steps that led to execution of the Original Trust Agreement.

Case# 2015-X1266-46.1 Received at Montgomery County Register of Wills Office on 05/02/2017 10:32 AM, Fee = $0.00

TRUST UNDER AGREEMENT OF FRANCES S. MIDDLETON FBO ANNA K. NUPSON
DATED FEBRUARY 1, 2001
**RIDER I**

**Item 4: History of Trust**

---

demanded that her mother change the Original Trust Agreement to benefit Lucia and her family and threatened litigation against her mother and John unless the trust were changed.

Grantor and John wanted, above all, to prevent dissension within the family. Grantor was very close to all of her grandchildren and worried about the effect of family discord on them. Grantor and John also wished to avoid litigation and the embarrassment of a public family fight. Thus, Grantor and John resolved to negotiate an agreement with Lucia whereby the terms of the trust established upon expiration of the two-year annuity trust would be changed. . Bruce recommended, and Grantor, Lucia and John agreed, that the modified trust also should benefit Grantor's younger daughter, Anna. Over the next several months, Bruce, Lucia's estate planning counsel, Womble, Carlyle, Sandridge & Rice, and John's lawyer, Larry Laubach of Cozen O'Connor, negotiated the terms of the reformation or modification. As Bruce had advised Anna concerning her own estate planning, Anna requested and Bruce agreed that he would represent both Anna and Grantor in connection with the negotiations over modification. Grantor, Anna and John signed waivers approving the joint representation.

The parties and their attorneys negotiated intensely, but with a common goal. All strove to confirm and implement Grantor's original intent to establish a GRAT on February 1, 2001, give away her Company shares to benefit her family and avoid family discord and litigation. None of the parties, and none of their counsel, had any intent to deceive. On the contrary, the parties, through counsel, exchanged proposals in an effort to be fully transparent. Grantor and John were willing to change the terms of the Original Trust Agreement, provided that Grantor's original intent, to make an inter vivos gift of her shares in the Company on February 1, 2001, would be upheld and also that the family would avoid future discord, with respect to the GRAT and also with respect to the Company. Thus, Grantor also required that the

Case# 2015-X1266-46.1 Received at Montgomery County Register of Wills Office on 05/02/2017 10:32 AM, Fee = $0.00

TRUST UNDER AGREEMENT OF FRANCES S. MIDDLETON FBO ANNA K. NUPSON
DATED FEBRUARY 1, 2001
**RIDER I**

**Item 4: History of Trust**

---

family agree to avoid discord with respect to John's management decisions for the Company. However, Lucia wanted to limit John's discretion with respect to certain Company decisions. Anna supported Lucia's effort to limit John's discretion and also sought more generous distributions from this and other family trusts that would continue for her benefit.

In December 2002, Lucia proposed that the parties resolve the issues regarding managerial discretion by having the Company redeem all shares not owned by John or by trusts for John and his family, so that John and trusts for John's family would be the sole shareholders in the Company.

Lucia proposed a buyout price based on her advisors' independent analysis of the Company's valuation. She further proposed that the sales should occur in a series of annual redemptions over a four year period. John, on behalf of the Company, offered a substantially higher price and also proposed that the Company complete all of the redemptions within one year. Lucia and Anna ultimately accepted the Company's offer.

Meanwhile, counsel to the parties undertook to prepare a modified or reformed trust agreement (the "Modified Trust Agreement") that would include the original terms of the two-year annuity trust, but would revise the provisions concerning distribution of the trust property upon termination of the annuity trust to divide the property among trusts for all three of Grantor' children. The parties agreed that Lucia's lawyer would draft the terms of the trust for Lucia and that Bruce would draft the terms of the trust for Anna.

Counsel to the parties also undertook to prepare a Family Settlement Agreement that would confirm and ratify the Modified Trust Agreement, subject to the agreement regarding

Case# 2015-X1266-46.1 Received at Montgomery County Register of Wills Office on 05/02/2017 10:32 AM, Fee = $0.00

TRUST UNDER AGREEMENT OF FRANCES S. MIDDLETON FBO ANNA K. NUPSON
DATED FEBRUARY 1, 2001
**RIDER I**

**Item 4: History of Trust**

---

the Company's redemption of shares and Anna's requirements that the trust for her benefit should include generous distribution provisions for her.

The parties reached an agreement in principle by mid- to late-January 2003. Grantor executed the Modified Trust Agreement, dated February 1, 2001.[2] Grantor did not change the terms of the two-year annuity trust that had been established for her benefit on February 1, 2001. The parties only agreed to change the terms for division and distribution of the property after termination of the annuity trust. For all purposes, Grantor understood and intended, and the trustee and all beneficiaries agreed, that the Modified Trust Agreement related

---

[2] The Original Trust Agreement was irrevocable and could not be amended unilaterally by Grantor. As a matter of law, a trust settlor may amend a *revocable* trust without the consent of the trust beneficiaries provided only that the current trustee accepts and is willing to continue as trustee according to the terms of the amended trust. A trust amendment may not change the duties or responsibilities of the trustee from the date of inception up to the date of amendment, but may only change the administration of the trust prospectively. Thus, a trust beneficiary could not surcharge a trustee for failing initially to administer the trust consistent with a later amendment.

By contrast, a Grantor may modify or reform an *irrevocable* trust only with the consent of the trust beneficiaries or court approval. However, upon such consent or approval, a trust modification or reformation may relate back to inception of the trust. In that case, either the trust administration up to the date of modification or reformation must have been consistent with the changed terms or, if not, the trustee may be required to adjust distributions that preceded the modification or reformation, if those distributions were inconsistent with the restated terms. At all times, Bruce has believed that, in 2003, Grantor effectively modified or reformed her Original Trust Agreement, that the Modified Trust Agreement related back, for all purposes, to February 1, 2001, the date on which she irrevocable transferred her Company shares to her GRAT and that the administration of all trusts established by Grantor was, at all times, consistent with the Modified Trust Agreement.

Case# 2015-X1266-46.1 Received at Montgomery County Register of Wills Office on 05/02/2017 10:32 AM, Fee = $0.00

TRUST UNDER AGREEMENT OF FRANCES S. MIDDLETON FBO ANNA K. NUPSON
DATED FEBRUARY 1, 2001
**RIDER I**

**Item 4: History of Trust**

---

Case# 2015-X1266-46.1 Received at Montgomery County Register of Wills Office on 05/02/2017 10:32 AM, Fee = $0.00

back to the date of Grantor's original irrevocable gift into trust. Thus, Grantor dated her Modified Trust Agreement February 1, 2001.

Grantor, as grantor and also as the sole beneficiary of the annuity trust, John, as trustee and as the beneficiary of the trust that would have been established for his family's benefit upon expiration of the annuity trust under the Original Trust Agreement, John, Grantor and Lucia, as trustees of the trusts established under the Modified Trust Agreement and John, Lucia and Anna as beneficiaries of those trusts, approved and agreed to the modification or reformation, which related back to the original date of inception of the annuity trust. Grantor intended and John, Grantor and Lucia agreed to administer the trust upon termination of the annuity term consistent with the Modified Trust Agreement, and not according to the terms of the Original Trust Agreement. All of the parties agreed to confirm and support the Modified Trust Agreement. John, Lucia and Anna also agreed that the Company would redeem all shares held by trusts established under the Modified Trust Agreement and other trusts that continued for the benefit of Anna, Lucia and Lucia's family.

All of these approvals and agreements, which were conditioned on each other, were memorialized in the Master Family Settlement Agreement. Thus, paragraph 1 of the Family Settlement Agreement explicitly recites, "Each of the Parties agrees and confirms that the GRAT, a copy of which is attached hereto as Exhibit A, reflects the intent of Frances [Grantor] and all beneficiaries of the GRAT. Each Party shall use his, her or its best efforts and cooperate in good faith in effectuating the terms of the GRAT and in defending the tax treatment of the GRAT." The Modified Trust Agreement did not represent a unilateral or prospective amendment of the Original Trust Agreement by Grantor. On the contrary, as a response to Lucia's insistence that Grantor had made a mistake due to John's influence when she signed the

Case# 2015-X1266-46.1 Received at Montgomery County Register of Wills Office on 05/02/2017 10:32 AM, Fee = $0.00

TRUST UNDER AGREEMENT OF FRANCES S. MIDDLETON FBO ANNA K. NUPSON
DATED FEBRUARY 1, 2001
**RIDER I**

**Item 4: History of Trust**

---

Original Trust Agreement, as a compromise of a family dispute that threatened to lead to discord and litigation and as a joint effort to prevent future dissension within the family, Grantor, her original trustee, the trust beneficiaries under the Original Trust Agreement and the beneficiaries of the Modified Trust Agreement agreed that the modification or reformation related back to inception for all purposes.

In his original Petition for Adjudication of his Account of his service as successor trustee of the Trust that was established for Anna under the Modified Trust Agreement (the "2001 Trust for Anna"), from February 1, 2005 to November 30, 2015, Bruce took the position that the 2001 Trust for Anna had not been amended. That position was based on three considerations. First, Bruce understood and believed that a modification or reformation of an irrevocable trust upon agreement of the trust grantor and the trust beneficiaries, which relates back to inception, is different from an amendment of a revocable trust, which is a unilateral and prospective act by a trust grantor. Second, Grantor, her trustee and all beneficiaries – including Anna – were fully aware of the circumstances surrounding the Modified Trust Agreement and all agreed that the modification or reformation related back, for all purposes, to February 1, 2001, such that the terms of the Original Trust Agreement for division and disposition of trust property upon expiration of the annuity trust were not merely prospectively amended, but entirely without effect. And third, but for the modification or reformation that related back to inception, all of the parties recognized and understood that there never would have been any trust established in 2001 for Anna. For these reasons, Bruce concluded that the 2001 Trust for Anna had not been amended.

Bruce never intended to mislead anyone – and especially not the Court. However, upon consideration of the Court's March 16, 2017 Opinion and Order, Bruce recognizes that it

7

Case# 2015-X1266-46.1 Received at Montgomery County Register of Wills Office on 05/02/2017 10:32 AM, Fee = $0.00

TRUST UNDER AGREEMENT OF FRANCES S. MIDDLETON FBO ANNA K. NUPSON
DATED FEBRUARY 1, 2001
**RIDER I**

**Item 4: History of Trust**

---

would have been more informative if Bruce had reported and described the modification or reformation of the Original Trust Agreement in the original Petition for Adjudication of his account of the 2001 Trust for Anna and apologizes for not having done so.

8

PHDATA 5982901_4