IN THE UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANNA K. NUPSON, | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )  Civil Action No.: 2:18-cv-02505-NIQA |
| | ) |
| SCHNADER HARRISON SEGAL | ) |
| & LEWIS, LLP, and BRUCE A. | ) |
| ROSENFIELD, ESQ., | ) |
| | ) |
|     **Defendants.** | ) |

**PLAINTIFF'S MOTION TO COMPEL DEPOSITION TESTIMONY FROM
DEFENDANT SCHNADER HARRISON SEGAL & LEWIS, LLP
PURSUANT TO RULE 1-030(B)(6) AND THE PRODUCTION OF DOCUMENTS**

Plaintiff Anna K. Nupson ("Plaintiff"), through undersigned counsel, and pursuant to Federal Rules of Civil Procedure 30, 31, and 37, requests the Court enter an order compelling deposition testimony from Defendant Schnader Harrison Segal & Lewis, LLP, ("Schnader's") corporate designee witness identified pursuant to Rule 30(B)(6) as well as documents responsive to Plaintiff's written discovery. In support of her motion, Plaintiff states as follows:

### I.    INTRODUCTION

The claims asserted in Plaintiff's initial Complaint and in subsequent amendments center on Defendants' malpractice and breaches of fiduciary duties by failing to adequately represent Plaintiff as her attorneys during a 2003 settlement agreement. Plaintiff's Third Amended Complaint asserts claims against Defendants for punitive damages arising out of Defendant's efforts to conceal their own malpractice from Plaintiff. [See Doc. 119, at ¶130]. As stated in her Complaint,

> Defendants actions were outrageous, because Defendants' acts were intentional, they acted with reckless indifference to the rights of Plaintiff, and they had palpable conflicts of interest, which caused them to advance the rights of one client over the rights of another client. Defendants' decision to conceal what they had done to cover up their own wrongful conduct was also intentional and outrageous and

1

fraudulent. Defendants used their confidential position, as Plaintiff's lawyers, to persuade Plaintiff to enter into a transaction that benefited their other client and covered over their own prior actions in connection with the oral trust, the 2001 GRAT I and GRAT II. Defendants withheld from Plaintiff critical information, failed to disclose their own conflicts of interest, and counseled her to enter into transactions which grossly undervalued her interests and exposed her to enormous potential liability. As a result, an award of punitive damages is warranted.

Despite the clear relevance to Plaintiff's punitive damage claim, Defendants have flatly objected to providing any information responsive to Plaintiff's written discovery requests and deposition topics that seek Defendants' financial information. Defendants are improperly limiting discovery that Plaintiff is lawfully entitled to receive, as Plaintiff's discovery requests are well within the bounds of Federal Rule of Civil Procedure 26.

## II.   FACTUAL BACKGROUND

On or about March 20, 2020, Plaintiff served Defendant Schnader and Bruce A. Rosenfield ("Rosenfield") with her Second Set of Interrogatories and Fourth Set of Requests for Production. On or about April 20, 2020, Defendants served their Responses and Objections to Plaintiff's Second Set of Interrogatories and Fourth Set of Requests for Production. [*See* **Exhibit A**].

The interrogatories and document requests centered on Defendants' financial position including Schnader and Rosenfield's current net worth, financial statements for the past three years, and current assets and liabilities. Defendants objected to interrogatory number 10, and requests for production 58-63 on the grounds that Plaintiff's requests were "overly broad, not proportional to the needs of the case, and [are] unreasonably burdensome, annoying, and oppressive." Additionally, Defendants objected to the same discovery requests stating "the discovery of personal financial information is prohibited…is inappropriately intrusive absent actual evidence suggesting that the issue of punitive damages might go to the jury." Rosenfield further objected that the requests were "inappropriately intrusive as to assets held jointly with his spouse."

On May 29, 2020, Plaintiff's counsel sent a good faith letter to Defendants regarding their objections to Plaintiff's Second Set of Interrogatories and Fourth Set of Requests for Production. [*See* **Exhibit B**]. Defendants acknowledged receipt of Plaintiff's May 29, 2020 letter but provided no response to the issues raised with regards to Plaintiff's discovery requests. [*See* **Exhibit C**].

On or about September 1, 2021, Plaintiff served Defendants with a Notice to Take Deposition of Defendant Pursuant to Rule 30(b)(6). [*See* **Exhibit D**]. The notice identified each topic of questioning for Schnader's witness to prepare for questioning at deposition. Topic one of the notice seeks information regarding "Schnader's financial condition including, any and all profits and assets held nationally, balance statements, and all details with regards to Schnader's Profit and Loss Statements for the past five years." [*See* **Exhibit D**].

Defendant Schnader objected to producing a witness to testify at deposition with regards to topic one only. On September 3, 2021, Defendants served their objection to Plaintiff's notice, specifically topic one. [*See* **Exhibit E**]. Defendants objected to topic one on three grounds: (1) the topic is overly broad and unduly burdensome; (2) the topic is more appropriate for written discovery than it is for an organizational party to prepare a witness to testify to "all details" in financial statements; and (3) the topic is not reasonably related to any claim or defense.

In an effort to proceed with the scheduled deposition in good faith, Defendants' counsel proposed, and Plaintiff agreed, that any questions with regards to topic one would be withheld until Defendants' objections were resolved. [*See* **Exhibit F**]. On September 14, 2021, Plaintiff deposed Schnader's corporate designee witness on all topics listed in Plaintiff's deposition notice except for topic one.

### III.    ARGUMENT AND AUTHORITIES

When assessing objections to discovery, the Court must consider that "Rule 26(b)(1) provides that discovery need not be confined to matters of admissible evidence but may encompass that which 'appears reasonably calculated to lead to the discovery of admissible evidence.'" *Wright v. Montgomery County*, No. 96-4597, 1998 WL 848107, *2 (E.D. Pa. Dec. 4, 1998) (quoting Fed. R. Civ. P. 26(b)(1)). Federal Rule of Civil Procedure 26 governs the scope of discovery in federal litigation and provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Plaintiff is entitled to financial information regarding Defendants. Under controlling Pennsylvania law, punitive damages may be awarded in actions for legal malpractice and breach of fiduciary duty. *Hutchison ex rel. Hutchison v. Luddy*, 582 Pa. 114, 870 A.2d 766, 773, (2005); *Rizzo v. Haines,* 520 Pa. 484, 555 A.2d 58 (1989) (finding in a legal malpractice action that "an award of punitive damages was proper for claims sounding in breach of fiduciary duty, as well as intentional withholding of information and fraudulent misrepresentation"). Accord, *SHV Coal, Inc. v. Continental Grain Co.*, 526 Pa. 489, 587 A.2d 702,703-05 (1991) (affirming award of punitive damages for claims based on negligence sounding in breach of fiduciary duty).

Plaintiff's Third Amended Complaint asserts claims for punitive damages arising from Defendants' intentional, reckless, and outrageous acts which directly affected Plaintiff's rights regarding a 2003 settlement agreement. [See Doc. 119, at ¶130]. Throughout Defendants representation of Plaintiff in the 2003 settlement agreement, Rosenfield counseled Plaintiff into

unknowingly ratifying a prior illegitimate stock transfer by Plaintiff's mother, Frances Middleton ("Frances"). The stock transfer was part of Frances' estate plan created and recommended by Rosenfield whereby she would place stock into a grantor retained annuity trust ("GRAT") for the benefit of her children. To conceal his malfeasance, Rosenfield breached his duties by seeking to represent Plaintiff in the 2003 settlement agreement despite his unwaivable conflict of interest with his prior representation of Plaintiff's brother, John Middleton ("John"), but also because of Rosenfield's own prior malpractice with regard to the formation and funding of Frances' alleged oral, springing GRAT. An email dated March 10, 2001, authored by Rosenfield, demonstrates that Rosenfield was counseling John on how he would purchase and /or redeem Bradford stock held by Plaintiff and her sister, Lucia Hughes. [*See* **Exhibit H**]. In 2001, Rosenfield was simultaneously representing Plaintiff and knew that Plaintiff was not willing to sell her Bradford stock to John.

Rosenfield also breached his duties during his representation of Plaintiff in 2002/2003 by failing to disclose to Plaintiff his earlier malpractice pertaining to Frances' GRAT. Rosenfield failed to disclose to Plaintiff all of the facts and flaws regarding Frances' GRAT that were necessary for Plaintiff to secure a favorable bargaining position and to make informed settlement decisions in 2003. Rather than fully informing Plaintiff in 2003 of all necessary information regarding Frances' GRAT, Rosenfield intentionally misrepresented and failed to disclose the true formation date of Frances' GRAT trust, the transfer date of Frances' Bradford shares to the GRAT instrument, and the accurate and current value of the Bradford shares that formed the corpus of the GRAT. [*See* **Exhibit I:** Deposition of Bruce Rosenfield, at 182, ln. 19-23; *see also* **Exhibit J**, at 183-184, ln. 24-2].

Rosenfield's admissions, and the March 10, 2001, email show Rosenfield's representation of Plaintiff was prohibited by his own conflicts of interest. Rosenfield's interest was to preserve

the validity of Frances' GRAT so could conceal his own malpractice. Plaintiff's interests were to maximize her return in all of her Bradford interests. Rosenfield could not have reasonably believed that he could provide competent and diligent representation to Plaintiff during the 2003 settlement agreement. Had Rosenfield disclosed to Plaintiff his own adversity, she could have secured independent counsel and negotiated a more favorable result in the 2003 settlement agreement. The evidence in this action demonstrates that an award of punitive damages against Defendants Schnader and Rosenfield would be proper under Pennsylvania law. Similar to the facts in *Rizzo* and *SHV Coal*, Defendants Schnader and Rosenfield breached their fiduciary duties to Plaintiff in agreeing to represent her in the 2003 settlement agreement knowing Rosenfield's interests were directly adverse to Plaintiff.

Defendants also withheld critical information from Plaintiff during their representation throughout 2001-2003 and continued to conceal their conflicts and role in creating and perpetuating Frances' GRAT. Defendants concealed from Plaintiff material facts relating to the sale of her Bradford interests to make certain that their conflicts would remain hidden. Defendants' efforts were successful, and as a result, Plaintiff was damaged.

In addition to the failures detailed in Plaintiff's complaint surrounding the settlement agreement itself, as detailed above, following the 2003 settlement agreement, Defendants acted in ways to further their efforts to conceal their own wrongdoing by intentionally withholding key factual information from Plaintiff and the Pennsylvania Orphans' Court, Montgomery County, ("Orphans' Court"). As a result, the Orphans' Court entered an Order, dated March 16, 2017, expressing concern over Defendants' factual misrepresentations and intentional omissions in verified court filings.[1] Defendants' admissions in subsequent filings before the Orphans' Court demonstrated their

---

[1] The Orphans' Court Order, entered March 16, 2017 states:

intentional acts to withhold from Plaintiff key information that revealed their past malpractices from 2003.

Further, Plaintiff's discovery requests are not overbroad or unduly burdensome. "Under Pennsylvania law, the wealth of a defendant is a factor to be considered in determining a punitive damage award." *McCrink v. Peoples Benefit Life Ins. Co.*, 2004 WL 2743420, at *9 (E.D. Pa. Nov. 29, 2004). "The weight of authority requires a defendant to disclose his financial condition in pretrial discovery when punitive damages are claimed." *Luria Bros. & Co. v. Allen*, 469 F. Supp. 575, 579-80 (W.D. Pa. 1979). "Since punitive damages are 'aimed not at compensation but principally meant at retribution and deterring harmful conduct,' the question of the financial situation of the defendant is potentially relevant to the appropriate award in a punitive damages case." *Grosek v. Panther Transp., Inc.*, 251 F.R.D. 162, 166 (M.D. Pa. 2008) (*quoting*, Exxon Shipping Co. V. Baker, 554 U.S. 471 (2008).

In *Grosek*, Defendants sought a protective order preventing plaintiffs from conducting discovery on the financial condition of defendants until a determination has been made that punitive damages are warranted. *Grosek*, 251 F.R.D. at 164. Defendants argued that "[s]ince no such

---

Of significant concern, the petition for adjudication filed October 5, 2016, by Mr. Ross's law partner, Bruce A. Rosenfield, Esquire, as trustee, states that there have been no amendments to the trust. Mr. Rosenfield executed a verification in which he verifies the truth and correctness of the facts in the petition. Mr. Rosenfield is presumed to be familiar with the disputed 2003 transactions including the purported amendment of the Irrevocable 2001 GRAT as he represented both Frances and Anna in the transactions that resulted in the execution of the 2003 Master Settlement Agreement and the sale of the BHI stock from the 2001 GRAT and other trusts. Indeed, Mr. Rosenfield personally witnessed the signatures of Frances and John to the Amended Trust Version signed in February 2003 but dated February 1, 2001.

*See* **Exhibit G,** at 7-8, ¶4.

determination has been made, discovery on the defendants' financial status would be unduly burdensome, costly and inappropriate." *Id*. The Court defined the issue as "whether good cause exists to issue a protective order preventing discovery of defendants' financial condition until a determination is made that punitive damages are warranted." *Id.* In ruling on defendants' motion, the Court pinpointed numerous cases that defendants cited in support of its proposition that the financial condition should not be discoverable, including *Luria Bros. Co. v. Allen*, 469 F.Supp. 575, 580 (W.D. Pa. 1979). *Id.* at 165. The Court highlighted the relevant portion of the *Luria Bros. Co.* case, which asserted, "'the weight of authority requires a defendant to disclose his financial condition in pretrial discovery when punitive damages are claimed.'" *Id.* (*citing Luria Bros. Co. v. Allen*, 469 F.Supp. 575, 580 (W.D. Pa. 1979)). In denying the defendants' motion, the court stated that discovery related to defendants' financial condition was appropriate and that delaying such discovery "would be inefficient and delay conclusion of the case." *Id.* at 166.

Plaintiff is entitled to documentation regarding Defendants' financial condition, which would certainly be relevant to Plaintiff's claim for punitive damages against the Defendants. As *Grosek* maintains, discovery regarding a defendant's financial status is appropriate when Plaintiffs make a claim for punitive damages. *See also McCrink*, 2004 WL 2743420, at *9 (finding that plaintiff's request for defendant to produce copies of its financial statements for the past five years was relevant to determining whether defendants are able to pay punitive damages).

Furthermore, Plaintiff's specific requests into the financial status of Defendants are not overbroad or unduly burdensome. Plaintiff's Interrogatory number 10 and Requests for Production of Documents numbers 58-63, respectively, inquire into Defendants' financial position including Schnader and Rosenfield's current net worth, financial statements for the past three years, and current assets and liabilities. [*See* **Exhibit B**]. Plaintiff's deposition notice seeks "Schnader's

8

financial condition including, any and all profits and assets held nationally, balance statements, and all details with regards to Schnader's Profit and Loss Statements for the past five years." [*See* **Exhibit D**].

The *Grosek* case also addressed the issue of whether requests regarding the financial information of a defendant for the past five years was overbroad. In *Grosek*, Defendants maintained that plaintiffs' request for financial information from 2003-2008 was overbroad and was outside of the incident in question. *Grosek*, 251 F.R.D. at 167. In ruling that the discovery request was not overly broad the Court stated, "[s]ince defendants' financial condition is relevant to the question of the appropriate amount of punitive damages, information from a number of years would provide a better assessment of the true financial condition than information only from the year of the accident and would likely lead to relevant evidence." *Id.* Also, the *Grosek* court found defendants did not point to any undue hardship that would occur from providing the information or that it would be problematic or time-consuming. *Id.*

Here, Defendants simply contend that the requests are "overly broad and unduly burdensome" and that "the discovery of personal financial information is prohibited…is inappropriately intrusive absent actual evidence suggesting that the issue of punitive damages might go to the jury." Rosenfield further objected that the requests were "inappropriately intrusive as to assets held jointly with his spouse." Defendants objected to Plaintiff's deposition notice topic one on three grounds: (1) the topic is overly broad and unduly burdensome; (2) the topic is more appropriate for written discovery than it is for an organizational party to prepare a witness to testify to "all details" in financial statements; and (3) the topic is not reasonably related to any claim or defense.

As *Grosek* points out, requesting financial information over a five-year time period is not overly broad. Moreover, obtaining information regarding Defendants' status over a five year time

9

period provides a more comprehensive indication of Defendants' financial status. As such, Defendants should be required to produce the requested information regarding their financial status.

## IV.   CONCLUSION

Plaintiff respectfully requests that the Court enter an Order compelling Defendants to produce all documents and information responsive to Plaintiff's interrogatory number 10 and requests for production numbers 58-63, and for Schnader to produce a designated witness to testify as to topic one listed in Plaintiff's deposition notice, and for any other relief as the Court deems proper.

Dated: October 21, 2021                    Respectfully submitted,

/s/ Ben Davis
Ben Davis
Davis Kelin Law Firm, LLC
127 Bryn Mawr Dr., SE
Albuquerque, NM 87106
Tel: (505) 242-7200
Fax: (505) 213-3399
bdavis@daviskelin.com

Courtney Johnson Vidales
Mucci Law Firm
PO Box 6908
Albuquerque, NM 87197
Tel: (505)247-2211
courtney@muccilaw.com

Justin R. Kaufman
Durham, Pittard & Spalding, LLP
505 Cerrillos Rd., Suite A209
Santa Fe, NM 87501
Tel: (505) 986-0600
Fax: (505)986-0632
jkaufman@dpslawgroup.com

        Brian A. Gordon
        Gordon & Ashworth, P.C.
        One Belmont Ave., Suite 519
        Bala Cynwyd, PA 19004
        Tel: (610) 667-4500
        Briangordon249@gmail.com

***Attorneys for Plaintiff***

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and complete copy of the foregoing instrument was served on all counsel via the ECF system on this the 21st day of October 2021.

    */s/ Ben Davis*

Ben Davis