IN THE UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANNA K. NUPSON, | ) |
|       Plaintiff, | ) |
| v. | ) Civil Action No.: 2:18-cv-02505-NIQA |
| SCHNADER HARRISON SEGAL & LEWIS, LLP, and BRUCE A. ROSENFIELD, ESQ., | ) |
|       Defendants. | ) |

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
**(BREACH OF FIDUCIARY DUTY)**

Plaintiff Anna K. Nupson, through undersigned counsel, and pursuant to Federal Rule of Civile Procedure 56, requests the Court enter summary judgment for the Plaintiff her claims against Defendants for Breach of Fiduciary Duty. In support of her Motion, Plaintiff states as follows:

1. INTRODUCTION

Plaintiff requests this Court enter an order for Partial Summary Judgment on the issue of whether Defendants Bruce A. Rosenfield ("Rosenfield") and Schnader Harrison Segal & Lewis, LLP ("Schnader") breached their fiduciary duty to Plaintiff as a matter of law. Rosenfield represented Plaintiff for twenty years, from 1994 through 2014, in a wide array of legal matters. As Plaintiff's lawyer, Rosenfield was a fiduciary, occupied a position of unique trust and confidence, and owed her a duty of undivided loyalty.

Beginning in 1999, Rosenfield represented Plaintiff's brother John Middleton ("John") and her mother Frances Middleton ("Frances") in planning and forming a grantor retained annuity trust ("GRAT") whereby Frances would transfer all of her shares in the closely held family business,

1

Bradford Holdings, Inc. ("BHI") for the benefit of John. Rosenfield's representation of Frances and John in planning and forming the GRAT created a confidential relationship. In 2002, Rosenfield agreed to jointly represent Plaintiff and Frances in contentious negotiations over the division and disposition of financially significant family assets. A material term of the family settlement agreement was changing Frances' GRAT from benefitting only John, to benefitting all three of Frances' children leaving one-third equal interests to John, Plaintiff, and Lucia Hughes ("Lucia").

Upon agreeing to represent Plaintiff in negotiating the family settlement agreement, Rosenfield failed to inform Plaintiff of certain material limitations on his representation created by his prior representation of John and Frances in planning and forming the GRAT. Rosenfield's duty to Frances and John caused him to withhold information from Plaintiff during the negotiations and execution of the family settlement agreement. Everything Rosenfield knew about the formation and planning of Frances' GRAT was protected by privilege and confidentiality owed to John and Frances alone. Thus, Rosenfield was unable to disclose to Plaintiff material information she needed to know during the negotiations of the family settlement agreement.

There is no dispute that Rosenfield owed competing duties of loyalty to Plaintiff, John, and Frances. Rosenfield breached that duty to Plaintiff in failing to advise and counsel her on his material limitations in representing Plaintiff as a result of his prior and ongoing representation of Frances and John.

## II. UNDISPUTED MATERIAL FACTS

1. Rosenfield first represented Plaintiff Nupson in 1994 or 1995 and continued to represent her in a wide array of matters until Ms. Nupson terminated the representation on September 11, 2014. *See* **Exhibit 1**, Rosenfield Deposition, p. 27, l. 23 - p. 29, l. 25; **Exhibit 2**, Letter from Anna K. Nupson to Bruce Rosenfield dated September 11, 2014.

2. Beginning in 1999, Rosenfield represented Frances Middleton, and Plaintiff's brother, John Middleton, in creating an oral trust to transfer all of Frances's shares in Bradford Holdings, Inc. ("Bradford"). Under the terms of this oral trust, Frances was to receive annuity payments for 2 years and then all of the remainder interest in the trust would go to John. *See* **Exhibit 1**, Rosenfield Deposition, p. 69, l. 12 - p. 70, l. 12; **Exhibit 3**, Amended Petition for Adjudication, dated May 1, 2017, Rider I, Item 4: History of Trust ("Amended Petition").

3. According to Rosenfield, the oral trust was later stated in writing as a grantor retained annuity trust ("Original GRAT"). Frances signed the Original GRAT on November 19, 2001, but Rosenfield backdated it to February 1, 2001. *See* **Exhibit 3**, Amended Petition, Rider I, pp. 1-2. Rosenfield witnessed Frances's and John's signatures on the backdated Original GRAT. *See* **Exhibit 4**, Original GRAT.

4. According to Rosenfield, after the formation of the oral trust, Frances Middleton was waiting on John Middleton to determine the remainder after the GRAT term expired. "If the GRAT doesn't provide for the terms following the annuity period then its John creating the trust." *See* **Exhibit 1**, p. 101, lines 1- 7.

5. Frances' BHI stock should have been transferred to John as trustee of the GRAT on February 1, 2001, but Rosenfield did not confirm that the transfer took place on that date and further testified that it was not his job to effectuate the stock transfer. *See* **Exhibit 1**, p. 112, lines 6-24

6. According to Rosenfield, after March 2002, Lucia learned about the Original GRAT, accused John of exerting undue influence over Frances, and demanded that Frances change the Original GRAT to benefit Lucia and her family. *See* **Exhibit 3**, Amended Petition, Rider I, p. 2-3.

7. By letter dated October 10, 2002, Frances instructed Rosenfield to change the GRAT to benefit John, Lucia and Plaintiff equally. *See* **Exhibit 1**, p 206, l. 5- p. 207, l. 8. **; Exhibit 5**, October 10, 2002 Letter from Frances Middleton to Bruce Rosenfield.

8. By letter dated October 11, 2002, Rosenfield proposed to Frances and Plaintiff that he should jointly represent them in "connection with the contemplated family settlement agreement concerning various disputes within the family." *See* **Exhibit 6**, letter from Bruce Rosenfield to John Middleton, Frances Middleton and Anna Nupson dated October 11, 2002.

9. Rosenfield's October 11, 2002 letter stated: "you are each aware that in the past we have represented each of you individually in estate planning matters and various trusts of which you are trustees and beneficiaries-- although in this matter John is being represented by Larry Laubach of Cozen O'Connor." *See* **Exhibit 6.**

10. Rosenfield's October 11, 2002 letter stated: "We believe that Rule 1.7 [of the Rules of Professional Conduct] does not preclude us from representing either and both of Fran and Plaintiff in this matter and that the criteria of Rule 1.7(a) are satisfied, provided that we obtain the consent of each of you." *See* **Exhibit 6.**

11. Rosenfield admits that Frances forbid him from revealing the history of the GRAT including the oral GRAT, the written GRAT being backdated to February 1, 2001 and further admits that when structuring a GRAT "I often try to get as low a number as possible." *See* **Exhibit 1**, Rosenfield Deposition, p. . 71, ll. 6 -20, p. 182, ll. 19 – 23, p. 245, ll. 10 – 20.

12. Rosenfield jointly represented Plaintiff and Frances in connection with the family dispute, which culminated in a Settlement Agreement dated February 20, 2003 ("2003 MSA"). *See* **Exhibit 7**, 2003 MSA.

13. John's position that the Original GRAT was an existing and enforceable trust gave him significant leverage in the negotiations to demand, among other things, that Plaintiff sell her interests in BHI. See **Exhibit 1**, Rosenfield Deposition pp. 174, l. 18- p.175, l. 6, p. 231, ll. 14-24.

14. Rosenfield knew that John would not agree to a three-way split of Frances's Bradford stock held in the Original GRAT unless there was also an agreement by Lucia and Plaintiff to sell all of their Bradford shares to him or to Bradford. See **Exhibit 8**, Arias Deposition, p. 22, l. 15-22; p. 38, l. 21 - 23.

15. Under the 2003 MSA, Bradford purchased all of the outstanding shares held by all family members (except for John and shares for the benefit of his children), including all of the shares held by Plaintiff's 1994 Trust ("1994 Anna Trust"), all of the shares held by Lucia, and all of the shares held by the GRAT. As a result, John and his family became the sole owners of Bradford. See **Exhibit 7**, 2003 MSA.

16. Rosenfield believed it would have been a "stupid" option for Plaintiff not to agree to the 2003 MSA because if she did not agree then she would not receive a one-third interest in Frances' GRAT. See **Exhibit 1**, Rosenfield Deposition, p. 180, ll. 11 - 21.

### III. SUMMARY JUDGMENT STANDARD

Parties may move for summary judgment on any claim or defense in the case, and the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A party moving for summary judgment bears the initial burden of informing the district court of the basis for its argument that there is no genuine issue of material fact by "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material

fact." *Delibertis v. Pottstown Hosp. Co.*, 152 F.Supp.3d 394 (E.D. Pa. 2016); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). If the moving party meets this initial burden, Rule 56 then obliges the non-moving party to show, via submissions beyond the pleadings, that genuine factual issues exist for trial. *Celotex Corp.* at 324.

A. <u>**Rosenfield owed Plaintiff a fiduciary duty of undivided loyalty.**</u>

It is well settled Pennsylvania law (and it is the law throughout the United States) that the relationship between a lawyer and a client is a fiduciary relationship. As the Pennsylvania Supreme Court held in *Maritrans GP Inc. v. Pepper, Hamilton & Scheetz,* 529 Pa. 241, 247, 602 A.2d 1277, 1283 (1992): "[O]ur common law imposes on attorneys the status of fiduciaries vis a vis their clients; that is, attorneys are bound, at law, to perform their fiduciary duties properly. Failure to so perform gives rise to a cause of action." See also *McCown v. Fraser*, 327 Pa. 561, 192 A. 674, 676–77 (1937) (in some types of relationships, a fiduciary duty exists as a matter of law. Principal and agent, trustee and cestui que trust, attorney and client, guardian and ward, and partners are recognized examples); *In re Oxman*, 496 Pa. 534, 545, 437 A.2d 1169, 1174, (Pa. 1981) ("The attorney ... is a fiduciary, a confidant, an advisor, and an advocate....").

In holding that a lawyer owes a fiduciary duty to his client, the Pennsylvania Supreme Court in *Maritrans* described the lawyer's duty as one of undivided loyalty, the breach of which is actionable and prohibits the lawyer from engaging in conduct involving a conflict of interest. *Id*. at 1282 - 1283 ("[A]t common law, an attorney owes a fiduciary duty to his client; such duty demands undivided loyalty and prohibits the attorney from engaging in conflicts of interest, and breach of such duty is actionable) (citing *Stockton v. Ford,* 52 U.S. (11 How.) 232, 13 L.Ed. 676

(1850); *Woods v. City Nat'l. Bank & Trust Co.*, 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820 (1941); *T.C. Theatre Corp. v. Warner Bros. Pictures, Inc.*, 113 F.Supp. 265 (S.D.N.Y.1953)). The *Maritrans* court further emphasized both the rigor and significance of the lawyer's fiduciary duty, quoting with approval the United States Supreme Court decision in *Stockton,* 52 U.S. (11 How.) at 247:

> There are few of the business relations of life involving a higher trust and confidence than those of attorney and client or, generally speaking, one more honorably and faithfully discharged; few more anxiously guarded by the law, or governed by sterner principles of morality and justice; and it is the duty of the court to administer them in a corresponding spirit, and to be watchful and industrious, to see that confidence thus reposed shall not be used to the detriment or prejudice of the rights of the party bestowing it.

Id. at 1283.

A lawyer's fiduciary duty to his client requires that he "act with scrupulous fairness and good faith in his dealings with the other and refrain from using his position to the other's detriment and his own advantage." *See, e.g., Yenchi v. Ameriprise Fin., Inc.*, 161 A.3d 811, 820 (2017); *Young v. Kaye* , 443 Pa. 335, 279 A.2d 759, 763 (1971) ("When the relationship between persons is one of trust and confidence, the party in whom the trust and confidence are reposed must act with scrupulous fairness and good faith in his dealings with the other and refrain from using his position to the other's detriment and his own advantage."); *Silvester v. Beck*, 406 Pa. 607, 178 A.2d 755, 757 (1962); *Basile v. H & R Block, Inc.*, 777 A.2d 95, 101 (Pa. Super. 2001)(duty of loyalty arising when one occupies toward another such a position of advisor or counselor requires acting in good faith for the other's interest) (citing *Brooks v. Conston*, 51 A.2d 684, 688 (1947)); *McCown,* 327 Pa. 561, 192 A. 674; *Null's Estate*, 302 Pa. 64, 153 A. 137 (1930); *Popovitch v. Kasperlik*, 70 F.Supp. 376 (W.D.Pa.1947). Recognizing the importance of preserving the integrity

7

of the attorney-client relationship, the courts impose civil liability on attorneys for breaches of their fiduciary duties arising out of conflicts of interest. *Maritrans* at 246-247, 1282-1283.

*Maritrans* stands on all fours with the present case, and this Court need look no further to determine that Defendants breached their fiduciary duty to Plaintiff. In *Maritrans,* as here, the defendant lawyers undertook to represent a client, Maritrans, a Philadelphia-based petroleum transport company. During the course of the representation, the lawyers became intimately familiar with their client's financial goals, projections, and costs, and analyses of competitor businesses. *Id.* at 244, 1280. The same lawyers undertook representation of various competitor companies, adverse to their client. In finding the lawyers liable for breach of their fiduciary duties to Maritrans, the Pennsylvania Supreme Court unequivocally held that a lawyer's fiduciary duty of loyalty to his or her client, by its very definition, does not permit conflicts of interest. *Id*. at 247, 1283.

Here, Rosenfield undertook to represent Plaintiff and Frances in negotiating the family settlement agreement and modification of Frances' GRAT instrument. Rosenfield knew that his representation of Frances in forming the GRAT meant that he was materially limited in his representation of Plaintiff. Rosenfield knew that he owed a duty of loyalty to Frances first and, without Frances' agreement, he could not share with Plaintiff information that was absolutely material to her negotiating power in the family settlement agreement. Yet, Rosenfield agreed to represent Plaintiff anyway. In doing so, Rosenfield breached his duty to Plaintiff because he kept from her material information about the formation and execution of Frances' GRAT.

1. <u>Rosenfield failed to inform Plaintiff of the material limitations to his representation.</u>

Rosenfield owed a duty of loyalty to Plaintiff throughout the negotiations of the family settlement agreement. As Plaintiff's lawyer, Rosenfield was charged with an obligation to zealously advocate for Plaintiff during the negotiations. Upon John's insistence that he would not agree to any modification of Frances' GRAT unless Plaintiff agreed to sell her interests in BHI, Rosenfield was met with a conflict between John and Plaintiff. Further, Frances' insistence that Rosenfield not share with Plaintiff any information surrounding the formation of the GRAT also created a conflict for Rosenfield. Yet Rosenfield, who was simultaneously bound by his duties owed to Frances and John, undertook to represent Plaintiff.

In agreeing to represent Plaintiff in the family settlement negotiations, Rosenfield was required to inform and counsel Plaintiff in all of the material limitations on his representation. Rosenfield did no such thing. Instead, Rosenfield drafted and dispersed a letter to John, Frances, and Plaintiff stating "that Rule 1.7 [of the Rules of Professional Conduct] does not preclude [Rosenfield and Schnader] from representing either and both of Fran and Plaintiff in this matter." *See* **Exhibit 6**. Rosenfield and Schnader disclosed to Plaintiff their prior representation of John and Frances in their October 11, 2002, letter. However, there is no dispute that Defendants failed to disclose the limitations that were placed on their representation of Plaintiff. As in *Maritrans*, these conflicts of interest were in breach of Rosenfield's duty of loyalty to Plaintiff.

    2.    <u>The information that Rosenfield withheld from Plaintiff was material to her negotiating position.</u>

The presumption that the Frances' GRAT was an existing and enforceable trust gave John significant leverage in the negotiations to demand, among other things, that Plaintiff sell her interests in BHI. *See* SOF ¶7; **Exhibit 1**, Rosenfield Deposition pp. 174, l. 18- p.175, l. 6, p. 231, ll.

9

14-24. Unbeknownst to Plaintiff, Frances forbid Rosenfield from sharing any information with Plaintiff surrounding the formation and planning of the GRAT. *See* SOF 11. Thus, Rosenfield was unable to advise Plaintiff of material information necessary to her negotiating position including but not limited to: that he (1) formed an oral GRAT without ensuring the corpus was moved into the trust; (2) failed to determine the GRAT's remainder terms at formation; and (3) backdated the GRAT transaction to February 1, 2001. These facts would have placed his other client, Frances, and her GRAT, in possible jeopardy. *See* SOF ¶¶ 4 and 5, Exhibit 1, Rosenfield Deposition, Exhibit 1, p. 112, lines 6-24, p. 101, lines 1- 7, p. 239, ll. 1 - 14. However, the facts would have enhanced Plaintiff's negotiating power during the family settlement agreement.

      Any loyal attorney representing Plaintiff in the family settlement negotiations would have instinctively explored ways to challenge and undermine the leverage held by the opposing party in the negotiations - beginning with questioning the formation of the GRAT. The obvious possible basis for challenging the GRAT included its origin as an "oral GRAT," its remainder terms, the corpus of the trust, the backdating of the signatures, and the initial claims of "undue influence" asserted by Lucia. *See* SOF ¶¶ 2, 3, 4, 5, and 6. Instead, Rosenfield ignored the material limitations on his representation by insisting on the excuse that it would have been a "stupid" option for Plaintiff not to agree to the 2003 MSA because if she did not agree to the MSA, then she would not receive a one-third interest in Frances' GRAT. *See* **Exhibit 1**, Rosenfield Deposition, p. 180, ll. 11 - 21.

      It is undisputed by the parties that Rosenfield was bound by confidentiality and privilege owed to Frances and John with regards to the planning and formation of Frances' GRAT. It is further undisputed that Rosenfield's confidential relationship with Frances and John barred his

ability to share information surrounding the planning and formation of Frances' GRAT with Plaintiff. Upon his agreement to represent Plaintiff in the negotiation of the family settlement, Rosenfield owed an undivided duty of loyalty to Plaintiff. As part of his representation of Plaintiff, Rosenfield was charged with the position to zealously advocate for Plaintiff during the negotiation of the family settlement agreement. Rosenfield was unable to fulfill his duty of loyalty owed to Plaintiff because he failed to inform her of the material limitations placed on his representation by Frances and John.

## IV. CONCLUSION

Rosenfield's conduct in this case constitutes a breach of their fiduciary duty to Plaintiff and he and Schnader are liable for his misconduct. *See, e.g., Maritrans* at 529 Pa. at 246-247, 602 A.2d at 1282-1283 (fiduciary who breaches his duty of loyalty to his principal is liable to his principal); *see also, Airgas Inc. v. Cravath, Swaine & Moore, LLP,* 2010 WL 3046586 at *4 (E.D. Pa. 2010) (law firm liable for breach of fiduciary duty to client because of simultaneous and secret representation of another party whose interests were directly adverse). Plaintiff requests this Court grant Plaintiff's Motion for Partial Summary Judgment and find as a matter of law that Defendants are liable for breach of fiduciary duty, with causation and damages to be determined by the jury at trial.

Dated: February 14, 2022	Respectfully submitted,

/s/ Ben Davis
Ben Davis
Davis Kelin Law Firm, LLC
127 Bryn Mawr Dr., SE
Albuquerque, NM 87106
Tel: (505) 242-7200
Fax: (505) 213-3399
bdavis@daviskelin.com

Courtney Johnson Vidales
Mucci Law Firm
PO Box 6908
Albuquerque, NM 87197
Tel: (505)247-2211
courtney@muccilaw.com

Justin R. Kaufman
Durham, Pittard & Spalding, LLP
505 Cerrillos Rd., Suite A209
Santa Fe, NM 87501
Tel: (505) 986-0600
Fax: (505)986-0632
jkaufman@dpslawgroup.com

Brian A. Gordon
Gordon & Ashworth, P.C.
One Belmont Ave., Suite 519
Bala Cynwyd, PA 19004
Tel: (610) 667-4500
Briangordon249@gmail.com

***Attorneys for Plaintiff***

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and complete copy of the foregoing instrument was served on all counsel via the ECF system on this the 14th day of February 2022.

___*/s/ Ben Davis*___

Ben Davis