IN THE UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANNA K. NUPSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 2:18-cv-02505-NIQA |
| | ) |
| SCHNADER HARRISON SEGAL | ) |
| & LEWIS, LLP, and BRUCE A. | ) |
| ROSENFIELD, ESQ., | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S MOTION FOR RULE 37(c)(1) SANCTIONS
TO EXLUDE THE REPORT OF DEFENDANTS' EXPERT WITNESS JOHN FENN
AND MOTION FOR AN ORDER TO SHOW CAUSE**

Plaintiff Anna K. Nupson, through undersigned counsel, and pursuant to Federal Rule of Civile Procedure 37(c)(1), requests the Court enter an order excluding Defendants' expert witness John Fenn for Defendants' failure to disclose information required under Rule 26(a)(2)(B)(ii) and 34(a) and for a motion for an order to show cause as to why Defendants failed to supplement their discovery responses to produce the responsive documents. In support of her Motion, Plaintiff states:

**I.     INTRODUCTION**

Defendants have disclosed expert witness reports stating opinions based on documents and information not previously produced to Plaintiff in this matter. Following Plaintiff's discovery of the undisclosed documents, Plaintiff requested copies for her expert's review in rebuttal of Defendants' expert witness opinions. Defendants produced the specific documents upon Plaintiff's request. Now, Defendants claim the documents were "inadvertently produced" and demand that Plaintiff immediately return or destroy the documents. Yet, Defendants' expert witness

1

reports continue to identify and rely upon the same or similar documents and information Defendants demand that Plaintiff return or destroy.

Even more alarming is how Defendants came into possession of these previously undisclosed documents. Defendants have stated before this Court that "Defendants provided all their hardcopy documents concerning their representation of Middleton Family Businesses and Middleton family members (other than Plaintiff) to counsel for John S. Middleton in connection with the Orphans' Court litigation between Plaintiff and John S. Middleton." *See* **Exhibit A,** Defendants' Responses and Objections to Plaintiff's Third Set of Requests for Admissions and Requests for Production.

Defendants' position has consistently been that they produced all documents to Anna Nupson and John Middleton during the Orphans' Court litigation[1] and that Defendants did not maintain any copies of the same documents. In fact, when issuing her Memorandum Opinion on Plaintiff's Motion to Compel, Magistrate Judge Lynne Sitarski relied on Defendants' representations that they did not have any documents to produce in response to Plaintiff's discovery requests. *See* Doc 194, at 9-10. However, it is apparent now that Defendants have been less than forth coming to Plaintiff and this Court about what documents are in their possession.

After receiving the documents in question, Plaintiff inquired as to how Defendants came into possession of these newly discovered documents. Defendants' counsel informed Plaintiff that Defendant Schnader retains a document database where these documents (and likely others) are stored and can be accessed by Schnader and their attorneys. Defendants conducted a search for documents for their expert witnesses and the previously undisclosed documents were retrieved

---

[1] The "Orphans Court Litigation" refers to an action brought by Ms. Nupson and her brother, John Middleton in the Montgomery County Orphans' Court where claims related to various family trusts and estates were litigated resulting in settlement in 2018.

and provided to their experts. Defendants should not be permitted to deny Plaintiff the ability to review, analyze, and rebut the materials used by Defendants' experts in drafting their reports and opinions. Plaintiffs should be afforded the same opportunity to review the documents that Defendants have reviewed in preparation of their defenses in this matter and all materials that Defendants have provided their expert witnesses.

Additionally, Defendants state that in preparing their expert witness reports, Defendants requested one of the documents in question from John Middleton ("John") who willingly provided it to Defendants. Yet, Plaintiff was not provided the document until it was brought to Defendants' attention that it had not been produced. Plaintiff should have been provided a copy of the same documents as they are responsive to Plaintiff's discovery requests served on Defendants and Plaintiff's subpoena issued on Blank Rome, John's counsel. During discovery in this matter Plaintiff subpoenaed documents from John by way of his counsel Blank Rome. John and Blank Rome refused to produce any responsive documents claiming they were protected by privilege. However, now after discovery has closed in this action, John has apparently willingly provided Defendants copies of the same documents for Defendants' experts to use in rebuttal of Plaintiff's expert witness reports, at a stage in the case when Plaintiff has no ability to respond or to otherwise discover this crucial information.

Defendants and John Middleton appear to have engaged in improper gamesmanship by exchanging and withholding documents from Plaintiff until a time at which it suits their needs. Defendants' acts to conceal documents from Plaintiff in this matter and other state court actions is becoming regular pattern and practice and should be sanctioned by this Court. Plaintiff requests this Court enter an order of sanctions on Defendants by striking their expert witness report of John Fenn and excluding his testimony at any hearing, deposition, and/or trial in this matter.

3

Further, Plaintiff requests this Court issue an order (1) to show cause as to why Defendants failed to supplement their discovery responses and their disclosures required under Rule 26(a)(1)(A) and (2) to compel Defendants to produce all documents withheld from Plaintiff which are located in their database.

## II. BACKGROUND FACTS

On February 10, 2020, Defendants served their Responses and Objections to Plaintiff's Third Set of Requests for Admissions and Requests for Production. *See* **Exhibit A.** Plaintiff's request for production number 36 requested Defendants "Produce all documents regarding any change(s), reassignment(s), redemption(s), gift or transfer(s) of any Class A, Class B, and or First Preferred stock ownership amount or interest percentage of G.W. Hunter, Inc., Bradford Holdings, Inc., and all other Middleton Family Businesses from January 1, 1987, to March 1, 2008." *See* **Exhibit A**. Defendants objected to the request, stating "Defendants provided all their hard-copy documents concerning their representation of Middleton Family Businesses and Middleton family members (other than Plaintiff) to counsel for John S. Middleton in connection with the Orphans' Court litigation between Plaintiff and John S. Middleton." *See* **Exhibit A**. Defendants did not produce any documents responsive to Plaintiff's request for production number 36.

Based on Defendants' discovery responses, on July 7, 2020, Plaintiff issued a Subpoena for the Production of Documents on John Middleton's counsel, Blank Rome. The Subpoena requested "All documents, files, communications, letters, notes, emails, messages, reports, memorandum, and any other information not previously produced in the Orphans' Court Litigation regarding Robert Siwicki, Fleet M&A Advisors, and Howard Lawson during the time frame between 1995 to 2003, specifically the items listed on Attachment A-1." *See* **Exhibit B**, at Attachment A. John Middleton and his counsel, Blank Rome, objected to Plaintiff's subpoena and

refused to produce any responsive documents stating they were protected by the attorney-client privilege and work product doctrine.[2] Additionally, John and Blank Rome stated that Plaintiff's discovery efforts in this action were in violation of a 2018 Settlement Agreement between John and Plaintiff which settled their claims brought in the Orphans' Court litigation. Recently, John has filed an action in Pennsylvania state court against Anna Nupson, the Plaintiff in this action, claiming her discovery efforts in this matter allegedly violate the 2018 Settlement Agreement. *See* **Exhibit C,** Complaint by John Middleton for Breach of Contract.

On January 14, 2022, Defendants produced their expert witness disclosures to Plaintiff. Among the disclosures was an expert report of John Fenn. *See* **Exhibit D**. Mr. Fenn's report contained opinions regarding the corporate valuations of Bradford Holdings, Inc. ("BHI") and purports to "review the damages calculations and conclusions." *See* **Exhibit D**, at 5 ("the Fenn Report"). Appendix B of the Fenn Report lists the "sources of information" that Fenn "considered…when preparing this report." *See* **Exhibit D**, at 63. The list includes documents not produced to Plaintiff in discovery, specifically document 2 ("2001 BHI Phillies Valuation") and document 152 ("BHI Projections provided by management").

In addition to the expert report of John Fenn, Defendants also produced an expert witness report of Pam Schneider. *See* **Exhibit E** ("the Schneider Report"). The Schneider Report also lists the materials she reviewed in preparing her report. *See* **Exhibit E**, Appendix B. The Schneider Report identified additional documents not produced to Plaintiff in discovery, specifically document 16 ("Valuation of a Minority Block of the Non-Voting Common Stock of Bradford

---

[2] Plaintiff filed a Motion to Compel documents from Blank Rome and John Middleton, but this Court denied Plaintiff's Motion finding the document requests were protected under the attorney-client privilege and work product doctrine.

Holdings, Inc. as of March 3, 2003, dated June 21, 2004") and document 27 ("Letter from Larry P. Laubach to Bruce A. Rosenfield dated April 5, 2002 with "Valuation Analysis of the Assets of Bradford Holdings Inc." enclosed (unlabeled)"). *See* **Exhibit E**, Appendix B, at 5-6.

On January 18, 2022, Plaintiff's counsel requested from Defendants copies of specific documents listed on Mr. Fenn's report that Plaintiff could not identify in the various document productions in this case. *See* **Exhibit F**. On January 20, 2022, Defendants' counsel provided copies of the requested documents. *See* **Exhibit G**. Upon reviewing the documents, Plaintiff's counsel could not locate several documents produced in response to Plaintiff's discovery requests, or by third-party John Middleton in response to Plaintiff's subpoena to his counsel, Blank Rome. On January 26, 2022, Plaintiff's counsel requested the Bates Numbers for documents 2 and 152 of the Fenn Report and requested additional documents identified in the Schneider Report. *See* **Exhibit H**. Defendants' counsel responded on the same day, providing copies of the requested documents with new Bates Numbers. *See* **Exhibit I**. On January 27, 2022, Plaintiff's counsel again requested the Bates Numbers assigned during discovery production for the identified documents (*see* **Exhibit J**), but the following day, January 28, 2022, Plaintiff's request was met with Defendants' claim that the documents were inadvertently produced. *See* **Exhibit K**. Defendants demanded that Plaintiff return or destroy the documents immediately but failed to account that their expert witnesses relied on the same documents and information in forming their opinions and reports. Consistent with Rule 26 and Defendants' request to "claw back" the documents Defendants produced outside of the discovery period, Plaintiff has sequestered the documents and has retrieved the documents from her experts, thus effectively preventing Plaintiff from analyzing documents Defendants have analyzed in support of their defenses until the Court rules on the issue.

On February 7, 2022, counsel for Plaintiff and Defendants held a phone conference where it was revealed that Defendants maintain a document cache containing the documents in question, and likely others, which allows Defendants and their attorneys access to review and utilize in this matter. *See* **Exhibit L**. Clearly, Defendants and their counsel are accessing and reviewing relevant documents that they have not produced to Plaintiff, but more concerning is that they are providing the same documents to their expert witnesses in support of their defenses in this matter and not providing Plaintiff with the same highly relevant and discoverable information.

Plaintiff brings this matter before the Court and requests the Court issue an order of sanctions on Defendants by striking their expert witness report of John Fenn and excluding his testimony at any hearing, deposition, and/or trial in this matter. Additionally, Plaintiff requests this Court issue an order to show cause as to why Defendants failed to supplement their discovery responses to produce the documents responsive to her discovery requests.

### III. ARGUMENT AND AUTHORITIES

Rule 37 of the Federal Rules of Civil Procedure "clearly contemplate[s] the exclusion of untimely or improper expert disclosures (and the concomitant exclusion of expert testimony)" as an available sanction for a party's failure to comply with the rules of discovery or pretrial orders. *Sheetz v. Wal-Mart Stores, E., L.P.,* 4:15-CV-02210, 2017 WL 5625768, at *2–3 (M.D. Pa. Nov. 22, 2017) (*citing Withrow v. Spears*, 967 F. Supp. 2d 982, 1000 (D. Del. 2013); Fed. R. Civ. P. 37). Specifically, Rule 37(c) provides, in relevant part:

> (1) If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at hearing, or at trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> (B) may inform the jury of the party's failure; and
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1)(A)-(C).

Courts in this Circuit have defined "substantial justification" as "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request. The test of substantial justification is satisfied if there exists a genuine dispute concerning compliance." *Grider v. Keystone Health Plan Cent., Inc.,* 580 F.3d 119 (3d Cir. 2009) (quoting *Tolerico v. Home Depot*, 205 F.R.D. 169, 175-176 (M.D. Pa. 2002)). A "harmless" failure "involves an honest mistake, coupled with sufficient knowledge by the other party of the material that has not been produced." *Tolerico*, 205 F.R.D. at 176. "The non-producing party shoulders the burden of proving substantial justification for its conduct or that the failure to produce was harmless." *Id*. at 175.

The imposition of sanctions for discovery violations described in Rule 37 that are neither substantially justified nor harmless is a matter consigned to the trial court's discretion and "will not be disturbed on appeal absent a clear abuse of discretion." *Konstantopoulos v. Westvaco Corp.,* 112 F.3d 710, 719 (3d Cir. 1997) (quoting *Semper v. Santos*, 845 F.2d 1233, 1238 (3d Cir. 1988)).

Four factors inform the district court's exercise of its discretion in determining whether trial counsel's failure to adhere to pretrial expert disclosure requirements warrants the extreme sanction of exclusion of testimony at trial: (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt

the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the court's order. *Meyers v. Pennypack Woods Home Ownership Assn.,* 559 F.2d 894, 904–05 (3d Cir. 1977), *overruled on other grounds by Goodman v. Lukens Steel Co.,* 777 F.2d 113 (3d Cir. 1985), *aff'd*, 482 U.S. 656 (1987).

A. **Defendants' acts to withhold discovery from Plaintiff should be sanctioned by excluding the Fenn Report.**

Defendants have engaged in a pattern of withholding documents from Plaintiff. This behavior does not come as a shock to Plaintiff since her claims in this matter are premised on Defendants' acts of withholding information and documents during Rosenfield and Schnader's representation of Plaintiff in 2002. This case has been marked by contentious periods of discovery. Plaintiff has come before this Court at multiple times throughout discovery to seek the Court's assistance in obtaining documents from Defendants (*e.g.* Defendants were ordered to produce documents from their privilege log that were not protected by the work product doctrine (*see* Doc. 194); Defendants were ordered to produce trust administration documents to Plaintiff following Plaintiff's multiple requests (*see* Doc. 194); Defendants failed to comply with the clear directives of this Court's Order and refused to withdraw their claims of privilege and produce documents as ordered by the Court (*see* Docs. 215 and 231); Defendants were ordered to produce additional documents that they previously represented to this Court were protected by privilege, but Plaintiff discovered at Defendant Rosenfield's deposition that the documents were not protected by privilege (see Docs. 217 and 230)).

It has now been revealed that Defendants are again wrongfully withholding documents from Plaintiff and violating the discovery rules. Defendants' expert witness disclosures revealed highly relevant and discoverable documents that were not previously turned over to Plaintiff in discovery: (1) "2001 BHI Phillies Valuation"; (2) "BHI Projections provided by management";

9

(3) "Valuation of a Minority Block of the Non-Voting Common Stock of Bradford Holdings, Inc. as of March 3, 2003, dated June 21, 2004"; (4) "Letter from Larry P. Laubach to Bruce A. Rosenfield dated April 5, 2002 with "Valuation Analysis of the Assets of Bradford Holdings Inc." enclosed (unlabeled)"). *See* **Exhibit D**, at 63 and **Exhibit E**, Appendix B, at 5-6.

These documents are responsive to Plaintiff's request for production number 36 and/or Plaintiff's Subpoena to Blank Rome. *See* **Exhibit A,** at 32 and **Exhibit B**, at Attachment A.[3] Additionally, Defendants are required under Rule 26(a)(1)(A) to supplement these documents without awaiting a discovery request. Defendants supplied these documents to their expert witnesses in support of their defenses in this case, and yet failed to provide Plaintiff with the same.

Further, these documents are critically important to Plaintiff's claims in this matter. All four documents contain financial data and valuation analyses for Bradford Holdings Inc., the closely held family company in which Plaintiff held shares and then sold those shares, as advised by Defendant Rosenfield, for consideration exchanged in a 2003 transaction. Specifically, the BHI Projections provided by management is the main document that Defendants' expert John Fenn based his valuation analyses on to complete valuation calculations and form his opinions in this matter. The document titled "Valuation of a Minority Block of the Non-Voting Common Stock of Bradford Holdings, Inc. as of March 3, 2003, dated June 21, 2004" is a valuation completed for BHI stock for a date of March 3, 2003, approximately three days after Plaintiff sold her shares in BHI. *See* **Exhibit M** (Filed under seal). This document would have been important during discovery in this matter and would have been key at depositions of Bruce Rosenfield,

---

[3]    Plaintiff's Subpoena to Blank Rome defines the word "document" as "financial statement" and "business record". *See* **Exhibit B**, at Attachment A. The document titled "BHI Projections provided by management" meets the definition of document because it is a statement of financial projections for the business, Bradford Holdings, Inc.

Robert Siwicki, John Stine, and Larry Laubach to question each of them on an explosive increase in value reported for BHI shares just three days after Plaintiff sold her interests in BHI. The 2003 valuation is highly relevant to Plaintiff's claims in this action because it speaks to the measure of damages caused by Defendants' failure to negotiate on behalf of Plaintiff and failure to provide Plaintiff all of the necessary information before entering the 2003 transaction selling all of her interest in BHI.

Additionally, the documents titled "Letter from Larry P. Laubach to Bruce A. Rosenfield dated April 5, 2002 with Valuation Analysis of the Assets of Bradford Holdings Inc." (**Exhibit N** (filed under seal)) and "2001 Phillies Valuation"[4] (**Exhibit O** (filed under seal)) were specifically identified in the attachment to Plaintiff's Subpoena to Blank Rome and Plaintiff requested John and his counsel produce the document. *See* **Exhibit B**, at 5 of Attachment A-1. John and his counsel refused to produce this document and any other documents to Plaintiff, stating the document was protected by attorney client privilege. John sought the protection of this Court to prevent the documents from disclosure and this Court entered an Order denying Plaintiff's Motion to Compel. *See* Doc. 238. Thus, it is concerning to Plaintiff how Defendants came into possession of this document because John refused its production and Defendants represented to this Court and to Plaintiff that they had no documents in their possession regarding the Middleton Family or any of the Middleton Family businesses (including BHI) and that Defendants produced all documents in their possession to John Middleton and Plaintiff during the Orphans' Court matter.

---

[4] Both of these documents identified as the "Letter from Larry P. Laubach to Bruce A. Rosenfield dated April 5, 2002 with Valuation Analysis of the Assets of Bradford Holdings Inc." and "2001 Phillies Valuation" appear to be the same exact document, except with the former containing a cover page shared between Larry Laubach and Bruce Rosenfield.

11

*See* **Exhibit A,** at 32. Additionally, if Defendants received these documents back from John Middleton, then they have an ongoing duty to supplement their discovery answers.

In the case of *Styer v. Frito-Lay, Inc.,* 1:13-CV-833, 2015 WL 1243423, (M.D. Pa. Mar. 18, 2015), the Court was presented with similar issues regarding a party's withholding of discovery. The *Styer* court ordered the withholding party's expert witness be stricken and stated as follows:

> [W]e find that this practice ignores the cardinal principles that should govern federal discovery practice. The hallmarks of discovery in federal court are, and should be, openness, transparency, and candor. Gamesmanship, ambush, surprise, and concealment have no place in federal practice. Here, we find that the course of expert witness disclosure in this case has been antithetical to the guiding principles which animate discovery in federal court, and this practice should not be endorsed or approved by this court.

*Styer,* 1:13-CV-833, 2015 WL 1243423, at *5 (M.D. Pa. Mar. 18, 2015).

Defendants have engaged in a pattern of discovery abuse through their acts of withholding documents, mislabeling their privilege log, refusing to follow this Court's Orders regarding discovery productions, and asserting inappropriate claims of privilege when it best suits their needs. Now, in response to Plaintiff's expert witness disclosures, Defendants provided their experts with documents they claimed they did not have in their possession; documents never provided to Plaintiff. Defendants should not be permitted to withhold documents and then rely on them to rebut Plaintiff's expert witness reports, and then move to "claw back" the same documents in an attempt to deny Plaintiff the ability to review, analyze, and rebut the materials used by Defendants' experts in drafting their reports and opinions. It is clear that in an effort to rebut Plaintiff's expert witness reports, Defendants and intervenor John Middleton have engaged in inappropriate discovery gamesmanship by sharing amongst themselves documents that were never provided to Plaintiff.

Further, in 2018, Plaintiff and John Middleton entered into a settlement agreement which effectively ended litigation between the parties in an action brought before the Pennsylvania Orphans' Court. As a term of this agreement, John and Ms. Nupson "agreed that John shall not object to or interfere, directly or indirectly, with Anna's exercise of her rights under the 2001 GRAT fbo Anna, or with the administration of the 2001 GRAT fbo Anna." *See* **Exhibit Q**, at 23, ¶ II(C)(2). However, it appears that either Defendants have misrepresented what documents are in their possession or John has supplied Defendants with evidence in an effort to rebut Plaintiff's expert witness reports. Either way, Defendants have acted inappropriately and should be sanctioned for their misconduct.

Defendants should be sanctioned by this Court for withholding documents from Plaintiff that their experts used in forming their opinions. Plaintiff requests the Court issue an order of sanctions on Defendants by striking the Fenn Report and excluding his testimony at any hearing, deposition, and/or trial in this matter.

**B.     Defendants should be ordered to show cause for their failure to supplement their discovery responses.**

Pursuant to Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> (B) may inform the jury of the party's failure; and
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)."

Defendants failed to supplement their discovery responses and provide key information for Plaintiff's expert witnesses in violation of Rule 37(c)(1) and Rule 26(a)(2)(B)(ii) by failing to provide "the facts or data considered by the [expert] witness in forming [their opinion reports]".

Plaintiff's request for production number 36 requested Defendants "Produce all documents regarding any change(s), reassignment(s), redemption(s), gift or transfer(s) of any Class A, Class B, and or First Preferred stock ownership amount or interest percentage of G.W. Hunter, Inc., Bradford Holdings, Inc., and all other Middleton Family Businesses from January 1, 1987, to March 1, 2008." *See* **Exhibit A,** at 32. Defendants objected to the request stating, "Defendants provided all their hardcopy documents concerning their representation of Middleton Family Businesses and Middleton family members (other than Plaintiff) to counsel for John S. Middleton in connection with the Orphans' Court litigation between Plaintiff and John S. Middleton." *See* **Exhibit A,** at 32. Although now it is clear Defendants had documents responsive to this request, Defendants did not produce any documents in response to Plaintiff's request for production number 36. Three of the four documents that Defendants had in their possession but failed to produce are responsive to Plaintiff's discovery requests: "2001 BHI Phillies Valuation", "Valuation of a Minority Block of the Non-Voting Common Stock of Bradford Holdings, Inc. as of March 3, 2003, dated June 21, 2004"; "Letter from Larry P. Laubach to Bruce A. Rosenfield dated April 5, 2002 with "Valuation Analysis of the Assets of Bradford Holdings Inc." enclosed (unlabeled)"). These documents are valuations of BHI stock and were "to be used for gift and estate tax planning" purposes. *See* **Exhibit M,** at 1, Valuation of a Minority Block of the Non-Voting Common Stock of Bradford Holdings, Inc. as of March 3, 2003, dated June 21, 2004. The remaining document ("BHI Projections provided by management") is a one-page document of BHI projections

that appears to be directly pulled from the March 3, 2003, Valuation as identified above. *See* **Exhibit P**.

Additionally, Rule 26(a)(1)(A) requires that Defendants "without awaiting a discovery request, provide to the other parties… (ii) a copy--or a description by category and location--of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." Because Defendants provided these documents to their expert witnesses and their witnesses relied upon them to form opinions regarding Defendants' defenses in this matter, Defendants are required under the Federal Rules of Civil Procedure to provide them to Plaintiff.

Defendants failed to provide these documents to Plaintiff until Plaintiff identified them on Defendants' expert witness reports and notified Defendants that they were not previously turned over. These documents would have been important during discovery in this matter and would have been key at depositions of Bruce Rosenfield, Robert Siwicki, John Stine, and Larry Laubach to question each of them on explosive increase in value reported for BHI shares just three days after Plaintiff sold her interests in BHI.

Plaintiff requests this Court issue an order to show cause as to why Defendants failed to supplement their discovery requests and produce documents required under Rule 26(a)(1)(A(ii).

**C.     Defendants' production of the identified documents was purposeful and intentional, not inadvertent or accidental.**

Defendants demand the return or destruction of three of the four identified documents: (1) "2001 BHI Phillies Valuation"; (2) "Valuation of a Minority Block of the Non-Voting Common Stock of Bradford Holdings, Inc. as of March 3, 2003, dated June 21, 2004"; and (3) "Letter from

Larry P. Laubach to Bruce A. Rosenfield dated April 5, 2002 with "Valuation Analysis of the Assets of Bradford Holdings Inc." See **Exhibit K**.

When a party asserts documents have been inadvertently disclosed, a two-step analysis must be followed. *See, e.g., Rhoades v. YWCA,* No. 09–261, 2009 WL 3319820, at *2, 2009 U.S. Dist. LEXIS 95486, at *5–6 (W.D.Pa. Oct. 14, 2009). First, the court must determine whether the documents at issue are privileged. *See, e.g., id.* Second, the court must determine whether the three elements of Federal Rule of Evidence 502(b) are met, absent which a waiver of the privilege occurs. *See, e.g., id.* Pursuant to Federal Rule of Evidence 502(b), inadvertent disclosure does not operate as a waiver of the attorney-client privilege or work-product protection in a federal proceeding if "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent the disclosure; and (3) the holder promptly took reasonably steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)." Federal Rule of Civil Procedure 26(b)(5)(B) provides as follows:

> Information Produced. If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

The disclosing party has the burden to prove that the elements of Federal Rule of Evidence 502(b) have been met. *Rhoades,* 2009 WL 3319820, at *2, 2009 U.S. Dist. LEXIS 95486, at *5–6. District Courts in the Third Circuit also consider the following factors relevant to the inadvertent disclosure of privileged material:

> (1) The reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production.
> (2) The number of inadvertent disclosures.
> (3) The extent of the disclosure.
> (4) Any delay and measures taken to rectify the disclosure.
> (5) Whether the overriding interests of justice would or would not be served by relieving the party of its errors.

*See, e.g., id.; Smith v. Allstate Ins. Co.,* 912 F.Supp.2d 242, 247 (W.D. Pa. 2012); *Rhoads Indus., Inc. v. Bldg. Materials Corp. of Am.,* 254 F.R.D. 216, 219 (E.D.Pa.2008) (citing *Fidelity & Deposit Co. of Md. v. McCulloch,* 168 F.R.D. 516, 520 (E.D.Pa.1996)).

In this instant case, the documents in question are not protected by the attorney-client privilege. The first and second documents identified as "2001 BHI Phillies Valuation" and "Letter from Larry P. Laubach to Bruce A. Rosenfield dated April 5, 2002 with "Valuation Analysis of the Assets of Bradford Holdings Inc." appear to be the same exact document, except one contains a cover letter shared between Bruce Rosenfield and Larry Laubach. The document is a letter from the BHI corporate accountants to a BHI officer, Annette Madison regarding a valuation analysis that the accounting team has or will complete with regards to BHI. The substantive document is not issued by an attorney and nowhere in the letter is there any legal advice that would constitute an attorney-client communication shared between a lawyer and their client.

The third document identified as the "Valuation of a Minority Block of the Non-Voting Common Stock of Bradford Holdings, Inc. as of March 3, 2003, dated June 21, 2004" should not be provided the attorney-client privilege protection because it is also not a communication shared between an attorney or their client. Instead, this is a formal valuation report completed to provide the company with a valuation of the BHI stock as of March 3, 2003. Additionally, John Middleton and Defendants have turned over several other similar valuation reports completed on BHI without claiming privilege over their contents.

Notwithstanding the claims of privilege over these documents, it is clear that Defendants cannot demonstrate the second prong of the analysis to show the documents were inadvertently produced. There were no precautions taken by Defendants or John Middleton in producing these documents because they were intentionally produced to Defendants' expert witnesses for the specific reason to rebut Plaintiff's expert witness opinions. As stated in their reports, Defendants' expert witnesses Fenn and Schneider identified the documents as part of their review in preparing their expert opinions. Indeed, it was Fenn and Schneider's reports which revealed to Plaintiff that the documents existed but were not produced. Although Schneider does not cite to, or rely upon, the documents, the Fenn Report directly relies on the BHI projections. Without these projections apparently provided to Defendants by John, Fenn would be unable to complete his expert analysis and which is the central basis of his opinions.[5] Further, when Plaintiff initially brought to the attention of Defendants that the documents had not been produced, Defendants willingly and intentionally produced them to Plaintiff.

Therefore, these documents were not "inadvertently produced" by Defendants or John Middleton and Plaintiff should be denied the opportunity to review, analyze, and rebut the documents just as Defendants' experts were provided the same opportunity. Anything less places Plaintiff at an unfair disadvantage, a position the discovery rules are specifically designed to guard against.

---

[5] Defendants state that the BHI projections were provided by John Middleton in response to a request submitted by Defendants' expert. However, it is clear the projections are directly pulled from and cited in the 2003 Valuation, which Defendants now demand that Plaintiff destroy. *See* **Exhibit M**, at sub-exhibit 15 to the 2003 Valuation, "Bradford Holdings Inc. Projections". Both documents are titled projections and contain the same financial information.

## IV. CONCLUSION

WHEREFORE, Plaintiff requests this Court enter an order sanctioning Defendants by striking the Fenn Report and excluding Fenn's testimony at any hearing, deposition, and/or trial in this matter. Further, Plaintiff requests this Court issue an order to show cause as to why Defendants failed to supplement their discovery responses, and ordering Defendants to produce any additional documents responsive to Plaintiff's discovery requests.

Dated: February 14, 2022

Respectfully submitted,

/s/ Ben Davis
Ben Davis
Davis Kelin Law Firm, LLC
127 Bryn Mawr Dr., SE
Albuquerque, NM 87106
Tel: (505) 242-7200
Fax: (505) 213-3399
bdavis@daviskelin.com

Courtney Johnson Vidales
Mucci Law Firm
PO Box 6908
Albuquerque, NM 87197
Tel: (505)247-2211
courtney@muccilaw.com

Justin R. Kaufman
Durham, Pittard & Spalding, LLP
505 Cerrillos Rd., Suite A209
Santa Fe, NM 87501
Tel: (505) 986-0600
Fax: (505)986-0632
jkaufman@dpslawgroup.com

Brian A. Gordon
Gordon & Ashworth, P.C.
One Belmont Ave., Suite 519
Bala Cynwyd, PA 19004
Tel: (610) 667-4500
Briangordon249@gmail.com

***Attorneys for Plaintiff***

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and complete copy of the foregoing instrument was served on all counsel via the ECF system on this the 14th day of February 2022.

                                             */s/ Ben Davis*

                                             Ben Davis