**IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA**

Case# 2021-24165-0 Docketed at Montgomery County Prothonotary on 12/09/2021 3:15 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

JOHN S MIDDLETON

vs.

ANNA K NUPSON

# EXHIBIT C

NO.  2021-24165

## <u>NOTICE TO DEFEND - CIVIL</u>

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERENCE SERVICE
MONTGOMERY  BAR ASSOCATION
100 West Airy Street (REAR)
NORRISTOWN, PA 19404-0268

(610) 279-9660, EXTENSION 201

PRIF0034
R 10/11

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

Case# 2021-24165-0 Docketed at Montgomery County Prothonotary on 12/09/2021 3:15 PM. Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

JOHN S MIDDLETON

vs.

ANNA K NUPSON

NO.  2021-24165

## CIVIL COVER SHEET

State Rule 205.5 requires this form be attached to any document commencing an action in the Montgomery County Court of Common Pleas.  The information provided herein is used solely as  an aid in tracking cases in the court system.  This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.

Name of Plaintiff/Appellant's Attorney:  JAMES T SMITH, Esq., ID: 39933

Self-Represented (Pro Se) Litigant ☐

**Class Action Suit**          ☐ Yes     ☒ No

**MDJ Appeal**          ☐ Yes   ☒ No          **Money Damages Requested** ☒

**Commencement of Action**:          **Amount in Controversy**:

Complaint          More than $50,000

## Case Type and Code

Contract: _____

Other _____

**Other:**          BREACH OF SETTLEMENT AGREEMENT

Case# 2021-24165-0 Docketed at Montgomery County Prothonotary on 12/09/2021 3:15 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**BLANK ROME LLP**
James T. Smith, I.D. No. 39933
Rebecca D. Ward, I.D. No. 79547
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
Telephone: (215) 569-5500
Facsimile: (215) 569-5555

**MANNION PRIOR LLP**
James F. Mannion, I.D. No. 58951
Jennifer D. Gayle, I.D. No. 205648
840 1st Avenue, Suite 100
King of Prussia, PA 19406
Telephone: (610) 265-7800
Facsimile: (610) 265-1204

**Attorneys for Plaintiffs**

## IN THE COURT OF COMMON PLEAS
## OF MONTGOMERY COUNTY, PENNSYLVANIA

| | |
|---|---|
| **JOHN S. MIDDLETON,** in his individual capacity, and in his capacities as former Trustee of the **TRUST OF FRANCES S. MIDDLETON, Settlor, dated February 1, 2001, as modified,** as Trustee of the **JSM FAMILY TRUST,** as co-Trustee of the **TRUSTS U/A/T OF ANNA M. BAUER,** **Settlor, dated September 12, 1994 and fbo Hughes and fbo Middleton,** and as co-Executor of the **ESTATE OF FRANCES S. MIDDLETON,** and **BRADFORD HOLDINGS, INC.,** a Delaware Corporation, 510 Feheley Drive King of Prussia, PA 19406 | : : : : : : : : : : : : : : : |
| Plaintiffs, | : : : |
| v. | : : : |
| **ANNA K. NUPSON** P.O. Box 335 Ribera, NM 087560 | : : : : : : |
| Defendant. | : |

## <u>VERIFIED COMPLAINT</u>

Case# 2021-24165-0 Docketed at Montgomery County Prothonotary on 12/09/2021 3:15 PM. Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Plaintiffs John S. Middleton, in his individual capacity ("John") and in his capacities as former Trustee of the Trust of Frances S. Middleton dated February 1, 2001, as modified (the "Modified 2001 GRAT" or generally the "GRAT"), as Trustee of the JSM Family Trust created under the Modified 2001 GRAT, as co-Trustee of the Trusts under Agreement of Trust of Anna M. Bauer, Settlor, dated September 12, 1994 and of the fbo Hughes and fbo Middleton trusts created thereunder (collectively the "Anna 1994 Trusts") and as co-Executor of the Estate of Frances S. Middleton, Deceased (the "FSM Estate") and Bradford Holdings, Inc. ("Bradford") (collectively, the "Plaintiffs"), by and through their undersigned counsel, hereby file this Verified Complaint against Defendant Anna K. Nupson ("Ms. Nupson" or "Defendant").

## PARTIES

1.      Plaintiff John S. Middleton is a citizen of the Commonwealth of Pennsylvania, residing in Bryn Mawr, Pennsylvania.  John and Defendant Anna K. Nupson are siblings, and two of the three children of Herbert H. Middleton, Jr. ("Herbert") and Frances S. Middleton ("Frances").

2.      On or about February 1, 2001, Frances created an oral trust under Pennsylvania law, namely a two-year grantor retained annuity trust (the "Original 2001 GRAT"), with John and his family as the primary beneficiaries, John as the sole Trustee, and John's siblings, Ms. Nupson and Lucia Hughes ("Ms. Hughes"), as remote contingent beneficiaries.  By certain amendments in early 2003, Frances, John, Ms. Hughes, Ms. Nupson and their children modified the Original 2001 GRAT to make Frances's three

2

Case# 2021-24165-0 Docketed at Montgomery County Prothonotary on 12/09/2021 3:15 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

children equal beneficiaries. John served as Trustee of the Original and Modified 2001 GRAT from its inception until January 31, 2003. John also serves as Trustee of the "JSM Family Trust" created under the Modified 2001 GRAT. In addition to bringing this action in his individual capacity, John asserts claims herein as former Trustee of the Modified 2001 GRAT and as Trustee of the JSM Family Trust created thereunder.

3.      On September 12, 1994, Ms. Nupson – then known as Anna Bauer – executed a trust for her lifetime benefit. Ms. Nupson named herself, Frances and John as Trustees of the Anna 1994 Trust. Pursuant to a 2003 Family Settlement Agreement, the Anna 1994 Trust was divided into two subtrusts: namely 60% in one subtrust with the Hughes family as remainder beneficiaries (the "Anna 1994 Trust fbo Hughes") and 40% in a separate subtrust with the Middleton family as remainder beneficiaries (the "Anna 1994 Trust fbo Middleton") (collectively, the "Anna 1994 Trusts"). John continued to serve as co-Trustee of the two subtrusts after their creation. In addition to bringing this action in his individual capacity, John asserts claims herein as co-Trustee of the Anna 1994 Trusts.

4.      Frances died on September 24, 2013. John and his sister, Ms. Hughes, were subsequently appointed co-Executors of the Estate of Frances S. Middleton (the "FSM Estate"). John continues to serve as co-Executor of the FSM Estate. In addition to bringing this action in his individual capacity, John asserts claims herein as co-Executor of the FSM Estate.

5.      Plaintiff Bradford Holdings, Inc. ("Bradford") is a Delaware corporation having its principal place of business in King of Prussia, Pennsylvania.

Case# 2021-24165-0 Docketed at Montgomery County Prothonotary on 12/09/2021 3:15 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

6.      Defendant Anna K. Nupson is a resident of the state of New Mexico.

## VENUE

7.      Venue is proper in Montgomery County, pursuant to Pennsylvania Rule of Civil Procedure Rules 1006(a), because the cause of action arose here, a transaction or occurrence took place here out of which Plaintiffs' cause of action against Defendant arose. Venue is also proper because Defendant consented in a written contract to the *exclusive* jurisdiction of the state courts of Montgomery County.

## FACTS

8.      Plaintiffs bring this action to enforce their contractual rights under, and to recover damages for Ms. Nupson's breach of, a certain Settlement Agreement dated February 26, 2018 (the "2018 Settlement Agreement"), that they entered into with Ms. Nupson.  The 2018 Settlement Agreement resolved a series of disputes relating to, *inter alia*, John's alleged actions as Trustee or co-Trustee of the Modified 2001 GRAT and the Anna 1994 Trusts, as well as Bradford's 2003 redemption of corporate stock (the "2003 Stock Redemption") held by the Modified 2001 GRAT and the Anna 1994 Trusts. A true and accurate copy of that Settlement Agreement, without its exhibits, is attached hereto at Tab 1.

9.      The 2018 Settlement Agreement fully and finally resolved *all* issues among Ms. Nupson and the Plaintiffs regarding the 2001 GRAT, the 2003 Stock Redemption, and the propriety of John's and Bradford's actions.  The 2018 Settlement Agreement specifically provides that "the Parties have agreed to fully and finally resolve all of their differences with respect to . . . the Original 2001 GRAT, the Modified 2001 GRAT . . . [and] the 2001 GRAT

Case# 2021-24165-0 Docketed at Montgomery County Prothonotary on 12/09/2021 3:15 PM. Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the
Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Litigation." Despite that, Ms. Nupson has attempted to evade her own representations and warranties in and continuing obligations under the 2018 Settlement Agreement in a separate lawsuit against her former counsel.

10. The modification of the Original 2001 GRAT and the 2003 Stock Redemption also involved certain other documents signed in February 2003, which are referred to, and in some instances modified by, the 2018 Settlement Agreement:

    a. a Settlement Agreement dated February 20, 2003 (the "2003 Master Settlement Agreement"), a true and accurate copy of which (without its exhibits) is attached hereto at Tab 2;

    b. a letter agreement dated February 20, 2003 (the "Side Letter Agreement"), a true and accurate copy of which is attached hereto at Tab 3;

    c. Stock Purchase Agreements dated February 28, 2003 (the "SPA"), true and accurate copies of which are attached hereto at Tab 4;

    d. a Family Settlement Agreement dated February 25, 2003 (the "FSA"), a true and accurate copy of which is attached hereto at Tab 5; and

    e. a Release and Indemnification Agreement dated March 4, 2003 relating to the Modified 2001 GRAT (the "GRAT Indemnification Agreement"), a true and accurate copy of which is attached hereto at Tab 6.

**A.** **Recitals in the 2018 Settlement Agreement That Have Already Been Admitted and Accepted by Ms. Nupson.**

11. On or about February 1, 2001, Frances created the Original 2001 GRAT with John and his family as the primary beneficiaries, John as the sole Trustee, and Ms. Nupson and Ms. Hughes as remote contingent beneficiaries. The Original 2001 GRAT was funded with all of Frances's shares of Class B Non-voting common stock in Bradford. *See* Tab 1 at Paragraph I.F.34.

Case# 2021-24165-0 Docketed at Montgomery County Prothonotary on 12/09/2021 3:15 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

12.     Frances's attorneys at Schnader Harrison Segal & Lewis LLP (the "Schnader firm") memorialized the terms and conditions in a written trust agreement, which Frances signed on or about November 19, 2001.  Although the document was signed in November 2001, the written trust agreement of the Original 2001 GRAT was dated February 1, 2001 because Frances created the trust on February 1, 2001.  *See id.* at Paragraph I.F.35.

13.     In order to prevent threatened litigation among herself and her children, in mid-October 2002, Frances requested her attorney, Bruce A. Rosenfeld ("Mr. Rosenfield") of the Schnader firm, to change the remainder provisions of the Original 2001 GRAT so that following the expiration of Frances's annuity the then-remaining principal of the Original 2001 GRAT would no longer continue in trust for the sole benefit of John and his descendants, but instead would be divided into three equal trusts for the benefit of each of Frances's children – John, Ms. Hughes and Ms. Nupson – and their descendants.  *See id.* at Paragraph I.F.36.

14.     Thereafter, Ms. Hughes's attorneys from Womble Carlyle Sandridge and Rice, LLP (the "Womble firm"), Ms. Nupson's and Frances's attorneys at the Schnader firm, and John's attorneys at Cozen O'Connor, P.C. (the "Cozen firm"), each began drafting changes to the terms of the trust instrument for the Original 2001 GRAT.  *See id.* at Paragraph I.F.37.

15.     On December 19, 2002, Ms. Hughes, Ms. Nupson, Frances and John, along with their respective counsel, attended a family meeting.  At the meeting, Ms. Hughes's counsel made a written proposal for a buy-out of Ms. Hughes's and her family's Bradford shares, held in trust and outright.  *See id.* at Paragraph I.F.38.

Case# 2021-24165-0 Docketed at Montgomery County Prothonotary on 12/09/2021 3:15 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

16.     Although she was initially inclined not to participate in the buyout, on or about December 24, 2002, Ms. Nupson's attorney advised that Ms. Nupson had changed her mind and now desired to explore a buy-out pursuant to the same price, terms and conditions sought by Ms. Hughes. *See id.* at Paragraph I.F.39.

17.     In mid-January 2003, John, on behalf of Bradford, made a written counter-proposal to Ms. Nupson's and Ms. Hughes' attorneys that increased the proposed purchase price and included (a) Bradford redeeming all shares owned by or for their (and their families') benefit at a price of $288.41 per Class A voting share, and $275.00 per Class B Non-voting share, payable within one year, and (b) Ms. Nupson's sharing equally in the FSM Estate. *See id.* at Paragraph I.F.40.

18.     Ms. Hughes and her family, and Ms. Nupson, accepted Bradford's offer.  Ms. Nupson accepted the offer on the advice of her counsel. *See id.* at Paragraph I.F.41.

19.     Thereafter, a comprehensive, master family settlement agreement dated February 20, 2003 (the "2003 Master Settlement Agreement") was signed by all parties in interest in all applicable capacities following consultation with their respective attorneys. *See id.* at Paragraph I.F.42.  A true and accurate copy of the 2003 Master Settlement Agreement (without its exhibits) is attached hereto at Tab 2.

20.     A material part of the global family resolution and the redemption of the Bradford shares was that certain terms of the trust instrument for the Original 2001 GRAT would be changed in a new trust document modifying the Original 2001 GRAT under

Case# 2021-24165-0 Docketed at Montgomery County Prothonotary on 12/09/2021 3:15 PM. Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Pennsylvania law, and which document would be executed by Frances in connection with the global family resolution. *See id.* at Paragraph I.F.43.

21.     The new trust document – the Modified 2001 GRAT – modified the remainder provisions of the Original 2001 GRAT with the agreement of Frances as Settlor and all parties to the 2003 Master Settlement Agreement.  The qualified annuity for Frances remained unchanged.  *See id.* at Paragraph I.F.44.

22.     Upon the advice and direction of her (and Ms. Nupson's) attorney, Frances dated the Modified 2001 GRAT February 1, 2001, the same date as the Original 2001 GRAT.  *See id.* at Paragraph I.F.45.

23.     The Modified 2001 GRAT changed the beneficiaries after the end of the annuity period and provided that the assets would be divided into three equal and separate family trusts for each of Ms. Hughes, Ms. Nupson and John.  *See id.* at Paragraph I.F.46.

24.     Under Item SIXTH of the Modified 2001 GRAT, a new trust (the "2001 GRAT fbo Anna") was created for the benefit of Ms. Nupson.  *See id.* at Paragraph I.F.47.

25.     Under the terms of the Modified 2001 GRAT, Frances served as Trustee of the 2001 GRAT fbo Anna from March 4, 2003 to January 31, 2005.  The Modified 2001 GRAT expressly authorized Ms. Nupson to appoint a successor Trustee, with the approval of Ms. Hughes and John.  Absent such appointment, the Modified 2001 GRAT designated Mr. Rosenfield as successor Trustee of the 201 GRAT fbo Anna.  By document effective February 1, 2005, Mr. Rosenfield began serving as Trustee of the 2001 GRAT fbo Anna. *See id.* at Paragraph I.F.51.

Case# 2021-24165-0 Docketed at Montgomery County Prothonotary on 12/09/2021 3:15 PM. Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

26.     A material part of the global family resolution, the amendment of the Original 2001 GRAT, and the redemption of the Bradford shares from the Modified 2001 GRAT, was the execution by Ms. Hughes and Ms. Nupson of the Side Letter Agreement dated February 20, 2003 regarding indemnification.  *See id.* at Paragraph I.F.52.  *See also* Tab 3, Side Letter Agreement.

27.     Another material part of the global family resolution was the execution of a Release and Indemnification Agreement – the "GRAT Indemnification Agreement – with respect to the 2001 GRAT, executed the day after the redemption of the Bradford shares. *See id.* at Paragraph I.F.53.  *See also* Tab 6, GRAT Indemnification Agreement.

28.     In executing the 2018 Settlement Agreement, Ms. Nupson unequivocally agreed that the foregoing statements in Paragraphs I.F.34 to I.F.53 were "true and correct." *See id.* at Tab 1, 2018 Settlement Agreement at Paragraph II.1, p. 19.

**B.     Key Provisions of the 2018 Settlement Agreement.**

29.     As set forth at great length in the 2018 Settlement Agreement (see Tab 1), beginning in 2014 and continuing through the date of the Settlement Agreement, Plaintiffs and Ms. Nupson were involved in litigation over the 2003 Stock Redemption and various family trusts in the Orphans' Court Division of this Court (collectively, the "Orphans' Court Litigation"), all of which violated Ms. Nupson's obligations under various agreements that were executed in February 2003 in connection with the modification of the Original 2001 GRAT and the 2003 Stock Redemption, including the 2003 Master Settlement Agreement, the Side Letter Agreement, the SPA, the FSA and the GRAT Indemnification Agreement.

Case# 2021-24165-0 Docketed at Montgomery County Prothonotary on 12/09/2021 3:15 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

30.    In the Orphans' Court Litigation, Ms. Nupson made various allegations, and argued in various memoranda of law, that John and Bradford concealed key information from her and schemed and conspired to enter into the 2003 Master Settlement Agreement and 2003 Stock Redemption.

31.    Among other things, Ms. Nupson claimed during the Orphans' Court Litigation that John was the person who first proposed the discussions for the stock redemption.

32.    However, contrary to Ms. Nupson's contentions in the Orphans' Court Litigation, in the summer and fall of 2002, the negotiations – driven largely by Ms. Hughes – focused upon changes in corporate structure that would have permitted John to continue to manage the family business but would have left both Ms. Hughes (and her family) and Ms. Nupson with the beneficial interest of their Class B Non-voting shares.  This proposed settlement of the family disputes was memorialized in a proposed agreement faxed to Ms. Hughes' counsel on October 3, 2002.  A true and accurate copy of the cover facsimile to Ms. Hughes' counsel is attached hereto at Tab 7.

33.    The October 3, 2002, proposed resolution changed at the December 19, 2002 meeting when Ms. Hughes and her counsel made an unsolicited written proposal for a buy-out of *all* of Ms. Hughes' and her family's shares.

34.    Ms. Nupson ignored those facts during the Orphans' Court Litigation.

35.    As part of that litigation, Ms. Nupson served various discovery requests upon Plaintiffs, in response to which Plaintiffs produced documents but also withheld or redacted

Case# 2021-24165-0 Docketed at Montgomery County Prothonotary on 12/09/2021 3:15 PM. Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

others on the basis of attorney-client privilege and the work product doctrine.  See, e.g., Tab 1, 2018 Settlement Agreement, Recitals at Paragraphs I.H.81. – I.H.83.

36.     Ms. Nupson filed a number of petitions in the Orphans' Court Litigation in which she sought to compel production of numerous documents withheld by John, in his individual and various representative capacities, and by Bradford on the grounds of the attorney-client privilege and/or the work product doctrine.

37.     The parties engaged in a lengthy meet-and-confer process, motion practice, and briefing for submission of those petitions to a special master who had been appointed by the Orphans' Court, the Honorable Lois E. Murphy presiding.

38.     Before those petitions were resolved, however, Plaintiffs and Ms. Nupson entered into the global 2018 Settlement Agreement (see Tab 1) in which Ms. Nupson expressly agreed to withdraw, with prejudice, all petitions and requests for relief she had sought against Plaintiffs – including, but not limited to, her then-pending discovery petitions (referred to collectively as the "*Rosenblum* Motions"[1]) in the actions relating to the Original and Modified 2001 GRAT, the 1994 Anna Trusts and the FSM Estate.  Id. at Paragraphs II.C.3, II.D.5 and II.I.1.

39.     In each instance, Ms. Nupson expressly acknowledged that there were documents – such as the ones at issue in the *Rosenblum* Motions – that she had not received, and she waived any right to demand them.  Id. at Paragraphs II.C.5, II.D.10 and II.I.5.

---

[1] The reference is to the Pennsylvania Supreme Court's decision in *In re Rosenblum's Estate*, 459 Pa. 201, 328 A.2d 158 (1974), which addressed a beneficiary's right to obtain documents relating to the administration of a trust.

Case# 2021-24165-0 Docketed at Montgomery County Prothonotary on 12/09/2021 3:15 PM. Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

40.     In the 2018 Settlement Agreement, Ms. Nupson further agreed to release John (individually and in his various representative capacities) and Bradford from any and all "claims, debts, demands, causes of action, suits, damages, obligations, costs, fees, losses, expenses, compensation, and liabilities whatsoever, at law or in equity, known or unknown, asserted or unasserted, contingent or accrued, discovered or undiscovered" through the date of the Orphans' Court's approval of the 2018 Settlement Agreement.  See Tab 1, 2018 Settlement Agreement at Paragraph II.J.1.

41.     Ms. Nupson also ratified and reaffirmed all of her "obligations, undertakings, agreements, representations, and indemnities" under the 2003 Master Settlement Agreement and all the exhibits thereto and the February 20, 2003 Side Letter Agreement regarding indemnification.  *Id.* at Paragraph II.A.1.  *See also id.* at II.A.2.  That Side Letter Agreement was a material inducement to John to agree to modify the Original 2001 GRAT.

42.     Ms. Nupson also "consent[ed] to and ratifie[d] (a) all of John's actions as Trustee, co-Trustee or Executor of … the Anna 1994 Trusts, the Original 2001 GRAT, the Modified 2001 GRAT, [and] the FSM Estate …" through the date of the 2018 Settlement Agreement.  *Id.* at II.A.4.

43.     Ms. Nupson also "consent[ed] to and ratifie[d] all of John's actions as officer or director, or majority shareholder, of Bradford from the beginning of time to the date of" of the 2018 Settlement Agreement.  *Id.* at II.A.5.

44.     Ms. Nupson also represented and warranted that:

    a)  her undertakings, obligations, agreements, representations and indemnities under (i) the 2003 Master Settlement Agreement and all

Case# 2021-24165-0 Docketed at Montgomery County Prothonotary on 12/09/2021 3:15 PM. Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

the Exhibits thereto, (ii) the February 20, 2003 Side Letter Agreement regarding indemnification, (iii) the 2003 Release and Indemnification Agreement, (iv) the 1995 Renunciation, (v) the 2004 Acknowledgment, and (vi) the Middleton 2012 Family Agreement are fully enforceable by, and subject to the rights and/or remedies of, John and/or Bradford under such documents;

b) the Original 2001 GRAT was properly created, funded and administered, that all GRAT annuity payments were made to Frances, and that the remainder interest was modified and the Modified 2001 GRAT reflects Frances's and all beneficiaries' intentions, and Anna forever waives her right to contest the Modified 2001 GRAT;

c) that all prior transfers of Bradford stock through and including the redemptions from the Anna 1994 Trusts and the Modified 2001 GRAT, were in accordance with the Shareholders' Agreement and/or a proper waiver thereof;

d) each of (i) the 2003 Master Settlement Agreement and all the Exhibits thereto, (ii) the February 20, 2003 Side Letter Agreement regarding indemnification, (iii) the 2003 Release and Indemnification Agreement, (iv) the 1995 Renunciation, (v) the 2004 Acknowledgment, and (vi) the Middleton 2012 Family Settlement and each Exhibit thereto is legal, valid and binding, and enforceable against Anna in accordance with its own terms;

e) the covenants, representations and warranties of Anna set forth in (i) the 2003 Master Settlement Agreement and all the Exhibits thereto, (ii) the February 20, 2003 Side Letter Agreement regarding indemnification, (iii) the 2003 Release and Indemnification Agreement, (iv) the 1995 Renunciation, (v) the 2004 Acknowledgment, and (vi) the Middleton 2012 Family Agreement are true and correct in all material respects on and as of the date hereof as though the same were made by her on and as of the date hereof;

f) Anna agrees that Bradford and its subsidiaries faced substantial risks as a result of the tobacco litigation, that it was possible that the value of Bradford stock would decrease significantly based on industry-wide legal changes, and that the purchase price paid for the stock redeemed from the Modified 2001 GRAT and the Anna 1994 Trusts represented the fair value of the stock;

Case# 2021-24165-0 Docketed at Montgomery County Prothonotary on 12/09/2021 3:15 PM. Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

g) the 2003 Master Settlement Agreement and all the transactions carried out thereunder were not the subject of any fraud or conspiracy by John, in any capacity, or Bradford, and that there were no misrepresentations, omissions of fact, or concealment of facts by John or Bradford prior to executing the 2003 Master Settlement Agreement and the exhibits thereto;

h) Anna shall at all times hereafter only take actions consistent with (i) the 2003 Master Settlement Agreement and all the Exhibits thereto, (ii) the February 20, 2003 Side Letter Agreement regarding indemnification, (iii) the 2003 Release and Indemnification Agreement, (iv) the 1995 Renunciation, (v) the 2004 Acknowledgment, and (vi) the Middleton 2012 Family Agreement, and her ratification and reaffirmation of each one in this Agreement

*Id.* at II.A.3.(a)-(h).

45. Ms. Nupson waived any right she had to challenge, on *any* basis, the validity of the Original or Modified 2001 GRAT, the validity of the 2003 Stock Redemption, the per share price paid as part of that Redemption, or any challenge to the 2003 Master Settlement Agreement and its related exhibits.

46. The *only* reservation or caveat Ms. Nupson made to the representations and warranties set forth above was her ability to pursue a claim against her former attorneys – the Schnader firm and Mr. Rosenfield.

47. In making the unequivocal representations and warranties set forth above, Ms. Nupson agreed the only limitation was that they were not to "be construed to mean that [Ms. Nupson] believes she received the correct advice by the Schnader firm . … regarding the 2003 Redemption… ." *Id.* at II.A.3.

48. Thus, Ms. Nupson could not relitigate the facts that she agreed were true and correct. Rather, her claims against the Schnader firm and Mr. Rosenfield were confined to

14

Case# 2021-24165-0 Docketed at Montgomery County Prothonotary on 12/09/2021 3:15 PM. Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

whether or not the legal advice she received or failed to receive about the agreed-upon facts could be the basis for malpractice and other claims under Pennsylvania law.

49.     By the express terms of the 2018 Settlement Agreement, in pursuing such a "claim" against Schnader and Mr. Rosenfield, Ms. Nupson was *still* required to "at all times take actions consistent with" her representations and warranties thereunder.  *Id.* at II.A.3.(h).

### C.     Ms. Nupson's Breach of the 2018 Settlement Agreement in Alleging Her Claims Against Her Former Attorneys.

50.     Ms. Nupson has sought to evade the effect of her waivers, releases and representations and warranties in a separate action she filed, in the United States District Court for the Eastern District of Pennsylvania, against Schnader and Mr. Rosenfield, the law firm and its partner who represented her and her mother, Frances, in connection with the transactions that ultimately resulted in the 2003 Stock Redemption.  That action is docketed in the federal court as *Anna K. Nupson v. Schnader, Harrison Segal & Lewis LLP and Bruce Rosenfield*, Civ. A. No. 2:18-cv-02505 (the "Federal Action").

51.     Ms. Nupson initiated the Federal Action with the filing of her original Complaint on June 15, 2018, only a few months after her execution of the 2018 Settlement Agreement and her colloquy before the Orphans' Court Division of the Court of Common Pleas of Montgomery County.

52.     On August 26, 2020, Ms. Nupson filed her Third Amended Complaint against Schnader and Mr. Rosenfield.  A true and accurate copy of that pleading is attached hereto at Tab 8.

Case# 2021-24165-0 Docketed at Montgomery County Prothonotary on 12/09/2021 3:15 PM. Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

53.     Contrary to her express and unequivocal representations and warranties in the 2018 Settlement Agreement, and her express waivers contained therein, Ms. Nupson has alleged in the Federal Action – and pursued discovery to support these allegations – that, among other things:

  a.  the Original 2001 GRAT was *not* "properly created, funded and administered";

  b.  she can still "contest the Modified 2001 GRAT";

  c.  that "all prior transfers of Bradford stock through and including the redemptions from the Anna 1994 Trusts and the Modified 2001 GRAT" were in fact *not* "in accordance with the Shareholders' Agreement and/or a proper waiver thereof";

  d.  "each of (i) the 2003 Master Settlement Agreement and all the Exhibits thereto" is *not* "legal, valid and binding, and enforceable against [Ms. Nupson] in accordance with its own terms";

  e.  "the covenants, representations and warranties of [Ms. Nupson] set forth in (i) the 2003 Master Settlement Agreement and all the Exhibits thereto" are *not* "true and correct in all material respects on and as of the date hereof as though the same were made by her on and as of the date hereof";

  f.  "Bradford and its subsidiaries" did *not* "face[] substantial risks as a result of the tobacco litigation" and it was *not* "possible that the value of Bradford stock would decrease significantly based on industry-wide legal changes";

  g.   "the purchase price paid for the stock redeemed from the Modified 2001 GRAT and the Anna 1994 Trusts" did *not* "represent[] the fair value of the stock"; and

  h.  she is *not* required to "at all times hereafter only take actions consistent with (i) the 2003 Master Settlement Agreement and all the Exhibits thereto … and her ratification and reaffirmation of each one" in the 2018 Settlement Agreement.

54.     More specifically, in her Third Amended Complaint in the Federal Action (Tab 8 hereto), Ms. Nupson alleges:

Case# 2021-24165-0 Docketed at Montgomery County Prothonotary on 12/09/2021 3:15 PM. Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

a. the true value of the stock that she agreed to redeem in 2003 was nearly $5000 per share and the true fair value of the stock at the time of the redemption was at least $315,000,000 more than she received (*id.* at ¶¶ 8, 29, 45, 80, 91, 101(d), 122, 124 and 128), in breach, *inter alia*, of her representations and warranties in ¶ II.A.3.(f) of the 2018 Settlement Agreement;

b. Frances's transfers of her stock into the Original 2001 GRAT, and the redemptions in 2003, were not in accordance with Bradford's Shareholders' Agreement or a waiver thereof (*see* Tab 8 at ¶¶ 16-25, 27, 28, 91, 122, 124), in breach, *inter alia*, of her representations and warranties in II.A.3.(c) of the 2018 Settlement Agreement;

c. the Original and Modified 2001 GRAT were not and are not valid and are unenforceable (*see* Tab 8 at ¶¶ 67-68, 91, and 101(c)), in breach, *inter alia*, of her representations and warranties in II.A.3.(b) of the 2018 Settlement Agreement; and

d. that [John] was aware of material facts that he failed to disclose to Ms. Nupson prior to the 2003 transactions (*see* Tab 8 at ¶¶ 30-31, 41, 47, 56, 70-72, and 91), in breach, *inter alia*, of her representations and warranties in II.A.3.(g) of the 2018 Settlement Agreement.

55.    In sum, rather than actually asserting a claim against Schnader and Mr. Rosenfield based on her "belief" that she did not "receive[] correct advice" from them in the 2003 Redemption, Ms. Nupson has repudiated and rejected the express representations and warranties of fact that she made in the 2018 Settlement Agreement.  She has attempted to relitigate disputes she settled and released in 2018 by asserting claims that call into question the validity of the Original 2001 GRAT, all the transactions that occurred and documents executed in connection with the 2003 Master Settlement Agreement, the price paid for the redeemed stock, and whether John and Bradford failed to disclose all material facts to her. These actions are in direct breach of II.A.3.(h) of the 2018 Settlement Agreement.

56.    By order dated March 24, 2021, the court in the Federal Action dismissed two claims, for lack of subject matter jurisdiction, that Ms. Nupson had asserted against Mr.

Case# 2021-24165-0 Docketed at Montgomery County Prothonotary on 12/09/2021 3:15 PM. Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Rosenfield based upon alleged conduct in his administration, as successor trustee starting in 2005, of her subtrust under the Modified 2001 GRAT, *i.e.,* her claims for negligent misrepresentation and constructive trust. A true and accurate copy of that order is attached hereto at Tab 9.

57.    In sum, the federal court held that any such claim based on Mr. Rosenfield's administration of Ms. Nupson's subtrust under the Modified 2001 GRAT was within the exclusive jurisdiction of the Orphans' Court, where Ms. Nupson already had asserted objections to Mr. Rosenfield's accounts and related Petitions for Adjudication. *Id., passim.*

58.    Ms. Nupson subsequently filed a praecipe to transfer those claims to the Orphans' Court, attaching her Third Amended Complaint as her proposed pleading.

59.    After objection by Mr. Rosenfield, Ms. Nupson then filed on May 10, 2021 a request with the Orphans' Court for leave to assert her claims for negligent misrepresentation and constructive trust against Mr. Rosenfield by way of Petition for Surcharge. A true and accurate copy of her proposed Petition is attached hereto at Tab 10.

60.    Ms. Nupson's allegations in that Petition not only repeated allegations in violation of her representations and warranties and other commitments in the 2018 Settlement Agreement but compounded her breaches.

61.    Since that filing, Ms. Nupson has filed a Motion to Substitute/Amend the proposed Surcharge Petition she seeks to file against Mr. Rosenfield. A true and accurate copy of the amended proposed Petition is attached hereto at Tab 11.

Case# 2021-24165-0 Docketed at Montgomery County Prothonotary on 12/09/2021 3:15 PM. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

62. In sum, Ms. Nupson's amended proposed Petition for Surcharge alleges, *inter alia*, that the Original 2001 GRAT was invalid and unenforceable, any transfers of stock into the Original or Modified 2001 GRAT or redemption of stock was not done in accordance with the Shareholder's Agreement or a waiver thereof, and that the price used for the redemption did not reflect the fair value of the stock. *See* Tab 11 at ¶¶ 29, and 39-44.

63. Again, rather than actually asserting a claim against Schnader and Mr. Rosenfield based on her "belief" that she did not "receive[] correct advice" from them in the 2003 redemption, Ms. Nupson has asserted claims that call into question the validity of the Original 2001 GRAT, all the transactions that occurred and documents executed in connection with the 2003 Master Settlement Agreement, the price paid for the redeemed stock, and whether John and Bradford failed to disclose all material facts to her. These actions are in direct breach of II.A.3.(h) of the 2018 Settlement Agreement.

64. Further, through multiple depositions in the Federal Action, including of Mr. Rosenfield, John Stine, and Elizabeth Arias, Ms. Nupson and her attorneys expressly sought to elicit testimony based on Ms. Nupson's contentions that are in direct contravention of her representations and warranties, waivers, releases and other commitments in the 2018 Settlement Agreement.

65. Ms. Nupson's attempt to use the deposition process in the Federal Action to collaterally attack the 2018 Settlement Agreement is a breach of that agreement.

66. On April 28, 2021, Ms. Nupson deposed John Stine, a certified public accountant who provided accounting services for a number of years to, *inter alia*, John in

Case# 2021-24165-0 Docketed at Montgomery County Prothonotary on 12/09/2021 3:15 PM. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

various capacities, Frances, Bradford and Ms. Nupson herself – including in connection with Frances's decision-making relating to the Original 2001 GRAT and the 2003 Master Settlement Agreement.

67.     During that deposition, Ms. Nupson's counsel repeatedly asked questions designed to elicit testimony to support her contention that the Original 2001 GRAT was invalid and unenforceable.

68.     For instance, Ms. Nupson's counsel posed questions that sought to elicit a response from Mr. Stine confirming that the Original 2001 GRAT was not created, nor funded, as of April 25, 2001.

69.     Mr. Stine rejected the premise of such questions.  However, the position taken by Ms. Nupson during that deposition was in direct violation of her obligations under, *inter alia*, Section II.A.3.(h) of the 2018 Settlement Agreement.

70.     At her own deposition in the Federal Action, Ms. Nupson directly contradicted her representations and warranties in the 2018 Settlement Agreement, including through her testimony about the Original 2001 GRAT, the amendment to the Original 2001 GRAT, and the 2003 Redemption.

71.     More specifically, Ms. Nupson testified that the Original 2001 GRAT was "illegal" because, *inter alia*, (a) the written trust document was signed in November 2001 and (b) in any event, because Frances married into the Middleton family, she could not create a trust to hold her Class B stock from which she received an annuity.

Case# 2021-24165-0 Docketed at Montgomery County Prothonotary on 12/09/2021 3:15 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

72.     Despite her representations and warranties about, and waiver and release of her ability to contest, the validity of all the 2003 transactions, Ms. Nupson also gave testimony attacking their validity – including claims that she was unaware of certain key parts of the transaction such as the amendment of the Original 2001 GRAT with the agreement of all family members, or that the 2003 Redemption was done in compliance with the Shareholders' Agreement.

73.     Further, Ms. Nupson also claimed, in effect, that she was subject to some form of duress or coercion in signing the operative contracts for the 2003 transactions.

74.     Similarly, during Mr. Rosenfield's deposition, Ms. Nupson challenged the validity of the Original 2001 GRAT as created as an oral trust effective February 1, 2001, as well as the written trust instrument executed by Frances in November 2001.

75.     In addition to being breaches of the 2018 Settlement Agreement, Ms. Nupson's claims about the Original 2001 GRAT are unsupported in the law.

76.     Likewise, during the deposition of Elizabeth Arias – who represented Ms. Hughes in the 2002 – 2003 negotiations and stock redemption – Ms. Nupson again challenged the validity of the Original 2001 GRAT as an oral trust, and posed other questions in direct contradiction to her representations and warranties in the 2018 Settlement Agreement.

77.     For instance, Ms. Nupson's counsel posed a question to Ms. Arias about a purported intention by John, at the time of the 2002/2003 negotiations, to sell Bradford

Case# 2021-24165-0 Docketed at Montgomery County Prothonotary on 12/09/2021 3:15 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

subsidiary John Middleton, Inc., as part of a series of questions designed to elicit testimony calling into question the fairness of the per-share price paid in 2003.

78.     Ms. Nupson's counsel also posed questions to Ms. Arias designed to elicit testimony undermining the validity of the Original 2001 GRAT as an oral trust.

79.     Ms. Nupson's counsel also posed questions to Ms. Arias designed to elicit testimony about the validity of the Modified 2001 GRAT.

80.     Attached hereto at Tab 12 is a chart that sets forth numerous examples of allegations by Ms. Nupson in her pleadings, or positions taken during discovery, that directly contradict her representations and warranties and that are in direct and flagrant breach of the 2018 Settlement Agreement.

### D.     Ms. Nupson's Breach of the 2018 Settlement Agreement in Pursuing Discovery From Plaintiffs' Attorneys.

81.     Ms. Nupson has also taken steps to circumvent the 2018 Settlement Agreement and revive her "demands" against John for documents that she agreed to waive and release in the 2018 Settlement Agreement, seeking to pierce his, his spouse's, Bradford's, and/or Bradford's subsidiaries' and/or affiliates' privilege.

82.     First, Ms. Nupson served a subpoena upon Plaintiffs' counsel, Blank Rome LLP ("Blank Rome") directing counsel to produce documents withheld as privileged and/or work product in the Orphans' Court Litigation, that were the subject of the withdrawn *Rosenblum* Motions, and that Ms. Nupson had waived the right to demand as a condition for the 2018 Settlement Agreement.  A true and accurate copy of that subpoena (the "Blank Rome Subpoena") is attached hereto at Tab 13.

22

Case# 2021-24165-0 Docketed at Montgomery County Prothonotary on 12/09/2021 3:15 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

83. Plaintiffs' counsel objected that Plaintiffs had not waived and would not waive privilege or work product protections that attached to the documents. *See* July 16, 2020 Letter (a true and accurate copy of which is attached hereto at Tab 14) at pp. 1-2.

84. Counsel further noted Ms. Nupson's subpoena to Blank Rome placed her in direct breach of the 2018 Settlement Agreement. *Id.* at p. 2.

85. Then, Ms. Nupson attempted an end-run around Plaintiffs' rights as holders of the privilege by instead seeking to compel the Schnader firm and Mr. Rosenfield – who previously represented Plaintiffs in various matters, but not in connection with the 2002/2003 negotiations and stock redemption – to produce Plaintiffs' privileged or work product information without giving Plaintiffs an opportunity to protect their rights. A true and accurate copy of Ms. Nupson's Motion to Compel, without exhibits, is attached hereto at Tab 15.

86. Ms. Nupson even went so far as to take the position that the Schnader firm and Mr. Rosenfield could require Plaintiffs to give them copies of documents not already in the Schnader firm's and Mr. Rosenfield's possession so that they could thereafter produce those documents, over Plaintiffs' objections, to Ms. Nupson.

87. In direct contravention of her representations and warranties in the 2018 Settlement Agreement (*see* Tab 1 at II.A.3.(a)-(h)), Ms. Nupson premised much of her argument for compelling production from the Schnader firm and Mr. Rosenfield upon allegations – also set forth in various pleadings – that Plaintiffs engaged in fraudulent

23

Case# 2021-24165-0 Docketed at Montgomery County Prothonotary on 12/09/2021 3:15 PM. Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

conduct in connection with the 2003 Redemption and the 2003 Master Settlement Agreement and/or that the Original 2001 GRAT was not valid.

88.     As a result, Plaintiffs were forced – at considerable cost – to move to intervene so that they could oppose the Motion to Compel and to submit their own opposition to her request that the federal court set aside Plaintiffs' privilege and work product protections.

89.     Further, by letters dated July 18, 2018, January 18, 2019 and September 4, 2020 (the "Indemnification Notices"), Plaintiffs formally notified Ms. Nupson that they considered her arguments and positions taken in the Federal Action – including allegations she advanced therein that directly contradict her representations and warranties – to breach numerous contractual obligations in various provisions of the 2018 Settlement Agreement. True and accurate copies of the Indemnification Notices are attached hereto at Tab 16.

90.     Ms. Nupson responded to the September 4, 2020 Letter by letter dated September 24, 2020 (the "Indemnification Response").  A true and accurate copy of the Indemnification Response is attached hereto at Tab 17.  She stated, *inter alia*, that her pursuit of and positions taken in the Federal Action breached no contractual obligations to Plaintiffs.

91.     After Ms. Nupson filed her own Reply in support of her Motion to Compel, in which she again argued that she was entitled to demand production of Plaintiffs' privileged and/or work product documents from the Schnader firm and Mr. Rosenfield, Plaintiffs incurred additional fees in preparing and filing a Surreply.

Case# 2021-24165-0 Docketed at Montgomery County Prothonotary on 12/09/2021 3:15 PM. Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

92.     Thereafter, Ms. Nupson's counsel wrote a letter, dated October 21, 2020 (the "October 21, 2020 Letter"), to Plaintiffs' counsel again demanding that Plaintiffs' current counsel produce, over Plaintiffs' objection and in response to the Blank Rome Subpoena, a number of documents withheld as privileged and/or work product in the Orphans' Court Litigation.  A true and accurate copy of the October 21, 2020 Letter is attached hereto at Tab 18.

93.     Plaintiffs incurred additional costs for their counsel to respond to Ms. Nupson's demand by letters or emails dated October 23, October 29, November 11, November 27, and December 15, 2020, true and accurate copies of which are attached hereto at Tabs 19 - 23, with two meet-and-confer telephonic conferences on November 11 and November 30, 2020.

94.     Plaintiffs incurred additional costs for their counsel to respond to a subsequent Motion to Compel against Blank Rome filed by Ms. Nupson in the Federal Action, which was denied by the federal court without prejudice pending resolution of Ms. Nupson's then pending Motion to Compel against the Schnader firm and Mr. Rosenfield.  A true and accurate copy of Ms. Nupson's Motion to Compel against Blank Rome and Memorandum of Law, without exhibits, is attached hereto at Tab 24.  A true and accurate copy of Blank Rome's response in opposition, without exhibits, is attached hereto at Tab 25. A true and accurate copy of the federal court's order denying the Motion to Compel without prejudice is attached hereto at Tab 26.

Case# 2021-24165-0 Docketed at Montgomery County Prothonotary on 12/09/2021 3:15 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

95.     Then, on January 25, 2021, Ms. Nupson issued a subpoena *duces tecum* and *ad testificandum* directed to James F. Mannion, Esq. ("Mr. Mannion"), who represents John in his fiduciary/representative capacities in the Orphans' Court Litigation.  A true and accurate copy of that subpoena (the "Mannion Subpoena") is attached hereto at Tab 27.   The Mannion Subpoena again sought, *inter alia*, numerous documents that Ms. Nupson had sought to compel in the Orphans' Court Litigation in the *Rosenblum* Motions that she agreed to withdraw, with prejudice, as a condition to the 2018 Settlement Agreement.

96.     On behalf of Plaintiffs and at their expense, Mr. Mannion refused to produce documents for which Plaintiffs had invoked the attorney-client privilege or the work product doctrine by objections served on February 19, 2021.   A true and accurate copy of Mr. Mannion's objections is attached hereto at Tab 28.

97.     Ms. Nupson's counsel replied by letter dated March 9, 2021 again seeking documents that she had agreed she *would not seek* from Plaintiffs or their attorneys as a condition to the 2018 Settlement Agreement.  A true and accurate copy of that letter is attached hereto at Tab 29.

98.     Again, Plaintiffs were required to incur additional costs for Mr. Mannion to respond by letter dated March 15, 2021 to maintain their invocation of the attorney-client privilege and the work product doctrine.  A true and accurate copy of that letter is attached hereto at Tab 30.

Case# 2021-24165-0 Docketed at Montgomery County Prothonotary on 12/09/2021 3:15 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

99.     By letter dated April 7, 2021, Ms. Nupson again sought to require Mr. Mannion to produce documents despite Plaintiffs' invocation of privilege, work product and other objections.  A true and accurate copy of that letter is attached hereto at Tab 31.

100.    Later the same day, the Honorable Lynne A. Sitarski, Magistrate Judge, issued an Order that granted Ms. Nupson's Motion to Compel against Schnader and Mr. Rosenfield in part, but denied it in part to the extent it sought documents for which Plaintiffs had invoked privilege and/or work product protections.  A true and accurate copy of the Opinion and Order are attached hereto at Tab 32.

101.    Nevertheless, Plaintiffs were required to incur additional costs to respond to Ms. Nupson's demands to Mr. Mannion by letter dated April 23, 2021.  A true and accurate copy of that letter is attached hereto at Tab 33.

102.    The day before – April 22, 2021 – Ms. Nupson renewed her Motion to Compel against Blank Rome.  A true and accurate copy of that Renewed Motion, without exhibits, is attached hereto at Tab 34.

103.    Plaintiffs were required to incur additional costs for Blank Rome to respond to that Renewed Motion and continue to protect Plaintiffs' rights to the attorney-client privilege and/or work product doctrine.  A true and accurate copy of Blank Rome's response to the Renewed Motion, without exhibits, is attached hereto at Tab 35.

104.    Then, on May 5, 2021, Ms. Nupson served Larry P. Laubach – a member of Cozen O'Connor, P.C., who had represented John and Bradford in, *inter alia*, the 2003

Case# 2021-24165-0 Docketed at Montgomery County Prothonotary on 12/09/2021 3:15 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

redemption – with a subpoena.  A true and accurate copy of that subpoena (the "Laubach Subpoena"), with its document Rider, is attached hereto at Tab 36.

105.    The Laubach Subpoena, like the Mannion Subpoena, sought production of, *inter alia*, numerous documents that Ms. Nupson had sought to compel in the Orphans' Court Litigation in the *Rosenblum* Motions that she agreed to withdraw, with prejudice, as a condition to the 2018 Settlement Agreement.

106.    On July 12, 2021, Ms. Nupson filed a supplement to her Motion to Compel against Blank Rome in which she argued, *inter alia*, that Mr. Rosenfield's deposition testimony about non-privileged communications he had with Frances about her estate planning before February 1, 2001 somehow waived privilege as to all communications with Frances or Herbert about any aspect of estate planning prior to their deaths, as well as any privilege held by John as Frances's executor, as Trustee of the Original 2001 GRAT, or individually as beneficiary of the Original 2001 GRAT.  A true and accurate copy of that Supplement is attached hereto at Tab 37.

107.    As a result, Plaintiffs were forced to incur additional fees for a Surreply in opposition to that Supplement.  A true and accurate copy of that Surreply is attached hereto at Tab 38.

108.    On July 26, 2021, the same day the Surreply was filed, Ms. Nupson filed a Motion to Reconsider Magistrate Judge Sitarski's rulings on her Motion to Compel against the Schnader firm and Mr. Rosenfield, again seeking to pierce Plaintiffs' privilege.  A true and accurate copy of that Motion to Reconsider is attached hereto at Tab 39.

Case# 2021-24165-0 Docketed at Montgomery County Prothonotary on 12/09/2021 3:15 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

109.    As a result, Plaintiffs were forced to incur additional fees opposing that Motion to Reconsider.  A true and accurate copy of their August 9, 2021 Response is attached hereto at Tab 40.

110.    By Order dated August 31, 2021, the federal court, the Honorable Nitza I. Quiñones Alejandro presiding, granted Ms. Nupson's Motion to Reconsider in part, ordering production of documents in the Schnader firm's or Mr. Rosenfield's possession for which John and Bradford had *not* invoked privilege – but denied the Motion to the extent Ms. Nupson sought to compel production of documents for which John, in his various capacities, and Bradford *had* invoked privilege. A true and accurate copy of that Order is attached hereto at Tab 41.

111.    By Order dated October 19, 2021, the federal court denied, in its entirety, Ms. Nupson's renewed Motion to Compel filed against Blank Rome.  A true and accurate copy of that Order is attached hereto at Tab 42.

112.    All of these actions were taken in direct contravention of Ms. Nupson's commitments, covenants, waivers and releases in the 2018 Settlement Agreement, and resulted in significant financial expense to Plaintiffs.

## COUNT I – BREACH OF THE 2018 SETTLEMENT AGREEMENT

113.    Plaintiffs incorporate by reference the allegations of ¶¶ 1 - 112 above as if fully set forth herein.

114.    The 2018 Settlement Agreement is a binding and enforceable contract between and among Plaintiffs and Defendant.

Case# 2021-24165-0 Docketed at Montgomery County Prothonotary on 12/09/2021 3:15 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

115.    Plaintiffs have fully performed their obligations under the 2018 Settlement Agreement.

116.    Defendant has repeatedly breached the 2018 Settlement Agreement.

117.    Plaintiffs have suffered damages as a direct and proximate result of Defendant's breaches of the Settlement Agreement.

WHEREFORE, Plaintiffs demand judgment in their favor and against Anna K. Nupson, in an amount in excess of $50,000, plus costs, attorneys' fees pursuant to contract, interest and all other damages recoverable under the law.

Respectfully submitted,


s/ James T. Smith
James T. Smith, I.D. No. 39933
smith-jt@blankrome.com
Rebecca D. Ward, I.D. NO. 79547
ward@blankrome.com
BLANK ROME LLP
One Logan Square
130 North 18th Street
Philadelphia, PA  19103
Telephone:    (215) 569-5500
Facsimile:    (215) 569-5555

James F. Mannion, I.D. No. 58951
jmannion@mannionprior.com
Jennifer D. Gayle, I.D. No. 205648
jgayle@mannionprior.com
MANNION PRIOR LLP
840 1st Avenue, Suite 100
King of Prussia, PA 19406
Telephone:    (610) 265-7800
Facsimile:    (610) 265-1204

30

Case# 2021-24165-0 Docketed at Montgomery County Prothonotary on 12/09/2021 3:15 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the
Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## VERIFICATION

I, John S. Middleton, hereby state that I am a party to this action, and that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information and belief.

I understand that the statements in this Verification are made subject to the penalties of 18 Pa. C. S. § 4094 relating to unsworn falsification to authorities.

Date: December 9, 2021

John S. Middleton

133218.00603/22256619v.1